# EXHIBIT E

NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS_____



IRIS POUNDS, CARLTON MILLER,  )
VILAYUAN SAYAPHET-TYLER,    )
RHONDA HALL and PIA TOWNES,  )
on behalf of themselves and all others  )
similarly situated,                  )
                                   )
       Plaintiffs,           )
                                   )
       v.                   )
                                   )
PORTFOLIO RECOVERY        )
ASSOCIATES, LLC           )
                                   )
       Defendant.        )
                                   )

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiffs submit this brief in support of their motion that this case be certified as a class

action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure.

## NATURE OF CASE

This case challenges the validity of default judgments obtained by Portfolio Recovery

Associates, LLC ("PRA") in North Carolina courts. Plaintiffs contend that PRA has uniformly

failed to file properly authenticated evidence that establishes the nature and amount of the debt

claimed to owed, as required by G.S 58-70-155. In G.S. 58-70-155, the legislature declared the

filing of such evidence by a debt buyer to be a "prerequisite" to a court's entry of default

judgment, thus making a debt buyer's compliance with section 155 a necessary precondition for

the court to exercise subject matter jurisdiction. Because PRA obtained default judgments

against the named plaintiffs and proposed class members without complying with the G.S. 58-70-155 prerequisites, the default judgments are void.

In their complaint, plaintiffs bring three claims for relief against PRA: (1) for a declaration that the default judgments PRA has obtained against the named plaintiffs and class members violate G.S. 58-70-155, vacatur of PRA's default judgments, and associated injunctive relief; (2) for a statutory penalty of $4,000 per class member pursuant to G.S. 58-70-130(b); and (3) for recovery of post-default judgment payments pursuant to G.S. 58-70-130(a). *See* Class Action Complaint ("Complaint"), ¶¶ 50-57, 58-63 and 64-65.

In addition to moving for class certification, plaintiffs have also filed a Motion for Preliminary Injunction, requesting that a preliminary injunction be issued barring PRA from enforcing or collecting on default judgments it has obtained against the named plaintiffs and members of the proposed class. *See* Motion for Preliminary Injunction and supporting brief. This Motion for Class Certification and the Motion for Preliminary Injunction are supported by a common set of Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion for Class Certification (the "Exhibits").

## CLASS DEFINITION

The proposed class definition is:

**All persons against whom Portfolio Recovery Associates, LLC obtained a default judgment entered by a North Carolina court in a case filed on or after October 1, 2009.**

## FACTS

### A. G.S. 58-70-155

Plaintiffs are a proper "class" because both the named and the unnamed plaintiffs present common issues concerning the meaning and effect of G.S. 58-70-155. Section 155 was enacted

in 2009 as part of S.L. 2009-573, "The Consumer Economic Protection Act of 2009." The purpose of this body of law, to provide economic protection for consumers, is shown by its title. The way G.S. 58-70-155 serves this purpose is likewise shown by *its* title, which establishes "prerequisites" that must be satisfied by a debt buyer prior to a court "entering a default or summary judgment against a debtor." Section 155 provides:

> **§ 58-70-155. *Prerequisites* to entering a default or summary judgment against a debtor under this Part.**
>
> (a) *Prior to entry of a default judgment* or summary judgment against a debtor in a complaint initiated by a debt buyer, *the plaintiff shall file* evidence with the court to establish the amount and nature of the debt.
>
> (b) *The only evidence sufficient to establish the amount and nature of the debt shall be properly authenticated business records* that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence. The *authenticated business records shall include at least* all of the following items: . . .
>
> (4) *An itemization of charges and fees claimed to be owed.* . . .
>
> (8) *The amount of interest claimed and the basis for the interest charged.*

G.S. 58-70-155 (emphasis added.)

G.S. 58-70-155, enacted in 2009, addressed a growing concern with debt-buyer default judgments. *See* Federal Trade Commission, "Collecting Consumer Debts: The Challenges of Change" (2009) ("FTC Report"),[1] p. 13 ("The most significant change in the debt collection business in the past decade . . . has been the advent and growth of debt buying (i.e., the purchasing, collecting, and reselling of debts in default)"; p. 57 ("Perhaps the most significant issue related to debt collection litigation is the prevalence of default judgments."); *see also* Exhibit 49, ¶ 44 ("Consumers respond to less than six percent of [PRA's] actions.").

---

[1] https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf.

## B. Portfolio Recovery Associates, LLC ("PRA")

PRA is one of the nation's largest purchasers and collectors on defaulted consumer debt. *See* Exhibit 49 at ¶ 24.

PRA buys the debt at a substantial discount to its face value and then seeks to collect on the entire amount of the debt. *Id.*; *see also* Exhibit 52, second page ("Our primary business is the purchase, collection and management of portfolios of nonperforming consumer loans. The accounts we acquire are the unpaid obligations of individuals owed to credit grantors, which primarily include banks and other types of consumer, retail, and auto finance companies.").

During the years 2008-2015, PRA purchased approximately *925,000* North Carolina consumer accounts, representing claimed debt purportedly owed by North Carolina consumers of more than *$1.8 billion*. *See* Exhibit 54 (summary of PRA purchases of North Carolina accounts). These numbers are drawn from PRA's SEC filings. *See* Exhibit 55.

PRA collects many accounts by filing lawsuits in the District Court Division of the North Carolina courts. *See* Exhibit 49, ¶¶ 44, 46 (PRA files "approximately 3,000 suits every week" and "[o]ver a three-year period, PRA placed . . . 21,000 Debts with a North Carolina law firm employing only five attorneys"); Exhibit 56 (PRA case filings in four counties 2009-2012). PRA's North Carolina case filings often result in default judgments. Plaintiffs have reviewed and summarized the court files for a random sample of 367 cases in which PRA has obtained default judgments, which represents a fraction of the total number of default judgments obtained by PRA during the class period. *See* Exhibits 13-17.

## C. Default Judgments Against the Named Plaintiffs

The court files for the PRA default judgment cases against the five named plaintiffs show that this case concerns substantially uniform PRA practices and common issues of fact and law.

-4-

*See* Exhibits 6-11 (court files); Exhibits 20-22 and Exhibit 19.B (summaries of the court files).

*Iris Pounds*. Ms. Pounds was the defendant in a civil action instituted by PRA in the District Court of Durham County on August 5, 2015. *See* Exhibits 1 and 6. A default judgment was entered in favor of PRA and against Ms. Pounds by an assistant clerk on October 12, 2015. *Id.* Ms. Pounds made a post-default-judgment payment to PRA after PRA caused her automobile to be seized by the Durham County Sheriff's Department pursuant to a writ of execution. Ms. Pounds borrowed $1,525 and paid it to the Sheriff to get her car back. Ms. Pounds needs the car to get to work and provide for the transportation needs of her family. *See* Exhibit 1.

*Carlton Miller*. Carlton Miller, a practicing medical doctor, was the defendant in a civil action instituted by PRA in the District Court of Durham County on February 7, 2014. *See* Exhibits 2 and 7. A default judgment was entered in favor of PRA and against Dr. Miller by Hon. James T. Hill, District Court Judge, and filed on May 2, 2014. *Id.* PRA caused the Durham County Sheriff to seize Dr. Miller's checking account to enforce this default judgment. Dr. Miller's bank turned over $1,541.76 to the Sheriff's office and charged Dr. Miller $125 in fees as part of the transaction. *Id.*

*Vilayuan Sayaphet-Tyler*. Vilayuan Sayaphet-Tyler was the defendant in two civil actions instituted by PRA in the District Court of Guilford County, case no. 15-CVD-5238, instituted on April 27, 2015, and case no. 15-CVD-9301, instituted on November 2, 2015. *See* Exhibits 3, 8 and 9. A default judgment was entered in favor of PRA and against Ms. Sayaphet-Tyler by an assistant clerk on July 2, 2015 in 15-CVD-5238 and on January 8, 2016 in 15-CVD-9301. *See* Exhibits 8 and 9. Ms. Sayaphet-Tyler is currently the subject of collection activity and at risk of asset seizures by the Guilford County Sheriff, based on the 15-CVD-5238 judgment. *See* Exhibit 3.

-5-

*Rhonda Hall*.  Rhonda Hall was the defendant in a civil action instituted by PRA in the District Court of Mecklenburg County on January 30, 2015.  *See* Exhibits 4 and 10.  A default judgment was entered in favor of PRA and against Ms. Hall, by an assistant clerk on July 8, 2015.  *Id.*  Ms. Hall is currently at risk of asset seizures by the Mecklenburg County Sheriff.

*Pia Townes*.  Pia Townes was the defendant in a civil action instituted by PRA in the District Court of Mecklenburg County on January 30, 2015.  *See* Exhibits 5, 11.  A default judgment was entered in favor of PRA and against Ms. Hall, by an Assistant Clerk of Court on April 1, 2015.  *Id.*  Subsequently Ms. Townes sought and obtained an order vacating the default judgment (Exhibit 28), whereupon PRA immediately took a voluntary dismissal (Exhibit 37).

### D.  The Seven Vacatur Orders

The seven vacatur orders (Exhibits 24-30), entered December 18, 2015 (*Brady*), March 29, 2016 (*Peach*), and June 8, 2016 (*Spector*, *Pledger*, *Townes*, *Walters* and *Walls*), are described and quoted from at ¶¶ 36-39 of the Complaint.  Those paragraphs of the Complaint are incorporated here by reference.  Summaries for the court files for the cases in which the orders were entered are included in Exhibit 19.B and Exhibits 20-22.

As discussed below, in each of the seven vacatur orders, the three District Court judges found that PRA failed to comply with G.S. 58-70-155 in the same way, and, as a result, the judgments were void.

In each of the seven cases, PRA took a voluntary dismissal after the vacatur orders were entered and before the defendants could file answers and counterclaims.  *See* Exhibits 33-39.

### E.  The Eight-County Sample

Plaintiffs selected PRA cases in eight North Carolina counties (Buncombe, Cumberland, Durham, Guilford, Forsyth, Mecklenburg, New Hanover and Wake) in which PRA obtained

-6-

default judgments during the years 2010-2015. *See* Exhibit 13 (describing process followed in selecting files). Files were selected using the North Carolina Administrative Office of the Courts' "VCAP" computer system. *Id.* Files were obtained from clerks of court and were scanned. *See* Exhibit 18 (authenticating affidavits). The scanned files were summarized by a reviewer. *See* Exhibit 14. Some scanned cases were excluded from the sample because they turned out not to be default judgment cases or had a file date prior to October 1, 2009. *See id.* at ¶¶ 6-9 and Exhibit 14.C. The remaining 367 cases appear in the summaries presented as Exhibit 14.B and Exhibits 15-17. These Exhibits are submitted as summaries under Rule 1006 of the Rules of Evidence. The basis on which the summaries have been prepared is set out in Exhibit 14, ¶ 4. Copies of the scanned court files have been provided to PRA on a "flash drive" external memory device.

The summaries provided in Exhibit 14.B and Exhibits 15-17 show numerous commonalities among the 367 default judgment cases. All 367 of the cases in the eight-county sample were brought by the same law firm, Sessoms & Rogers, P.A., of Durham, North Carolina. As discussed below, all of PRA's default judgments suffer from at least one failure to satisfy the G.S. 58-70-155 prerequisites.

## F. PRA's August 3, 2016 Default Judgment in *Stancil*

On August 3, 2016, PRA filed a motion for default judgment in *PRA v. Stancil*, 15-CVD-8597 (Cumberland County). *See* Exhibit 41 (court file in *Stancil*). A default judgment was entered by an assistant clerk of court on the same date. *Id.*

PRA's motion for default judgment in *Stancil* was filed well after the entry of the vacatur orders (Exhibits 24-30) and three months after PRA's attorney, in asking for "guidance" sought by PRA, stated: "I certainly understand the issues with the affidavit and authentication."

*See* Exhibit 31 (May 4, 2016 hearing transcript), p. 66, lines 17-18; *see also id.* at 63:18 - 64:24.

Because PRA's affidavit in *Stancil* suffers from the same shortcomings noted in the vacatur orders, it may be inferred that PRA's failure to satisfy the section 155 prerequisites is ongoing.

### G. *Palmer v. Portfolio Recovery Associates, LLC*

On June 23, 2016, Reba Palmer, formerly named Reba Peach, brought suit against PRA, seeking recovery of a $4,000 statutory penalty under G.S. 58-70-130(b) by reason of PRA's default judgment against her (the same default judgment that was the subject of the vacatur order entered in *PRA v. Peach* (Exhibit 25)). *See* Exhibit 42 (copy of *Palmer* court file). On September 14, 2016 PRA filed a purported "Confession of Judgment" stating in part: "PRA may (or may not) be liable to Plaintiff for the amount prayed for in the Complaint or for any amount" and "PRA nevertheless authorizes the entry of judgment in favor of plaintiff Reba Palmer in the sum of $4,000." *Id.* The action remains pending.

### H. *Portfolio Recovery Associates v. Houston*

On May 14, 2012, Caroline Houston filed a class counterclaim on behalf of defendants in cases brought by PRA in North Carolina. As in this action, Ms. Houston alleges that PRA brought collection lawsuits against her and the class without complying with North Carolina statutory provisions governing debt-buyer collection activities. *Houston* is pending before Hon. Richard L. Doughton, pursuant to Rule 2.1 of the General Rules of Practice.

Ms. Houston and PRA filed cross-motions for summary judgment on Ms. Houston's individual counterclaims against PRA. By order entered June 6, 2014, Judge Doughton granted summary judgment in favor of Ms. Houston, holding that PRA was liable for violations of G.S. 58-70-115 and G.S. 58-70-150. *See* Exhibits 44 and 45.

On January 5, 2015, Ms. Houston moved to be permitted to amend her counterclaim to add additional plaintiffs and assert a class claim asserting that PRA's default judgments violated G.S. 58-70-155. PRA objected to the amendment. *See* Exhibit 46 (excerpt from PRA brief). By order entered June 10, 2015, Judge Doughton denied Ms. Houston's motion to amend. *See* Exhibit 47.

<strong><u>ARGUMENT</u></strong>

## I. <u>REQUIREMENTS FOR CLASS CERTIFICATION.</u>

In North Carolina, the requirements for class certification are as set out in *Beroth Oil Co. v. N. C. Dept. of Transportation.*, 367 N.C. 333, 336–37, 757 S.E.2d 466, 470 (2014):

> First, parties seeking to employ the class action procedure pursuant to our Rule 23 must establish the existence of a class. A "class" exists when each of the members has an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members.

> The party seeking to bring a class action also bears the burden of demonstrating the existence of other prerequisites:

> > (1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class;

> > (2) there must be no conflict of interest between the named representatives and members of the class;

> > (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case;

> > (4) class representatives within this jurisdiction will adequately represent members outside the state;

> > (5) class members are so numerous that it is impractical to bring them all before the court; and

> > (6) adequate notice must be given to all members of the class.

> When all the prerequisites are met, it is left to the trial court's discretion whether a class action is superior to other available methods for the adjudication of the controversy.

(Citations omitted; formatting added.) Issues (1) to (4) are sometimes addressed as aspects of

adequacy. *See Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 10–11, 550 S.E.2d 179, 187–88

(2001), *affirmed* 356 N.C. 292, 569 S.E.2d 647 (2002). Thus, the conditions that must be

satisfied are sometimes referred to as existence of a class, adequacy and numerosity. *See id.*

    "In determining the propriety of a class action, the question is not whether the plaintiff or

plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the

requirements of Rule 23 are met." *Beroth*, 367 N.C. at 342, 757 S.E.2d at 474 (citations omitted).

## II. A "CLASS" EXISTS BECAUSE CLASS MEMBERS "EACH HAVE AN INTEREST IN THE SAME ISSUES OF LAW OR FACT" AND THESE ISSUES "PREDOMINATE."

    The first requirement for class certification in North Carolina is that a "class" exist.

*Beroth*, 367 N.C. at 336, 757 S.E.2d at 470; *Faulkenbury v. Teachers' and State Employees' Ret.*

*System of N. C.*, 345 N.C. 683, 697, 483 S.E.2d 422, 431 (1997); *Pitts*, 144. N.C. App. at 10, 550

S.E.2d at 187. The North Carolina Supreme Court has prescribed the test for the existence of a

class to be whether "each of the members has an interest in either the same issue of law or of

fact, and that issue predominates over issues affecting only individual class members." *Beroth*,

367 N.C. at 336, 757 S.E.2d at 470 (quoting *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274,

277, 354 S.E.2d 459, 462 (1987)).

    In the present case the following issues are common to members of the class:

- Whether PRA's default judgments violate G.S. 58-70-155.

- Whether PRA's default judgments are void.

- Whether PRA is liable for the statutory penalty prescribed by G.S. 58-70-130(b).

- Whether PRA is liable for payments made by class members following entry of a default judgment under G.S. 58-70-130(a).

## A. **First Common Issue: Whether PRA's Default Judgments Violate G.S. 58-70-155.**

Each of the class members, named and unnamed, presents the same question: did PRA violate G.S. 58-70-155? Because G.S. 58-70-155 requires that debt buyers "shall file" certain evidence with the court, review of court files in which PRA obtained default judgments provides a complete factual picture as to PRA's compliance with section 155's "prerequisites." Summaries of a sample of 367 court files of cases in which PRA obtained default judgments—as well as summaries of the named plaintiffs' court files, the court files in seven PRA cases that resulted in vacated default judgments, and a recent PRA default judgment case—confirm that PRA has used and continues to use substantially uniform practices to obtain default judgments.

Under G.S. 58-70-155(a), "[p]rior to entry of a default judgment . . . [a debt-buyer plaintiff] shall file evidence with the court to establish the amount and nature of the debt." Subsection 155(b) specifies that "[t]he *only* evidence sufficient to establish the amount and nature of the debt shall be properly authenticated business records that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence." G.S. 58-70-155(b) (emphasis added.) Plaintiffs incorporate by reference the argument at pp. 9-14 of plaintiffs' Brief in Support of Motion for Preliminary Injunction as to how PRA fails to comply with G.S. 58-70-155 by failing to submit business records that satisfy the authentication requirements of Rule 803(6) of the North Carolina Rules of Evidence. The question of law as to what qualifies as "properly authenticated business records" and the question of fact as to whether PRA has complied with the authentication requirement are both common issues central to this litigation and predominate over any individualized issues.

In addition to requiring that "the plaintiff shall file evidence" and "the only evidence sufficient" "shall be authenticated business records," section 155(b) specifies which business records must be filed by the debt buyer plaintiff:

The authenticated business records shall include at least all of the following items: . . .

(4) An itemization of *charges and fees claimed to be owed.* . . .

(8) The amount of interest claimed and the basis for *the interest charged.*

G.S. 58-70-155(b) (emphasis added.) Plaintiffs incorporate by reference the argument at pp. 14-16 of Plaintiffs' Brief in Support of Motion for Preliminary Injunction as to how PRA fails to comply with G.S. 58-70-155 by failing to submit business records that satisfy the itemization requirements of G.S. 58-70-155(b)(4) and (8). As with section 155's authentication requirement, the question of law as to what qualifies as "[a]n itemization of charges and fees claimed to be owed" and the question of fact as to whether PRA has complied with the itemization requirement are common issues that predominate over any individualized issues.

The presence and predominance of common issues is shown by the seven vacatur orders, by the eight-county sample and by the recent default judgment in *PRA v. Stancil.*

### 1. The Seven Vacatur Orders.

The seven vacatur orders all reach the same conclusions about PRA's violation of G.S. 58-70-155's authentication and itemization requirements.

- *Brady* Order (Exhibit 24): Findings of Fact ¶¶ 2, 4; Conclusions of Law ¶ 6.

- *Peach* Order (Exhibit 25): Findings of Fact ¶¶ 2, 6, 12-27; Conclusions of Law ¶¶ 5, 7.

- Mecklenburg Orders (Exhibits 26-30): Findings ¶¶ 4-8; Conclusions ¶¶ 14-15.

The fact that three different District Court judges reached the same conclusion in seven different cases suggests that PRA is acting in a way that is uniform in relevant ways.

-12-

See *Faulkenbury*, 345 N.C. at 698, 483 S.E.2d at 431 ("Each of the parties had a claim based on what he or she contends is underpayment of retirement benefits. This claim predominates over issues affecting only individual class members in this case. This establishes a class."). The vacatur orders show that these seven cases each presented (and resolved) "the same issues of fact or law" with respect to PRA's violation of the statute.

### 2.  The Eight-County Sample.

The eight-county sample of 367 randomly selected PRA default judgment cases shows substantially uniform PRA default judgment practices since G.S. 58-70-155 took effect. *See* Exhibits 14.B and 15-17.

PRA's cases were all brought by the same five-lawyer firm, Sessoms & Rogers, P.C. *See* Exhibit 17; Exhibit 22; *see also* Exhibit 49, ¶ 46 (noting that PRA had placed 21,000 debts with a five-person North Carolina law firm over a three-year period). The Sessoms firm filed these tens of thousands of lawsuits on behalf of PRA by using substantially uniform pleadings, motions, and affidavits.

As to authentication, in none of the 367 cases did PRA provide an affidavit from a person employed by the original creditor who authenticated a defendant's account statement. *See* Exhibit 15, columns titled "Original Creditor (O.C.) Affidavit?" and "O.C. Affidavit References or Attaches Account Statements?"; *see also* Exhibit 14 (Affidavit of Karen Ewart), ¶¶ 4.o and 4.q (instructions followed by reviewer in making entries in those columns).

As to itemization, in 362 out of 367 cases, the amount of charges, fees and interest itemized on account statements filed by PRA was less than the judgment amount. *See* Exhibit 14.B and Exhibit 16, column titled "Judgment Amount Equal to or Less than Amount Itemized"; *see also* Exhibit 14, ¶ 4.n (instructions followed by reviewer in making entries in summary).

This evidence shows extraordinary uniformity for class action purposes. Most class definitions are in some way "over-inclusive," and, when that happens, class definitions are trimmed in some way to ensure that the problem is avoided or limited. *See, e.g., Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 396 (M.D.N.C. 2015) ("The fact that a class list contains members whose claims may fail on the merits does not mean that the class cannot be certified."); *see also In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) ("At worst the inclusion of some uninjured class members is inefficient, but this is counterbalanced by the overall efficiency of the class action mechanism. Moreover, excluding all uninjured class members at the certification stage is almost impossible in many cases, given the inappropriateness of certifying what is known as a 'fail-safe class'—a class defined in terms of the legal injury."); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Here, however, here it appears that 100% of PRA's default judgments share a common failure to comply with the G.S. 58-70-155 prerequisites.

### 3. The Default Judgment in PRA v. Stancil.

Finally, the continued uniformity of PRA's G.S. 58-70-155 failings is confirmed by *PRA v. Stancil.*

On August 3, 2016, PRA moved for default judgment in *PRA v. Stancil*, Cumberland County case no 15-CVD-8597. *See* Exhibit 41 (copy of court file in *PRA v. Stancil*). In *Stancil*, the motion for entry of default judgment was filed on behalf of PRA by Sessoms & Rogers, the same firm that filed the PRA default judgment papers in all 367 cases in the eight-county sample.

*See id.*; Exhibit 17. The attorney who filed the motion for entry of default judgment in *Stancil*, Andrew Hoke, was the same attorney who represented PRA in connection with the seven vacatur orders, including at the hearing in Mecklenburg County on May 4, 2016, at which he stated "I certainly understand the issues with the affidavit and authentication." *See* Exhibit 31 at p. 66, lines 17-18. The vacatur orders were specific and detailed in their assessment of PRA's failures to comply with Section 155. *Stancil* represents PRA's efforts at compliance with G.S. 58-70-155 after having received the guidance of three District Courts with regard to the failings of its prior default-judgment filings.

Despite this guidance, PRA did not change its practices in the *Stancil* case so as to come into compliance with G.S. 58-70-155. The sole affidavit that PRA filed in *Stancil* that addresses documents, records or liability is a one-page document titled "Business Records Affidavit," executed June 7, 2016. This affidavit is given by Cristina Patterson, "Custodian of Records, for Portfolio Recovery Associates.". Ms. Patterson does not claim familiarity with the circumstances under which the original creditor's (GE Capital Retail Bank/Belk) business records were created and maintained. The *Stancil* file does not contain an affidavit from anyone employed by GE Capital Retail Bank or by anyone who claims familiarity with the creation or maintenance of business records by GE Capital Retail Bank.

Finally, PRA's continued violation of G.S. 58-70-155, after PRA had participated in the vacatur hearings and had received the vacatur orders, suggests that PRA is unwilling or unable to comply with the "prerequisites" prescribed by section 155, as those prerequisites have been consistently interpreted by Judge Anderson, Judge Sasser and Judge Tin. Thus, if the district courts that have interpreted section 155 and considered PRA's compliance with the statute are

correct, as plaintiffs contend, then *every* member of the class has been harmed by PRA's uniformly deficient default-judgment practices.

### B. Second Common Issue: Whether PRA's Default Judgments Are Void.

Each of the class members, named and unnamed (other than the handful of class members as to whom PRA's default judgments have already been vacated) presents a second common question: whether a PRA default judgment obtained in violation of section 155 is "void."

Plaintiffs incorporate by reference the argument at pp. 17-22 of Plaintiffs' Brief in Support of Motion for Preliminary Injunction, addressing the merits of why PRA default judgments are void. For class certification purposes, this argument demonstrates that the issue of whether the default judgments procured by PRA are void for lack of jurisdiction is a question of law that is shared by all members of the class.

### C. Third Common Issue: Liability Under G.S. 58-70-130(b).

Each of the class members, named and unnamed, presents a third common issue: whether the class member is entitled to recover the statutory penalty prescribed by G.S. 58-70-130(b). Plaintiffs contend liability under G.S. 58-70-130(b) follows directly from a finding that G.S. 58-70-155 has been violated. *See Simmons v. Kross Lieberman & Stone, Inc.*, 228 N.C. App. 425, 431, 746 S.E.2d 311, 316 (2013) ("[W] e hold that Plaintiff's failure to allege actual injury does not preclude her from recovering a civil penalty under N.C. Gen. Stat. § 58-70-130(b)").

As established in Part A. above, the question of whether or not PRA's default judgments were obtained in violation of section 155 is common to the class. Whether such violations incur the statutory penalty under G.S. 58-70-130(b) presents a corollary issue that is also common to the class. Because statutory liability under G.S. 58-70-130(b) flows directly from a violation of

G.S. 58-70-155, and does not turn on any individualized inquiries, the resolution of the first common issue will also conclusively answer the second issue for each class member.

### D. Fourth Common Issue: Recovery of Payments Under G.S. 58-70-130(a).

Some of the class members, named and unnamed, present a fourth common question: whether those class members who made payments to PRA following entry of the default judgment should be entitled to recover those payments as "actual damages" under G.S. 58-70-130(a). This issue is presented by named plaintiffs Pounds and Miller, and presents a common issue for all of the members of the proposed class who made such payments. These payments are alleged to be "actual damages" under G.S. 58-70-130(a).

The question of whether payments made on default judgments obtained in violation of the section 155 prerequisites are "actual damages" under G.S. 58-70-130(a) is a common question of law that is presented by two of the named plaintiffs and a substantial group of the proposed class.

### E. Predominance.

In order to find the existence of a class under North Carolina law, a court must find that common issues predominate. The common issues outlined in the preceding subsections predominate over any individual issues amongst class members.

Namely, the primary question on which each class member's claim must rise or fall is whether PRA's default judgment practices violated G.S. 58-70-155. PRA's compliance with section 155 is determined solely by what PRA filed in its cases, and, as shown above, PRA relied on substantially uniform practices in obtaining its default judgments. Not only is a uniform practice a necessity when filing thousands of cases, but PRA has continually maintained these same practices even in the face of court orders finding the practices to violate G.S. 58-70-155.

-17-

Accordingly, whether PRA's uniform default judgment practices violated section 155 presents common issues of fact and law. This question will have an answer common to the class that will be dispositive of the litigation.

Likewise, the purely legal question as to whether failure to comply with section 155's prerequisites renders a default judgment void is also common to all class members, who will win or lose their claim for injunctive relief on the basis of that question alone. The common questions as to PRA's liability for statutory and actual damages are also purely legal questions that flow from the common answer to the underlying question of whether PRA's uniform default-judgment practices violate G.S. 58-70-155.

The predominance requirement does not necessitate that claims be factually identical. *See Pitts*, 144 N.C. App. at 13, 550 S.E.2d at 189 ("There is no requirement under Rule 23, however, that the claims asserted in a class action be factually identical as to all class members. Rather, the requirement for the existence of a class is that the same issue of law or fact predominate over any individual issues."). Predominance is not lost because of variations in damages. *Tomlin v. Dylan Mortgage Inc.*, 2002 WL 32986130, at *3 (N.C. Business Court, Feb. 1, 2002) ("To the extent that each borrower may have a claim for a different *amount* depending on the amount of their loan, that distinction is not sufficient to outweigh the predominance of the common elements of the damage issues, nor will the calculation of those damages pose an insurmountable problem for management of the action as a class action."); *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 427–28 (4th Cir. 2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations."). In assessing

-18-

predominance, North Carolina courts should consider "public policy favoring protection of consumers":

> [I]n weighing whether the common issues predominate over any individual issues, the trial court should consider public policy favoring protection of consumers from fraud in cases where, absent the availability of a class action, the consumers would for economic reasons be unlikely to bring an action against the offending parties.

*Pitts*, 144 N.C. App. at 14, 550 S.E.2d at 189.

For the reasons given throughout the foregoing argument, common issues predominate.

### III. ADEQUACY OF CLASS REPRESENTATIVES.

Class representative adequacy for class certification in North Carolina involves four requirements: "(1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; [and] (4) class representatives within this jurisdiction will adequately represent members outside the state." *Faulkenbury*, 345 N.C. at 697, 483 S.E.2d at 431.

In *Tomlin v. Dylan Mortgage Inc.* the court concluded that the adequacy requirement also concerns the adequacy of class counsel. 2002 WL 32986130, at *5 ("The adequacy requirement encompasses three considerations: (1) adequacy of class representatives; (2) adequacy of class counsel and (3) the relationship between the two."). In the instant case, the named plaintiffs have acknowledged their understanding of their duties as class representatives. *See* Exhibits 1-5 (affidavits of named plaintiffs); *Crow v. Citicorp Acceptance Co., Inc.*, 319 N.C. 274, 282–83, 354 S.E.2d 459, 465 (1987). There are no apparent conflicts of interest. *See id.,* 319 N.C. at 282-83, 354 S.E.2d at 465. The named plaintiffs have a genuine interest in the outcome of the

case, and they can adequately represent any class members who now reside outside North Carolina. *See id.* This is sufficient to demonstrate their adequacy. *See Pitts*, 144 N.C. App. at 16, 550 S.E.2d at 191 (reversing trial court ruling finding class representatives to be inadequate); *Tomlin*, 2002 WL 32986130, at *4-7 (assessing class representative adequacy under *Pitts* standard).

Class counsel are adequate attorneys for the class. *See* Exhibits 64-69. In *Tomlin*, the court found two of the attorneys who seek to act as class counsel in the instant case to be adequate as class counsel. 2002 WL 32986130, at *5.

## IV. NUMEROSITY.

The numerosity requirement is that "class members are so numerous that it is impractical to bring them all before the court." *Beroth*, 367 N.C. at 337, 757 S.E.2d at 470 (quotation and citation omitted). In *Pitts*, the Court of Appeals held that the numerosity requirement had been satisfied where the class appeared, based on the plaintiff's good faith estimate, to include in excess of one thousand persons. 144 N.C. App. at 18, 550 S.E.2d at 192.

"The number is not dependent upon any arbitrary limit, but rather upon the circumstances of each case." *Crow*, 319 N.C. at 283, 354 S.E.2d at 466. In *English v. Holden Beach Realty Corp.*, 41 N.C. App. 1, 9, 254 S.E.2d 223, 231 (1979), cited by the Supreme Court in *Crow* for this proposition, the Court of Appeals affirmed certification of a class which had only 14 members.

In the present case, the eight-county sample includes 367 default judgments. *See* Exhibits 13 and 14. A good faith estimate of the size of the class is that it is in excess of one thousand persons, which clearly satisfies the numerosity requirement. *See Pitts*, 144 N.C. App. at 18, 550 S.E.2d at 192.

## V. **NOTICE**.

Class members are entitled to "adequate notice of the class action" which, generally, should include "individual notice":

> [A]lthough Rule 23(a) says nothing about the need for notice to members of the class represented, we believe that fundamental fairness and due process dictate that *adequate notice* of the class action be given to them. The actual manner and form of the notice is largely within the discretion of the trial court. The trial court may require, among other things, that it review the content of any notice before its dissemination.
>
> *The trial court should require that the best notice practical under the circumstances be given to class members. Such notice should include individual notice to all members who can be identified through reasonable efforts*, but it need not comply with the formalities of service of process. Notice of the action should be given as soon as possible after the action is commenced. As part of the notification, the trial court may require that potential class members be given an opportunity to request exclusion from the class within a specified time in a manner similar to the current federal practice.

*Crow*, 319 N.C. at 283–84, 354 S.E.2d at 466 (emphasis added).

Notice does not necessarily include "an opportunity to request exclusion from the class." *Id.* As indicated in the last sentence of this quote from *Crow*, an "opt-out right" is not automatic: the trial court "may" require it. *Id.* No opt-out opportunity is required when the primary relief sought is injunctive rather than monetary. *See Ehrenhaus v. Baker*, 216 N.C. App. 59, 78-81, 717 S.E.2d 9, 22-24 (2011) (concluding, after an extensive discussion, that "the trial court correctly determined due process does not require opt-out rights in this case."); *Nakatsukasa v. Furiex Pharm., Inc.*, 2015 WL 4069818, at *3 (N.C. Business Court, July 1, 2015) ("As the North Carolina Court of Appeals has recognized, a class may be certified without opt-out rights when the primary relief sought is not monetary, but injunctive or declaratory.").

Just as opt-out rights are not required in cases in which "the primary relief sought is not monetary, but injunctive or declaratory," so individualized notice may not be necessary in injunctive and declaratory cases. Certainly this is so in federal court where, by rule,

-21-

individualized notice is mandatory only in class cases brought under Rule 23(b)(3) (essentially, cases seeking monetary relief). *Compare* Federal Rule 23(c)(2)(B) (mandating individual notice for (b)(3) classes) *with* Rule 23(c)(2)(A) (instructing that, for other classes, "the court may direct appropriate notice").

Plaintiffs contend that under the circumstances of this case, the cost of notice should be imposed on PRA. *See Frost v. Mazda Motor of Am., Inc.*, 353 N.C. 188, 198–99, 540 S.E.2d 324, 331 (2000) ("We affirm our general agreement with the principle that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action. But we note important exceptions to that principle, such as imposing those costs on the defendant as a discovery sanction, and *allowing the trial court the flexibility and discretion to order defendants to shoulder this burden when appropriate under the circumstances of each case*.") (citations omitted, emphasis added). The circumstances of this case include the seven vacatur orders (Exhibits 24-30), which show PRA to be acting in violation of G.S. 58-70-155; PRA's voluntary dismissals and other efforts to avoid judicial review (Exhibits 33-39, 42); and the other matters set out in Plaintiffs' Brief in Support of Motion for Preliminary Injunction, served concurrently with this brief.

## VI. SUPERIORITY.

If this case is permitted to go forward as a class action, the members of the proposed class will obtain a judicial resolution of their contention that PRA's default judgments violate G.S. 58-70-155 and are void, that PRA is liable for the statutory penalty prescribed by G.S. 58-70-130(b), and that PRA is liable to refund payments under G.S. 58-70-130(a).

Conversely, if class certification is denied, these issues will remain unresolved. *See Maffei v. Alert Cable TV of N. Carolina, Inc.*, 316 N.C. 615, 620, 342 S.E.2d 867, 871

(1986) ("We recognize that one of the basic purposes of class actions is to provide a forum whereby claims which might not be economically pursued individually can be aggregated in an efficient and economically reasonable manner."); *Pitts*, 144 N.C. App. at 13–14, 550 S.E.2d at 189 ("The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public.") (quoting *Newberg on Class Actions*).  PRA's efforts to avoid judicial review in individual cases (*see* Exhibits 33-39, 42) support plaintiffs' contention that a class action is superior to other means for resolving this controversy.

## CONCLUSION

For the foregoing reasons, because common questions predominate, plaintiffs ask that the court certify this case as a class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure.

This, the 21st day of November, 2016,

*Carlene McNulty*

Carlene McNulty, N.C. State Bar No. 12488
Jason A. Pikler, N.C. State Bar No. 47128
Emily P. Turner, N.C. State Bar No. 49578
NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC  27611
Telephone: (919) 856-2161
Facsimile: (919) 856-2175
Email: carlene@ncjustice.org
        jason.pikler@ncjustice.org
        emilyt@ncjustice.org

J. Jerome Hartzell, N.C. State Bar No. 7775
P.O. Box 10246
Raleigh, NC 27605
Telephone: (919) 819-6173
Email: jerry.hartzell@gmail.com


Travis E. Collum, N.C. State Bar No. 29158
COLLUM & PERRY, PLLC
P.O. Box 1739
Mooresville, NC 28115
Telephone: (704) 663-4187
Email: travis@collumperry.com


Adrian M. Lapas, N.C. State Bar No.: 20022
LAPAS LAW OFFICES, PLLC
P.O. Box 10688
Goldsboro, NC 27532
Telephone: (919) 583-5400
Email: adrianlapas@goldsborobankruptcylawyer.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date a true and correct copy of the foregoing ***Brief in Support of Plaintiffs' Motion for Class Certification*** was served, in conjunction with service of the Summons and Complaint, pursuant to Rule 4(j)(6)(d) of the North Carolina Rules of Civil Procedure, upon the Registered Agent for Defendant Portfolio Recovery Associates, LLC, by Federal Express, a designated delivery service authorized under G.S. 1A-1, Rule 4(j)(1)(d) and 26 U.S.C. § 7502(f)(2), delivery receipt and direct signature requested, postage prepaid, addressed as follows:

> Corporation Service Company, as Registered Agent for
> Portfolio Recovery Associates, LLC
> 327 Hillsborough Street
> Raleigh, NC 27603-1725

This, the 21st of November, 2016

_____
Carlene McNulty