# EXHIBIT G

NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS_____

IRIS POUNDS, CARLTON MILLER, )
VILAYUAN SAYAPHET-TYLER, )
RHONDA HALL and PIA TOWNES, )
on behalf of themselves and all others )
similarly situated, )
                     )
        Plaintiffs, )
                     )
        v. )
                     )
PORTFOLIO RECOVERY )
ASSOCIATES, LLC, )
                     )
        Defendant. )
                     )



DURHAM COUNTY
FILED
NOV 2 1 2016
AT 2:24
BY _____
CLERK OF SUPERIOR COURT

## <u>PLAINTIFFS' BRIEF IN SUPPORT OF<br>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiffs submit this brief in support of their motion seeking a preliminary injunction

barring Portfolio Recovery Associates, LLC ("PRA") from enforcing or collecting on the default

judgments it has obtained against members of the proposed class, pending final determination of

plaintiffs' claim that PRA's default judgments are void.

## <u>NATURE OF CASE</u>

By their Class Action Complaint and their Motion for Class Certification, filed with this

motion, plaintiffs seek certification of a class consisting of "all persons against whom PRA

obtained default judgments in North Carolina courts in a case filed on or after October 1, 2009."

Class Action Complaint ("Complaint") ¶ 15; Motion for Class Certification ¶ 2. The "in a case

filed on or after October 1, 2009" limitation refers to the effective date of "The Consumer

Economic Protection Act of 2009," S.L. 2009-573, which enacted G.S. 58-70-155 and related statutes.

The Complaint's three claims for relief arise from PRA's default-judgment practices. First, plaintiffs seek a declaratory judgment that PRA's default judgments violate G.S. 58-70-155 and are void, together with injunctive relief requiring PRA to attend to filings and notifications. Second, plaintiffs seek recovery of the statutory penalty prescribed by G.S. 58-70-130(b) ($500 to $4,000 per violation) for PRA's violations of G.S. 58-70-155. Third, for those class members who have made post-default-judgment payments, plaintiffs seek recovery of the payments as actual damages for PRA's violations of G.S. 58-70-155, pursuant to G.S. 58-70-130(a). *See* Complaint ¶¶ 50-57, 58-63, and 64-66.

## FACTS

The following facts are drawn from the Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion for Class Certification ("Exhibits"). The Exhibits show:

- PRA is a debt buyer using the North Carolina court system to collect on charged-off debt that PRA purchased from various creditors for a fraction of the face value of the debt. *See* Exhibit 52, second page ("Our primary business is the purchase, collection and management of portfolios of nonperforming consumer loans."); Exhibit 54 (summary of PRA purchases of North Carolina accounts); Exhibit 56 (showing PRA case filings in four N.C. counties from 2009-2012); Exhibits 13-17 (summary of documents contained in 367 court files from eight-county sample of PRA default judgment court files and supporting affidavits); *see also* Exhibits 6-11 (court files for PRA's cases against the named plaintiffs).

- The records that PRA purchases from original creditors and the record-keeping systems of the original creditors lack integrity. *See* Exhibit 49 (September 2015 Consent Order issued against PRA by the Consumer Financial Protection Bureau) ("CFPB Consent Order"), ¶¶ 28-32, 36.

- PRA has obtained thousands of default judgments against North Carolina defendants in cases filed on or after October 1, 2009. *See* Exhibit 13 (discussing sample of 367

court files from the years 2010-2015, which constitutes a fraction of the default judgments obtained by PRA during the time period).

- In response to seven recent motions to vacate PRA default judgments, North Carolina judges have held that PRA's default judgments are void because PRA failed to satisfy the "prerequisites" prescribed by G.S. 58-70-155: "properly authenticated business records" containing an "itemization of charges and fees claimed to be owed." *See* Exhibits 24-30 (vacatur orders).

- In each of these cases, the District Court judges found that: (1) PRA failed to submit account statements or other business records that itemized the amount claimed to be owed; and (2) failed to authenticate the account statements with an affidavit from any person claiming familiarity with the circumstances under which the account statements were created and maintained by the original creditor. *Id.*; *see also* Complaint, ¶¶ 37-39 (excerpts from vacatur orders).

- PRA has sought to avoid judicial review of its actions. Rather than pursue the cases so as to be able to challenge the District Courts' holdings, PRA instead took voluntary dismissals. *See* Exhibits 33-39. When one of the defendants brought an affirmative case against PRA, seeking a $4,000 statutory penalty for the improper default judgment, PRA filed a "Confession of Judgment" rather than defend. *See* Exhibit 42 (providing that PRA "authorizes the entry of judgment in favor of plaintiff Reba Palmer in the sum of $4,000").

- PRA's default judgments all exhibit the same failings described in the seven vacatur orders. *See* Exhibits 14.B, 15, and 16 (summary of documents contained in 367 court files for eight-county sample); Exhibits 19.B, 20, and 21 (summaries of the court files in the named plaintiffs' cases and the court files at issue in the seven vacatur orders).

- PRA is continuing to enforce its default judgments by causing sheriffs' offices to seize vehicles and bank accounts, as was done with respect to the bank account of named plaintiff Carlton Miller, M.D., and as was done with the vehicle belonging to named plaintiff Iris Pounds. *See* Exhibits 1 and 2 (affidavits of Iris Pounds and Carlton Miller), Exhibits 6 and 7 (court files for Ms. Pounds and Dr. Miller).

- Named plaintiffs Vilayuan Sayaphet-Tyler and Rhonda Hall are at risk of asset seizures by reason of default judgments obtained against them by PRA. *See* Exhibits 3 and 4 (affidavits of Ms. Sayaphet-Tyler and Ms. Hall).

## ARGUMENT

Plaintiffs are likely to be successful in showing that PRA's default judgments violate

G.S. 58-70-155 and, as a consequence, are void. Such was the result in each of the seven cases

brought by plaintiffs' counsel to set aside PRA's default judgments. *See* Exhibits 24-30;

Complaint ¶¶ 37-39. And because the thousands of default judgments obtained by PRA are based on substantially uniform court filings and exhibit the same defects, the findings of fact and conclusions of law in these seven vacatur orders apply with equal force to each of the default judgments that PRA has obtained against the proposed class.

In the face of clear guidance in these seven vacatur orders as to the unlawful nature of PRA's default-judgment practices, PRA has continued with "business as usual" in seeking to enforce its default judgments against the named plaintiffs and members of the proposed class. Given plaintiffs' likelihood of success on their claim that PRA's default judgments violate G.S. 58-70-155 and are void, this Court should preserve the status quo and bar PRA from enforcing or collecting on its default judgments, pending the Court's final determination of the merits.

## I. **LEGAL STANDARDS FOR PRELIMINARY INJUNCTIONS.**

The North Carolina requirements for issuance of a preliminary injunction are as follows:

A preliminary injunction is "an extraordinary measure taken by a court to preserve the status quo of the parties during litigation." A trial court will only issue a preliminary injunction under the following circumstances:

> (1) if a plaintiff is able to show likelihood of success on the merits of his case and
> (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*SED Holding, LLC v. 3 Star Properties, LLC*, __ N.C. App. __, 784 S.E.2d 627, 632 (2016) (affirming grant of preliminary injunction) (quoting *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977)), *review allowed by* 2016 WL 5339511 (N.C. Sept. 22, 2016).

-4-

The North Carolina Supreme Court has emphasized that for a preliminary injunction to issue, a showing of irreparable injury is not always necessary:

> We first emphasize that in determining whether a preliminary injunction should issue, the trial court's second inquiry is not limited to the question of irreparable injury. The injunction will issue "if, in the opinion of the Court, issuance is necessary *for the protection of a plaintiff's rights during the course of litigation.*"

*A.E.P. Industries, Inc. v. McClure,* 308 N.C. 393, 405, 302 S.E.2d 754, 761-62 (1983) (*quoting*

*Ridge Community Investors, Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977)

(emphasis by *A.E.P.* court).

In *Ridge Community Investors,* plaintiffs sought "to have declared null and void that portion of the judgment rendered in Mecklenburg Superior Court which purported to establish a lien on certain lands owned by plaintiffs in Watauga County, and to enjoin the Sheriff of Watauga County from selling said lands under the execution issued on that judgment." 293 N.C. at 690, 239 S.E.2d at 567. The judgment in issue was a default judgment entered by a clerk authorizing foreclosure under the second paragraph of Rule 55(b)(1). The Supreme Court held that Rule 55(b)(1) did not confer jurisdiction on clerks of court to enter default judgments allowing foreclosure of Chapter 44A liens, that the clerk's judgment was therefore void, and that a preliminary injunction barring enforcement should have issued.

> We are of the opinion that plaintiffs have sufficiently shown the likelihood of success upon the trial of their case upon its merits and that injunctive relief is necessary for the protection of plaintiffs' property rights during the course of this litigation. We, therefore, hold that Judge Snepp erred by denying plaintiffs' application and motion for a preliminary injunction.

293 N.C. at 701, 239 S.E.2d at 574. As in *Ridge Community Investors,* plaintiffs present a likelihood of success for their claim that the default judgments entered against them are void for lack of jurisdiction. Property belonging to the plaintiff class, including family vehicles and bank accounts, should be protected during the pendency of the litigation.

In certain circumstances, it is appropriate for a court to issue a preliminary injunction before a class is certified, to protect prospective class members from harm. *See Ehrenhaus v. Baker*, 216 N.C. App. 59, 66-67, 717 S.E.2d 9, 15-16 (2011); *cf. Pashby v. Cansler*, 279 F.R.D. 347 (E.D.N.C. 2011), *aff'd and remanded sub nom. Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) (certifying class and issuing preliminary injunction in single order). Plaintiffs have filed their motion seeking class certification and supporting brief, and rely on the same set of Exhibits that supports this motion for preliminary injunction. For the reasons set out in plaintiffs Motion for Class Certification and Plaintiffs' Brief in Support of Class Certification, plaintiffs submit that a class may properly be certified in the instant case.

## II. LIKELIHOOD OF SUCCESS ON MERITS.

Likelihood of success means a "reasonable likelihood." *A.E.P. Industries, Inc. v. McClure*, 308 N.C. at 404, 302 S.E.2d. at 761; *Richardson v. Kellar*, 2016 WL 4165887, at *4 (N.C. Business Court, Aug. 2, 2016) (*quoting A.E.P.*). For the following reasons, plaintiffs contend their Exhibits and arguments show a strong likelihood of success on two issues: (1) PRA's default judgments do not satisfy the G.S. 58-70-155 "prerequisites" for default judgments in cases brought by debt buyers, and (2) as a consequence, PRA's default judgments are void.

### A. PRA Failed to Comply with G.S. 58-70-155's "Prerequisites" for Default Judgments.

#### 1. G.S. 58-70-155.

In 2009 the General Assembly enacted S.L. 2009-573, "The Consumer Economic Protection Act of 2009." Section 8 of this legislation created a new Part 5 of Article 70 of Chapter 58, titled "Special Requirements in Actions Filed by Collection Agency Plaintiffs." One of the three statutes in newly enacted Part 5 is G.S. 58-70-155, titled "*Prerequisites to entering a default or summary judgment against a debtor under this Part.*" (Emphasis added.)

Section 155, and a number of the other provisions of "The Consumer Economic Protection Act of 2009," applies to "debt buyers," which were in 2009, and are today, a subject of particular concern within the debt-collection industry. In February of 2009, seven months prior to the enactment of S.L. 2009-573, the Federal Trade Commission published its report "Collecting Consumer Debts: The Challenges of Change" ("FTC Report"),[1] in which the FTC stated: "The most significant change in the debt collection business in the past decade . . . has been the advent and growth of debt buying (i.e., the purchasing, collecting, and reselling of debts in default)." FTC Report at iv and 13.

Section 155 specifically regulates debt buyers' use of default judgments. The debt-buyer industry is a heavy user of the default judgment process. The 2009 FTC report stated "[p]erhaps the most significant issue related to debt collection litigation is the prevalence of default judgments." *Id.* at 57. Consistent with the usual practices of debt buyers, PRA itself relies heavily on the default judgment process. *See* Exhibit 49 (CFPB Consent Order), ¶ 44 ("Consumers respond to less than six percent of [PRA's] actions.").

Consumer defendants in debt buyer cases are typically not represented by attorneys. Peter A. Holland, "Junk Justice: A Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers," 26 *Loy. Consumer L. Rev.* 179 (2014)[2] at p. 179 ("[This] study demonstrates that in debt buyer cases, (1) the vast majority of consumers lose the vast majority of cases by default the vast majority of times; [and] (2) consumers had no lawyer in ninety-eight percent of the cases . . ."). Generally speaking, default judgments are entered against consumers who are not represented by

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf .

[2] Available at http://papersail to appear.ssrn.com/sol3/papers.cfm?abstract_id=2406289.

attorneys; lawyers typically make it their particular business to see that their clients are not the subject of default judgments.

In enacting "prerequisites" for default judgments, the General Assembly was seeking to provide *protection* for defendants in cases brought by debt buyers and in which the defendants failed to answer. *See* title of S.L. 2009-573 ("The Consumer Economic *Protection* Act of 2009") (emphasis added); title of G.S. 58-70-155 ("Prerequisites to entering a default . . . judgment . . ."). Default judgments involve defendants who do not make appearances and do not file answers. Section 155 represents an effort to create protections for just such defendants—who will not answer, will not make requests, and will not object or appeal—by requiring that the debt buyers always file "properly authenticated business records" providing, among other things, an "itemization of the charges and fees claimed to be owed" as a "prerequisite" to entry of a default judgment:

> § 58-70-155. *Prerequisites* **to entering a default or summary judgment against a debtor under this Part.**
>
> (a) *Prior to entry of a default judgment* or summary judgment against a debtor in a complaint initiated by a debt buyer, *the plaintiff shall file* evidence with the court to establish the amount and nature of the debt.
>
> (b) *The only evidence sufficient to establish the amount and nature of the debt shall be properly authenticated business records* that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence. The *authenticated business records shall include at least* all of the following items: . . .
>
> > (4) *An itemization of charges and fees claimed to be owed.* . . .
> >
> > (8) *The amount of interest claimed and the basis for the interest charged.*

G.S. 58-70-155 (emphasis added.)

-8-

## 2. Section 155 Applies to PRA's Cases Against Members of the Proposed Class.

G.S. 58-70-155's "prerequisites" applied to PRA's cases against members of the proposed class, because PRA default judgments are "against a debtor in a complaint initiated by a debt buyer." *See* G.S. 58-70-155(a); *see also* G.S. 58-70-15(b)(4) (defining "debt buyer").[3] PRA is a debt buyer. *See, e.g.*, Exhibit 49, ¶ 24 ("PRA is a debt purchaser and collector . . ."); Exhibit 52, second page ("Our primary business is the purchase, collection and management of portfolios of nonperforming consumer loans.").

## 3. PRA Failed to Satisfy the G.S 58-70-155 "Prerequisites."

PRA failed to comply with the prerequisites prescribed by G.S. 58-70-155 for default judgments: PRA failed to provide any "properly authenticated" business records as required by the introductory language of subsection (b); and PRA failed to provide "an itemization of charges and fees claimed to be owed" as required by subsection (b)(4) and "the amount of interest claimed and the basis for the interest charged" as required by subsection (b)(8).

### a. Lack of Required Authentication.

G.S. 58-70-155(b) specifies that "[t]he *only* evidence sufficient to establish the amount and nature of the debt shall be *properly authenticated business records* that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence." (Emphasis added.) Subsection 155(b) then refers to authentication a second time: "The *authenticated business records* shall include . . . ." (Emphasis added.) PRA has uniformly failed to comply with this

---

[3] G.S. 58-70-15(b)(4), enacted as part of S.L. 2009-573, defines "debt buyer":

As used in this subdivision, the term "debt buyer" means a person or entity that is engaged in the business of purchasing delinquent or charged-off consumer loans or consumer credit accounts, or other delinquent consumer debt for collection purposes, whether it collects the debt itself or hires a third party for collection or an attorney-at-law for litigation in order to collect such debt.

prerequisite. *See, e.g.*, Exhibit 15 (summary of eight-county sample regarding authentication requirement); Exhibits 24-30 (vacatur orders).

In each of the cases brought against the named plaintiffs and against the members of the proposed class, PRA brought suit in its capacity as a purchaser of consumer debt. As such, PRA was not involved in the transactions that gave rise to the alleged indebtedness claimed to be owed to the original creditor. Likewise, PRA did not create or maintain any of the business records associated with that alleged indebtedness. Because these business records were created by the original creditor, not PRA, the North Carolina Rules of Evidence require that the authenticating witness have knowledge regarding how the *original creditor's* business records were created and maintained. In substance, the requirement for proper authentication amounts to a requirement that the original creditor lend its credence to the records that are claimed to provide the basis for the amount claimed in the lawsuit.

North Carolina case law establishes that authentication requires an affiant with knowledge of the *original creditor's* business records. *See State v. Springer*, 283 N.C. 627, 636, 197 S.E.2d 530, 536 (1973) (Huskins, J.) (finding that admission of electronic business records requires that a "foundation for such evidence is laid by testimony of a witness *who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.*") (emphasis added); *State v. Hicks*, __ N.C. App. __, 777 S.E.2d 341, 349 (2015) (quoting *id.*); *Unifund CCR Partners v. Dover*, 198 N.C. App. 406, 681 S.E.2d 565, 2009 WL 2180672, at *3 (July 21, 2009) (unpublished) (rejecting affidavit from debt buyer as insufficient to verify itemized statement under G.S. 8-45 because "although the affiant [debt buyer Unifund's 'authorized representative'] asserts that she has personal knowledge of an

-10-

existing debt between Plaintiff and Defendant, no factual basis for such debt is stated in the affidavit or elsewhere in the Record on Appeal" and "[t]here is no evidence that the affiant was in any way connected to the establishment or maintenance of the alleged credit card account with Chase Bank or the alleged acquisition of the account by Plaintiff from Chase Bank."); *Bramco Elec. Corp. v. Shell*, 31 N.C. App. 717, 719, 230 S.E.2d 576, 577 (1976) ("Plaintiff's purported itemized statement was verified by Miriam Coleman who is identified in the verification as the president of plaintiff corporation. The verification contains no statement to the effect, and there is no other showing, that affiant had any personal knowledge of the matters set forth in the affidavit or that she was familiar with the books and records of plaintiff corporation. The burden was on plaintiff to establish a Prima facie case, and we hold that it failed to show that the affiant would have been competent to testify if called as a witness at trial.").

Accordingly, PRA employees and agents who have no knowledge of the business records of the original creditor are not competent to authenticate the original creditors' records.

Based on this clear application of North Carolina Rules of Evidence, the District Court judges who heard the seven motions for vacatur of PRA default judgments all ruled that PRA had failed to authenticate the evidence—account statements allegedly sent to the defendant by the original creditor—that PRA attempted to rely upon to provide a purported itemization of the amounts claimed to be owed.

In *PRA v. Brady* (December 18, 2015), Judge Anderson ruled "PRA failed to comply with the 'prerequisites' of N.C.G.S. § 58-70-155 . . . because PRA did not authenticate the account statements with an affidavit from any person claiming familiarity with the circumstances under which the credit card statements were created and maintained by GE Money Bank, the alleged original creditor." Exhibit 24, Conclusions of Law ¶ 6.

In *PRA v. Peach* (March 29, 2016), Judge Sasser made extensive findings concerning PRA's affidavits and their failure to provide any authentication. *See* Exhibit 25, Findings of Fact ¶¶ 6, 12-18. Judge Sasser concluded: "As outlined above, no properly authenticated business records that satisfy the requirement of Rule 803(6) were tendered to the Court." *Id.*, Conclusions of Law ¶ 5.

In the five Mecklenburg vacatur orders, Judge Tin concluded:

> PRA also failed to comply with the 'prerequisites' of N.C.G.S. § 58-70-155, because PRA did not authenticate account statements or other business records. No affidavit was offered from any person claiming familiarity with the circumstances under which the statements and other documents were created and maintained by the alleged original creditor.

Exhibits 26-30, Conclusion of Law ¶ 15, Findings of Fact ¶¶ 4, 6-10; *see also* Exhibit 31, pp. 61-64 (transcript of hearing containing Judge Tin's instructions for preparation of orders, including Finding of Fact ¶ 10 regarding falsity of PRA affidavits).

Judge Tin noted that in one of the Mecklenburg cases, *PRA v. Walls*, PRA did file an affidavit from an employee of the original creditor. In this respect, *Wall* is different than the vast majority of PRA's cases. *See* Exhibit 15 (summary from eight-county sample, column titled "Original Creditor ('O.C.') Affidavit?") and Exhibit 20 (same column for summary from named plaintiffs' court files and court files for vacatur cases). Judge Tin held, however, that the original creditor affidavit in the court file did not purport to authenticate any evidence relating to an itemization of the amounts claimed to be owed: "This affidavit, however, refers generally to a pool of charged-off accounts. It does not refer to defendant's specific records and does not purport to authenticate any account statement or other document." Exhibit 30 at ¶ 8.

Neither the affidavits from PRA employees nor the affidavits from original creditors make any effort to authenticate the account statements filed by PRA in the court files. *See, e.g.,*

Judge Sasser's vacatur order in *PRA v. Peach* (Exhibit 25) at Findings of Fact ¶¶ 6, 12-16. Judge

Sasser stated:

> The evidentiary showing required by the Act is "properly authenticated business
> records." Ms. Williams' Affidavit cannot properly be considered by the court in
> determining whether the Act's prerequisites have been met other than to "properly
> authenticate" any business records filed with the court. Ms. Williams' Affidavit
> does not incorporate or otherwise mention any business records filed with the
> court.

Exhibit 25 at ¶ 12. PRA affidavits generally suffer from the same double-authentication failure

as described by Judge Sasser in Exhibit 25, Findings ¶¶ 12-16: (1) the affiant did not try to

authenticate business records, and (2) even if the affiant had attempted to authenticate the

business records, the affiant would not have been qualified to authenticate because she had no

knowledge of the original creditor's business records and practices.

The court file summaries submitted as Exhibits 15 and 20 confirm that all of PRA's

default judgments were obtained despite suffering from the same authentication failures as the

seven cases in which the vacatur orders were entered.

Additionally, despite the clarity of the seven vacatur orders regarding PRA's failure to

comply with G.S. 58-70-155's authentication requirement, PRA continues to file motions for

default judgment without curing this defect. *See* Exhibit 41 (court file from *PRA v. Stancil*

containing default judgment filing by PRA on August 3, 2016); *cf.* Exhibit 31 (transcript of May

4, 2016 hearing), p. 66, lines 17-18 (PRA counsel statement: "I certainly understand the issues

with the affidavit and authentication.").

PRA's failure to provide authentication by persons with knowledge is not a mere

technical matter. In 2015, the CFPB took action against PRA for using deceptive tactics to

collect bad debts. PRA consented to the issuance of a Consent Order in that action, which

contained numerous findings regarding problems with original creditor records. *See* Exhibit 49

-13-

(CFPB Consent Order), ¶ 28 ("PRA is aware that significant inaccuracies may exist in the Sale Files it purchases . . ."); *id.* at ¶ 29 ("Language in PRA's purchase agreements puts PRA on notice that information in the Sale File might be inaccurate, incomplete, or otherwise unreliable. . . ."); *id.* at ¶ 30 (finding PRA failed to check original creditors' records, even when PRA "knew or should have known the Sale File contained unreliable information"); *id.* at ¶ 33 ("PRA did not monitor its portfolios of debts for accuracy. PRA relied primarily on consumer disputes to determine whether a portfolio was unreliable and would assume its accuracy unless consumers came forward with evidence of problems in material numbers. . ."); *id.* at ¶ 36 ("PRA did not alter its collection practices when collecting on Portfolios that it knew or should have known contained unreliable information."); *id.* at ¶ 50 (documenting reliance on false affidavits); *id.* at ¶ 51 ("In numerous instances, affiants made the representations discussed in the preceding paragraph after merely reviewing a computer screen containing the scant information produced by Sellers in data files and not after a review of any account level documents such as account applications, terms and conditions of contracts, payment histories, monthly credit card statements, or charge slips."). G.S. 58-70-155's prerequisites address substantiated concerns in the debt-buyer industry and deserve to be treated with respect.

The Exhibits summarized above show a "likelihood of success" on plaintiffs' contention that PRA has failed to file "properly authenticated business records" in support of its default judgments and, therefore, PRA has failed to comply with the prerequisites of G.S. 58-70-155.

### b.  Lack of Required Itemization.

G.S. 58-70-155(b)(4) requires that a debt buyer file authenticated business records that include "[a]n *itemization* of charges and fees claimed to be owed." Subsection (b)(8) requires authenticated business records that show "[t]he amount of interest claimed and the basis for the

interest charged." This itemization requirement was a deliberate legislative choice: parallel requirements for an "itemized accounting of all amounts claimed to be owed" were enacted in two other sections of S.L 2009-573, codified as G.S. 58-50-115(5) and G.S. 58-50-115(6). In addition to failing to file properly authenticated business records, PRA failed to file records containing information sufficient to satisfy the "itemization" prerequisite of G.S. 58-70-155.

"Itemization" in this context has a clear meaning under North Carolina law. In *Bramco Electric Corp. v. Shell, supra*, the Court of Appeals quoted various definitions of "itemized" with approval. But the Court refused to accept an unexplained previous balance as an "itemized statement" under G.S. 8-45. *See Bramco Electric Corp.*, 31 N.C. App. at 719, 230 S.E.2d at 577-78. In *Unifund CCR Partners v. Dover, supra*, decided July 21, 2009, the Court of Appeals held that a debt buyer's use of a credit card invoice showing a "previous balance" did not constitute an "itemized statement." 198 N.C. App. 406, 681 S.E.2d 565, 2009 WL 2180672, at *3. The documents submitted by the debt buyer plaintiff in the *Unifund* case are similar to the documents typically submitted by PRA. The Court of Appeals concluded:

> Chase Bank's invoice to Defendant is hardly an "itemized statement." The invoice shows only a "previous balance," a $70.00 charge for "purchases, cash, debits," finance charges, a late fee, and an overlimit fee. There is no itemization of credit extended to cover individual transactions.

*Id.* (citing *Claus-Shear Co. v. E. Lee Hardware House,* 140 N.C. 552, 553, 53 S.E. 433, 434 (1906) (finding a duly itemized and verified statement that "sets out the number and kind of shears, scissors, and razors shipped, the catalogue numbers, price per dozen, and discounts allowed on each.")). Thus, "itemized" has a concrete meaning, as shown in *Bramco* and *Unifund*. This meaning was known as of the time (August 7, 2009) the legislature used the term "itemization" in G.S. 58-70-155 and "itemized" in G.S. 58-70-115(5) and (6).

-15-

As shown by the rulings in the seven vacatur orders, PRA routinely fails to submit evidence prior to or with its motion for default judgment that provides an "itemization of the charges and fees claimed to be owed," as required by G.S. 58-70-155 and as the term "itemization" has been understood and applied by North Carolina courts. In *PRA v. Brady* (December 18, 2015), Judge Anderson ruled "PRA failed to comply with the 'prerequisites' of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that 'itemized' the amount claimed to be due . . . ." Exhibit 24, Conclusions of Law ¶ 6; *see also id.*, Findings of Fact ¶¶ 2, 4.

In *PRA v. Peach* (March 29, 2016), Judge Sasser made extensive findings concerning PRA's failure to comply with the "itemization" requirement. *See* Exhibit 25, Findings of Fact ¶¶ 2, 19-27. Judge Sasser found that an "itemization" as used in G.S. 58-70-155 would require more than a charge-off statement:

> Consistent with the legislative intent behind the Act, the itemization of charges and fees presented in support of a motion for default (or summary) judgment must be detailed and include the particulars of each charge and fee claimed to be unpaid/owed, and this itemization must be the "properly authenticated business records" tendered in support of the motion for default judgment. In other words, there should be business records containing the specific details of individual charges and fees that total at a minimum the amount of the judgment Plaintiff seeks to obtain.

*Id.* at ¶ 26. Judge Sasser then concluded that PRA had failed to satisfy these prerequisites. *See id.*, Conclusions of Law ¶¶ 7, 8 ("PRA failed to comply with all the prerequisites of N.C.G.S. § 58-70-155.").

Likewise, in the five Mecklenburg vacatur orders, Judge Tin concluded:

> PRA failed to comply with the 'prerequisites' of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "'itemized" the amount claimed to be due and the amount and basis for the interest charged.

Exhibits 26-30, Conclusion of Law ¶ 14; *see also id.*, Findings of Fact ¶¶ 4-5.

The court file summaries submitted as Exhibits 15 and 20 show that the overwhelming majority of PRA's default judgments (361 of 367, or 98.4%) suffer from the same itemization failures as the seven cases in which the vacatur orders were entered. Moreover, PRA's itemization failures continue to the present. *See* Exhibit 41 (court file from *PRA v. Stancil* containing default judgment filing by PRA on August 3, 2016).

The Exhibits summarized above show a "likelihood of success" on plaintiffs' contention that PRA has failed to comply with the itemization requirements of G.S. 58-70-155(b)(4) and (b)(8).

### B. Plaintiffs Are Likely to Be Able to Show that the Default Judgments Are Void.

North Carolina law affords plaintiffs a likelihood of success on the voidness issue. "Where jurisdiction is statutory and the Legislature requires the Court *to exercise its jurisdiction in a certain manner, to follow a certain procedure*, or otherwise subjects the Court to certain *limitations*, an act of the Court beyond these limits is in excess of its jurisdiction." *In re T.R.P.*, *supra*, 360 N.C. at 590, 636 S.E.2d at 790 (emphasis added; internal citation omitted). Because "[s]ubject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act," "[a] void judgment is in legal effect no judgment. No rights are acquired or divested by it. It neither binds nor bars any one, and all proceedings founded upon it are worthless." *Id*; *see also Boseman v. Jarrell*, *supra*, 364 N.C. at 547, 704 S.E.2d 501 (compiling authority supporting this proposition); *Casey v. Barker*, 219 N.C. 465, 14 S.E.2d 429, 431 (1941) ("A void judgment may be treated as a nullity, disregarded, vacated on motion, attacked directly or collaterally. It affords no basis for a recovery.") (citations omitted).

There are two reasons PRA's violations of G.S. 58-70-155 render its default judgments void: first, G.S. 58-70-155 operates as a limit on judicial power in the manner suggested by the term "prerequisites" and the language from *In re T.R.P.* quoted in the preceding paragraph; second, PRA's failure to submit the evidence required by G.S. 58-70-155 deprives clerks of court of "sum certain" jurisdiction to enter judgment under Rule 55(b)(1).

### 1. G.S. 58-70-155 Affects Subject Matter Jurisdiction.

G.S. 58-70-155, titled "*Prerequisites to entering* a default or summary judgment against a debtor under this Part," is a statute that requires courts to "exercise jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations." *In re T.R.P*, 360 N.C. at 590, 636 S.E.2d at 790 (quoting *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), overruled on other grounds, *Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982))  PRA's failure to satisfy the G.S. 58-70-155 "prerequisites" means that the "certain procedure" and "certain limitations" prescribed by that statute for entry of a default judgment were not observed and, hence, that PRA's default judgments are void.

In enacting G.S. 58-70-155 and making it a "prerequisite" to entry of a default judgment, the legislature intended to limit default judgments by debt buyers to situations in which the debt buyer complied with section 155. Section 155's use of the word "prerequisite" indicates legislative intent that no court official—neither a clerk nor a judge—is authorized to enter a default judgment in a debt buyer case unless the debt buyer complies. *See* Exhibit 24 (vacatur order in *PRA v. Brady*), Conclusions of Law ¶¶ 8, 9. The principal case cited in ¶ 8 of the *Brady* vacatur order, *Henderson v. Henderson*, concerned the separation and residency requirements prescribed by statute for divorce actions. It held those requirements to be jurisdictional:

> These two requirements are jurisdictional. If either one or the other of these
> elements were not existent, the court would not have jurisdiction to try the action,

and to grant a divorce. And if the court has no jurisdiction over the subject matter of the action, the judgment in the action is void.

*Henderson v. Henderson*, 232 N.C. 1, 9, 59 S.E.2d 227, 233 (1950) (internal citations omitted).

It is not unusual for legal requirements associated with court matters to be treated as going to subject matter jurisdiction. *See, e.g., State v. Hoskins*, __ N.C. App. __, 775 S.E.2d 15, 18 (2015) (finding the court lacked subject matter jurisdiction to extend probation); *State v. Abraham,* 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994) ("It is well settled that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony.") (internal citation omitted); *Merrill v. Bd. of Educ.*, 2016 WL 6080858, at *6 (N.C. App. Oct. 18, 2016) (unpublished) (finding no subject matter jurisdiction to review agency decision because petition not filed within time prescribed by statute); *Sims v. Becknell*, 2015 WL 680580, at *2 (N.C. App. Feb. 17, 2015) (unpublished) ("In the context of civil no-contact orders, this Court recently held that, pursuant to the statutory language of N.C. Gen. Stat. § 50C–2, trial courts do not obtain subject matter jurisdiction over unverified complaints."). Courts sometimes possess subject matter jurisdiction over aspects of a case, but lack jurisdiction over other aspects. *See, e.g., Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 329-30, 605 S.E.2d 161, 164-65 (2004) (finding the court lacked subject matter jurisdiction over certain grounds of dispute with church, but could resolve other ground for dispute); *Justice for Animals, Inc. v. Lenoir Cnty. SPCA, Inc.*, 168 N.C. App. 298, 303, 607 S.E.2d 317, 321 (2005) *affirmed per curiam,* 360 N.C. 48, 619 S.E.2d 494 (2005) (finding the court had subject matter jurisdiction over cruelty to animals claim, but lacked subject matter jurisdiction over claim based on public health statutes).

The absence of subject matter jurisdiction in cases that fail to satisfy the section 155 requirements is compelled not only by the "prerequisite" language of the statute, but also by consideration of the statute's purpose. Any question about the meaning of section 155 is to be

decided by inferring legislative intent from statutory language. *See Insulation Systems, Inc. v. Fisher*, 197 N.C. App. 386, 389-90, 678 S.E.2d 357, 360 (2009) ("The cardinal principle of statutory interpretation is to ensure that legislative intent is accomplished. To determine legislative intent, we first look to the language of the statute.") (internal citations omitted). In the Mecklenburg vacatur orders, Judge Tin concluded:

> In reaching [its] conclusion, the Court considers the apparent legislative purpose in enacting N.C.G.S. § 58-70-155: to protect defendants against whom debt buyers seek to obtain default judgments. . . . Because default judgments are only available against defendants who fail to answer or appear, and because defendants who fail to answer or otherwise respond to lawsuits will invariably fail to appeal the entry of a default judgment, the protections of section 58-70-155 would be meaningless if this statute's "prerequisites" can be enforced only through appeal. Rather, N.C.G.S. § 58-70-155 statute was meant to rectify the problem at the door of the courthouse. The Court therefore concludes that a default judgment entered upon a record that fails to comply with section 58-70-155's prerequisites is void and subject to being set aside under Rule 60(b)(4).

Exhibits 26-30, Conclusions of Law ¶ 16.

G.S. 58-70-155 limits courts' subject matter jurisdiction to enter default judgments, as demonstrated by both section 155's "prerequisites" language and the statute's purpose.

### 2. Clerks' "Sum Certain" Jurisdiction Under Rule 55(b)(1).

Most of PRA's default judgments are entered by clerks of court. *See* Exhibit 14.B (chart summarizing eight-county sample, column titled "Default Judgment Entered by Clerk or Judge"); Exhibit 19.B (chart summarizing named plaintiffs' court files and court files for cases in which vacatur orders were entered). These judgments are also void for a second reason: Rule 55(b)(1) authorizes clerks of court to enter default judgments only "[w]hen the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain," and G.S. 58-70-155 prescribes the evidence that debt buyers must present in order to show a "sum certain."

-20-

North Carolina clerks of court have only such jurisdiction as is prescribed by statute. *In re Vogler Realty, Inc.*, 365 N.C. 389, 395, 722 S.E.2d 459, 464 (2012); *Ridge Community Investors, Inc., supra*, 293 N.C. at 696, 239 S.E.2d at 571. Where a claim is not shown to be for a "sum certain," clerks of court lack authority to enter a default judgment. *Basnight Construction Co. v. Peters & White Construction Co.*, 169 N.C. App. 619, 622, 610 S.E.2d 469, 471 (2005); *Grant v. Cox*, 106 N.C. App. 122, 126, 415 S.E.2d 378, 381 (1992); *Hecht Realty, Inc. v. Hastings*, 45 N.C. App. 307, 310, 262 S.E.2d 858, 860 (1980).

A failure to respond to a complaint does not constitute an admission as to allegations concerning damages. *See* G.S. 1A-1, Rule 8(d). Thus, the amount of damages to be awarded in a default judgment is not established by reason of failure to answer. *Patrick v. Mitchell*, 44 N.C. App. 357, 359, 260 S.E.2d 809, 811 (1979). A defendant's failure to deny does not contribute in any way to a showing that the amount sought is a "sum certain." Likewise, a claim is not for a "sum certain" simply because a complaint requests a particular amount. *Hecht Realty, supra*, 45 N.C. App. at 309, 262 S.E.2d at 859; *Grant v. Cox, supra*, 106 N.C. App. at 128, 415 S.E.2d 378 at 382; *Carolina Builders, Inc. v. Bible Way Community Development Corp.*, 2013 WL 1899740, at *2 (N.C. App. May 7, 2013) (unpublished); *United Leasing Corp. v. Guthrie*, 2006 WL 2806510, *4 (N.C. App. Oct. 3, 2006) (unpublished). If it is not shown how a plaintiff "arrived at [a] figure," the clerk of court does not have jurisdiction to enter a default judgment. *Williams v. Moore*, 95 N.C. App. 601, 605-06, 383 S.E.2d 416, 418 (1989).

For claims covered by G.S. 58-70-155, the statute places a limit on what materials may be considered by clerks of court in determining whether a "sum certain" has been shown. G.S. 1A-1, Rule 55 and G.S. 58-70-155 are statutes that concern the same subject: default judgments against defendants who fail to answer a civil complaint. "Statutes dealing with the same subject

matter" must be "construed in *pari materia* and harmonized" with each other. *Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 595, 528 S.E.2d 568, 571 (2000); *see also, e.g., Jackson v. Charlotte Mecklenburg Hosp. Auth.*, 238 N.C. App. 351, 358, 768 S.E.2d 23, 28 (2014); *Cape Hatteras Elec. Membership Corp. v. Lay*, 210 N.C. App. 92, 101, 708 S.E.2d 399, 404 (2011). As held by the District Court judges in the seven vacatur orders, G.S. 58-70-155 and G.S. 1A-1, Rule 55 must be "construed in *pari materia* and harmonized" with each other. *See, e.g.*, Exhibit 24, Conclusions of Law ¶ 7; Exhibit 25, Conclusions of Law ¶¶ 3-4. This "harmonizing" requires that PRA make its "sum certain" showing in compliance with G.S. 58-70-155.

### III. **A PRELIMINARY INJUNCTION IS PROPER FOR PROTECTION OF RIGHTS DURING THE COURSE OF THIS CASE.**

If a preliminary injunction is not issued in this case, two of the named plaintiffs and members of the proposed class are at continuous and recurring risk of losing property to seizure by reason of PRA's efforts to execute on its void default judgments. Plaintiff Carlton Miller's bank account was seized. *See* Exhibit 2 (Affidavit of Carlton Miller). Plaintiff Iris Pounds' car was seized. *See* Exhibit 1 (Affidavit of Iris Pounds). Plaintiff Vilayuan Sayaphet-Tyler has received a collection letter from the sheriff that serves as the prelude to PRA's execution efforts. *See* Exhibit 3 (Affidavit of Vilayuan Sayaphet-Tyler).

PRA buys a very large number of North Carolina "accounts" every year. *See* Exhibit 54 (graphs and chart showing PRA's purchases of North Carolina accounts for 2008-2015). In 2015, PRA purchased 125,000 accounts allegedly owed by North Carolina residents, representing an average of $1,623 per account, a total face value of $202,850,000. *Id.* PRA also files a large number of cases in the District Court Division of the North Carolina courts. The scale of PRA filings is suggested by Exhibit 56 (summary of number of PRA case filings in four

North Carolina counties 2009-2012), which shows that, in 2012, PRA filed 1,183 cases in just four counties (Buncombe, Durham, New Hanover and Wake).

Notwithstanding the large scale of PRA's operations, which suggest a company that should be invested in knowing and complying with statutory requirements, PRA has employed a deliberate strategy to avoid judicial review of its default-judgment practices. *See, e.g.*, Exhibits 33-39 (PRA notices of dismissal in vacatur cases); Exhibit 31, p. 9, lines 4-22 (transcript of May 4, 2016 hearing: requesting that PRA either appeal or accept court's ruling); Exhibit 42 (court file in *Palmer v. PRA* in which PRA filed a "Confession of Judgment" rather than defend); Exhibit 62, pp. 1, 2 (PRA attorney Andrew Hoke on the itemization requirement of G.S. 58-70-155: "The term ["itemization"] has not been interpreted by the appellate courts" and "North Carolina appellate courts have not ruled on this issue.").

In *A.E.P. Industries, Inc. v. McClure, supra*, the North Carolina Supreme Court "first emphasize[d] that in determining whether a preliminary injunction should issue, the trial court's second inquiry is not limited to the question of irreparable injury. The injunction will issue if, in the opinion of the Court, issuance is necessary *for the protection of a plaintiff's rights during the course of litigation.*" 308 N.C. at 407, 302 S.E.2d at 762-63 (internal citation omitted) (emphasis by *A.E.P.* court). Bank account seizures and automobile seizures are substantial impairments upon the lives of individuals, and such impairments should not be permitted on the basis of void judgments.

As the *A.E.P.* court further explains: "To constitute irreparable injury it is not essential that it be shown that the injury is beyond the possibility of repair or possible compensation in damages, but that the injury is one to which the complainant *should not be required to submit or the other party permitted to inflict*, and is of such continuous and frequent recurrence that no

reasonable redress can be had in a court of law." *Id.* (emphasis by *A.E.P.* court). Where, as here, judgments are void under North Carolina law, but PRA is in fact collecting on and causing sheriffs to seize vehicles and bank accounts in satisfaction of these void judgments, this is a wrong to which the members of the proposed class "should not be required to submit" and which PRA should not be "permitted to inflict." *Id.* If a judgment is void, the judgment has no legal existence.

Barring collections on void judgments preserves the status quo. While "the Court's authority is not limited to preserving the 'status quo,' but extends to enjoining a party from doing acts 'in violation of the rights of another party'" (*Richardson v. Kellar*, 2016 WL 4165887, at *8 (N.C. Business Court, Aug. 2, 2016) (quoting G.S. 1-485(2)), here the requested injunction would preserve the status quo by halting asset seizures and payments on void default judgments.

In *Superscope, Inc. v. Kincaid*, 56 N.C. App. 673, 677-78, 289 S.E.2d 595, 597-98 (1982), the Court of Appeals reversed a denial of a preliminary injunction to halt a foreclosure when the case presented with "a serious controversy as to default." Here, plaintiffs have shown a likelihood of success on the merits, as shown by the seven vacatur orders. PRA should not, therefore, be allowed to take class members' property when they have purposefully avoided appellate review of their default-judgment practices. If PRA had prosecuted *PRA v. Brady* to final judgment and sought review of the District Court's application of G.S. 58-70-155, that issue could by now have been addressed by the Court of Appeals. Given PRA's acquiescence in the vacatur orders, as shown by PRA's case dismissals (Exhibits 33-39) and by the "confession of judgment" by PRA in Exhibit 42 (court file in *Palmer v. PRA*), equity favors issuance of a preliminary injunction.

## IV.  **BOND.**

The named plaintiffs respectfully ask that they be excused from any obligation to provide security.  *See Keith v. Day*, 60 N.C. App. 559, 562, 299 S.E.2d 296, 298 (1983) ("[T]here are some instances when it is proper for no security to be required of a party seeking injunctive relief."); *see also Staton v. Russell*, 151 N.C. App. 1, 12–13, 565 S.E.2d 103, 110 (2002).

## **CONCLUSION**

In support of their contention that they have shown a likelihood of success, plaintiffs have presented seven District Court orders holding that PRA's default judgments are in violation of G.S. 58-70-155 and are thus void.  It is unusual that a party seeking a preliminary injunction presents such a showing: multiple cases involving the same party, on substantially the same facts, on the same law, presenting the same issues.  This showing establishes a likelihood of success.

PRA was asked to defend its practices or acknowledge the legal correctness of the vacatur orders.  PRA's timidity about standing behind its litigation practices is contrary to the behavior expected from a company of PRA's size and scope.  PRA's efforts to avoid judicial review of its actions, together with plaintiffs' likelihood of success on the merits, warrant a preliminary injunction barring PRA from enforcing or collecting the default judgments it has obtained against members of the proposed class, pending final determination of plaintiffs' claim that PRA's default judgments are void.

-25-

This, the 21st day of November, 2016.

_Carlene McNulty_
Carlene McNulty, N.C. State Bar No. 12488
Jason A. Pikler, N.C. State Bar No. 47128
Emily P. Turner, N.C. State Bar No. 49578
NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC 27611
Telephone: (919) 856-2161
Facsimile: (919) 856-2175
Email: carlene@ncjustice.org
        jason.pikler@ncjustice.org
        emilyt@ncjustice.org

_J. Jerome Hartzell_
J. Jerome Hartzell, N.C. State Bar No. 7775
P.O. Box 10246
Raleigh, NC 27605
Telephone: (919) 819-6173
Email: jerry.hartzell@gmail.com

_Travis Collum/cn_
Travis E. Collum, N.C. State Bar No. 29158
COLLUM & PERRY, PLLC
P.O. Box 1739
Mooresville, NC 28115
Telephone: (704) 663-4187
Email: travis@collumperry.com

_Adrian Lapas/cn_
Adrian M. Lapas, N.C. State Bar No.: 20022
LAPAS LAW OFFICES, PLLC
P.O. Box 10688
Goldsboro, NC 27532
Telephone: (919) 583-5400
Email: adrianlapas@goldsborobankruptcylawyer.com

-26-

# CERTIFICATE OF SERVICE

The undersigned certifies that on this date a true and correct copy of the foregoing *Brief in Support of Plaintiffs' Motion for Preliminary Injunction* was served, in conjunction with service of the Summons and Complaint, pursuant to Rule 4(j)(6)(d) of the North Carolina Rules of Civil Procedure, upon the Registered Agent for Defendant Portfolio Recovery Associates, LLC, by Federal Express, a designated delivery service authorized under G.S. 1A-1, Rule 4(j)(1)(d) and 26 U.S.C. § 7502(f)(2), delivery receipt and direct signature requested, postage prepaid, addressed as follows:

> Corporation Service Company, as Registered Agent for
> Portfolio Recovery Associates, LLC
> 327 Hillsborough Street
> Raleigh, NC 27603-1725

This, the 21st of November, 2016

Carlene McNulty

-27-