# EXHIBIT M

STATE OF NORTH CAROLINA

CHATHAM COUNTY

FILED

2015 DEC 18  A 11: 51

CHATHAM CO., C.S.C.
BY_____

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
CASE NO.: 15-CVD-44

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

   Plaintiff,

v.

ROBERT BRADY, JR.,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**Order on Rule 60(b) Motions**

This matter coming on for hearing December 8, 2015 before the undersigned judge on

defendant Robert Brady, Jr.'s Motion to Set Aside Default Judgment (the "Motion") and oral

motion to set aside Entry of Default, the court makes the following:

<u>**Findings of Fact**</u>

1.  The Complaint filed by plaintiff Portfolio Recovery Associates, LLC ("PRA")

alleges that Mr. Brady had a credit account with "GE Money Bank," that Mr. Brady defaulted in

his payment obligations on the account, and that the account was acquired by PRA.

2.  Neither PRA's Complaint nor any affidavit, exhibit or other filing identifies the

date, place and amount of the purchases that gave rise to the alleged indebtedness on the account.

Complaint, para. 4, alleges attached "account statements…provide *an ongoing itemization of the*

*charges and fees incurred to the account reflect how they were calculated.*" Emphasis added.

However, referenced exhibits and statements do not include the original (0.00 due "previous

balance") statement or successive monthly statements allowing the "ongoing itemization." Nor

does the record reflect an account history or summary identifying "ongoing…charges and fees."

POUNDS EX 0400



3.     PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts.

4.     PRA did not file business records providing an "itemization of the charges and fees" that give rise to Mr. Brady's alleged indebtedness, as set forth in finding two above. Plaintiff's affidavit for judgment of default, para. 13, asserts that the Complaint Exhibit A includes account "Statements [that] reflect an itemization of the charges and fees owed, along with an explanation of how the balance owing on the account was calculated." Exhibit A included only Statements for two months, (March 2012 with previous balance $1,592.00, and October 2012) and no account history.

## CONCLUSIONS OF LAW

1.     The clerk of court possesses only such jurisdiction as is prescribed by statute. Rule 55(b)(1) authorizes clerks of court to enter default judgments only "[w]hen the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain...." If PRA's claim was not for a "sum certain," the clerk of court lacked jurisdictional authority to enter a default judgment on that claim.

2.     In order for the amount sought in PRA's Complaint to be a "sum certain," PRA was required to show how it calculated the amount claimed to be due. A credit card statement showing an unexplained "previous balance" does not show a "sum certain."

3.     Mr. Brady has submitted the following documents as evidence, without objection, in support of his Motion:

- Consent Order issued by the Consumer Financial Protection Bureau in Administrative Proceeding File No. 2015-CFPB-0023, *In the Matter of: Portfolio Recovery Associates, LLC* dated September 3, 2015 (the "Consent Order");
- "Stipulation and Consent to the Issuance of Consent Order" by Portfolio Recovery Associates, LLC dated September 3, 2015;

-2-

POUNDS EX 0401

- Excerpt from Form 10-K for PRA Group, Ltd. for the year ended December 31, 2014, as filed with the Securities and Exchange Commission's "EDGAR" website ("Form 10-K").

The Consent Order, Stipulation and Form 10-K are received in evidence for this Motion.

4. PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

5. N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt-buyer plaintiff file authenticated business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

6. PRA failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "itemized" the amount claimed to be due, and because PRA did not authenticate the account statements with an affidavit from any person claiming familiarity with the circumstances under which the credit card statements were created and maintained by GE Money Bank, the alleged original creditor.

7. Rule 55(b)(1) and N.C.G.S. § 58-70-155 must be interpreted harmoniously and *in pari material*. Accordingly, the only method by which a debt buyer subject to N.C.G.S. § 58-70-155 can demonstrate a "sum certain" is to comply with the "prerequisites" for default judgments set out in N.C.G.S. § 58-70-155. Because PRA's filings failed to comply with N.C.G.S. § 58-70-155, PRA's motion seeking a default judgment failed to show that the amount claimed to be due was a "sum certain."

8. Because PRA's motion seeking a default judgment failed to show a "sum certain," proceedings for entry of a default judgment were not within the jurisdiction of the clerk

-3-

POUNDS EX 0402

of court. Because the clerk lacked jurisdiction to enter the default judgment, the Judgment by Default is void and is subject to being set aside under Rule 60(b)(4). The "prerequisites" imposed by statute in the instant case are similar to statutory "requirements" long recognized as essential to jurisdiction in Chapter 50 district court cases. Henderson v. Henderson, 232 N.C. 1, 59 S.E. 2d 227 (1950) ("A void judgment is one which has the mere semblance, but is lacking in some of the essential elements which would authorize the court to proceed to judgment."), Bruce v. Bruce, 79 N.C. App. 579, 339 S.E.2d 855, *cert. denied*, 317 N.C. 701 (1986), Provenzo v. Provenzo, , 153 N.C. App. 811 (2002) (unpublished). (Statutory "requirements" of divorce action regarding term of residence or separation are jurisdictional). The statutory "prerequisite" to this action is analogous the "requirement" recognized in Chapter 50 jurisdictional cases. Statutory construction in that manner conforms to ordinary and established use of language, taking judicial notice of the standard definitions. *("Prerequisite – 1. something that is necessary to an end or to the carrying out of a function.",* Merriam Webster's Collegiate Dictionary, TENTH EDITION. (1994). The Judgment of Default entered in this action is void for lack of jurisdiction.

9.      Because N.C.G.S. § 58-70-155's requirements are identified as "prerequisites," a default judgment entered upon a record that fails to comply with these prerequisites is void and subject to being set aside under Rule 60(b)(4).

10.     In the absence of statutory compliance (record production per GS 58-70-155(b)(4) of *"an itemization of charges and fees claimed to be owed"*) the Judgment by Default granted more relief than is authorized by law and relief in excess of what is supported by law and by PRA's Complaint and other filings.

11.     The Motion has been made within a reasonable time. The allowance of the Motion would be consistent with the interests of justice because allowing the Motion would help

-4-

POUNDS EX 0403

effectuate legislative intent in N.C.G.S. § 58-70-155 and insure judicial process in compliance with those provisions. Mr. Brady's [PROPOSED] Answer and Counterclaim filed December 8, 2015 in advance of hearing, appears to present colorable and valid legal defenses to PRA's Complaint. PRA's judicially admitted facts and conclusions in the record, Consent Order, paras. 28 and 33, support the inference that it unlikely to be able to comply with the requirements of N.C.G.S. § 58-70-155; however, no findings or conclusions are entered on that issue.

12. At hearing Defendant orally moved that, in the event the Judgment by Default is vacated, the court also set aside the Entry of Default. Plaintiff declined consent to hearing the motion on oral motion, and the motion is denied without prejudice to hearing upon due notice.

13. Understanding that Rule 60(b)(6) relief is to be granted only when recourse is unavailable to the movant under other provisions of the Rule, and the record lacking facts to fully support relief under Rule 60(b)(6), Defendant's Rule 60(b)(6) is subject to denial on the record before the court.

**IT IS THEREFORE ORDERED** that the Judgment by Default entered February 23, 2015 in this action is held void and is vacated and set aside pursuant to Rule 60(b)(4). **Defendant's motion pursuant to Rule 60(b)(6) for comparable relief is denied. Defendant's oral motion of December 8, 2015 to set aside Entry of Default is denied without prejudice.**

This, the 18th day of December, 2015.

_____

Charles T.L. Anderson, 15B District Court Judge

-5-

POUNDS EX 0404

NORTH CAROLINA
WAKE COUNTY

FILED

2016 MAR 29  A 11: 37

WAKE COUNTY C.S.C.

GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
15 CVD 4745

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
      Plaintiff                       )
                                       )
      v.                           )        ORDER
                                       )
REBA PEACH,                     )
                                       )
      Defendant                 )
_____ )

      THIS MATTER came on to be heard and was heard by the undersigned district court

judge presiding at the January 7, 2016 Session of Wake County Civil District Court upon

defendant Reba Peach's Motion to Set Aside Default Judgment ("Defendant's Motion") filed

November 25, 2015, and on Ms. Peach's Motion to Set Aside Entry of Default filed December

15, 2015.

      IT APPEARING that attorney Andrew E. Hoke, Sessoms and Rogers, P.A., appeared on

behalf of Plaintiff, and that attorneys Carlene McNulty, North Carolina Justice Center, and J.

Jerome Hartzell appeared on behalf of Defendant.

      After considering the record and the arguments of counsel, reviewing applicable law, and

complying with defendant's request for findings of fact and conclusions of law, the Court makes

the following:

<u>FINDINGS OF FACT</u>

      1.     On April 10, 2015, Portfolio Recovery Associates, LLC ("PRA") filed an

unverified Complaint in the instant action alleging that defendant ("Ms. Peach") had a credit



EXHIBIT
25

account with GE Capital Retail Bank f/k/a GE Money Bank, that Ms. Peach defaulted in her

payment obligations on the account, and that the account was acquired by PRA.

2. The following documents were attached to the **unverified** Complaint:

a. Lowe's Visa Rewards Card Account Statement with Ms. Peach's name and an address of "1225 Fedex Dr. SW #404, Conover, NC 28613-7426," along with a redacted account number (last four digits "7944"). This statement had a payment due date of April 2, 2013, and showed: a previous balance of $2,716.76, one payment of $500, a detailed list of purchases/debits totaling **$479.29**, interest charges of **$48.03**, and a new balance of **$2,742.08**;

b. Lowe's Visa Rewards Card Account Statement with Ms. Peach's name and an address of "1225 Fedex Dr. SW #404, Conover, NC 28613-7426," along with a redacted account number (last four digits "7944"). This statement had a payment due date of October 10, 2013, and showed a previous balance of **$3,188.93**, no payments, and no charges, but two "charge off" entries totaling $3,188.93, and a current balance of $0.

c. Bill of Sale dated December 12, 2013, between General Electric Capital Corporation, GE Capital Retail Bank, GEMB Lending, Inc., Monogram Credit Services, L.L.C., RFS Holding, L.L.C., and GEM Holding, L.L.C., collectively as "Seller" and PRA, as "Buyer", that included a one-page computer printout for account number (last 4 digits) 7944 reflecting "Lowe's Visa Rewards", and with Ms. Peach's name and the address that was on the account statements. In bold print at the bottom of this printout is the following: "**Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GE CAPITAL RETAIL BANK pursuant to the sale of accounts from GE CAPITAL RETAIL BANK to Portfolio Recovery Associates, LLC**".

3. Ms. Peach was served with the Summons that issued on April 13, 2015 and the

Complaint by the Wake County Sheriff at 809 Silver Linden Lane, Wake Forest NC 27587 on

April 16, 2015.

4. No motion for extension of time or answer was filed with the Clerk within the

time allowed by law, and on May 28, 2015, PRA filed an Affidavit and Motion for Entry of

Default and Judgment by Default.

2

POUNDS EX 0406

5.      The Affidavit and Motion for Entry of Default and Judgment by Default includes numerous factual allegations and was sworn to by PRA's attorney, Chelsea E. Uhlman. This motion/affidavit incorporates by reference certain attachments from the Complaint (specifically the two purported account statements and the purported chain of ownership) and it incorporates by reference one page of the Lowe's VISA Rewards Card Account Statement with a payment due date of October 10, 2013 that was included as an attachment to the Affidavit/Motion.

6.      The Affidavit and Motion also references an "attached Affidavit of Account", which is an Affidavit signed by Dianna D. Williams and dated December 15, 2014. This Affidavit was included as part of the Affidavit and Motion. Ms. Williams' Affidavit attests, *inter alia*, that Ms. Williams is an employee of PRA and that she reviewed both PRA's records and the "business records of the Original Creditor GE CAPITAL RETAIL BANK/LOWE'S and those records transferred to [PRA] from GE CAPITAL RETAIL BANK, which have become a part of and have integrated into [PRA's] business records in the ordinary course of business." This Affidavit makes further attestations regarding what the records from the GE Capital Retail Bank ("Account Seller") reflect.

7.      Ms. Uhlman's Affidavit and Motion for Entry of Default and Default Judgment (including the attachments outlined above) were presented to Assistant Clerk of Superior Court, Hope Satterfield, on or about May 28, 2015. That same day, Ms. Satterfield entered default and default judgment against Ms. Peach in the amount of $3,188.93.

8.      PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts and is, therefore, a "debt buyer" as that term is defined in North Carolina General Statutes Section 58-70-15(b)(4).

3

POUNDS EX 0407

9.    The Consumer Economic Protection Act of 2009 (the "Act") became effective in North Carolina on October 1, 2009. The Act heightened the prerequisites[1] for proper entry of default[2] judgment in a debt buyer action. These additional prerequisites are outlined in N.C. Gen. Stat. §58-70-155 and require that the Plaintiff have filed with the court evidence to establish the amount and nature of the debt, N.C. Gen. Stat. §58-70-155(a), specifically including the following:

   a.    The original account number;
   b.    The original creditor;
   c.    The amount of the original debt;
   d.    An itemization of charges and fees claimed to be owed;
   e.    The original charge-off balance, or, if the balance has not been charged off, an explanation of the balance was calculated;
   f.    An itemization of post charge-off additions, where applicable;
   g.    The date of the last payment; and
   h.    The amount of interest claimed and the basis for the interest charged.

N.C. Gen. Stat. §58-70-155(b)

10.    The Act further provides that the "only evidence sufficient to establish the amount and nature of the debt shall be properly authenticated business records that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence." *Id.* In other words, the heightened evidentiary showing as outlined in finding of fact 9 above can be established **only by properly authenticated business records**.

11.    Section 58-70-155(b)'s heightened evidentiary prerequisites in debt buyer cases clearly signal a legislative intent that "something more" is required prior to entry of a default judgment in a debt buyer action than would be required prior to the entry of a default judgment in a debt collection action brought by an original creditor.

---

[1] Use of the term "prerequisites" as it relates to the heightened evidentiary showing for debt buyers seeking default judgment is found in reference manuals for North Carolina Judges and Clerks of Court. *See e.g.*, The North Carolina Superior Court Judges' Benchbook and the North Carolina Clerk of Superior Court Procedures Manual.

[2] These additional prerequisites apply also to the entry of summary judgment.

4

POUNDS EX 0408

## Ms. Williams' Affidavit

12.    Ms. Williams' Affidavit lays a sufficient foundation to show that the PRA business records she reviewed are subject to the 803(6) hearsay exception, and therefore the knowledge she obtained from the review of such records constitutes 'personal knowledge'. However, as it relates to determining whether the heightened evidentiary prerequisites have been met, the court cannot consider the contents of an Affidavit in determining whether default judgment should be entered in a debt-buyer action. The evidentiary showing required by the Act is "properly authenticated business records." Ms. Williams' Affidavit cannot properly be considered by the court in determining whether the Act's prerequisites have been met other than to "properly authenticate" any business records filed with the court. Ms. Williams' Affidavit does not incorporate or otherwise mention any business records filed with the court.

13.    Even if Ms. Williams had stated in her Affidavit that the account statement attached to Ms. Uhlman's Motion/Affidavit and the account statements attached to the Complaint were part of the records Ms. Williams' reviewed and that these documents are true and accurate copies of the documents she reviewed, Ms. Williams' Affidavit does not lay a sufficient foundation for their admission under Rule 803(6) since it is likely that these documents came from the Account Seller or the Original Creditor.

14.    Hearsay, as defined by the North Carolina Rules of Evidence, is inadmissible unless it is subject to a hearsay exception. "Hearsay within hearsay" is admissible only if each part of the combined statement(s) conforms to an exception.

15.    Ms. Williams' Affidavit clearly reveals that PRA's business records include records transferred from the Account Seller. These other records are a second (and perhaps third)

5

POUNDS EX 0409

layer of hearsay. Absent a showing that these other records fall within a hearsay exception, these other records are inadmissible hearsay.

16.     Ms. Williams' Affidavit is silent as to any knowledge she might have regarding the records keeping system for either the Original Creditor or the Account Seller. *Cf. Moore v. Coachmen Indus.*, 129 N.C. 389, 395 (1998). Her Affidavit is insufficient to show that the Original Creditor's business records or the Account Seller's business records are also subject to Rule 803(6) hearsay exception.

### Ms. Uhlman's Affidavit

17.     Ms. Uhlman's Motion/Affidavit appears to attest to facts about the account at issue in this case. Yet there are no allegations in the Motion/Affidavit as to how she has first-hand knowledge of these facts. For example, in paragraph 13 of her affidavit she attests as follows: "As this was a credit card account, the origination balance was $0.00." Likewise, paragraphs 8 – 11 of her Motion/Affidavit make factual allegations from which there is no basis identified of her first-hand knowledge other than she is the attorney for Plaintiff. Without more, this is not sufficient to show that she has first-hand knowledge about the account.

18.     While Ms. Uhlman's Motion/Affidavit incorporates by reference the account statements and bill of sale that were attached to the Complaint, as well as the "Charge-off Statement" attached to her Motion, there is nothing in Ms. Uhlman's motion/affidavit from which the court could determine that she is a person who could lay the foundation for PRA's business records or for the business records of the Original Creditor or the Account Seller. Therefore, Ms. Uhlman's Motion/Affidavit (and documents incorporated therein) cannot properly be considered by the court in determining whether the Act's prerequisites have been met.

6

POUNDS EX 0410

19.     Even if the account statements attached to the Complaint and to Ms. Uhlman's Motion/Affidavit could be considered, these documents are insufficient to satisfy the Act's prerequisite of an "itemization of charges and fees".

20.     While there are definitions of the term "itemization" in our General Statutes and case law involving other sections of the General Statutes, Chapter 58 does not define the "itemization of charges and fees claimed to be owed" that must be included in the filings of a plaintiff in a debt-buyer action who is seeking default judgment.

21.     Issues of statutory interpretation are questions of law. *Parkdale Am., LLC v. Hinton*, 200 N.C. App. 275, 278 (2009). The primary goal of statutory interpretation is to "'ascertain the intent of the legislature and to carry out such intention to the fullest extent.'" *Id.* (quoting *Brown v. Flowe*, 349 N.C. 520, 523 (1998)). The words used by the legislature are a primary factor to be considered in determining legislative intent. *Id.* If the language in the statute is clear and unambiguous, the Court must apply the plain meaning of the words. *Id.* However, when ambiguities exist, the Court then must attempt to interpret the statute in such a way as to give effect to the legislative intent. *Union v. Branch Banking & Trust Co.*, 176 N.C. App. 711, 717 (2006) (citation omitted). Absent a statutory definition of a word, it is presumed that the legislature intended to give words within a statute their ordinary meaning as determined according to the context in which those words ordinarily are used. *Parkdale*, 200 N.C. App. at 278. However, if giving effect to the plain meaning of the language of a statute will lead to absurd results, or will contravene the purpose of the legislature, the reason and purpose of the law shall control. *Union*, 176 N.C. App. at 717.

7

22.     "Itemize" means "to create a detailed list of things; to set down in detail or by particulars."[3]

23.     In a non-debt buyer case, an affidavit of the amount due and charge-off statement may be sufficient evidence to support entry of default judgment. Given the purpose of the Act, this is clearly not so in a debt buyer action.

24.     To construe an "itemization of charges and fees" to be satisfied by the production of a "charge-off" statement and/or an affidavit of the amount alleged to be due is not consistent with the legislative intent behind the Act.

25.     To require a debt-buyer to file with the Court the detail of every specific charge ever made or fee assessed over the life a credit card account might, in some instances, be unduly burdensome to the debt-buyer as well as an unnecessary burden on the court to review such documentation.

26.     Consistent with the legislative intent behind the Act, the itemization of charges and fees presented in support of a motion for default (or summary) judgment must be detailed and include the particulars of each charge and fee claimed to be unpaid/owed, and this itemization must be the "properly authenticated business records" tendered in support of the motion for default judgment. In other words, there should be business records containing the specific details of individual charges and fees that total at a minimum the amount of the judgment Plaintiff seeks to obtain.

27.     There is nothing in any of PRA's filings that satisfies the "itemization" requirement other than those charges in the purported account statement referenced in finding of

---

[3]"Itemize." *Merriam-Webster.com* Merriam-Webster, n.d. Web. 10 Feb. 2016.

8

POUNDS EX 0412

fact 2(a) above; and, as noted above, this account statement has not been "properly authenticated."

## Amount of the Original Debt: G.S. 58-70-155(b)(3)

28.     Even if the account statements attached to the Complaint and to Ms. Uhlman's Motion/Affidavit could be considered, they are insufficient to satisfy the Act's prerequisite of "the amount of the original debt."

29.     Ms. Uhlman's affidavit was the only submission before the Clerk concerning the "original debt balance." Yet there is nothing in Ms. Uhlman's verified motion that states how she knows the origination balance was zero other than the assumption that: "As this was a credit card account, the origination balance was $0.00."

30.     Hearsay contained in an affidavit and portions of an affidavit that are not based on an affiant's personal knowledge must be ignored by the court. *See, e.g., Moore v. Coachmen Indus.,* 129 N.C. App. 389, 499 S.E. 2d, 772 (1998); *Fuller v. Southland Corp.,* 57 N.C. App. 1, 290 S.E. 2d 754 (1982). While it is not necessary for the affidavit to state that it is based on first-hand knowledge, if it is not apparent from the affidavit that the affiant has first-hand knowledge, then that portion of the affidavit cannot be considered. Certainly assumptions and speculation must be ignored.

31.     The purpose of the Act is to protect consumers. In this case, plaintiff failed to tender any "properly authenticated business records" to the court in support of its motion for default judgment. This utter failure to comply with the heightened evidentiary burden when seeking default judgment is good cause to set aside the entry of default.

32.     Any finding of fact erroneously denominated as a conclusion of law below is incorporated herein by reference.

POUNDS EX 0413

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction over the parties and the subject matter of this action.

2.     The proper procedure for a defendant to challenge a default judgment is to first seek relief from the judgment at the trial level. If the trial court denies the relief requested, then the order denying relief is the proper subject of an appeal. *See e.g., Golmon v. Latham*, 183 N.C. App. 150 (2007). Therefore, defendant herein could not have appealed the default judgment to the Court of Appeals without doing that which she did – file a motion seeking to have it set aside in the trial court.

3.     The Clerk of Court possesses only such jurisdiction as is prescribed by statute. Rule 55(b)(1) authorizes clerks of court to enter default judgments only "[w]hen the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain . . . ."

4.     In order for the amount sought in a debt-buyer's complaint to be a "sum certain," the Clerk must be able to ascertain the sum by referring to only "properly authenticated business records that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence." (quoting N.C. Gen. Stat 58-70-155(b)).

5.     As outlined above, no properly authenticated business records that satisfy the requirement of Rule 803(6) were tendered to the Court.

6.     PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

7.     N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt buyer plaintiff file authenticated

10

POUNDS EX 0414

business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

8.    PRA failed to comply with all the "prerequisites" of N.C.G.S. § 58-70-155.

9.    PRA's filings, including the Complaint, Affidavit and Motion for Entry of Default and Judgment by Default, failed to meet the requirements of Rule 55(b)(1) of a "sum certain or for a sum which can by computation be made," which is a prerequisite to the Clerk having jurisdiction to enter a Default Judgment in this matter.

10.    Defendant's Motion has been made within a reasonable time. The allowance of Defendant's Motion would be consistent with the interests of justice because allowing Defendant's Motion would help effectuate legislative intent in N.C.G.S. § 58-70-155, and would insure a judicial process in compliance with those provisions. Ms. Peach's [Proposed] Answer and Counterclaim filed in advance of the hearing on Defendant's Motion appears to present colorable and valid legal defenses to PRA's Complaint. However no findings or conclusions are entered on that issue.

11.    As set forth herein, good cause exists for setting aside the Entry of Default.

12.    As set forth herein, grounds exist pursuant to Rule 60(b) to set aside the Default Judgment.

13.    Any conclusion of law erroneously denominated as a finding of fact above is incorporated herein by reference.

11

POUNDS EX 0415

NOW, THEREFORE, it is hereby ORDERED that the Judgment by Default is hereby vacated and set aside pursuant to Rule 60(b), and that the Entry of Default is likewise vacated and set aside.

This, the 29th day of March, 2016.

_____
Debra Sasser, Judge Presiding

CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that the foregoing Order was served on counsel of record for Plaintiff and for Defendant by mailing a copy thereof first class mail, postage prepaid, addressed as follows:

Mr. Andrew E. Hoke
Sessoms & Rogers, P.A.
1822 East NC Highway 54, Suite 200
PO Box 110564
Durham, NC 27709

Ms. Carlene McNulty
North Carolina Justice Center
PO Box 28068
Raleigh, NC 27611

Mr. J. Jerome Hartzell
PO Box 10246
Raleigh, NC 27605

This the 29th day of March, 2016.

_____
Ass't/Deputy Clerk of Court

12

POUNDS EX 0416

NORTH CAROLINA
MECKLENBURG COUNTY

GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
    Plaintiff                  )

v.                                       14-CVD-22005

SHARI SPECTOR,
    Defendant



MECKLENBURG COUNTY
FILED #100
JUN 0 8 2016
AT _____ O'CLOCK __ M
BY _____
CLERK OF SUPERIOR COURT

### ORDER

This matter has come on for hearing on defendant's Motion to Set Aside Default Judgment and Entry of Default (the "Motion"). Defendant has requested that the court enter findings of fact and conclusions of law.

### FINDINGS OF FACT

1.    The Complaint filed by plaintiff Portfolio Recovery Associates, LLC ("PRA") alleges that defendant had a credit account with GE Capital Retail Bank, f/k/a/ GE Money Bank, that defendant defaulted in the payment obligations on the account, and that the account was acquired by PRA.

2.    Defendant did not file an Answer to the Complaint. PRA sought and obtained entry of default and default judgment. Judgment by Default was entered by the Assistant Clerk of Court for Mecklenburg County on April 1, 2015.

3.    PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts.

4.    PRA did not file authenticated business records providing an "itemization of the charges and fees" that gave rise to defendant's alleged indebtedness.



EXHIBIT
26

POUNDS EX 0417

5.     PRA's "Affidavit and Motion for Entry of Default and Default Judgment" states that account statements attached to the Complaint "reflect an itemization of the charges and fees owed, along with an explanation of how the balance owing on the account was calculated." However, the two monthly account statements attached to the Complaint and incorporated by reference into the "Affidavit and Motion for Entry of Default and Default Judgment" do not itemize the charges and fees that give rise to the alleged indebtedness on the account.

6.     PRA did not provide an affidavit from any person who purported to authenticate any account statements or other documents that purported to itemize the charges and fees that give rise to the alleged indebtedness on the account.

7.     PRA did not provide an affidavit from any person who claimed familiarity with the circumstances under which information contained on account statements or other documents was created and maintained by the original creditor.

8.     PRA did not provide any affidavit from anyone employed by the original creditor who reviewed any of the original creditor's records of the defendant's account that showed an itemization of the charges and fees claimed to be owed. PRA did file a document titled "Affidavit" executed by PRA employee Anita Bray and notarized on December 15, 2014, which states that the matters set out therein are "based upon a review of the business records of the Original Creditor GE CAPITAL RETAIL BANK/HH GREGG and those records transferred to [PRA] from GENERAL ELECTRIC CAPITAL CORP ("Account Seller"), which have become a part of and have integrated into [PRA's] business records, in the ordinary course of business." However the Court has been advised by counsel for PRA during this proceeding, and the Court finds, that the only records of the original creditor to which Ms. Bray's affidavit refers are the documents that PRA filed in this proceeding. The only documents filed by PRA in this

POUNDS EX 0418

proceeding are two account statements; three documents titled "Bill of Sale," none of which make any reference to defendant's account; and a two-page, two-column, untitled document containing the language "Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GENERAL ELECTRIC CAPITAL CORP pursuant to the sale of accounts from GENERAL ELECTRIC CAPITAL CORP to Portfolio Recovery Associates, LLC." The Court finds that these records do not support the claim for the amount Plaintiff is seeking. The Court finds that none of these records shows the underlying basis for the amount claimed to be owed.

9.      PRA argued to the Court that it would be impossible to obtain copies of every account statement from the original creditor to reflect a complete itemization of the charges and fees claimed to be owed because the original creditor is only required to maintain these records for two years under federal banking regulation 12 CFR 1026.25. The Court finds that if the original creditor did not even have these records in its possession, then it would not have been possible for PRA or any of its employees to have reviewed original creditor records that provide an itemization of the amount claimed to be owed in this lawsuit.

10.     The Court finds that Ms. Bray's Affidavit is false, in that Ms. Bray purports to have relied upon "review of the business records of the Original Creditor" in making the conclusions set out in her Affidavit, whereas in fact Ms. Bray relied only upon the few records filed by PRA in this action.

<u>CONCLUSIONS OF LAW</u>

11.     Defendant submitted the following documents as evidence in support of the Motion:

3

POUNDS EX 0419

- Consent Order issued by the Consumer Financial Protection Bureau in Administrative Proceeding File No. 2015-CFPB-0023, *In the Matter of: Portfolio Recovery Associates, LLC* dated September 3, 2015 (the "Consent Order");

- "Stipulation and Consent to the Issuance of Consent Order" by Portfolio Recovery Associates, LLC dated September 3, 2015;

- Excerpt from Form 10-K for PRA Group, Ltd. for the year ended December 31, 2014, as filed with the Securities and Exchange Commission's "EDGAR" website ("Form 10-K").

The Consent Order, Stipulation and Form 10-K are received in evidence for purposes of considering the Motion. The Court has considered PRA's objection to consideration of the Consent Order based on Rule 408 of the North Carolina Rules of Evidence, relating to evidence of compromise and compromise negotiations. The Court finds that Rule 408 does not bar consideration of the Consent Order for the purposes of consideration of the Motion because the Consent Order is not offered to prove liability or damages, but rather is offered as evidence of the practical need for consumer protections enacted by N.C.G.S. § 58-70-155 and the other provisions of the Consumer Economic Protection Act of 2009, and as evidence bearing on the reliability of PRA's records under Rule 803(6) that may, under Rule 104(a), be considered regardless of admissibility.

12.     PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

13.     N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt buyer plaintiff file authenticated business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

4

POUNDS EX 0420

14. PRA failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "itemized" the amount claimed to be due and the amount and basis for the interest charged.

15. PRA also failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not authenticate account statements or other business records. No affidavit was offered from any person claiming familiarity with the circumstances under which the statements and other documents were created and maintained by the alleged original creditor.

16. The Court concludes that N.C.G.S. § 58-70-155 is a jurisdictional statute, meaning that default judgments entered in violation of the statute are void. The Court reaches this conclusion in part because N.C.G.S. § 58-70-155's requirements are identified as "prerequisites." In reaching this conclusion, the Court considers the apparent legislative purpose in enacting N.C.G.S. § 58-70-155: to protect defendants against whom debt buyers seek to obtain default judgments. This legislative purpose is shown by the title of S.L. 2009-573 (the "Consumer Economic Protection Act of 2009"), by section 58-70-155's subject matter (default and summary judgments), and by the prevalence of default judgments in cases brought by debt buyers (a matter known to this Court from its own experience, a matter documented by a report issued by the Federal Trade Commission in February of 2009, and a matter documented in the Consent Order). Because default judgments are only available against defendants who fail to answer or appear, and because defendants who fail to answer or otherwise respond to lawsuits will invariably fail to appeal the entry of a default judgment, the protections of section 58-70-155 would be meaningless if this statute's "prerequisites" can be enforced only through appeal. Rather, N.C.G.S. § 58-70-155 was meant to rectify the problem at the door of the courthouse.

5

POUNDS EX 0421

The Court therefore concludes that a default judgment entered upon a record that fails to comply with section 58-70-155's prerequisites is void and subject to being set aside under Rule 60(b)(4).

17.    Good cause exists for setting aside the Entry of Default, for the reasons set out elsewhere in this order.  It is fair and consistent with legislative intent that defendant should be permitted to defend against PRA's claim by requiring PRA to present competent evidence in support of its claim.

NOW, THEREFORE, it is hereby ORDERED that the Judgment by Default is hereby vacated and set aside pursuant to Rule 60(b), and that the Entry of Default is likewise vacated and set aside.

This, the 3 day of June, 2016.

Rebecca T. Tin, District Court Judge

6

POUNDS EX 0422

NORTH CAROLINA
MECKLENBURG COUNTY

GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
    Plaintiff )
                            )
    v. )
                            )
ANGELA PLEDGER )
    Defendant )
                            )

14-CVD-22008

> MECKLENBURG COUNTY
> **FILED #100**
> JUN 0 8 2016
> AT_____O'CLOCK____M
> BY_____
> CLERK OF SUPERIOR COURT

## ORDER

This matter has come on for hearing on defendant's Motion to Set Aside Default Judgment and Entry of Default (the "Motion"). Defendant has requested that the court enter findings of fact and conclusions of law.

## FINDINGS OF FACT

1.    The Complaint filed by plaintiff Portfolio Recovery Associates, LLC ("PRA") alleges that defendant had a credit account with GE Capital Retail Bank, f/k/a/ GE Money Bank, that defendant defaulted in the payment obligations on the account, and that the account was acquired by PRA.

2.    Defendant did not file an Answer to the Complaint. PRA sought and obtained entry of default and default judgment. Judgment by Default was entered by the Assistant Clerk of Court for Mecklenburg County on January 29, 2015.

3.    PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts.

4.    PRA did not file authenticated business records providing an "itemization of the charges and fees" that gave rise to defendant's alleged indebtedness.



POUNDS EX 0423

5.     PRA's "Affidavit and Motion for Entry of Default and Default Judgment" states that account statements attached to the Complaint "reflect an itemization of the charges and fees owed, along with an explanation of how the balance owing on the account was calculated." However, the two monthly account statements attached to the Complaint and incorporated by reference into the "Affidavit and Motion for Entry of Default and Default Judgment" do not itemize the charges and fees that give rise to the alleged indebtedness on the account.

6.     PRA did not provide an affidavit from any person who purported to authenticate any account statements or other documents that purported to itemize the charges and fees that give rise to the alleged indebtedness on the account.

7.     PRA did not provide an affidavit from any person who claimed familiarity with the circumstances under which information contained on account statements or other documents was created and maintained by the original creditor.

8.     PRA did not provide any affidavit from anyone employed by the original creditor who reviewed any of the original creditor's records of the defendant's account that showed an itemization of the charges and fees claimed to be owed. PRA did file a document titled "Affidavit" executed by PRA employee Evita Rodriguez and notarized on August 7, 2014, which states that the matters set out therein are "based upon a review of the business records of the Original Creditor GE CAPITAL RETAIL BANK/CARE CREDIT and those records transferred to [PRA] from GE CAPITAL RETAIL BANK ("Account Seller"), which have become a part of and have integrated into [PRA's] business records, in the ordinary course of business." However the Court has been advised by counsel for PRA during this proceeding, and the Court finds, that the only records of the original creditor to which Ms. Rodriguez's affidavit refers are the documents that PRA filed in this proceeding. The only documents filed by PRA in this

2

POUNDS EX 0424

proceeding are two account statements; a document titled "Bill of Sale" which makes no reference to defendant's account; and a two-page, two-column, untitled document containing the language "Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GE CAPITAL RETAIL BANK pursuant to the sale of accounts from GE CAPITAL RETAIL BANK to Portfolio Recovery Associates, LLC." The Court finds that these records do not support the claim for the amount Plaintiff is seeking. The Court finds that none of these records shows the underlying basis for the amount claimed to be owed.

9.      PRA argued to the Court that it would be impossible to obtain copies of every account statement from the original creditor to reflect a complete itemization of the charges and fees claimed to be owed because the original creditor is only required to maintain these records for two years under federal banking regulation 12 CFR 1026.25. The Court finds that if the original creditor did not even have these records in its possession, then it would not have been possible for PRA or any of its employees to have reviewed original creditor records that provide an itemization of the amount claimed to be owed in this lawsuit.

10.     The Court finds that Ms. Rodriguez's Affidavit is false, in that Ms. Rodriguez purports to have relied upon "review of the business records of the Original Creditor" in making the conclusions set out in her Affidavit, whereas in fact Ms. Rodriguez relied only upon the few records filed by PRA in this action.

<u>CONCLUSIONS OF LAW</u>

11.     Defendant submitted the following documents as evidence in support of the Motion:

- Consent Order issued by the Consumer Financial Protection Bureau in Administrative Proceeding File No. 2015-CFPB-0023, *In the Matter of: Portfolio Recovery Associates, LLC* dated September 3, 2015 (the "Consent Order");

3

POUNDS EX 0425

- "Stipulation and Consent to the Issuance of Consent Order" by Portfolio Recovery Associates, LLC dated September 3, 2015;

- Excerpt from Form 10-K for PRA Group, Ltd. for the year ended December 31, 2014, as filed with the Securities and Exchange Commission's "EDGAR" website ("Form 10-K").

The Consent Order, Stipulation and Form 10-K are received in evidence for purposes of considering the Motion. The Court has considered PRA's objection to consideration of the Consent Order based on Rule 408 of the North Carolina Rules of Evidence, relating to evidence of compromise and compromise negotiations. The Court finds that Rule 408 does not bar consideration of the Consent Order for the purposes of consideration of the Motion because the Consent Order is not offered to prove liability or damages, but rather is offered as evidence of the practical need for consumer protections enacted by N.C.G.S. § 58-70-155 and the other provisions of the Consumer Economic Protection Act of 2009, and as evidence bearing on the reliability of PRA's records under Rule 803(6) that may, under Rule 104(a), be considered regardless of admissibility.

12.    PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

13.    N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt buyer plaintiff file authenticated business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

14.    PRA failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "itemized" the amount claimed to be due and the amount and basis for the interest charged.

4

POUNDS EX 0426

15.     PRA also failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not authenticate account statements or other business records. No affidavit was offered from any person claiming familiarity with the circumstances under which the statements and other documents were created and maintained by the alleged original creditor.

16.     The Court concludes that N.C.G.S. § 58-70-155 is a jurisdictional statute, meaning that default judgments entered in violation of the statute are void. The Court reaches this conclusion in part because N.C.G.S. § 58-70-155's requirements are identified as "prerequisites." In reaching this conclusion, the Court considers the apparent legislative purpose in enacting N.C.G.S. § 58-70-155: to protect defendants against whom debt buyers seek to obtain default judgments. This legislative purpose is shown by the title of S.L. 2009-573 (the "Consumer Economic Protection Act of 2009"), by section 58-70-155's subject matter (default and summary judgments), and by the prevalence of default judgments in cases brought by debt buyers (a matter known to this Court from its own experience, a matter documented by a report issued by the Federal Trade Commission in February of 2009, and a matter documented in the Consent Order). Because default judgments are only available against defendants who fail to answer or appear, and because defendants who fail to answer or otherwise respond to lawsuits will invariably fail to appeal the entry of a default judgment, the protections of section 58-70-155 would be meaningless if this statute's "prerequisites" can be enforced only through appeal. Rather, N.C.G.S. § 58-70-155 was meant to rectify the problem at the door of the courthouse. The Court therefore concludes that a default judgment entered upon a record that fails to comply with section 58-70-155's prerequisites is void and subject to being set aside under Rule 60(b)(4).

17.     Good cause exists for setting aside the Entry of Default, for the reasons set out elsewhere in this order. It is fair and consistent with legislative intent that defendant should be

5

POUNDS EX 0427

permitted to defend against PRA's claim by requiring PRA to present competent evidence in support of its claim.

NOW, THEREFORE, it is hereby ORDERED that the Judgment by Default is hereby vacated and set aside pursuant to Rule 60(b), and that the Entry of Default is likewise vacated and set aside.

This, the 3 day of June, 2016.

_____
Rebecca T. Tin, District Court Judge

6

POUNDS EX 0428

NORTH CAROLINA
MECKLENBURG COUNTY

GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
    Plaintiff )
            )
v. )
            )
PIA N. TOWNES, )
    Defendant )

15-CVD-1909



MECKLENBURG COUNTY
**FILED #100**
JUN 0 8 2016
AT_____ O'CLOCK _____ M
BY_____
CLERK OF SUPERIOR COURT

## ORDER

    This matter has come on for hearing on defendant's Motion to Set Aside Default Judgment and Entry of Default (the "Motion"). Defendant has requested that the court enter findings of fact and conclusions of law.

### FINDINGS OF FACT

    1.    The Complaint filed by plaintiff Portfolio Recovery Associates, LLC ("PRA") alleges that defendant had a credit account with HSBC, that defendant defaulted in the payment obligations on the account, and that the account was acquired by PRA.

    2.    Defendant did not file an Answer to the Complaint. PRA sought and obtained entry of default and default judgment. Judgment by Default was entered by the Assistant Clerk of Court for Mecklenburg County on April 1, 2015.

    3.    PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts.

    4.    PRA did not file authenticated business records providing an "itemization of the charges and fees" that gave rise to defendant's alleged indebtedness.



EXHIBIT
28

POUNDS EX 0429

5. PRA's "Affidavit and Motion for Entry of Default and Default Judgment" states that account statements attached to the Complaint "reflect an itemization of the charges and fees owed, along with an explanation of how the balance owing on the account was calculated." However, the two monthly account statements attached to the Complaint and incorporated by reference into the "Affidavit and Motion for Entry of Default and Default Judgment" do not itemize the charges and fees that give rise to the alleged indebtedness on the account.

6. PRA did not provide an affidavit from any person who purported to authenticate any account statements or other documents that purported to itemize the charges and fees that give rise to the alleged indebtedness on the account.

7. PRA did not provide an affidavit from any person who claimed familiarity with the circumstances under which information contained on account statements or other documents was created and maintained by the original creditor.

8. PRA did not provide any affidavit from anyone employed by the original creditor who reviewed any of the original creditor's records of the defendant's account that showed an itemization of the charges and fees claimed to be owed. PRA did file a document titled "Affidavit" executed by PRA employee Michael La Douceur and notarized on May 12, 2014, which states that the matters set out therein are "based upon a review of the business records of the Original Creditor HSBC BANK NEVADA, N.A./GM and those records transferred to [PRA] from CAPITAL ONE, N.A. ("Account Seller"), which have become a part of and have integrated into [PRA's] business records, in the ordinary course of business." However the Court has been advised by counsel for PRA during this proceeding, and the Court finds, that the only records of the original creditor to which Mr. La Douceur's affidavit refers are the documents that PRA filed in this proceeding. The only documents filed by PRA in this

2

POUNDS EX 0430

proceeding are an application purportedly signed by Ms. Townes for a GM Flexible Earnings Card; two account statements; two documents titled "Bill of Sale" and one titled "Notice of Assignment," none of which make any reference to defendant's account; and a two-page, two-column, untitled document containing the language "Data printed by Portfolio Recovery Associates, LLC from electronic records provided by CAPITAL ONE, N.A. pursuant to the sale of accounts from CAPITAL ONE, N.A. to Portfolio Recovery Associates, LLC." The Court finds that these records do not support the claim for the amount Plaintiff is seeking. The Court finds that none of these records shows the underlying basis for the amount claimed to be owed.

9.     PRA argued to the Court that it would be impossible to obtain copies of every account statement from the original creditor to reflect a complete itemization of the charges and fees claimed to be owed because the original creditor is only required to maintain these records for two years under federal banking regulation 12 CFR 1026.25. The Court finds that if the original creditor did not even have these records in its possession, then it would not have been possible for PRA or any of its employees to have reviewed original creditor records that provide an itemization of the amount claimed to be owed in this lawsuit.

10.     The Court finds that Mr. La Douceur's Affidavit is false, in that Mr. La Douceur purports to have relied upon "review of the business records of the Original Creditor" in making the conclusions set out in his Affidavit, whereas in fact Mr. La Douceur relied only upon the few records filed by PRA in this action.

## CONCLUSIONS OF LAW

11.     Defendant submitted the following documents as evidence in support of the Motion:

3

POUNDS EX 0431

- Consent Order issued by the Consumer Financial Protection Bureau in Administrative Proceeding File No. 2015-CFPB-0023, *In the Matter of: Portfolio Recovery Associates, LLC* dated September 3, 2015 (the "Consent Order");

- "Stipulation and Consent to the Issuance of Consent Order" by Portfolio Recovery Associates, LLC dated September 3, 2015;

- Excerpt from Form 10-K for PRA Group, Ltd. for the year ended December 31, 2014, as filed with the Securities and Exchange Commission's "EDGAR" website ("Form 10-K").

The Consent Order, Stipulation and Form 10-K are received in evidence for purposes of considering the Motion. The Court has considered PRA's objection to consideration of the Consent Order based on Rule 408 of the North Carolina Rules of Evidence, relating to evidence of compromise and compromise negotiations. The Court finds that Rule 408 does not bar consideration of the Consent Order for the purposes of consideration of the Motion because the Consent Order is not offered to prove liability or damages, but rather is offered as evidence of the practical need for consumer protections enacted by N.C.G.S. § 58-70-155 and the other provisions of the Consumer Economic Protection Act of 2009, and as evidence bearing on the reliability of PRA's records under Rule 803(6) that may, under Rule 104(a), be considered regardless of admissibility.

12.     PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

13.     N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt buyer plaintiff file authenticated business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

4

POUNDS EX 0432

14.    PRA failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "itemized" the amount claimed to be due and the amount and basis for the interest charged.

15.    PRA also failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not authenticate account statements or other business records. No affidavit was offered from any person claiming familiarity with the circumstances under which the statements and other documents were created and maintained by the alleged original creditor.

16.    The Court concludes that N.C.G.S. § 58-70-155 is a jurisdictional statute, meaning that default judgments entered in violation of the statute are void. The Court reaches this conclusion in part because N.C.G.S. § 58-70-155's requirements are identified as "prerequisites." In reaching this conclusion, the Court considers the apparent legislative purpose in enacting N.C.G.S. § 58-70-155: to protect defendants against whom debt buyers seek to obtain default judgments. This legislative purpose is shown by the title of S.L. 2009-573 (the "Consumer Economic Protection Act of 2009"), by section 58-70-155's subject matter (default and summary judgments), and by the prevalence of default judgments in cases brought by debt buyers (a matter known to this Court from its own experience, a matter documented by a report issued by the Federal Trade Commission in February of 2009, and a matter documented in the Consent Order). Because default judgments are only available against defendants who fail to answer or appear, and because defendants who fail to answer or otherwise respond to lawsuits will invariably fail to appeal the entry of a default judgment, the protections of section 58-70-155 would be meaningless if this statute's "prerequisites" can be enforced only through appeal. Rather, N.C.G.S. § 58-70-155 was meant to rectify the problem at the door of the courthouse.

5

POUNDS EX 0433

The Court therefore concludes that a default judgment entered upon a record that fails to comply with section 58-70-155's prerequisites is void and subject to being set aside under Rule 60(b)(4).

17.    Good cause exists for setting aside the Entry of Default, for the reasons set out elsewhere in this order. It is fair and consistent with legislative intent that defendant should be permitted to defend against PRA's claim by requiring PRA to present competent evidence in support of its claim.

NOW, THEREFORE, it is hereby ORDERED that the Judgment by Default is hereby vacated and set aside pursuant to Rule 60(b), and that the Entry of Default is likewise vacated and set aside.

This, the 3 day of June, 2016.

Rebecca T. Tin, District Court Judge

6

POUNDS EX 0434

NORTH CAROLINA
MECKLENBURG COUNTY

GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
     Plaintiff                    )

v.

ROBERT WALTERS,
     Defendant



15-CVD-2893

MECKLENBURG COUNTY
FILED #100
JUN 0 8 2016
AT_____O'CLOCK____M
BY_____
CLERK OF SUPERIOR COURT

## ORDER

This matter has come on for hearing on defendant's Motion to Set Aside Default Judgment and Entry of Default (the "Motion"). Defendant has requested that the court enter findings of fact and conclusions of law.

### FINDINGS OF FACT

1.    The Complaint filed by plaintiff Portfolio Recovery Associates, LLC ("PRA") alleges that defendant had a credit account with GE Capital Retail Bank f/k/a GE Money Bank, that defendant defaulted in the payment obligations on the account, and that the account was acquired by PRA.

2.    Defendant did not file an Answer to the Complaint. PRA sought and obtained entry of default and default judgment. Judgment by Default was entered by the Assistant Clerk of Court for Mecklenburg County on June 12, 2015.

3.    PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts.

4.    PRA did not file authenticated business records providing an "itemization of the charges and fees" that gave rise to defendant's alleged indebtedness.



EXHIBIT
29

POUNDS EX 0435

5.    PRA's "Affidavit and Motion for Entry of Default and Default Judgment" states that account statements attached to the Complaint "reflect an itemization of the charges and fees owed, along with an explanation of how the balance owing on the account was calculated." However, the two monthly account statements attached to the Complaint and incorporated by reference into the "Affidavit and Motion for Entry of Default and Default Judgment" do not itemize the charges and fees that give rise to the alleged indebtedness on the account.

6.    PRA did not provide an affidavit from any person who purported to authenticate any account statements or other documents that purported to itemize the charges and fees that give rise to the alleged indebtedness on the account.

7.    PRA did not provide an affidavit from any person who claimed familiarity with the circumstances under which information contained on account statements or other documents was created and maintained by the original creditor.

8.    PRA did not provide any affidavit from anyone employed by the original creditor who reviewed any of the original creditor's records of the defendant's account that showed an itemization of the charges and fees claimed to be owed. PRA did file a document titled "Affidavit" executed by PRA employee Cristina Patterson and notarized on April 16, 2015, which states that the matters set out therein are "based upon a review of the business records of the Original Creditor GE CAPITAL RETAIL BANK/SAM'S CLUB and those records transferred to [PRA] from GE CAPITAL RETAIL BANK ("Account Seller"), which have become a part of and have integrated into [PRA's] business records, in the ordinary course of business." However the Court has been advised by counsel for PRA during this proceeding, and the Court finds, that the only records of the original creditor to which Ms. Patterson's affidavit refers are the documents that PRA filed in this proceeding. The only documents filed by PRA in

2

POUNDS EX 0436

this proceeding are two account statements; three documents titled "Bill of Sale," none of which make any reference to defendant's account; and a two-page, two-column, untitled document containing the language "Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GE CAPITAL RETAIL BANK pursuant to the sale of accounts from GE CAPITAL RETAIL BANK to Portfolio Recovery Associates, LLC." The Court finds that these records do not support the claim for the amount Plaintiff is seeking. The Court finds that none of these records shows the underlying basis for the amount claimed to be owed.

9.　　PRA argued to the Court that it would be impossible to obtain copies of every account statement from the original creditor to reflect a complete itemization of the charges and fees claimed to be owed because the original creditor is only required to maintain these records for two years under federal banking regulation 12 CFR 1026.25. The Court finds that if the original creditor did not even have these records in its possession, then it would not have been possible for PRA or any of its employees to have reviewed original creditor records that provide an itemization of the amount claimed to be owed in this lawsuit.

10.　　The Court finds that Ms. Patterson's Affidavit is false, in that Ms. Patterson purports to have relied upon "review of the business records of the Original Creditor" in making the conclusions set out in his Affidavit, whereas in fact Ms. Patterson relied only upon the few records filed by PRA in this action.

<u>CONCLUSIONS OF LAW</u>

11.　　Defendant submitted the following documents as evidence in support of the Motion:

- Consent Order issued by the Consumer Financial Protection Bureau in Administrative Proceeding File No. 2015-CFPB-0023, *In the Matter of: Portfolio Recovery Associates, LLC* dated September 3, 2015 (the "Consent Order");

3

POUNDS EX 0437

- "Stipulation and Consent to the Issuance of Consent Order" by Portfolio Recovery Associates, LLC dated September 3, 2015;

- Excerpt from Form 10-K for PRA Group, Ltd. for the year ended December 31, 2014, as filed with the Securities and Exchange Commission's "EDGAR" website ("Form 10-K").

The Consent Order, Stipulation and Form 10-K are received in evidence for purposes of considering the Motion. The Court has considered PRA's objection to consideration of the Consent Order based on Rule 408 of the North Carolina Rules of Evidence, relating to evidence of compromise and compromise negotiations. The Court finds that Rule 408 does not bar consideration of the Consent Order for the purposes of consideration of the Motion because the Consent Order is not offered to prove liability or damages, but rather is offered as evidence of the practical need for consumer protections enacted by N.C.G.S. § 58-70-155 and the other provisions of the Consumer Economic Protection Act of 2009, and as evidence bearing on the reliability of PRA's records under Rule 803(6) that may, under Rule 104(a), be considered regardless of admissibility.

12.     PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

13.     N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt buyer plaintiff file authenticated business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

14.     PRA failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "itemized" the amount claimed to be due and the amount and basis for the interest charged.

4

POUNDS EX 0438

15.     PRA also failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not authenticate account statements or other business records. No affidavit was offered from any person claiming familiarity with the circumstances under which the statements and other documents were created and maintained by the alleged original creditor.

16.     The Court concludes that N.C.G.S. § 58-70-155 is a jurisdictional statute, meaning that default judgments entered in violation of the statute are void. The Court reaches this conclusion in part because N.C.G.S. § 58-70-155's requirements are identified as "prerequisites." In reaching this conclusion, the Court considers the apparent legislative purpose in enacting N.C.G.S. § 58-70-155: to protect defendants against whom debt buyers seek to obtain default judgments. This legislative purpose is shown by the title of S.L. 2009-573 (the "Consumer Economic Protection Act of 2009"), by section 58-70-155's subject matter (default and summary judgments), and by the prevalence of default judgments in cases brought by debt buyers (a matter known to this Court from its own experience, a matter documented by a report issued by the Federal Trade Commission in February of 2009, and a matter documented in the Consent Order). Because default judgments are only available against defendants who fail to answer or appear, and because defendants who fail to answer or otherwise respond to lawsuits will invariably fail to appeal the entry of a default judgment, the protections of section 58-70-155 would be meaningless if this statute's "prerequisites" can be enforced only through appeal. Rather, N.C.G.S. § 58-70-155 was meant to rectify the problem at the door of the courthouse. The Court therefore concludes that a default judgment entered upon a record that fails to comply with section 58-70-155's prerequisites is void and subject to being set aside under Rule 60(b)(4).

17.     Good cause exists for setting aside the Entry of Default, for the reasons set out elsewhere in this order. It is fair and consistent with legislative intent that defendant should be

5

POUNDS EX 0439

permitted to defend against PRA's claim by requiring PRA to present competent evidence in support of its claim.

NOW, THEREFORE, it is hereby ORDERED that the Judgment by Default is hereby vacated and set aside pursuant to Rule 60(b), and that the Entry of Default is likewise vacated and set aside.

This, the 3 day of June, 2016.

Rebecca T. Tin, District Court Judge

6

POUNDS EX 0440

NORTH CAROLINA
MECKLENBURG COUNTY

GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
    Plaintiff )
                                       )

v.                                                15-CVD-15284

LISA WALLS,                               )
    Defendant                          )



MECKLENBURG COUNTY
**FILED #100**
JUN 0 8 2016
AT_____O'CLOCK____M
BY_____
CLERK OF SUPERIOR COURT

## ORDER

    This matter has come on for hearing on defendant's Motion to Set Aside Default Judgment and Entry of Default (the "Motion"). Defendant has requested that the court enter findings of fact and conclusions of law.

### FINDINGS OF FACT

    1.    The Complaint filed by plaintiff Portfolio Recovery Associates, LLC ("PRA") alleges that defendant had a credit account with GE Capital Retail Bank f/k/a GE Money Bank, that defendant defaulted in the payment obligations on the account, and that the account was acquired by PRA.

    2.    Defendant did not file an Answer to the Complaint. PRA sought and obtained entry of default and default judgment. Judgment by Default was entered by the Assistant Clerk of Court for Mecklenburg County on October 7, 2015.

    3.    PRA is engaged in the business of purchasing delinquent or charged off consumer credit accounts.

    4.    PRA did not file authenticated business records providing an "itemization of the charges and fees" that gave rise to defendant's alleged indebtedness.

POUNDS EX 0441



EXHIBIT
30

5.     PRA's "Affidavit and Motion for Entry of Default and Default Judgment" states that account statements attached to the Complaint "reflect an itemization of the charges and fees owed, along with an explanation of how the balance owing on the account was calculated." However, the two monthly account statements attached to the Complaint and incorporated by reference into the "Affidavit and Motion for Entry of Default and Default Judgment" do not itemize the charges and fees that give rise to the alleged indebtedness on the account.

6.     PRA did not provide an affidavit from any person who purported to authenticate any account statements or other documents that purported to itemize the charges and fees that give rise to the alleged indebtedness on the account.

7.     PRA did not provide an affidavit from any person who claimed familiarity with the circumstances under which information contained on account statements or other documents was created and maintained by the original creditor.

8.     PRA did not provide any affidavit from anyone employed by the original creditor who reviewed any of the original creditor's records of the defendant's account that showed an itemization of the charges and fees claimed to be owed. PRA did file a document titled "Affidavit" executed by PRA employee Dwayne E. Davis and notarized on December 15, 2014, which states that the matters set out therein are "based upon a review of the business records of the Original Creditor GE CAPITAL RETAIL BANK/OLD NAVY and those records transferred to [PRA] from GE CAPITAL RETAIL BANK ("Account Seller"), which have become a part of and have integrated into [PRA's] business records, in the ordinary course of business." However the Court has been advised by counsel for PRA during this proceeding, and the Court finds, that the only records of the original creditor to which Mr. Davis's affidavit refers are the documents that PRA filed in this proceeding. The documents filed by PRA in this proceeding are two

2

POUNDS EX 0442

account statements; three documents titled "Bill of Sale," none of which make any reference to defendant's account; a two-page, two-column, untitled document containing the language "Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GE CAPITAL RETAIL BANK pursuant to the sale of accounts from GE CAPITAL RETAIL BANK to Portfolio Recovery Associates, LLC."

In addition, PRA also filed a copy of an affidavit signed by Diane Stone, an employee of the original creditor, titled "Affidavit of Sale of Account by Original Creditor." This affidavit, however, refers generally to a pool of charged-off accounts. It does not refer to defendant's specific records and does not purport to authenticate any account statement or other document.

The Court finds that these records do not support the claim for the amount Plaintiff is seeking. The Court finds that none of these records shows the underlying basis for the amount claimed to be owed.

9.    PRA argued to the Court that it would be impossible to obtain copies of every account statement from the original creditor to reflect a complete itemization of the charges and fees claimed to be owed because the original creditor is only required to maintain these records for two years under federal banking regulation 12 CFR 1026.25. The Court finds that if the original creditor did not even have these records in its possession, then it would not have been possible for PRA or any of its employees to have reviewed original creditor records that provide an itemization of the amount claimed to be owed in this lawsuit.

10.    The Court finds that Mr. Davis's Affidavit is false, in that Mr. Davis purports to have relied upon "review of the business records of the Original Creditor" in making the conclusions set out in his Affidavit, whereas in fact Mr. Davis relied only upon the few records filed by PRA in this action.

3

POUNDS EX 0443

## CONCLUSIONS OF LAW

11.     Defendant submitted the following documents as evidence in support of the Motion:

- Consent Order issued by the Consumer Financial Protection Bureau in Administrative Proceeding File No. 2015-CFPB-0023, *In the Matter of: Portfolio Recovery Associates, LLC* dated September 3, 2015 (the "Consent Order");

- "Stipulation and Consent to the Issuance of Consent Order" by Portfolio Recovery Associates, LLC dated September 3, 2015;

- Excerpt from Form 10-K for PRA Group, Ltd. for the year ended December 31, 2014, as filed with the Securities and Exchange Commission's "EDGAR" website ("Form 10-K").

The Consent Order, Stipulation and Form 10-K are received in evidence for purposes of considering the Motion. The Court has considered PRA's objection to consideration of the Consent Order based on Rule 408 of the North Carolina Rules of Evidence, relating to evidence of compromise and compromise negotiations. The Court finds that Rule 408 does not bar consideration of the Consent Order for the purposes of consideration of the Motion because the Consent Order is not offered to prove liability or damages, but rather is offered as evidence of the practical need for consumer protections enacted by N.C.G.S. § 58-70-155 and the other provisions of the Consumer Economic Protection Act of 2009, and as evidence bearing on the reliability of PRA's records under Rule 803(6) that may, under Rule 104(a), be considered regardless of admissibility.

12.     PRA is a "debt buyer" within the meaning of that term as used in N.C.G.S. § 58-70-155. The instant case is "against a debtor" and involves "a complaint initiated by a debt buyer" within the meaning of the language of N.C.G.S. § 58-70-155(a).

13.     N.C.G.S. § 58-70-155 requires, as a "prerequisite" to the entry of a default judgment in a debt buyer case against a debtor, that the debt buyer plaintiff file authenticated

4

POUNDS EX 0444

business records containing, among other things, an itemization of the charges and fees claimed to be owed and the amount and basis for claimed interest.

14. PRA failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not submit account statements or other business records that "itemized" the amount claimed to be due and the amount and basis for the interest charged.

15. PRA also failed to comply with the "prerequisites" of N.C.G.S. § 58-70-155, because PRA did not authenticate account statements or other business records. No affidavit was offered from any person claiming familiarity with the circumstances under which the statements and other documents were created and maintained by the alleged original creditor.

16. The Court concludes that N.C.G.S. § 58-70-155 is a jurisdictional statute, meaning that default judgments entered in violation of the statute are void. The Court reaches this conclusion in part because N.C.G.S. § 58-70-155's requirements are identified as "prerequisites." In reaching this conclusion, the Court considers the apparent legislative purpose in enacting N.C.G.S. § 58-70-155: to protect defendants against whom debt buyers seek to obtain default judgments. This legislative purpose is shown by the title of S.L. 2009-573 (the "Consumer Economic Protection Act of 2009"), by section 58-70-155's subject matter (default and summary judgments), and by the prevalence of default judgments in cases brought by debt buyers (a matter known to this Court from its own experience, a matter documented by a report issued by the Federal Trade Commission in February of 2009, and a matter documented in the Consent Order). Because default judgments are only available against defendants who fail to answer or appear, and because defendants who fail to answer or otherwise respond to lawsuits will invariably fail to appeal the entry of a default judgment, the protections of section 58-70-155 would be meaningless if this statute's "prerequisites" can be enforced only through appeal.

5

POUNDS EX 0445

Rather, N.C.G.S. § 58-70-155 was meant to rectify the problem at the door of the courthouse. The Court therefore concludes that a default judgment entered upon a record that fails to comply with section 58-70-155's prerequisites is void and subject to being set aside under Rule 60(b)(4).

17. Good cause exists for setting aside the Entry of Default, for the reasons set out elsewhere in this order. It is fair and consistent with legislative intent that defendant should be permitted to defend against PRA's claim by requiring PRA to present competent evidence in support of its claim.

NOW, THEREFORE, it is hereby ORDERED that the Judgment by Default is hereby vacated and set aside pursuant to Rule 60(b), and that the Entry of Default is likewise vacated and set aside.

This, the 3 day of June, 2016.

Rebecca T. Tin, District Court Judge

6

POUNDS EX 0446

NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
MECKLENBURG COUNTY                    DISTRICT COURT DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC, )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )    No. 14-CvD-22005
                                    )
SHARI SPECTOR,                      )
                    Defendant.      )

v.                          .       )    No. 14-CvD-22008
                                    )
ANGELA PLEDGER,                     )
                    Defendant.      )

v.                                  )    No. 15-CvD-1909
                                    )
PIA N. TOWNES,                      )
                    Defendant.      )

v.                                  )    No. 15-CvD-2893
                                    )
ROBERT W. WALTERS,                  )
                                    )
                    Defendant.      )

v.                                  )    No. 15-CvD-15284
                                    )
LISA WALLS,                         )
                                    )
                    Defendant.      )

HEARING BEFORE HONORABLE BECKY T. TIM
DISTRICT COURT JUDGE, JUDICIAL DISTRICT 26

WEDNESDAY, MAY 4, 2016

Volume 1 of 1
Pages 1 through 70



EXHIBIT
31

*Kay McGovern & Associates*
Suite 117, 314 West Millbrook Road • Raleigh, NC 27609-43
(919) 870-1600 • FAX 870-1603 • (800) 255-7886

POUNDS EX 0447

## A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

Andrew E. Hoke, Esquire
Sessoms & Rogers, P.A.
Post Office Box 110564
Durham, North Carolina   27709
(919) 688-1000
aehoke@sessomslaw.com


ON BEHALF OF THE DEFENDANTS:

J. Jerome Hartzell, Esquire
Attorney at Law
Post Office Box 10246
Raleigh, North Carolina   27605-0246
(919) 819-6173
jerry.hartzell@gmail.com

Carlene McNulty, Director of Litigation
Jason Pikler, Staff Attorney
The North Carolina Justice Center
224 South Dawson Street (27601)
Post Office Box 28068
Raleigh, North Carolina   27611-8068
(919) 856-2161
carlene@ncjustice.org
jason.pikler@ncjustice.org

Leah A. Kane, Staff Attorney
Legal Services of Southern Piedmont
1431 Elizabeth Avenue
Charlotte, North Carolina   28205
(704) 749-7490
LeahK@lssp.org

POUNDS EX 0448

**KAY McGOVERN & ASSOCIATES**                    **(919) 870-1600**
Suite 117, 314 West Millbrook Road                FAX  870-1603
Raleigh, North Carolina  27609-4380               (800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 50 of 120

# T A B L E   O F   C O N T E N T S

PRELIMINARY MATTERS                4

ARGUMENT OF COUNSEL

    By Mr. Hartzell              5-27
                                 59-60

    By Mr. Hoke                  27-59

JUDGMENT OF THE COURT              60-65

DISCUSSION                        65-69

POUNDS EX 0449

**KAY McGOVERN & ASSOCIATES**        **(919) 870-1600**
Suite 117, 314 West Millbrook Road      FAX  870-1603
Raleigh, North Carolina  27609-4380     (800) 255-7886

```
 1              P R O C E E D I N G S              2:03 p.m.

 2        (Recording begins at 2:03 p.m.)

 3        The Court:         Good afternoon.

 4        (Pause.)

 5        The Court:         All right.  Let's go ahead and

 6  call forward everyone in the matters of *Portfolio Recovery v.*

 7  *Sherry Specter, Angela Pledger, Pia Townes, Robert Walters,*

 8  *and Lisa Walls.*

 9        (Pause.)

10        The Court:         And just to let everybody know,

11  I got all notebooks and all briefs and have reviewed the

12  same.  And if I could have counsel state their names and

13  introduce themselves to me?  I see new faces.

14        Mr. Hoke:          Good afternoon, Your Honor;

15  Andrew Hoke with the Durham County Bar.  I'm here on behalf

16  of Portfolio Recovery Associates on each of these matters.

17        Mr. Hartzell:      May it please the Court, I'm

18  Jerry Hartzell of the Wake County Bar with Carlene McNulty

19  and Jason Pikler, likewise of the Wake County Bar, from the

20  North Carolina Justice Center, and Leah Kane, Legal Services

21  of the Southern Piedmont---

22        The Court:         (interposing)  Okay.

23        Mr. Hartzell:      ---for the movants.

24        The Court:         And are we ready to proceed?

25        Mr. Hartzell:      Yes, Your Honor.
```

POUNDS EX 0450

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1    The Court:        Okay.

2    Mr. Hartzell:        May it please the Court, as I

3 indicated a moment ago, I'm Jerry Hartzell of the Wake County

4 Bar.  We're appearing on behalf of the movants in these five

5 cases.

6    Your Honor should have received seven items in

7 connection with this group of motions or seven groups of

8 items.  In each case there should be a motion, some six pages

9 in length.  Each of the motions is substantially identical.

10 In each of the cases there is a set of exhibits, three

11 exhibits plus an authenticating affidavit.  Those exhibits

12 are entirely identical.

13    Then the movants have presented a notebook and a

14 brief.  The respondents have presented a notebook and a

15 brief.  And finally movants have presented a proposed order.

16 At the conclusion of this hearing, I will offer, if the Court

17 wishes to receive it, a thumb drive with a Microsoft Word

18 copy of that proposed form of order, or alternatively, should

19 we be successful, we would be happy to take the Court's

20 direction and draft in the manner that the Court instructs.

21    I'd like to talk first, if I may, please, about

22 the contents of our notebook, the notebook titled Movants'

23 Authorities and Support.  And I want to just walk through the

24 table of contents and tell you what we have presented in this

25 notebook and why.

POUNDS EX 0451

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 53 of 120

1        The first item, 1.A through 1.E, are the account

2   statements from each of the files.  We presented these here

3   in the hope that it limit the extent to which various files

4   had to be consulted.

5        The second group of items, 2.A through 2.E, are

6   the affidavits.  The statements we contend are relevant to

7   the itemization issue.  The affidavits are relevant to the

8   authentication issue.

9        The third item in here is the session law that

10  enacted G.S. 58-70-155.  We wanted to include it in the

11  notebook, Your Honor, because of the title of the enactment,

12  the Consumer Economic Protection Act of 2009.  And we wanted

13  to call the Court's attention to the fact that this body of

14  law, this act, refers to an itemization requirement three

15  separate times.

16       On the third page of the session law, we see a

17  reference in the next to the last line of newly enacted

18  Section 115(5).  We see it in the last line of Section

19  115(6), and we see it in Section 155(b)(4).  We wanted to

20  call the Court's attention to the session law because we

21  contend that it shows that this requirement for an

22  itemization was not merely loose language.

23       Tab 4 has a copy of the chief statute that we rely

24  upon in this motion, Section 58-70-155.  That refers to Rule

25  803(6) of the Rules of Evidence.  That rule appears at tab 5.

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1          At tab 6 through 9 we include four cases, each of

2 which has some highlighting.  The first two cases, *Unifund*

3 and *Bramco*, relate to the authentication and itemization

4 requirements.  That is, each of those cases talks both about

5 itemization and about authentication.

6          Tabs 8 and 9, each of those cases talks about the

7 sum certain requirement in Rule 55 necessary to confer

8 jurisdiction on clerks of court.  Tab 10 has some excerpts

9 from the CFPB consent order.  The consent order itself runs

10 20 or 30 pages.  We tried to take the things that we thought

11 were most pertinent and put them at tab 10.

12          The Court:          And is that public record, the

13 CFPB consent order?

14          Mr. Hartzell:          It's addressed in the--I don't

15 understand how to answer that question.  It's a matter that's

16 filed on the CFPB site.  The authenticating affidavit says

17 where it comes from.

18          The Court:          So it's on their web site?

19          Mr. Hartzell:          Absolutely.

20          The Court:          Okay.

21          Mr. Hartzell:          Absolutely.  And if you look at

22 Exhibit 4, which is Mr. Pikler's authenticating affidavit, it

23 gives the URL and how he found it.

24          Tab 11 is an OCC bulletin, and I included it in

25 its entirety.  The reason for including it is page 5 of that

POUNDS EX 0453

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 document where it talks about a bank's duties to provide

2 accurate and comprehensive information in connection with

3 debt sales.

4      The first sentence of that section on page 5

5 reads, "Banks should ensure that their debt buyers have

6 accurate and complete information necessary to enable them to

7 pursue collections in compliance with applicable laws and

8 consumer protections." And then finally tabs 12 and 13 are

9 the orders we obtained in the Brady case and the Peach case.

10      The motions that bring us before you today, Your

11 Honor, are the third time we have appeared before a court and

12 argued substantially the same issues. We argued those in

13 December of last year in Chatham County before Judge

14 Anderson. His order appears at tab 12 and he concluded that

15 the judgment by default entered in that case is held void and

16 is vacated and set aside pursuant to Rule 60(b)(4).

17      In January we appeared we appeared before Judge

18 Deborah Sasser in Wake District Court in the Peach case. And

19 she in late March entered the order that appears at tab 13.

20 She concluded, "The Judgment by Default is hereby vacated and

21 set aside pursuant to Rule 60(b)."

22      Judge Sasser did not use the word "void."

23 However, if you look at conclusion of law 9 in that Peach

24 order, she finds it was not a sum certain, "which is a

25 prerequisite to the Clerk having jurisdiction to enter a

POUNDS EX 0454

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 Default Judgment in this matter." So we believe that by

2 finding that there no jurisdiction, that's the legal

3 equivalent of a finding of voidness.

4        Now, in both the Brady case and the Peach case

5 after we obtained this order vacatur, PRA did not take any

6 action to dispute the ruling that the judges entered--the

7 rulings. Rather, in each of those cases after the order of

8 vacatur was entered, PRA took a voluntary dismissal.

9        Now, we have not--we are not arguing in our papers

10 before this Court today that those prior rulings are binding

11 on PRA under doctrine of issue preclusion, also known as

12 collateral estoppel.

13        But we do contend that PRA--if we should be

14 successful and PRA again fails to appeal, fails to do the

15 thing necessary to do an appeal, which would simply be filing

16 a motion for summary judgment, and then when summary judgment

17 is entered against it for exactly the same reasons that the

18 default judgment was vacated in *Brady* and *Peach*--if they fail

19 to appeal that, we intend to rely on the doctrine of

20 collateral estoppel if we are successful here today.

21        We think, frankly, that what PRA is doing, has

22 done, with the Brady and Peach orders is it has ignored them.

23 What do I mean by that? At this time I'd like to turn to

24 PRA's brief so that I can explain what I mean by that.

25        PRA's brief runs, I think, 17 pages. And at

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  page 11 through 13, PRA presents an argument that it

2  describes as our position, the final paragraph on page 11:

3           "Specifically, it is the defendants' position that

4           the plaintiff was required to submit documentation

5           showing every purchase, cash advance, balance

6           transfer, payment, fee, or interest charge or any

7           other transaction for the entire history of the

8           account in order to meet the itemization

9           requirement in Section 155."

10          They say it again in the paragraph that ends

11 page 12, third sentence, "If every statement were"--excuse

12 me.  They point out then, rather, last paragraph page 12,

13 third sentence, "If every account statement were required to

14 be produced, Section 155 would serve as a de facto prohibi-

15 tion against debt buyer losses."

16          Then on page 13, first full paragraph, first

17 sentence:  "Lastly, the defendants' interpretation of the

18 itemization requirement would require lawsuits to be filed

19 with hundreds, if not thousands, of pages of account

20 statements attached."

21          Your Honor, that is not our position.  We do not

22 say they are required to file all the account statements from

23 the time the accounts started.  And they raised this exact

24 same issue in *Peach*.

25          And if you look at the order that Judge Sasser

**KAY McGOVERN & ASSOCIATES**                          **(919) 870-1600**
Suite 117, 314 West Millbrook Road                          FAX  870-1603
Raleigh, North Carolina  27609-4380                      (800) 255-7886

1 entered in *Peach*, which again is tab 13 in our notebook, and

2 if you look at finding of fact paragraphs 25 and 26, you see

3 exactly how Judge Sasser dealt with this. She ruled, para-

4 graph 25:

5       "To require a debt-buyer to file with the Court

6       the detail of every specific charge ever made or

7       fee assessed over the life of a credit card might,

8       in some instances, be unduly burdensome to the

9       debt-buyer as well as an unnecessary burden on the

10       court."

11 So paragraph 26:

12       "Consistent with the legislative intent behind the

13       Act, the itemization of charges and fees presented

14       in support of a motion for default (or summary)

15       judgment must be detailed and include the particu-

16       lars of each charge and fee claimed to be

17       unpaid/owed, and this itemization must be the

18       'properly authenticated business records'... . In

19       other words, there should be business records

20       containing the specific details of individual

21       charges and fees that total at a minimum the

22       amount of the judgment Plaintiff seeks to obtain."

23       So the argument that we're asking them to attach

24 hundreds or thousands of pages is not an accurate statement

25 of our position. They argued this issue to Judge Sasser.

POUNDS EX 0457

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 Judge Sasser made a specific finding, indeed a finding in

2 response to Mr. Hoke's argument, "Just tell us what we need

3 to do." In this brief it's as though that never happened.

4 The other place that they're ignoring, we

5 respectfully submit, the *Brady* and *Peach* rulings can be drawn

6 from their brief at page 14. "PRA"--the last full paragraph,

7 "PRA characterizes the current state of the law on this issue

8 as one in which there is a split of authority." The last

9 sentence of that paragraph, "While trial courts have been

10 split on the issue of itemization," the first sentence of

11 that paragraph, "Trial courts have given differing inter-

12 pretations of the itemization requirement."

13 And Your Honor, as the authority for that they

14 rely on this case called *World Acceptance Corporation v.*

15 *Carter*. They're so fond of it that it appears both in their

16 notebook and as Exhibit A to their brief.

17 And they say in their brief, "The Court in *Carter*

18 held that the plaintiff's documents, including several

19 account statements, were sufficient to meet the itemization

20 requirement." Respectfully, that's not an accurate

21 characterization of the Carter case.

22 We went to Durham, pulled the file, and scanned

23 the file. Permission to approach?

24 The Court: Uh-huh.

25 Mr. Hartzell: Your Honor will note that there

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  are some numbered tabs on the right side.  Did I say

2  Guilford--Durham County.

3           Voice:          You said Durham.  It's

4  Guilford.

5           Mr. Hartzell:      Guilford, thank you.  We went

6  to Guilford County and pulled this.  The numbered tabs on the

7  right side of this packet of papers from the file in *Carter*,

8  each one of those is attached to one of the account state-

9  ments that was in the file in that case.  There were 18

10 account statements that were filed in that case.

11          So the notion that there is a split of authority

12 based on this Carter case, which they both attached to their

13 brief and included in their notebook--well, the factual

14 premise is incorrect.  I mean this is district court.  When

15 do you usually have--if you have a defendant come in here,

16 take the stand charged with DUI, "How many beers did you

17 have?"  "Several," when it comes out the person actually had

18 18, that might cause that defendant to suffer a certain loss

19 of credibility.  Now, that's what they've got.

20          There's one other thing going on, by the way, that

21 differentiates the *World Acceptance Corporation v. Carter*

22 situation from PRA's situation.  *World Acceptance Corp. v.*

23 *Carter*, they didn't have a set of CFPB findings about how

24 World Acceptance Corporation's records were all messed up.

25          Now, we don't contend that PRA has deliberately

POUNDS EX 0459

**KAY McGOVERN & ASSOCIATES**                    **(919) 870-1600**
Suite 117, 314 West Millbrook Road                        FAX  870-1603
Raleigh, North Carolina  27609-4380                      (800) 255-7886

1  tried to play fast and loose with its characterization of the

2  Carter file.  It was Mr. Hoke's case, but we don't make any

3  contention that there's an effort to deceive the Court here.

4  And we think there's a reason that it's realistic to believe

5  this is something that just got by them.

6           If you look at the CFPB consent order entered in

7  this case--and that's in the exhibits to the motions--it

8  tells you something about how many cases the lawyers who

9  represent PRA---

10           The Court:           (interposing)  I only saw the

11  excerpts from that consent judgment.  Where do I find the

12  whole thing?

13           Mr. Hartzell:      The whole thing is the exhibits

14  in support of the motions.  So we filed a motion to set aside

15  and then with that we put a set of exhibits, so it would be

16  in the court file.

17           (Pause.)

18           The Court:           Okay.

19           Mr. Hartzell:      Let me first talk about why we

20  believe the facts are consistent with an innocent what we

21  regard as mischaracterization.  Page 1260, paragraph 46---

22           The Court:           Where are you looking now?

23           Mr. Hartzell:      The CFPB consent order, which

24  is Exhibit 1 in support of the--of the exhibits, page 12 of

25  60.

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1          The Court:          Okay.

2          Mr. Hartzell:          Paragraph 46, "Over a three

3    year period, PRA placed tens of thousands of debts with law

4    firms staffed by fewer than five attorneys.  For example,"

5    and it talks about a New York firm.

6          Then it talks about North Carolina, "For example,

7    PRA placed 21,000 debts with a North Carolina law firm

8    employing only five attorneys."  Well, if you're doing 21,000

9    accounts with a firm of five attorneys over a space of three

10   years, it's not unrealistic to think that notwithstanding

11   their efforts, they may forget what these different files

12   look like.

13         But the other thing I wanted to call the Court's

14   attention to in here is paragraph 28, which is on page 7 of

15   60.  And we just quoted the first portion of that in tab 10

16   when we gave the summary, "PRA is aware that significant

17   inaccuracies may exist in the Sale Files it purchases."

18         But if you go on and read that entire paragraph

19   28, we think it's kind of chilling, including that:

20              "some Debts' balances were not reduced by a

21              consumer's subsequent payments.  For instance,

22              when a PRA senior manager raised a concern about

23              the poor quality of sellers' balance information

24              and asked how PRA can know actual balances owed if

25              it does not receive information on post charge-off

POUNDS EX 0461

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1           payments, [the] Vice President for Collections

2           responded, 'We don't.  90 percent of our cases are

3           default judgments.  We show the judge the math and

4           if no one disputes it, we get our judgment.

5           Debtor has the right to defend and prove us wrong.

6           If they show payments we've missed, we amend the

7           complaint.'"

8 Now, you don't have facts like that in the Carter case.

9        Now, let me go off on a digression as long as

10 we're talking about the CFPB order and say that at page 16 of

11 PRA's brief they say we shouldn't consider this CFPB consent

12 order because it's a settlement and it's governed by Rule

13 408.

14        I would respectfully call the Court's attention to

15 the last sentence of Rule 104(a) of the North Carolina Rules

16 of Evidence, which is the rule that says that in deciding

17 whether evidence should be admitted, Courts do not need to

18 take--follow the rules of evidence.  In other words, if a

19 document goes to whether or not another document is

20 admissible, that's not--that first document itself does not

21 have to be admissible.  104(a), first sentence:

22           "In addition, we don't contend that what we're

23           offering the CFPB consent order for is the

24           validity or invalidity of a claim or amount.

25           Rather, we think we're offering it for the

POUNDS EX 0462

**KAY McGOVERN & ASSOCIATES**      **(919) 870-1600**
Suite 117, 314 West Millbrook Road      FAX 870-1603
Raleigh, North Carolina 27609-4380      (800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 64 of 120

1    purposes of commenting on the quality of PRA's

2    records and the need for a statute such as the

3    Consumer Economic Protection Act of 2009."

4    In short, we don't think there's any split on the

5 issue of itemization and that PRA cannot ignore the *Brady* and

6 *Peach* rulings. We think this Court should agree with the

7 *Brady* and *Peach* rulings.

8    We've attached the 2009 act, and at pages 11 and

9 12 of our brief we summarize its background. Your Honor, it

10 happens that shortly before this statute, this group of

11 statutes, was enacted in February of 2009, the Federal Trade

12 Commission published a study on debt collection and debt

13 buying. The 2009 FTC study said, "Perhaps the most

14 significant issue associated with this area is the prevalence

15 of default judgments." We cite that FTC study at page 11 of

16 our brief.

17    Default judgments is still an enormous problem for

18 the courts of the nation, not just in North Carolina. On

19 page 31 of our brief, we refer to a November 2015 article in

20 the *ABA Journal* that's titled "Burying Defendants in

21 Defaults." And paragraph 44 of the CFPB order says that for

22 PRA fewer than 6 percent of their defendants respond to the

23 complaints.

24    So when the legislature took up the issues

25 addressed in the Consumer Economic Protection Act of 2009, it

POUNDS EX 0463

**KAY McGOVERN & ASSOCIATES**    **(919) 870-1600**
Suite 117, 314 West Millbrook Road    FAX  870-1603
Raleigh, North Carolina  27609-4380    (800) 255-7886

```
 1  knew that substantially all defendants in these debt buyer
 2  cases do not appear.  And so the issue the legislature was
 3  confronted with is how do we provide a measure of protection
 4  for folks who overwhelmingly, overwhelmingly will not appear.
 5            So what did they do?  They enacted this authenti-
 6  cated business record itemization requirement.  They used a
 7  term that we contend had a fairly well recognized meaning in
 8  North Carolina law and in the law generally.  And in Section
 9  155 they gave the statute a title and they called the filing
10  of this material prerequisites.
11            If you look at tab 1, the account statements that
12  are attached there, two of them per case, cannot
13  realistically be called itemizations.  In each case what you
14  see is a $35 late fee and a little bit of interest.  If you
15  compare that with what was shown in the Carter case with the
16  18 statements, it is night and day.  And Carter is the basis
17  for arguing that there's a split of authority?  We contend
18  that's not a reasonable argument.
19            We argue both lack of itemization and a lack of
20  authentication.  On the issue of authentication we would
21  respectfully refer the Court to the Peach order findings of
22  fact paragraphs 10 through 18.
23            The Court:        What tab is that in again?
24            Mr. Hartzell:     The Peach order is tab 13, Your
25  Honor.
```

POUNDS EX 0464

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 66 of 120

1    The Court:    Okay.

2    Mr. Hartzell:   And paragraphs 10 through 18

3 appear at pages 4 through 6 of that order. And I think that

4 the critical paragraph is number 10 where Her Honor, Judge

5 Sasser, made some of that paragraph in bold letters.

6    Let me also say while Your Honor is looking at

7 that order that the itemization discussion appears at page 7

8 through the top of page 9.

9    The Court:    Uh-huh.

10   Mr. Hartzell:   Now, we contend the violation

11 of Section 155 is pretty clear and we contend that that

12 violation leads to two conclusions: number one, that no sum

13 certain has been shown so as to bring this within the

14 jurisdiction of the clerks of court to enter default

15 judgments under Rule 55; and number two, just simply because

16 of both the statute itself and its use of the term

17 "prerequisite" that there is a lack of subject matter

18 jurisdiction to enter default judgments in the absence of

19 compliance with those prerequisites.

20   I'd like to turn back from tab 13 of the *Peach*

21 order to tab 12 and the *Brady* order for just a minute and

22 call Your Honor's attention to the material that's at the top

23 of page 4, the latter part of paragraph number 8.

24   This language beginning on the second line of page

25 4 with the phrase "The prerequisites imposed by statute,"

POUNDS EX 0465

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  that is all Judge Anderson's writing. We did not contribute

2  that in a form order. And in the proposed form of order that

3  we have submitted to this Court, we did not include that

4  language. Rather, we put this language in our brief, but

5  that is Judge Anderson's consideration of subject matter

6  jurisdiction and the term "prerequisites."

7          Now, PRA argues at page 6 of its brief that if

8  there was a failure to comply with Section 155, it's merely

9  error and not such--"mere error of law, not such as to

10  warrant relief under Rule 60(b)." I'd like to ask the Court

11  to consider that position for a moment.

12          We know that virtually all defendants in cases

13  brought by debt buyers lose by way of default judgment. We

14  know from the CFPB consent order that fewer than 6 percent of

15  defendants in these cases brought by PRA--fewer than 6

16  percent respond.

17          And I think you can take it as a given that

18  somebody who is represented by a lawyer will typically not

19  suffer a default judgment because our business as lawyers if

20  we're on the defense side is to make sure that whatever

21  happens, you don't have a default entered against you--or

22  against your client.

23          Now, it's kind of easy to file something that

24  counts as an answer in state court. If I write a letter to

25  the clerk saying, "I'm not sure I owe this and I don't have

POUNDS EX 0466

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 the money in any event, Very truly yours, Jerry Hartzell,"

2 that's an answer.

3          But think about what it takes to do an appeal.  In

4 order to do an appeal, you've got to start with a notice of

5 appeal.  You've got to take your $150 or whatever it is as an

6 appeal fee, you've got to make up a record on appeal, and

7 you've got to deposit the whole thing on Morgan Street.

8          If the only way you could vindicate the

9 prerequisite requirement of 155 was to appeal, that statute

10 would be a dead letter because if you look at fewer than 6

11 percent responding in any way and think how many of that

12 fewer than 6 percent would ever appeal--and let's not forget

13 you've got to appeal within 30 days--it just would never

14 happen.

15          With all that by way of background, Your Honor,

16 I'd like to turn to our proposed form of order and explain to

17 you what we seek and why.  Permission to approach?

18          The Court:          Uh-huh...

19          Mr. Hartzell:          This thumb drive contains a

20 Microsoft Word copy of the document we submitted to the Court

21 entitled Movants' Proposed Order.  We have five findings of

22 fact in the proposed order.  The second one is that "PRA is

23 engaged in the business of purchasing delinquent or charged

24 off consumer accounts."  The authority for that is Exhibits 1

25 and 3.

POUNDS EX 0467

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 69 of 120

```
 1          Paragraph 3 would find that "PRA did not file
 2   authenticated business records providing an 'itemization.'"
 3   The authority for that is set out at pages 17 through 20 of
 4   our brief.  Paragraph 4 would find that there was no
 5   affidavit from an affiant who authenticated the account
 6   statements and claimed familiarity--the records with
 7   familiarity (sic).  The argument for that appears at pages 14
 8   through 17 of our brief.
 9          In the conclusions of law---
10          The Court:          (interposing)  Let me ask, what
11   kind of affidavit do you think would satisfy the requirement
12   to authenticate the---
13          Mr. Hartzell:       (interposing)  An affidavit---
14          The Court:          ---credit borrowing records?
15          Mr. Hartzell:       An affidavit from--let's--
16   let's--let's set our assumed facts first.  Let's assume that
17   the account statements come from the original creditor, Chase
18   Bank, let's say.  An affidavit from somebody who says, "I am
19   familiar with Chase Bank's electronic records and the manner
20   in which they were created and in which they are maintained.
21   The attached account statements dated X, Y, and Z are true
22   and accurate copies.  Chase maintains measures to ensure the
23   accuracy of this electronic data including X, Y, and Z,"
24   signature line.
25          Now, if challenged, that affiant would have to be
```

POUNDS EX 0468

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  in a position to explain how it is that she's familiar with

2  these records.  But that's the bones of it, that that affiant

3  is familiar with the circumstances of the creation and

4  maintenance of these records.

5          The Court:          So in the Wall (sic) case--I

6  believe that was the only one where there was an affidavit

7  from the original---

8          Mr. Hartzell:          (interposing)  That's correct,

9  Your Honor.

10          The Court:          ---creditor.  Tell me why that

11  fails, but let me first get to that affidavit.  I think it's

12  2E?

13          Mr. Hartzell:          2E, the first page.

14          The Court:          Because she doesn't identify

15  Mr. (sic) Walls' records.

16          Mr. Hartzell:          Precisely, precisely; for the

17  reason set out at paragraph 10 of the *Peach* findings of fact.

18  Also, in this affidavit of sale, Ms. Stone does not assert

19  that she's familiar with the manner in which those electronic

20  records were created nor maintained.

21          Also, look at the last paragraph there, the last

22  sentence, "The above statements are true to the best of my

23  knowledge."  I mean this becomes an "I don't have any

24  contrary information" affidavit without anything to show that

25  the absence of contrary information on her part is

POUNDS EX 0469

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 significant.

2         "The creditor has a process to detect and correct

3 errors on these accounts." What does that mean? In short we

4 think that the fundamental flaw here is they don't

5 authenticate any documents. The second flaw is she doesn't

6 show how she's in a position to authenticate. And that's the

7 same shortcoming we see in the cases at tab 6 and 7 in the

8 notebook.

9         The Court:         Okay.

10         Mr. Hartzell:         I'm on our proposed order

11 conclusion of law, paragraph 6, the first conclusion of law.

12 I don't think that's a controversial proposition, but it's

13 addressed at pages 23 through 27 of our brief.

14         Paragraph 7, "In order for the amount sought in

15 PRA's Complaint to be a 'sum certain,' PRA was required to

16 show"--we rely on the Basnight case and the Carolina Builders

17 case, which are tab 8 and tab 9 in our notebook. Also for

18 that paragraph take a look at pages 24 through 27 of our

19 brief.

20         Now, without wishing to make things complicated,

21 let me explain that paragraph 7 just says these are not sum--

22 this is not sufficient to show a sum certain. This paragraph

23 7 does not depend on a finding that Section 155 was not

24 followed.

25         Then beginning on page 8 we go through the Section

POUNDS EX 0470

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 72 of 120

1  155 analysis.  Paragraph 8 identifies the records.  Paragraph

2  9 concludes they're a debt buyer.  Paragraph 10, it says what

3  155 requires.  Paragraph 11, it says, again, as we just

4  covered in paragraphs 3 and 4 of the findings of fact, PRA

5  failed to comply.

6         And then we come to paragraph 12.  It posits that

7  Rule 55(b) and Section 155 have to be interpreted

8  harmoniously *in pari materia*.  And so if the materials

9  submitted in support of a default judgment do not comport

10 with Section 155, they cannot provide the sum certain that's

11 required by Rule 55(b).

12        Paragraph 13, because they didn't show a sum

13 certain, the clerk lacked jurisdiction.

14        Now, paragraph 14 goes in a little bit different

15 direction.  Paragraph 14 is the--if you don't comply with

16 Section 155, there's no subject matter jurisdiction.  In

17 other words, it doesn't depend on the sum certain analysis.

18 It depends on the concept of it being a prerequisite.  Take a

19 look at our brief, pages 20 through 23 of that.

20        Paragraph 15, I asked for it in *Peach* and asked

21 for it in *Brady*, and neither of the courts gave it to me.  We

22 probably don't deserve to get it.  What Judge Anderson said

23 was "Look, you prevailed on Rule 60(b)(4), void judgment.

24 We only looked at 60(b)(6).  Other factors warranting relief,

25 if there's not relief available under some other branch of

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  Rule 60(b), so I'm denying that."  Judge Sasser didn't

2  address it.

3  Paragraph 16, "Good cause exists for setting aside

4  the Entry of Default," for reasons that are stated elsewhere

5  in this order.  I think that's self-explanatory.  Your Honor,

6  that's the order we would ask the Court to consider entering.

7  We think that judicial decisions speak not only to

8  the matters in the specific case that come before the Court,

9  but also to the propositions of law that are addressed in the

10  course of addressing a specific case.

11  We don't think PRA can--if you go our way with

12  these motions, we don't think PRA can continue to contend

13  there's a split of authority.  We don't think they can

14  continue to contend that what the movants are seeking are

15  thousands of pages of statements.  We think that they have to

16  acknowledge that their entire body of judgments represent--

17  they reside on a jurisdictionally flawed approach to this

18  process.

19  Judge, the General Assembly in 2009 could

20  conceivably have appropriated many millions of dollars for

21  representation for debt buyers.  Instead what they did was

22  they tried to put the onus on the debt buyer itself to only

23  present default judgment motions in a certain way.

24  We think they failed to do that.  We respectfully

25  ask that you enter an order vacating the judgments in these

POUNDS EX 0472

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 five cases for the reasons I've argued and the reasons set

2 out in our brief.  Thank you.

3          The Court:          Thank you.  Counsel?

4          Mr. Hoke:          Thank you, Your Honor.  There

5 are essentially two questions for the Court today

6 (inaudible), Your Honor.  First, is whether these defendants

7 should be allowed to avoid liability for debts that they

8 clearly owe after they failed to respond to a lawsuit and the

9 clerk determined that the requirements for default judgment

10 were indeed met.

11          The second question is whether the Consumer

12 Economic Protection Act should be read to require a debt

13 buyer to file volumes of documentation just to prove an

14 uncontested claim.  We think or speculate that the answer to

15 both of those questions is no.  In each of these five cases

16 my client filed documentation that was sufficient to meet the

17 statute, and the clerk properly entered judgment.

18          Even if the clerk had erred in applying the

19 statute, which again we argue that the clerk did not err,

20 such an error would be an error of law and something that's

21 not subject to review under Rule 60.  So for either of those

22 two reasons, Your Honor, we are respectfully requesting that

23 the motion be denied.

24          So by way of a little background, Your Honor, each

25 of these defendants opened up credit accounts with my

POUNDS EX 0473

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  client's predecessors in interest, and they were issued

2  account statements on those credit accounts.

3        Federal regulatory law, Regulation Z, requires

4  creditors to issue account statements on these open-ended

5  credit card accounts. Those account statements have to do

6  certain things such as--including provide a full trans-

7  actional record of transactions during that billing period

8  and an itemized balance of what's due at the end of that

9  period.

10        It also provides--Regulation Z--provides a 60 day

11  window that consumers can dispute any statement they receive

12  from a creditor. And if they do dispute it, then that

13  triggers certain obligations of the creditor.

14        In each of these cases the defendants defaulted on

15  the credit accounts and they were charged off. They were

16  issued an account statement showing the balance on the

17  account at charge-off. That's commonly referred to as the

18  charge-off statement. There's absolutely no indication or

19  evidence that these defendants disputed that charge-off

20  statement in any way.

21        So the accounts were charged off and they were

22  sold to my client. Defendants were sent a validation letter,

23  which gives them notice of their right to dispute the debt

24  under the Fair Debt Collection Practices Act. Next they were

25  sent a notice of intent to file legal action, which the

POUNDS EX 0474

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  Consumer Economic Protection Act requires debt buyers to send

2  to consumers at least 30 days before they file suit.

3         Lastly, each of these defendants was served with a

4  civil summons, which gave them information explaining that

5  they had to file an answer if they wanted to contest the

6  claim, and also of course the complaint, which sets forth the

7  allegations of the claim and attached documentation in

8  support of that claim including that undisputed charge-off

9  statement that I mentioned earlier as well as chain of

10 ownership information showing that PRA was the owner of the

11 account.

12        The point of saying that, Your Honor, is that

13 these defendants have had a number of opportunities to

14 dispute this debt with the original creditor, with my client.

15  They've also had a chance to come to court and dispute the

16 claim.  At each turn they chose not to do that.

17        So they're coming back here at this late stage

18 after judgment has already been entered asking that these

19 judgments be set aside, not because the debts aren't owed,

20 but because they contend that the clerk misapplied

21 Section 155 of the act.

22        The problem with that is that Rule 60 provides for

23 a limited scope of review.  It's much more limited than say

24 an appeal.  And to illustrate that, I want to turn to the

25 first page in my binder.  It's at tab 2, and that is the case

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  of *Burton v. Blanton.*  It was heard in the North Carolina

2  Court of Appeals, Your Honor.  We've underlined sections on

3  page 2 and 3.

4            This case matters because it indicates the

5  difference between a judgment that is void and a judgment

6  that is erroneous.  That's an important distinction, Your

7  Honor, because a void judgment is subject to being set aside

8  under Rule 60, but an erroneous judgment is not.  The Court

9  held on page 2 that:

10            "A Rule 60(b)(4) motion is only proper where a

11            judgment is 'void,' as that term is defined by the

12            law.  A judgment will not be deemed void merely

13            for an error in law, fact, or procedure.  A

14            judgment is void only when the issuing Court has

15            no jurisdiction over the party or [the] subject

16            matter in question or has no authority to render

17            the judgment entered."

18            The Court:        And then let me ask a question.

19  If you didn't provide documentation sufficient to satisfy

20  58-70-155, which is entitled "Prerequisites to entering a

21  default or summary judgment," and this case you just pointed

22  me to says a judgment is void if the Court has no authority

23  to render the judgment entered and if this statute says the

24  Court can't enter default judgment unless the prerequisites

25  are satisfied, then why wouldn't it be void---

POUNDS EX 0476

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1    Mr. Hoke:            (interposing)  Your Honor,
2 that's---

3    The Court:          ---if the Court finds that 155
4 was not satisfied?  Wouldn't that--is that exactly what this
5 case is holding that you're pointing me to?

6    Mr. Hoke:           No, Your Honor, we respectfully
7 disagree.  Section 155 in the statute does not mention
8 jurisdiction.  It simply says that these are the require-
9 ments and---

10   The Court:          (interposing)  And that
11 judgment can't be entered unless the requirements are met.

12   Mr. Hoke:           Correct, Your Honor.

13   The Court:          So if judgment is entered and
14 the requirements aren't met, the judgment would be void.

15   Mr. Hoke:           I think I can answer that
16 question by the next highlighted portion of that case.
17 That's page 3 of the case.  It says that "An erroneous
18 judgment, by contrast, is one entered according to proper
19 court procedures and practices, but is contrary to the law or
20 involves misapplication of the law."

21   So it's our position that the court--that the
22 clerk got it right in each of these cases.  It's also our
23 position that a misapplication of the law is something that
24 would render the judgment erroneous but not void.  What they
25 are arguing is that the clerk erred as a matter of law in

POUNDS EX 0477

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  determining that the statutory requirements were not met.

2         We think that in either case the clerk had juris-

3  diction on a basic level to determine whether Section 155 was

4  met.  So the issue is not one of jurisdiction.  It's one of

5  statutory interpretation.  So we think that even if the clerk

6  erred, that would render the judgment erroneous, and *Burton*

7  *v. Blanton* says that that's not something that can be set

8  aside under Rule 60.

9         Your Honor, to get around that, they are--

10 Defendants are contending that our claims were not made for a

11 sum certain.  The reason that Defendants argue that is

12 because that's how they're trying to get to the

13 jurisdictional issue.  If a claim is not for a sum certain,

14 then the clerk would not have jurisdiction to enter the

15 judgment.  So in that instance I think that kind of judgment

16 would be set aside--or would be void and subject to being set

17 aside.

18        However, in each of these cases my clients

19 provided documentation that was not only sufficient to meet

20 the statute in question, but also sufficient to state a sum

21 certain.  And I'd like to turn to tab 3 of our notebook.

22 That's the case of *Smith v. Barfield*, and the underlined

23 sections are on page 2.

24        Your Honor, Rule 65 says that a clerk can enter a

25 default judgment if the claim is for a sum certain.  It also

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  says that you can state a sum certain by affidavit or by

2  verified complaint.

3          And in this case, *Smith v. Barfield*, the plaintiff

4  was trying to seek damages on a contractual claim, similar to

5  what my clients are seeking.  And they attached a verified

6  complaint stating the balance that they claimed was owed on

7  that contractual claim.  The Court held in that case, "This

8  clearly constitutes a claim for a sum certain."

9          What we did in these cases, Your Honor, is much

10  more than what was done in the *Smith v. Barfield* case.  We

11  filed--my client filed an affidavit in support of the claim

12  stating the sum certain, the charge-off statement that we

13  mentioned earlier stating that balance, and the bill of sale,

14  which shows the chain of ownership and includes data from the

15  original creditor's records also stating that balance.  So

16  it's not just a sum certain, Your Honor.  It's a sum certain

17  in three places.

18          We think that that is critical, Your Honor,

19  because if the claim was for a sum certain, then the clerk

20  had jurisdiction to make a ruling one way or the other.  If

21  the clerk did have jurisdiction, then the judgment can't be

22  void.

23          The next argument that they have made is that

24  Section 155 somehow changed the requirements for stating a

25  sum certain.  I think in essence what they're arguing is that

POUNDS EX 0479

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1  the legislature intended to strip jurisdiction from the clerk

2      in these cases if the requirements aren't met.

3          The problem for that, Your Honor, is that there's

4  nothing--there's no evidence for that.  There's nothing in

5  the statute that mentions sum certain.  There's nothing in

6  the statute that mentions the clerk's jurisdiction.  They're

7  only using that term "prerequisites."  Likewise, Your Honor,

8  there's no case law that supports the contention that the

9  legislature intended to strip jurisdiction from the clerk.

10         So to summarize that portion of our argument, Your

11 Honor, it's our contention that the clerk did get it right in

12 each of these cases.  But the key issue is whether the clerk

13 had jurisdiction to make that determination, and we think

14 that the clerk did.

15         Our claims were certainly for a sum certain.

16 There's nothing uncertain about any of these claims.  The

17 claims were for a sum certain.  That means that the clerk had

18 jurisdiction to make a ruling on the motion for default

19 judgment.  So we think that any alleged error, which again we

20 deny, would simply render the judgment erroneous.  And *Burton*

21 *v. Blanton* said that erroneous judgments cannot be set aside

22 on a Rule 60 motion.

23         So we think for that reason that the Court does

24 not have to consider whether the clerk properly applied the

25 statute, but we think the clerk did in fact apply the statute

POUNDS EX 0480

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 correctly in each of these five cases.

2          Section 155, Your Honor, has two prongs. The

3 first is that a debt buyer has to provide authenticated

4 business records, and the second prong is those records have

5 to set forth the information that's required by the statute.

6          As to that first issue, it's our contention that

7 my client's documentation meets the standard for authenti-

8 cated business records under what is sometimes termed the

9 adopted business records doctrine. I'm going to cite--talk

10 about several cases from different jurisdictions, and then

11 I'm going to bring us back to a North Carolina Court of

12 Appeals case that I think applies to the same principle.

13          The first case I want to talk about is at tab 4

14 and that's *Beal Bank v. Eurich*. That was a Supreme Court of

15 Massachusetts case and that's important because the Court I

16 think did a good of job summarizing the issues involved with

17 assigning authentication. There's underlined sections on

18 page 5.

19          Your Honor, in that case--it was a mortgage case

20 where the bank was trying to introduce business records of a

21 third party servicer. This is something that happens all the

22 time. The bank owns the mortgage and the service does the

23 servicing. And the Court found that the records were

24 admissible even without evidence of how those records were

25 created by the third party.

POUNDS EX 0481

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1　　　　　And again, on page 5 the Court held that "Given
2　the common practice of banks buying and selling loans, we
3　conclude that it is normal business practice to maintain
4　accurate...records regarding such loans and to provide them
5　to those acquiring the loan." Later on on page 5 the bank
6　held that:

7　　　　　　　　"The bank's reliance on this type of record
8　　　　　　　　keeping by others renders the records the
9　　　　　　　　equivalent of the bank's own records. To hold
10　　　　　　　　otherwise would severely impair the ability of
11　　　　　　　　assignees of debt to collect the debt due because
12　　　　　　　　the assignee's business records of the debt are
13　　　　　　　　necessarily premised on the payment records of the
14　　　　　　　　predecessors."

15　　　　　That's what we have going on in these cases, Your
16　Honor. PRA purchased the accounts from the original creditor
17　and they integrated those business records into PRA's own
18　records. And as held in that Beal Bank case, those records
19　became the equivalent of PRA's own records.

20　　　　　Your Honor, the Beal Bank case was cited by Judge
21　Terrence Boyle of the Eastern District of North Carolina in
22　the next case I want to talk about. That's tab 5 of our
23　folder, and that's *Bank of New York Mellon v. Adams*.

24　　　　　The highlighted section on page 2 sets forth
25　essentially a three part test for assigning authentication.

POUNDS EX 0482

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 We would contend that that's a reasonable test for

2 determining whether an assignee can authenticate business

3 records. To be sufficient you've got to show that the

4 records were integrated into the assignee's records, that

5 they were relied upon by the assignee, and third, that the

6 records and the circumstances indicate trustworthiness.

7 We think that we meet all three in this case, Your

8 Honor. If you look at the affidavits submitted by PRA, each

9 one of them attests to PRA's purchase of the account from the

10 original creditor, two, the integration of those records into

11 PRA's records, and the fact that they were maintained by PRA

12 in the ordinary course of business. Clearly they were

13 integrated, they were relied upon by PRA, and we think that

14 they are trustworthy records.

15 And I mentioned Regulation Z---

16 The Court: (interposing) "Think that they

17 are trustworthy records." Where do you get that the original

18 creditor's records are trustworthy, just because you adopted

19 them and integrated them?

20 Mr. Hoke: No, Your Honor, because they

21 are required to be created and maintained according to

22 federal standards. And at tab 9 I've included a portion of

23 Regulation--I'm sorry, tab 8, portions of Regulation Z. This

24 is a federal regulation that applies to credit issuers and

25 this is a section that requires creditors to generate and

POUNDS EX 0483

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  send to consumers periodic statements.

2  And the regulation is several pages long and it

3  includes detailed requirements of what creditors have to do

4  with these statements and the information that has to be

5  included such as that transactional record that I talked

6  about earlier as well as certain disclosures such as interest

7  rate, the due date for the next payment, balance on the

8  account, and so forth.

9  These types of records are also trustworthy, Your

10  Honor, because there is a 60 day dispute window that's

11  created by Regulation Z, which allows the consumer to receive

12  account statements from the creditor. And if it includes

13  something that's incorrect, you know, a charge that wasn't

14  made, interest that wasn't applied properly and that sort of

15  thing, they can dispute it. And that triggers certain

16  obligations of the creditor.

17  So we think it is indeed reasonable for a debt

18  buyer to rely on those records. If a debt buyer couldn't

19  rely on the records it obtained from an original creditor,

20  then the debt buyer wouldn't be allowed to operate at all.

21  And that goes to the comment that the Court made in the *Beal*

22  *Bank v. Eurich* case that "The bank's reliance on this record

23  keeping by others renders the records the equivalent of the

24  bank's own records." So we think that all three prongs of

25  that test were met.

POUNDS EX 0484

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 86 of 120

1          I want to briefly talk about a case that we have

2    attached at tab 6 to our binder.  That's *Unifund CCR, LLC v.*

3    *Dear*.  Your Honor, that is a California case that finds the

4    same sort of circumstances that we're talking about here with

5    assigning authentication directly to a debt buyer credit card

6    case.

7          And in that case the Court held that "A qualified

8    witness need not be the custodian, the person who created the

9    record, or one with personal knowledge for a business record

10   to be admissible under the hearsay exception."  In this case

11   the Court--this is on page 6--the Court refers to the

12   affiant:  "asserted [ that] she had personal knowledge of the

13   manner, methods and practices by which plaintiff," i.e., the

14   debt writer, "maintained its business records and otherwise

15   does business."

16          So it's our contention that under this adopted

17   business records doctrine that it is not necessary to

18   introduce evidence of how the original creditor creates and

19   maintains the records.  What---

20          The Court:          (interposing)  And has that

21   adopted--adopted business record doctrine been used in any

22   debt buyer cases since the passage of 155?  Has it been used

23   by a court in any of the debt buyer cases to find proper

24   authentication?

25          Mr. Hoke:          Not in North Carolina that I'm

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 aware of. However, there is a case that was decided in the

2 North Carolina Court of Appeals that I think applies the same

3 principles that should apply here.

4          The Court:          Is it a debt buyer case?

5          Mr. Hoke:          No, Your Honor, but it was a

6 case regarding assigning authentication and I think that--so

7 logically it is quite similar. That's tab 7 of our binder.

8 It's *Barber v. Babcock*.

9          And what happened in that case, Your Honor, the

10 party was seeking to introduce records. It wasn't a debt

11 buyer, but it was an assignee of record. They were trying to

12 introduce records in the form of lab test results that were

13 conducted by an independent third party. So the independent

14 third party does the testing. The results are acquired by

15 the party that was introducing them.

16          And logically it's similar--in that case the Court

17 found that it was not necessary for the party to introduce

18 evidence of how those tests were done and essentially how

19 those records were created by the third party. In the under-

20 lined portion of page 4 the Court held that the affiant or

21 witness:

22          "was not personally knowledgeable about the

23          scientific method used in obtaining the data, he

24          was familiar with the system used by his company

25          in obtaining tests and filing the results with his

POUNDS EX 0486

**KAY McGOVERN & ASSOCIATES**          **(919) 870-1600**
Suite 117, 314 West Millbrook Road          FAX  870-1603
Raleigh, North Carolina  27609-4380          (800) 255-7886

1          office.  For these reasons, and also in light of

2          the high level of trustworthiness associated with

3          the data, we find that Robinson was qualified to

4          introduce the test results in question."

5 So what mattered in that case is that the affiant could

6 attest to the method used in obtaining and filing those

7 records with the party.

8          In each of these cases we contend that that same

9 standard should hold where the debt buyer should not be

10 required to produce evidence of the way that these account

11 statements for example were generated and created by this

12 third party original creditor.  But what should matter is

13 attesting to the purchase of the account and the integration

14 of those records.

15          The Court:         And what about that Unifund

16 case?  I'm just--because I knew there was a Court of Appeals

17 case--it's unpublished--that I read when I was reading the

18 briefs.  It's on page 15 of Defendants' brief.  And that is a

19 debt collector--that's what I'm interested in is---

20          Mr. Hoke:         (interposing)  Right.

21          The Court:         ---debt buyer cases, higher

22 courts' analysis of authentication under the Consumer

23 Protection Act.

24          Mr. Hoke:         I think you're referring to

25 *Unifund v. Dover*.  There are a couple---

POUNDS EX 0487

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1          The Court:          (interposing)  Yes.

2          Mr. Hoke:          ---of Unifund cases that have

3 been---

4          The Court:          (interposing)  Yes.

5          Mr. Hoke:          ---cited by the parties.  We

6 think that both the Unifund case and the Bramco case that

7 Defendants cite are not exactly on point because they apply

8 to--both of those cases revolve around the interpretation of

9 a particular statute.  It's North Carolina Statute 8-45.

10          And that statute provides for an optional

11 procedure for a party seeking to recover on an account stated

12 claim.  And it says if a party attaches a verified, itemized

13 statement of account, then that counts for prima facia

14 evidence of the correctness of the statement.

15          We contend that that statute doesn't apply here.

16 We were not proceeding under that statutory basis in these

17 cases.  So we think that in light of the adopted business

18 records doctrine and in light of the *Barber v. Babcock* case

19 that these records were indeed authenticated business

20 records.

21          Furthermore, Your Honor, we contend that those

22 records set forth all of the requirements of Section 155.

23 And the issue--the primary issue about that is the itemiza-

24 tion requirement.  And we think that the interpretation of

25 itemization that's been offered by the defendants is not a

POUNDS EX 0488

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 reasonable one.

2    . They have put forth two district court orders that
3 have been entered and discussed.  But again, a district court
4 order is not binding in terms of requiring that this Court
5 make the same conclusions.  It's not a Court of Appeals
6 ruling that creates a precedent.

7    So the defendants have argued that itemization
8 means that the debt buyer has to provide proof of individual
9 transactions on the account, individual purchases, payments,
10 and so forth.  They claim that they're not arguing that the
11 debt buyer has to prove every transaction over the history of
12 the account.  But logically, if you're going to require proof
13 of individual transactions, then you can't stop arbitrarily
14 at some point.

15    The Court:       Well, then, what does 58-70-155
16 mean, "Prerequisites to entering a default or summary
17 judgment," number (4), "An itemization of charges and fees
18 claimed to be owed"?

19    Mr. Hoke:       We have two alternatives, Your
20 Honor.

21    The Court:       Itemization, what does that
22 mean?

23    Mr. Hoke:       Well, it's--we think it's an
24 open question of law.  There have been district court judges
25 that have made different rulings on that.  There's no Court

POUNDS EX 0489

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 of Appeals ruling that has set a precedent on that, so we
2 think it's an open question of law. The legislature doesn't
3 define itemization in the statute. In fact the legislature
4 used itemized accounting and itemization seemingly in the
5 same way.

6      And we have two alternatives. We think if the
7 Court were to adopt the defendants' proposal of itemization,
8 the practical result--whether they're arguing it or not, the
9 practical result is that debt buyers would have to provide a
10 transactional record of all the transactions through the
11 history of the account, which essentially means you've got to
12 come to court with every account statement from the beginning
13 to the end. I don't think there is any way that you can
14 require proof of individual transactions without requiring
15 them all.

16      The reason for that, Your Honor, is that when you
17 make a purchase on a credit card or when you make a payment
18 towards the balance, that payment or purchase--that
19 transaction is rolled into the full balance.

20      So it simply doesn't work the way that I think the
21 defendants are claiming it does. It's not such that you make
22 three purchases on the account for $300 and then you make a
23 payment a week later for $300 that pays that off. When you
24 make a purchase on an account, that goes to the full balance
25 of the account, whether there's a balance on the account

POUNDS EX 0490

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 already or not. And when you make a payment on a credit

2 account, you're paying on that balance. So I don't think

3 there's any---

4        The Court:          (interposing) So itemization

5 just means a statement listing what's owed, period, because

6 that's all--that's all I see in here for each of these cases.

7        Mr. Hoke:          We have two alternatives, Your

8 Honor. The first would be to require itemization to mean a

9 charge-off statement showing the balance owed. The reason we

10 think that makes sense is that the defendants have already

11 received from the original creditor the account statements

12 setting forth that transactional record.

13        The charge-off statement is essentially the sum of

14 all those transactions. And I think there's a case that

15 speaks to that, and that is the case of *In Re Parker*. It's

16 tab 10, Your Honor. And that is a bankruptcy case that was

17 heard in the Eastern District in North Carolina that applied

18 the itemized accounting requirement of Section 115 of the

19 statutes.

20        And in that case, Your Honor, the debtor in

21 bankruptcy listed the debt in question as an undisputed debt

22 in the bankruptcy and then went back to challenge the

23 creditor's claim on the basis of Section 115.

24        Section 115 of the Consumer Economic Protection

25 Act requires that a debt buyer have reasonable verification

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 of the debt before they file something to collect on it. And

2 reasonable verification includes an itemized accounting of

3 the amounts owed.

4 So the defendant, the debtor, in that bankruptcy

5 case made what I think is essentially practically speaking

6 the same argument that the defendants are making here, or at

7 least has the logical conclusion that I think is the same,

8 which is--the highlighted portion on page 4: "The debtor

9 additionally contends there is no itemized accounting of

10 every fee and charge included in either proof of claim."

11 The Court rejected that argument, Your Honor, and

12 the case doesn't say how many account statements were

13 attached, but it does say that there were account statements

14 attached that includes the balance and indicates fees and

15 charges on the account. The Court held that viewed in light

16 of the debtor's undisputed scheduling of the debt that the

17 requirements were met.

18 We think the same thing should apply here, Your

19 Honor. In each of these cases my client attached a statement

20 indicating some sort of a purchase or payment or some sort of

21 usage of the account and also that charge-off statement

22 showing the balance owed. So we think under the *In Re Parker*

23 case that the itemization requirement would be met.

24 To require every account statement ever issued on

25 an account to meet itemization, I think that would be

POUNDS EX 0492

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 impractical at best, and I think at worst it would be a

2 policy nightmare.

3      From a practical perspective, Your Honor, if a

4 case is undisputed and you're going to require every

5 statement that's ever been issued on an account, that's not

6 only burdensome on the debt buyer, but that's also going to

7 be burdensome on the clerks of court that have to maintain

8 those records. If I come to court, Your Honor, you know,

9 with a wheelbarrow full of statements, I don't think the

10 clerks are going to be--are going to be happy.

11      Again, Defendants are arguing what they're

12 arguing, but I think the practical result of the argument

13 that itemization means proof of individual fees and charges

14 and payments on the account--I think there's no getting

15 around the fact that that means you have to prove all of

16 them. Otherwise there's just an arbitrary cutoff point of

17 some sort, so I don't think that makes practical sense.

18      I also don't think that makes good policy sense.

19 And I'd like to turn to tab 9 of our binder. That's another

20 section of Regulation Z that I mentioned earlier, and it's

21 the section that relates to record retention.

22      As I understand it, this regulation requires

23 creditors to maintain records showing that they complied with

24 the regulation for two years. Practically, as I understand

25 it, it means that creditors have to maintain the account

POUNDS EX 0493

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 statements for two years after they either charge off or

2 close the account or the last statement was sent. So it

3 doesn't make any business sense, Your Honor. That's tab 9.

4        The Court:      For two years after the date

5 that action is required to be taken, so I would assume that's

6 two years after the three year statute of limitations for

7 filing any complaint. That's the way I would read that. If

8 what you're telling me is true, then you-all really aren't

9 getting the records from the original creditor, then.

10        Mr. Hoke:      The statute says for two years

11 after the date the disclosures are required to be made or

12 action is required to be taken.

13        The Court:      Right.

14        Mr. Hoke:      I've always understood that as

15 two years from the last disclosure, meaning the last

16 statement.

17        The Court:      Because usually or a lot of

18 times you purchase the debt right before the statute of

19 limitations runs and then you file your lawsuit.

20        So what you're telling me is that the time you

21 purchased the debt, the original creditor doesn't even have

22 the itemization of the account. And so you just turn around

23 and file a lawsuit. And you're showing me now, the way your

24 reading of this statute is, they don't even have the records

25 to begin with.

POUNDS EX 0494

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1    Mr. Hoke:          It's our contention, Your

2  Honor, that they don't have the records of their inter-

3  pretation of itemization.  So from a policy perspective---

4        The Court:          (interposing)  So the original

5  creditor does not have the records itemizing the debt that

6  you're seeking to collect on.

7        Mr. Hoke:          It depends on the definition of

8  itemization.  They don't have--or at least they don't--

9  they're not required to have all of those account statements.

10  And from a practical perspective---

11        The Court:          (interposing)  They're supposed

12  to keep them---

13        Mr. Hoke:          ---they don't.

14        The Court:          ---for two years after the date

15  that action is required to be taken.  Why wouldn't a creditor

16  keep its records within the three year statute of limitations

17  for a lawsuit to be filed?

18        Mr. Hoke:          Your Honor, these accounts are

19  open sometimes for years, sometimes for decades.  But even if

20  it was interpreted as that plus three years, that's still not

21  the entirety of the account.

22        The Court:          But you were just admitting

23  that when you-all purchased--or your--the company that you

24  work for, the debt buyer--when they purchased these accounts

25  that the original creditor doesn't even have the itemization

POUNDS EX 0495

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 of the account. Is that what you're telling me?

2      Mr. Hoke:           I don't want to make a broad

3 statement that covers every situation, but in my experience

4 it's true that the original creditor does not maintain those

5 records in perpetuity. These accounts often go back years,

6 sometimes decades, as I said, and those records simply aren't

7 available.

8      The Court:          That's the problem.

9      Mr. Hoke:           So if itemization is held to

10 mean that you have to come to court with every account

11 statement, that simply practically isn't---

12      The Court:          (interposing) No, but if

13 you're submitting affidavits that claim these records exist,

14 which your affidavits do claim these records exist with the

15 original creditor and that you've incorporated them into your

16 record keeping and now you're telling me actually no, they

17 don't exist, that is a problem.

18      Mr. Hoke:           Let me rewind---

19      The Court:          (interposing) And it makes it

20 a huge problem for authentication.

21      Mr. Hoke:           Let me rewind just a bit, Your

22 Honor. The records that they're referring to are the records

23 that they did receive from the original creditor. Those are

24 records that we attached to our complaint and our motion for

25 default judgment, which we think are sufficient to meet the

POUNDS EX 0496

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  statute.

2      So the practical reality is that the original

3  creditor in many cases doesn't maintain its records for the

4  life of the account.  So if the debt buyer is required to

5  produce all the account statements for the history of the

6  account, that's going to make compliance practically

7  impossible in the vast majority of cases.  Our contention is

8  that the affidavit attests to the particular records that

9  have been filed with the Court.  They're not attesting to

10 records that they have not obtained.

11     So, Your Honor, I mentioned the first proposal.

12     The Court:        Where is it in your brief that

13 you talk about this 1026.25 record retention?

14     (Pause.)

15     Mr. Hoke:        I'm finding it, Your Honor.

16     (Pause.)

17     Mr. Hoke:        It's page 12.

18     The Court:        Record of compliance for only

19 two years after the date disclosures are given.

20     Mr. Hoke:        It's page 12 of our brief, Your

21 Honor.  So again, it's our contention that at every---

22     The Court:        (interposing)  So exactly what

23 is it--when you say in your affidavit that you've integrated

24 the records of the original creditor, exactly what is it that

25 you've integrated?

POUNDS EX 0497

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1          Mr. Hoke:          The records that were attached

2 to the complaint and the motion for default judgment.  That

3 includes the account statements that are attached.  It also

4 includes the chain of ownership documentation, which includes

5 data printed from the original creditor's records.

6          The Court:          So that's it?  That's all you

7 had?

8          Mr. Hoke:          That's all we think is

9 necessary under the statute, Your Honor.  So our first

10 alternative to the defendants' interpretation of itemization

11 would be to follow what the bankruptcy court held *In Re*

12 *Parker*.

13          The second alternative would be to require not

14 just the charge-off statement, but to go one step beyond that

15 and require proof of the charge-off balance broken down into

16 principal and finance charges.  Again, itemization, we think,

17 is an open question of law and we think that would be a

18 reasonable interpretation, itemizing a certain amount as

19 principal and a certain amount as interest.

20          Now, if you were to look at our statements, in

21 four of the five cases we would meet that standard.  There's

22 one of them where the charge-off statement simply states a

23 balance and doesn't break that balance down.  But in the

24 others the charge-off statement itemizes the amount that is

25 the principal amount and the amount that comes from finance

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 charges.

2      And there is some case law evidence supporting

3 that understanding of the term "itemization," and Your Honor,

4 that's tab 11 of our brief. That's the case of *Arrington v.*

5 *Martinez*. And that case--the highlighted sections are on

6 page 7 and 8.

7      In that case the plaintiff was stating a claim for

8 damages and broke down that claim for damages into different

9 categories such as lost wages, funeral expenses, medical

10 expenses, out of pocket expenses, et cetera. The Court held

11 that the plaintiff has itemized the damages by breaking them

12 down into different categories.

13      We've done the same thing, Your Honor, in four of

14 these five cases. We've stated a claim for damages and we've

15 broken down that claim into the categories, how much is

16 principal, how much is finance charges. So we think that

17 would be a reasonable alternative that wouldn't make

18 compliance impossible, that would require debt buyers to

19 prove the amount they're seeking, and to break that amount

20 down into principal versus finance charges. And again, if

21 that's the standard, then four of our five cases would meet

22 that standard.

23      So we think, Your Honor, that either of those

24 alternatives as a definition of itemization would be

25 reasonable in light of the interpretation of the statute as

POUNDS EX 0499

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  well as preserving a balance here.

2       Defendants have argued that the purpose of the
3  statute is to protect consumers, and we agree with that, but
4  we don't think the purpose of the statute was to immunize
5  consumers from these kind of lawsuits.  And an interpretation
6  of itemization that requires debt buyers to attach documenta-
7  tion that they're not able to obtain would effectively
8  immunize them from these types of lawsuits.

9       Your Honor, the defendants have, again, put forth
10 the two district court orders that ruled in the way that
11 they're asking this Court to rule.  We have attached a
12 different case that came to a different conclusion.  That's
13 *Global Acceptance Credit Company v. Carter*.  That's tab 12 of
14 our notebook.

15       The Court:          That's the one that has the 18
16 account statements?

17       Mr. Hoke:          Right, Your Honor.  And if you
18 look at page 3 of the order, it says, "Monthly account
19 statements dated from October 3rd, 2007 through March 3rd,
20 2008," which by my math is six months, hence the--we referred
21 to it as several statements.  It's certainly possible that
22 that was a typo in the order.  I haven't had a chance to go
23 through what has been handed up by opposing counsel.

24       But we think that the logic of the Carter case
25 supports our interpretation.  That case was a--involved

POUNDS EX 0500

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 similar facts in that the defendant was seeking to overturn a

2 default judgment and they were arguing, among other things,

3 the itemization issue. And in that case the Court rejected

4 the argument that itemization means proof of everything on

5 the account. Even if there were 18 months of statements,

6 that's not the entirety of the account.

7        Taking a look at what counsel has handed to me,

8 assuming that that's correct that there are 18 statements

9 attached, the first statement shows a previous balance of

10 over $24,000. So we think that--the defendants are arguing

11 that to meet itemization you have to itemize individual

12 transactions on the account. We think that really means that

13 you have to itemize all transactions. Otherwise where do you

14 find the point to say you don't have to produce more than

15 that? If you're going to---

16        The Court:        (interposing) But you're

17 telling me you don't have it anyway.

18        Mr. Hoke:        Excuse me?

19        The Court:        You're telling me you don't

20 have those records anyway---

21        Mr. Hoke:        (interposing) What records are

22 you---

23        The Court:        ---to itemize--to itemize what

24 underlies the debt. You're telling me that the original

25 creditor has already gotten rid of them, that you don't even

POUNDS EX 0501

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1  have those records, that this affidavit that you provide that
2  says you've incorporated all those records and they're now
3  part of your business records really don't include any
4  records except for the charge-off statements and the assign-
5  ment of sale.  Is that what you're telling me?

6       Mr. Hoke:        They refer to the records that
7  we've attached, Your Honor.  And we contend that that's---

8       The Court:        (interposing)  And that's it.
9  That's it.  That's all that supports--I've always assumed,
10  and I guess wrongly so, that when you talked about
11  incorporating the records of the original creditor, you
12  really meant you were incorporating everything that supported
13  your claim for the amount that you were seeking.  And you're
14  telling me now that I have been making a wrong assumption
15  based on these affidavits.

16       Mr. Hoke:        I'm not necessarily saying
17  that, Your Honor.  I'm only saying that we're relying on the
18  records that have been attached and filed with the Court.

19       The Court:        And that's it.  That's all you
20  have to support that debt is what you attached to these
21  complaints.  That's all you have.

22       Mr. Hoke:        That's what we're relying on,
23  Your Honor.  I don't want to get into business practices that
24  I don't know everything about.  I work with what documenta-
25  tion that my client can provide me.  If they can get more,

POUNDS EX 0502

**KAY McGOVERN & ASSOCIATES**        **(919) 870-1600**
Suite 117, 314 West Millbrook Road          FAX  870-1603
Raleigh, North Carolina  27609-4380         (800) 255-7886

1  that's great, but the affidavit is referring to the documents

2  that we had.  And we're relying on the documentation that has

3  been submitted to the Court.  We're certainly not relying on

4  documentation that we have not submitted to the Court.

5          So we think that the Carter case does stand for

6  the proposition that itemization does not require every

7  account statement for the life of the account.

8          I want to briefly mention two points, Your Honor,

9  before I conclude.  The first is the CFPB consent order.  We

10 objected to it in our brief.  We want to object to it here.

11          The Court:          It's on a web site; right?

12          Mr. Hoke:           Yes, Your Honor.

13          The Court:          Kind of public record.

14          Mr. Hoke:           It is public record, Your

15 Honor.  We don't think the Court should consider it under

16 Rule 408 of the Rules of Evidence.  And we cited cases in our

17 brief where courts have determined that consent orders and

18 consent decrees with federal agencies such as CFPB are not

19 admissible.

20          The other thing I want to say, Your Honor, even if

21 the Court does consider that order, if you read the order,

22 PRA consented to the entry of the order and to the bureau's

23 jurisdiction over the matter.  They did not consent to the

24 specific findings of fact.  So those findings of fact are not

25 something that has been consented to by my client.

POUNDS EX 0503

**KAY McGOVERN & ASSOCIATES**          **(919) 870-1600**
Suite 117, 314 West Millbrook Road          FAX  870-1603
Raleigh, North Carolina  27609-4380          (800) 255-7886

1            The last thing that I want to mention is at tab 13

2 of our binder.  That is a memo that was sent out by the AOC

3 to the clerks and assistant clerks in September of 2009.

4 That's right before the act took effect.  And that sort of

5 basically gives the clerks notice and guidelines on how to

6 apply the new statute.

7            I think that's relevant for a couple of reasons,

8 Your Honor.  First, if the legislature intended to strip

9 jurisdiction from the clerk in these cases, that is not

10 mentioned anywhere in this memo.  There's nothing about that

11 that I can see.

12            The second thing that I think is important about

13 this memo is that any idea that clerks are blindly entering

14 judgments without knowledge of the statute or notice of the

15 statute, I don't think that is correct.  The statute has been

16 in place since 2009 and the clerks have been ruling on these

17 types of motions since then.

18            So it is our contention that the clerk does have

19 jurisdiction to rule on these motions because the claims were

20 clearly made for a sum certain.  We think that the clerk

21 correctly entered the judgments in each of these cases based

22 on business records that were attached.

23            We contend that the itemization requirement can be

24 met either by proof of the charge-off account statement or

25 proof of the charge-off balance broken down, itemized if you

POUNDS EX 0504

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 will, into principal versus finance charges.

2          So to conclude, briefly, Your Honor, we think that

3 the clerk correctly applied Section 155 in each of these

4 cases.  We think that in the alternative, even if the clerk

5 had erred in making such a determination, that would be an

6 error of law and not something that would render the judgment

7 void.  So for those reasons, Your Honor, we respectfully

8 request that these motions be denied.

9          The Court:          Any response, Mr. Hartzell, on

10 how a judgment in favor of the defendants is going to put

11 Portfolio Recovery Associates out of business?  No way to be

12 debt buyers if the Court buys what you're saying.

13          Mr. Hartzell:          Tab 11---

14          The Court:          (interposing)  Gets rid of the

15 industry.

16          Mr. Hartzell:          Tab 11, page 5, our notebook.

17 OCC, Office of the Comptroller of the Currency, has

18 jurisdiction over national banks.  The OCC says, "Banks, we

19 expect you when entering into a business transaction with a

20 debt buyer to give them everything they need to comply with

21 consumer protection laws."

22          (Pause.)

23          I don't want to throw Mr. Hoke under the bus.  He

24 is a capable adversary, notwithstanding his limited years of

25 experience.  The form of documents that PRA used I'm sure

POUNDS EX 0505

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina  27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

1 predates his arrival at his current firm. But that form

2 affidavit they use titled Affidavit--I'm looking at the one

3 in the--they're all the same, but I'm looking at the one in

4 the Brady case, tab 2A, "I am an authorized employee of PRA.

5 I am authorized to make the statements herein and do so

6 based upon a review of the business records of the original

7 creditor and those records transferred to account assignee."

8 They seem to be saying they're looking at more than the

9 records transferred to account assignee.

10       I was intrigued by the argument that PRA never

11 agreed to the consent order. If they never agreed to it,

12 then I don't guess the findings in there can reasonably be

13 regarded as a settlement. In any event, they're not offered

14 to prove the liability. They're offered to prove the

15 inadequacy of their records.

16       Every case he cites from Massachusetts or

17 California or the North Carolina federal court seems to turn

18 on that court's perception of the trustworthiness of those

19 records. We have here findings from a federal agency that

20 their account records are not trustworthy. Even if we didn't

21 have those findings, shouldn't it be their burden to show

22 that they are? Who's got the burden of proof here? Thank

23 you for hearing us.

24       The Court:          Uh-huh.

25       (Pause.)

POUNDS EX 0506

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1          The Court:          Well, I've certainly had a

2   zillion of these cases and I've seen these affidavits a

3   zillion times.  And I have read through all the briefs and

4   looked at all of the exhibits.

5          And the Court essentially finds the following:

6   that the default judgments entered in the case before the

7   Court were entered in violation of North Carolina General

8   Statute 58-70-155 entitled "Prerequisites to entering a

9   default or summary judgment against a debtor" in that there

10  was no--or an insufficient itemization of charges and fees

11  claimed to be owed, in that the affidavits submitted failed

12  to properly authenticate business records to satisfy

13  Rule 803(6).

14         On the authentication issue there is no affidavit

15  from anyone employed by the original creditor who reviewed

16  the records of the defendants in question to determine their

17  accuracy and reliability.

18         The Court has learned during this proceeding that

19  the affidavit provided by Portfolio Recovery Associates,

20  which claims to have reviewed the records kept by the

21  original creditor, that in actuality they haven't reviewed

22  the records kept by the original creditor.  The only records

23  that they have reviewed are the records that are attached to

24  the complaint, the paltry set of records attached to the

25  complaint.

POUNDS EX 0507

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 109 of 120

1    The affidavits would lead you to believe that

2 there is documentation of each and every transaction under-

3 lying the debt to prove up the debt being sought.  But in

4 fact these affidavits only verify that the affiant saw the

5 bill of sale document, saw the charge-off document, and saw

6 the final statement, which I guess is the charge-off

7 document, and that is it.

8    The Court finds that 58-70-155 is a jurisdictional

9 statute, meaning that orders entered in violation of that

10 statute are void.  That determination is based in part on the

11 legislative history of this statute where it was clear that

12 the legislature was concerned about the number of default

13 judgments being entered, concerned by judgments being entered

14 against creditors who do not appear at these proceedings.

15    Therefore, the legislature shifted the burden to the

16 debt buyers to show that they had adequate documentation to

17 initiate the lawsuit and to show that the amount they were

18 seeking was a legitimate amount.  And without that showing,

19 the Court lacks jurisdiction to enter default or summary

20 judgment, whether it is through the clerk or whether it is

21 through the judge.

22    So when the clerk does it, the clerk has to

23 incorporate the requirements of 58-70-155 to determine

24 whether a sum certain has been proven according to the

25 prerequisites for entering default judgment.  And in all of

POUNDS EX 0508

**KAY McGOVERN & ASSOCIATES**                    **(919) 870-1600**
Suite 117, 314 West Millbrook Road                    FAX  870-1603
Raleigh, North Carolina  27609-4380                    (800) 255-7886

1 the cases before the Court, the pleadings by the plaintiff

2 failed to reach those requirements. Therefore, the judgments

3 are void.

4        As to Plaintiff's claim that this is legal error

5 and not an issue of the Court lacking jurisdiction, that

6 interpretation would undermine the whole purpose of the

7 statute. Because the legislature recognized that debtors

8 were not appearing in these proceedings, that inaccurate

9 judgments were being entered without documentation, they

10 certainly wouldn't imagine that the debtors who don't appear

11 at these proceedings would then file an appeal with the Court

12 of Appeals and follow through to rectify the problem. This

13 statute was meant to rectify the problem at the door of the

14 courthouse.

15        So the Court is going to grant the defendants'

16 motions to set aside the default judgments and entry of

17 default in these cases.

18        And I am really troubled about the authentication

19 issue based on Plaintiff's brief, which says, "How can we

20 show itemization when the creditor, original creditor, has

21 destroyed all that documentation, but yet I have affidavits

22 purporting to have reviewed all this documentation."

23        So the affidavits before the Court in and of them-

24 selves--it's not only that the person didn't have direct

25 knowledge of the account and the procedures by which the

POUNDS EX 0509

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 111 of 120

1 account was maintained with the original creditor. It's that

2 they portended to have reviewed those account documents when

3 in fact they really didn't. So the affidavits are false.

4       There are clearly ways to get around having to

5 submit boxes and boxes of documents with your complaint given

6 the electronic era that we live in where a little--and I

7 don't even know what these things are called, flash drives--

8 flash drive could be attached to an affidavit that says,

9 "I've reviewed the records of the original creditor that

10 shows an itemization of all transactions. This flash drive--

11 this attached flash drive and whatever has the documentation

12 of all transactions."

13       And what it leads me to believe--because I have

14 plenty of creditors filing lawsuits that have all of the

15 documentation. They can file it right before the three year

16 statute of limitations. They still have all of the

17 documentation. It leads to believe that Portfolio Recovery

18 Associates doesn't even try to get it.

19       So I believe that I adopt movants' proposed order

20 in most respects, but would like it fleshed out, especially

21 in terms of the issue about what really underlies these

22 affidavits is not even lack of personal knowledge regarding

23 the creditor's account, but false representations of having

24 reviewed records that weren't reviewed.

25       I don't agree in the findings regarding--about the

POUNDS EX 0510

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 clerk and the sum certain. I think it's paragraph 12 that I

2 agree with, when you look at it harmoniously with 58-70-155,

3 the clerk lacks subject matter jurisdiction as would a

4 district court judge in entering these default judgments.

5 And I don't believe the Court would reach 60(b)(6).

6      I would also like the order to have a little bit

7 more about the legislative history that underlies the Court's

8 reasoning about why this is a void judgment versus legal

9 error. And if I hadn't been writing orders all week, I would

10 be doing this myself, but we have very competent writers, so

11 I'm okay leaving it with the competent writers.

12      So 58-70-155 was a legislative attempt to provide

13 a level of protection for debtors who do not appear in court

14 proceedings to ensure that any judgments rendered are based

15 on accurate records supporting the debt.

16      Is there anything else that I need to say, talk

17 about?

18      Mr. Hartzell: Your Honor, in terms of

19 mechanics may we draft a single proposed order in one of the

20 cases, submit it to Mr. Hoke, and then after he has reviewed

21 it submit it to you to find out if it tracks what you would

22 like to have, and then generate the set of five?

23      The Court: And just make a distinction in

24 the Walls case, which is the only one that has the affidavit

25 from the original creditor, that nowhere in that affidavit

POUNDS EX 0511

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 did the original creditor even make mention of the

2 defendant's records.

3          Mr. Hartzell:      May we submit it by e-mail so

4 we can send a Word file?

5          The Court:      You can.  And then any

6 objections that you-all cannot resolve, if Plaintiff's

7 counsel would do a line item objection, like what you still

8 object to, and so I get the proposed draft order and then a

9 line item, "I object to paragraph 2.  I propose this"--or

10 paragraph 4.  And then I can make sure to resolve the

11 disputes if there are any disputes.

12          Mr. Hartzell:      What is Your Honor's e-mail

13 address, please?

14          The Court:      rebecca.t.tin@nccourts.org.

15          Mr. Hartzell:      Thank you.

16          Mr. Hoke:      Your Honor, I do have a

17 question for clarification (inaudible).  I certainly

18 understand the issues with the affidavit and authentication.

19  Presuming that we could come back with an affidavit that

20 would be to your understanding of the requirement for

21 authentication, my clients are looking for guidance on what

22 they need to provide for itemization.

23          We have filed this type of--this type of

24 documentation in many cases and it's been held to be

25 sufficient.  Is it the Court's determination that the full

POUNDS EX 0512

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX  870-1603
(800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 114 of 120

1 set of account statements is required?

2      The Court:      Could be, on a flash drive in

3 an envelope attached to the affidavit of the person who

4 purports to have reviewed this documentation that they have

5 in fact reviewed the account statements kept by the original

6 creditor regarding the debtor's account and that the account

7 statements show the accurate balance.

8      Of course you're going to need the affidavit from

9 the original creditor talking about how they maintain their

10 records, that Defendant was--she is aware--familiar with the

11 records of Defendant's account, that these are accurate

12 records maintained in the ordinary course of business and

13 then something that--this would work. A flash drive would

14 work in an envelope attached to the affidavit. And we'd have

15 to make sure the clerks would accept that.

16      Mr. Hoke:      I've only had to file paper

17 documentation and I'm not sure if that's something that would

18 be permissible. I know we---

19      The Court:      (interposing) I would have

20 to---

21      Mr. Hoke:      ---(inaudible).

22      The Court:      I mean we could certainly have

23 a conference call with the clerk of court in Mecklenburg

24 County. I'm sure she would much rather see this coming her

25 way than all of the paperwork that we see in summary

POUNDS EX 0513

**KAY McGOVERN & ASSOCIATES**        **(919) 870-1600**
Suite 117, 314 West Millbrook Road        FAX  870-1603
Raleigh, North Carolina  27609-4380        (800) 255-7886

Case 1:16-cv-01395-WO-JEP   Document 1-13   Filed 12/09/16   Page 115 of 120

1 judgments.

2          I mean we get all that paperwork in summary

3 judgments, but we typically return them to the attorney after

4 judgment has been entered. After that 30 day appeal period,

5 if it's not appealed, we typically return all that paperwork

6 because we can't keep it all.

7          Mr. Hoke:         Right, I understand. Just one

8 more point of clarification, is the Court holding that in the

9 itemization is required to produce--the debt buyer is

10 required to produce each individual account statement or

11 proof of each individual transaction on the account?

12          The Court:         A lot more than what I have

13 before me. If I had--I can't--I mean I'm not the legislature

14 and I'm not a higher court. I'd have to see enough to be

15 satisfied that the amount requested is supported. This--a

16 flash drive with the affidavit from the original creditor

17 would certainly go a long way.

18          Mr. Hoke:         I certainly understand, Your

19 Honor. I'm just trying to get a handle of how I should--how

20 I need to advise my clients about what would meet the

21 statute. And then at this point it's---

22          The Court:         (interposing) A flash drive

23 with all of the records underlying the account showing all of

24 the transactions, that the debt is supported by that kind of

25 documentation. That's what the Court wants to know and

POUNDS EX 0514

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

1 that's what I thought these affidavits were telling me until

2 I found out today that they weren't, so---

3       Mr. Hoke:      I understand, Your Honor.

4 Thank you.

5       The Court:     Okay.

6       (Pause.)

7       The Court:     Okay.  Thank you.

8       (Recording stops at 4:02 p.m.)

POUNDS EX 0515

**KAY McGOVERN & ASSOCIATES**      **(919) 870-1600**
Suite 117, 314 West Millbrook Road     FAX  870-1603
Raleigh, North Carolina  27609-4380    (800) 255-7886

STATE OF NORTH CAROLINA

COUNTY OF WAKE

## C E R T I F I C A T E

I, Kay K. McGovern, do hereby certify that the foregoing pages 4 through 69 represent a true and accurate transcript of a digital recording of the proceedings held in Charlotte, North Carolina, on Wednesday, May 4, 2016.

This, the 18th day of May, 2016.

_____

Kay K. McGovern, CVR-CM
Transcriptionist

POUNDS EX 0516

**KAY McGOVERN & ASSOCIATES**
Suite 117, 314 West Millbrook Road
Raleigh, North Carolina 27609-4380

**(919) 870-1600**
FAX 870-1603
(800) 255-7886

NORTH CAROLINA
WAKE COUNTY

## AFFIDAVIT OF COUNSEL (McNULTY)
## AUTHENTICATING COURT DOCUMENTS

Carlene McNulty being duly sworn, deposes and says:

1. I am an attorney at the North Carolina Justice Center. I give this affidavit in the belief that it presents matters that are undisputed, as it concerns solely copies of orders that were issued by District Court judges in North Carolina, and a copy of a transcript of a district court hearing.

2. I represented seven individuals who were defendants in the following cases brought by Portfolio Associates, LLC (PRA): *PRA v. Brady* (Chatham 15-CVD-44), *PRA v. Peach* (Wake 15-CVD-4745), *PRA v. Spector* (Mecklenburg 14-CVD-22005), *PRA v. Pledger* (Mecklenburg 14-CVD-22008), *PRA v. Townes* (Mecklenburg 15-CVD-1909), *PRA v. Walters* (Mecklenburg 15-CVD-2893), and *PRA v. Walls* (Mecklenburg 15-CVD-15284). In each of these cases, I filed a motion to vacate the default judgment entered in favor of PRA.

3. The orders that appear as Exhibits 24-30 being filed in support of Plaintiffs' Motions for Preliminary Injunction and Class Certification are true and accurate copies of orders issued by the court in each of those cases.

4. I appeared at a hearing held before the Honorable Becky T. Tin, District Court Judge, Judicial District 26, in Mecklenburg County on May 4, 2016. The matter was before the court on the above-referenced Mecklenburg defendants' motions to vacate the default judgments. At the conclusion of the hearing, a copy of the verbatim audio of the court hearing that was electronically recorded was provided to us by the Mecklenburg County clerk's office. This record was transcribed by court reporter Kay McGovern and Associates. The document that



POUNDS EX 0517

appears as Exhibit 31 of the Exhibits in Support of the Plaintiffs' Motions for Preliminary

Injunction and Class Certification is a true and accurate copy of the transcript prepared by Kay

McGovern.

FURTHER AFFIANT SAYETH NAUGHT.

This the 3rd day of November, 2016.

Carlene McNulty

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me,

this the 3rd day of November, 2016.

_____ (SEAL)
NOTARY PUBLIC
My Commission Expires: 7-17-21 .

SEONAID A RIJO
Notary Public
Wake
County
My Comm. Exp.
07-17-2021
NORTH CAROLINA

-2-

POUNDS EX 0518