# EXHIBIT R

10-K 1 praa-20151231x10k.htm 10-K

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION

### Washington, D.C. 20549

## FORM 10-K

☒   **Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

### For the fiscal year ended December 31, 2015

☐   **Transition Report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

For the transition period from _____ to _____

### Commission File Number: 000-50058

# PRA Group, Inc.

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **75-3078675** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| | | |
|---|---|---|
| **120 Corporate Boulevard, Norfolk, Virginia** | **23502** | **(888) 772-7326** |
| (Address of principal executive offices) | (Zip Code) | (Registrant's Telephone No., including area code) |

**Securities registered pursuant to Section 12(b) of the Act:**

| | |
|---|---|
| **Common Stock, $0.01 par value per share** | **NASDAQ Global Select Market** |
| (Title of Class) | (Name of Exchange on which registered) |

**Securities registered pursuant to Section 12(g) of the Act:**

**None**
(Title of Class)

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☒ NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act. YES ☐ NO ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☒ NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). YES ☒ NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See the definitions of "large accelerated filer", "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one): Large accelerated filer ☒   Accelerated filer ☐   Non-accelerated filer ☐   smaller reporting company ☐

**EXHIBIT 52**

POUNDS EX 0728

# PART I

**Item 1. Business.**

**General**

Headquartered in Norfolk, Virginia and incorporated in Delaware, we are a leading company in the acquisition and collection of nonperforming loans in the Americas and Europe. Our business focuses upon the acquisition, collection, and processing of both unpaid and normal-course accounts receivable originally owed to credit grantors, government entities, and others. Our primary business is the purchase, collection and management of portfolios of nonperforming consumer loans. The accounts we acquire are the unpaid obligations of individuals owed to credit grantors, which primarily include banks and other types of consumer, retail, and auto finance companies. We also provide the following fee-based services:

- Contingent collections of nonperforming loans in Europe;
- Vehicle location, skip tracing and collateral recovery for auto lenders, government entities and law enforcement;
- Revenue administration, audit and debt discovery services for local government entities; and
- Class action claims recovery services and related payment processing.

We have one reportable segment, accounts receivable management, based on similarities among the operating units including the nature of the products and services, the nature of the production processes, the types or classes of customers for our products and services, the methods used to distribute our products and services, and the nature of the regulatory environment.

On August 3, 2015 we acquired 55% of the equity interest in RCB Investimentos S.A. ("RCB"). The remaining 45% of the equity interest in RCB is owned by the executive team and previous owners of RCB. RCB was founded in 2007 and is a leading master servicing platform for nonperforming loans in Brazil. RCB specializes in structuring, investing and operating receivable and credit-related assets. The founders of RCB each entered into long-term employment agreements with us and will continue to manage RCB's local business in Brazil. Our investment for the 55% ownership of RCB was paid for with approximately $55.2 million in cash which was borrowed under our existing domestic revolving credit facility. The majority of cash paid to acquire the equity interest in RCB is expected to be used in the ordinary course of business. As part of the investment and call option agreements, we have the right to purchase the remaining 45% of RCB at certain multiples of earnings before interest, taxes, depreciation and amortization ("EBITDA") beginning August 3, 2019 and lasting for two years.

The scale and scope of our international business expanded substantially during 2014 primarily due to the acquisition of Aktiv Kapital ("Aktiv"), a Norway-based leader in acquiring and servicing nonperforming consumer debt throughout Europe and Canada. With the Aktiv acquisition, we became one of the world's largest acquirers of nonperforming consumer loans from banks and other creditors. The Aktiv acquisition provided us entry into several new markets, resulting in additional geographic diversity in portfolio purchasing and collection. Aktiv's executive team and the more than 400 Aktiv employees joined our workforce upon the closing of the transaction.

We believe that the strengths of our business are our analytical approach to portfolio pricing and servicing, our processing systems and procedures, our relationships with many of the largest consumer lenders, and our extensive compliance systems and culture. The success of our business depends on our ability to purchase nonperforming loans at appropriate valuations and to collect on those receivables in a compliant, effective and efficient manner.

Our Core business specializes in receivables that have been charged-off by the credit grantor. Because the credit grantor and/or other debt servicing companies have unsuccessfully attempted to fully collect these receivables, we are able to purchase them at a substantial discount to their face value.

Our Insolvency business consists primarily of purchasing and collecting accounts that are involved in a Chapter 13 bankruptcy proceeding from credit grantors based in the United States. During 2014, the geographic footprint of the Insolvency business expanded into Canada and Europe.

We were initially formed as Portfolio Recovery Associates, L.L.C., a Delaware limited liability company, on March 20, 1996. In connection with our 2002 initial public offering, all of the membership units of Portfolio Recovery Associates, L.L.C. were exchanged, simultaneously with the effectiveness of our registration statement, for a single class of Portfolio Recovery Associates, Inc. common stock, a new Delaware corporation formed on August 7, 2002. Accordingly, the members of Portfolio Recovery Associates, L.L.C. became the common stockholders of Portfolio Recovery Associates, Inc., which became the parent company of Portfolio Recovery Associates, L.L.C. and its subsidiaries. On October 23, 2014, we changed our name to PRA Group, Inc.

POUNDS EX 0729

*Portfolio Purchases by Stratifications (Domestic Only)*

The following table categorizes our life-to-date domestic portfolio purchases as of December 31, 2015 into major asset type, delinquency category, and geographic location.

### Domestic Portfolio Purchases by Stratification, life-to-date
*Amounts in thousands*

| Stratifications | Number of Accounts | % | Face Value (1) | % | Original Purchase Price (2) | % |
|---|---|---|---|---|---|---|
| **Major Asset Type** | | | | | | |
| Major Credit Cards | 21,468 | 53% | $ 57,442,103 | 66% | $ 2,569,390 | 60% |
| Consumer Finance | 6,717 | 16 | 8,743,105 | 10 | 161,500 | 4 |
| Private Label Credit Cards | 11,883 | 29 | 15,648,519 | 18 | 1,421,946 | 33 |
| Auto Deficiency | 681 | 2 | 4,854,055 | 6 | 164,472 | 3 |
| Total | 40,749 | 100% | 86,687,782 | 100% | 4,317,308 | 100% |
| | | | | | | |
| **Delinquency Category** | | | | | | |
| Fresh | 4,456 | 11% | 9,750,541 | 11% | 1,171,173 | 27% |
| Primary | 5,331 | 13 | 10,103,052 | 12 | 638,657 | 15 |
| Secondary | 9,327 | 23 | 12,381,615 | 14 | 640,610 | 15 |
| Tertiary | 4,871 | 12 | 6,797,760 | 8 | 136,788 | 3 |
| Insolvency | 5,895 | 14 | 23,983,733 | 28 | 1,548,741 | 36 |
| Other | 10,869 | 27 | 23,671,081 | 27 | 181,339 | 4 |
| Total | 40,749 | 100% | 86,687,782 | 100% | 4,317,308 | 100% |
| | | | | | | |
| **Geographic Location** | | | | | | |
| California | 4,418 | 11% | 11,383,515 | 13% | 536,579 | 12% |
| Texas | 5,456 | 13 | 9,268,692 | 11 | 380,842 | 9 |
| Florida | 3,265 | 8 | 8,082,552 | 9 | 378,331 | 9 |
| New York | 2,340 | 6 | 5,036,132 | 6 | 225,290 | 5 |
| Ohio | 1,846 | 5 | 3,256,214 | 4 | 176,130 | 4 |
| Pennsylvania | 1,500 | 4 | 3,188,738 | 4 | 160,055 | 4 |
| Illinois | 1,544 | 4 | 3,125,019 | 4 | 170,225 | 4 |
| North Carolina | 1,488 | 4 | 3,092,561 | 4 | 153,530 | 4 |
| Georgia | 1,353 | 3 | 2,880,124 | 3 | 168,398 | 4 |
| Other (3) | 17,539 | 42 | 37,374,235 | 42 | 1,967,928 | 45 |
| Total | 40,749 | 100% | 86,687,782 | 100% | 4,317,308 | 100% |

(1) Represents the original face amount purchased from sellers and has not been reduced by any adjustments, including payments and buybacks.

(2) Represents the cash paid to sellers to acquire portfolios of nonperforming loans and has not been reduced by any adjustments, including payments and buybacks.

(3) Each state included in "Other" represents less than 2% of the face value of total life-to-date domestic purchases.

*Investments in Securitized Assets*

We hold a majority interest in a closed-end Polish investment fund. The fund was formed in December 2014 to acquire portfolios of nonperforming loans in Poland. Our investment consists of a 100% interest in the Series B certificates and a 20% interest in the Series C certificates. Each certificate comes with one vote and is governed by a co-investment agreement. Series C certificates, which share equally in the residual profit of the fund, are accounted for as debt securities classified as available-for-sale and are stated at fair value. Income is recognized using the effective yield method.

POUNDS EX 0730

Case 1:16-cv-01395-WO-JEP　Document 1-18　Filed 12/09/16　Page 4 of 35

10-K 1 praa-20141231x10k.htm 10-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-K

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the fiscal year ended December 31, 2014

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

### Commission File Number: 000-50058

---

# PRA Group, Inc.
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **75-3078675** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| | |
|---|---|
| **120 Corporate Boulevard, Norfolk, Virginia** | **23502** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: **(888) 772-7326**

Securities registered pursuant to Section 12(b) of the Act:

| | |
|---|---|
| **Common Stock, $0.01 par value per share** | **NASDAQ Global Select Market** |
| (Title of Class) | (Name of Exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Act:
None

---

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☒ NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act. YES ☐ NO ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☒ NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). YES ☒ NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

POUNDS EX 0731

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 5 of 35

The following table summarizes our life-to-date domestic portfolio purchases as of December 31, 2014, by geographic location (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Face Value (1) | % | Original Purchase Price (2) | % |
|---|---|---|---|---|---|---|
| California | 4,080 | 11% | $ 10,902,866 | 13% | $ 479,784 | 13% |
| Texas | 5,123 | 14 | 8,868,579 | 11 | 333,257 | 9 |
| Florida | 3,013 | 8 | 7,752,296 | 9 | 338,383 | 9 |
| New York | 2,154 | 6 | 4,827,234 | 6 | 199,041 | 5 |
| Ohio | 1,730 | 5 | 3,102,768 | 4 | 156,666 | 4 |
| Pennsylvania | 1,367 | 4 | 3,013,841 | 4 | 138,318 | 4 |
| Illinois | 1,427 | 4 | 2,971,145 | 4 | 150,859 | 4 |
| North Carolina | 1,363 | 4 | 2,922,169 | 4 | 134,731 | 4 |
| Georgia | 1,245 | 3 | 2,749,288 | 3 | 151,162 | 4 |
| Other(3) | 16,107 | 41 | 35,491,403 | 42 | 1,738,812 | 44 |
| Total: | 37,609 | 100% | $ 82,601,589 | 100% | $ 3,821,013 | 100% |

(1) "Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments, including payments and buybacks.
(2) "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of finance receivables and has not been reduced by any adjustments, including payments and buybacks.
(3) Each state included in "Other" represents less than 2% of the face value of total life-to-date domestic purchases.

*Portfolio Purchasing*

The following table displays our quarterly portfolio purchases for the periods indicated.

| Portfolio Purchase Source (amounts in thousands) | Q4-2014 | Q3-2014 | Q2-2014 | Q1-2014 | Q4-2013 | Q3-2013 | Q2-2013 | Q1-2013 |
|---|---|---|---|---|---|---|---|---|
| North America-Core | $ 119,714 | $ 118,018 | $ 91,904 | $ 79,085 | $ 65,759 | $ 89,044 | $ 113,314 | $ 126,951 |
| North America-Insolvency | 24,949 | 38,535 | 16,187 | 72,003 | 31,987 | 41,794 | 82,273 | 86,595 |
| Europe-Core (1) | 123,194 | 734,803 | 1,121 | 1,626 | 1,763 | 11,037 | 4,881 | 1,387 |
| Europe-Insolvency | 11,625 | — | — | — | — | — | — | — |
| Total Portfolio Purchasing | $ 279,482 | $ 891,356 | $ 109,212 | $ 152,714 | $ 99,509 | $ 141,875 | $ 200,468 | $ 214,933 |

(1) Excludes the December 2014 investment of $34.7 million in a securitized fund in Poland.

*Estimated Remaining Collections*

The following chart shows our ERC by geographical region at December 31, 2014 (amounts in millions).

POUNDS EX 0732

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 6 of 35

10-K 1 praa-20131231x10k.htm 10-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the fiscal year ended December 31, 2013

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

### Commission File Number: 000-50058

---

# Portfolio Recovery Associates, Inc.
*(Exact name of registrant as specified in its charter)*

| <u>Delaware</u> | <u>75-3078675</u> |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| <u>120 Corporate Boulevard, Norfolk, Virginia</u> | <u>23502</u> |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: <u>(888) 772-7326</u>

Securities registered pursuant to Section 12(b) of the Act:

| <u>Common Stock, $0.01 par value per share</u> | <u>NASDAQ Global Select Market</u> |
|---|---|
| (Title of Class) | (Name of Exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Act:
None

---

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
YES ☒   NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act.   YES ☐   NO ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   YES ☒   NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

POUNDS EX 0733

We also review the geographic distribution of accounts within a portfolio because we have found that state specific laws and rules can have an effect on the collectability of accounts located there. In addition, economic factors and bankruptcy trends vary regionally and are factored into our purchase price equation.

The following table summarizes our life to date domestic portfolio purchases as of December 31, 2013, by geographic location (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Face Value (1) | % | Original Purchase Price (2) | % |
|---|---|---|---|---|---|---|
| California | 3,687 | 11% | $ 10,321,143 | 13% | $ 419,670 | 13% |
| Texas | 4,791 | 14 | 8,425,708 | 11 | 280,132 | 8 |
| Florida | 2,730 | 8 | 7,356,289 | 9 | 295,328 | 9 |
| New York | 1,925 | 6 | 4,519,270 | 6 | 171,252 | 5 |
| Ohio | 1,610 | 5 | 2,928,792 | 4 | 137,296 | 4 |
| Pennsylvania | 1,227 | 4 | 2,833,775 | 4 | 118,307 | 4 |
| Illinois | 1,295 | 4 | 2,778,831 | 4 | 128,867 | 4 |
| North Carolina | 1,225 | 4 | 2,716,528 | 3 | 112,849 | 3 |
| Georgia | 1,118 | 3 | 2,559,975 | 3 | 125,284 | 4 |
| Michigan | 916 | 3 | 2,135,785 | 3 | 99,939 | 3 |
| New Jersey | 797 | 2 | 2,105,793 | 3 | 93,115 | 3 |
| Arizona | 623 | 2 | 1,689,429 | 2 | 70,545 | 2 |
| Virginia | 909 | 3 | 1,646,631 | 2 | 76,324 | 2 |
| Tennessee | 734 | 2 | 1,611,983 | 2 | 75,573 | 2 |
| Massachusetts | 584 | 2 | 1,428,007 | 2 | 59,027 | 2 |
| Indiana | 625 | 2 | 1,396,328 | 2 | 71,851 | 2 |
| Other(3) | 9,444 | 25 | 21,378,689 | 27 | 961,484 | 30 |
| Total: | 34,240 | 100% | $ 77,832,956 | 100% | $ 3,296,843 | 100% |

(1) "Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments, including payments and buybacks.
(2) "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables and has not been reduced by any adjustments, including payments and buybacks.
(3) Each state included in "Other" represents less than 2% of the face value of total life-to-date domestic purchases.

**Purchasing Process**

We acquire portfolios from debt owners through auctions and negotiated sales. In an auction process, the seller will assemble a portfolio of receivables and will either broadly offer the portfolio to the market or seek purchase prices from specifically invited potential purchasers. In a privately negotiated sale process, the debt owner will contact known purchasers directly, take bids and negotiate the terms of sale. We also acquire accounts in forward flow contracts. Under a forward flow contract we agree to purchase defaulted consumer receivables from a debt owner on a periodic basis, at a set percentage of face value of the receivables over a specified time period, generally from three to twelve months. These agreements often contain a provision requiring that the attributes and selection criteria of the receivables to be sold will not significantly change each month. If this provision is not adhered to, the contract will typically allow for the early termination of the forward flow contract by the purchaser or other appropriate remedies as mutually agreed upon. Forward flow contracts provide receivable owners with a consistent source of value for defaulted accounts, and provide the debt buyer with a steady and reliable source of consumer receivables for its collection operation.

In a typical Core portfolio sale transaction, after signing a non-disclosure agreement, a debt owner distributes a computer data file containing ten to fifteen essential data fields on each consumer account in the portfolio offered for sale. Such fields typically include but are not limited to the customer's name, address, outstanding balance, date of charge-off, date of last payment and the date the account was opened. Information that is not typically provided includes the original underwriting documentation, charge and payment history prior to charge-off, and collection notations. We perform our initial due diligence on the portfolio by electronically cross-checking the data fields provided through secured delivery against the accounts in our owned portfolios and other databases. We compile a variety of portfolio level reports examining all available data.

POUNDS EX 0734

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 8 of 35

10-K 1 praa-20121231x10k.htm 10-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-K

☒    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2012**

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

### Commission File Number: 000-50058

---

# Portfolio Recovery Associates, Inc.
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **75-3078675** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| | |
|---|---|
| **120 Corporate Boulevard, Norfolk, Virginia** | **23502** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (888) 772-7326**

Securities registered pursuant to Section 12(b) of the Act:

| | |
|---|---|
| **Common Stock, $0.01 par value per share** | **NASDAQ Global Select Market** |
| (Title of Class) | (Name of Exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Act:
**None**

---

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☒   NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act.   YES ☐   NO ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   YES ☒   NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

POUNDS EX 0735

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 9 of 35

The following table summarizes our life to date portfolio purchases as of December 31, 2012, into the delinquency categories presented (amounts in thousands):

| Account Type | No. of Accounts | % | Life to Date Purchased Face Value (1) | % | Original Purchase Price (2) | % |
|---|---|---|---|---|---|---|
| Fresh | 2,370 | 8% | $ 6,072,477 | 8% | $ 589,579 | 22% |
| Primary | 4,595 | 15 | 8,420,292 | 12 | 433,013 | 17 |
| Secondary | 5,456 | 17 | 8,323,896 | 12 | 326,288 | 12 |
| Tertiary | 4,044 | 13 | 5,434,509 | 8 | 76,378 | 3 |
| Bankruptcy Trustees | 4,365 | 14 | 19,682,872 | 28 | 1,095,485 | 41 |
| Other | 10,108 | 33 | 22,380,257 | 32 | 138,384 | 5 |
| Total: | 30,938 | 100% | $ 70,314,303 | 100% | $ 2,659,127 | 100% |

(1) "Life to Date Purchased Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments, including payments and buybacks.
(2) "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.

We also review the geographic distribution of accounts within a portfolio because we have found that state specific laws and rules can have an effect on the collectability of accounts located there. In addition, economic factors and bankruptcy trends vary regionally and are factored into our purchase price equation.

The following table summarizes our life to date portfolio purchases as of December 31, 2012, by geographic location (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Life to Date Purchased Face Value (1) | % | Original Purchase Price (2) | % |
|---|---|---|---|---|---|---|
| California | 3,260 | 11% | $ 9,254,352 | 13% | $ 344,442 | 13% |
| Texas | 4,485 | 14 | 7,828,181 | 11 | 232,081 | 9 |
| Florida | 2,440 | 8 | 6,676,604 | 9 | 242,625 | 9 |
| New York | 1,747 | 6 | 4,151,513 | 6 | 140,377 | 5 |
| Ohio | 1,494 | 5 | 2,635,188 | 4 | 112,059 | 4 |
| Pennsylvania | 1,101 | 4 | 2,570,572 | 4 | 95,785 | 4 |
| North Carolina | 1,103 | 4 | 2,465,985 | 4 | 92,306 | 3 |
| Illinois | 1,155 | 4 | 2,457,601 | 3 | 102,607 | 4 |
| Georgia | 1,000 | 3 | 2,339,521 | 3 | 104,756 | 4 |
| New Jersey | 706 | 2 | 1,894,274 | 3 | 75,174 | 3 |
| Michigan | 818 | 3 | 1,891,966 | 3 | 81,156 | 3 |
| Arizona | 548 | 2 | 1,507,856 | 2 | 56,595 | 2 |
| Virginia | 843 | 3 | 1,502,273 | 2 | 62,731 | 2 |
| Tennessee | 657 | 2 | 1,465,471 | 2 | 62,478 | 2 |
| Massachusetts | 525 | 2 | 1,290,669 | 2 | 47,549 | 2 |
| Indiana | 557 | 2 | 1,244,574 | 2 | 58,244 | 2 |
| Other (3) | 8,499 | 25 | 19,137,703 | 27 | 748,162 | 29 |
| Total: | 30,938 | 100% | $ 70,314,303 | 100% | $ 2,659,127 | 100% |

(1) "Life to Date Purchased Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments, including payments and buybacks.
(2) "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.
(3) Each state included in "Other" represents less than 2% of the face value of total defaulted consumer receivables.

POUNDS EX 0736

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 10 of 35

10-K 1 d259924d10k.htm FORM 10-K

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2011**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

### Commission File Number: 000-50058

# Portfolio Recovery Associates, Inc.
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **75-3078675** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **120 Corporate Boulevard, Norfolk, Virginia** | **23502** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (888) 772-7326**

Securities registered pursuant to Section 12(b) of the Act:

| | |
|---|---|
| **Common Stock, $0.01 par value per share** | **NASDAQ Global Select Market** |
| (Title of Class) | (Name of Exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Act:
None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
YES ☒   NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act.   YES ☐   NO ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   YES ☒   NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See the definitions of "large accelerated filer", "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | |
|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
YES ☐   NO ☒

The aggregate market value of the common stock held by non-affiliates of the registrant as of June 30, 2011 was $1,420,920,062 based on the 84.79 closing price as reported on the NASDAQ Global Select Market.

The number of shares of the registrant's Common Stock outstanding as of February 17, 2012 was 17,146,589.

POUNDS EX 0737

Table of Contents

The following table summarizes our life to date portfolio purchases as of December 31, 2011, by geographic location (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Life to Date Purchased Face Value [1] | % | Original Purchase Price [2] | % |
|---|---|---|---|---|---|---|
| California | 2,947 | 11 % | $ 8,549,724 | 13 % | $ 276,219 | 13 % |
| Texas | 4,193 | 15 | 7,329,316 | 11 | 191,982 | 9 |
| Florida | 2,213 | 8 | 6,170,741 | 10 | 195,335 | 9 |
| New York | 1,609 | 6 | 3,897,746 | 6 | 117,629 | 6 |
| Pennsylvania | 1,013 | 4 | 2,403,074 | 4 | 78,869 | 4 |
| Ohio | 1,214 | 4 | 2,350,629 | 4 | 89,294 | 4 |
| Illinois | 1,063 | 4 | 2,247,496 | 3 | 81,255 | 4 |
| North Carolina | 982 | 3 | 2,200,497 | 3 | 72,148 | 3 |
| Georgia | 909 | 3 | 2,148,300 | 3 | 83,336 | 4 |
| New Jersey | 647 | 2 | 1,776,863 | 3 | 61,217 | 3 |
| Michigan | 738 | 3 | 1,735,571 | 3 | 65,255 | 3 |
| Arizona | 491 | 2 | 1,379,268 | 2 | 44,830 | 2 |
| Virginia | 742 | 3 | 1,382,129 | 2 | 50,336 | 2 |
| Tennessee | 596 | 2 | 1,348,878 | 2 | 50,415 | 2 |
| Massachusetts | 484 | 2 | 1,209,030 | 2 | 38,966 | 2 |
| Indiana | 453 | 2 | 1,122,944 | 2 | 46,156 | 2 |
| Other [3] | 7,764 | 26 | 17,375,875 | 27 | 593,460 | 28 |
| **Total:** | **28,058** | **100 %** | **$ 64,628,081** | **100 %** | **$ 2,136,702** | **100 %** |

(1)   "Life to Date Purchased Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments, including payments and buybacks and reflects all accounts purchased regardless of whether or not we currently have the ability to collect on the account.

(2)   "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.

(3)   Each state included in "Other" represents less than 2% of the face value of total defaulted consumer receivables.

**Purchasing Process**

We acquire portfolios from debt owners through auctions and negotiated sales. In an auction process, the seller will assemble a portfolio of receivables and will either broadly offer the portfolio to the market or seek purchase prices from specifically invited potential purchasers. In a privately negotiated sale process, the debt owner will contact known purchasers directly, take bids and negotiate the terms of sale. We also acquire accounts in forward flow contracts. Under a forward flow contract we agree to purchase defaulted consumer receivables from a debt owner on a periodic basis, at a set percentage of face value of the receivables over a specified time period, generally from three to twelve months. These agreements often contain a provision requiring that the attributes and selection criteria of the receivables to be sold will not significantly change each month. If this provision is not adhered to, the contract will allow for the early termination of the forward flow contract by the purchaser or other appropriate remedies as mutually agreed upon. Forward flow contracts are a consistent source of defaulted consumer receivables for accounts receivables management providers and provide the debt owner with a reliable source of revenue and a professional resolution of defaulted consumer receivables.

In a typical Core portfolio sale transaction, a debt owner initially distributes a computer data file containing ten to fifteen essential data fields on each receivables account in the portfolio offered for sale. Such fields typically include but are not limited to the customer's name, address, outstanding balance, date of charge-off, date of last payment and the date the account was opened. Information that is not typically provided includes the original underwriting documentation, charge and payment history prior to charge-off, and collection notations. We perform our initial due diligence on the portfolio by electronically cross-checking the data fields on the computer disk or data tape against the accounts in our owned portfolios and other databases. We compile a variety of portfolio level reports examining all demographic data available.

10

POUNDS EX 0738

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2010**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

Commission File Number: 000-50058

# Portfolio Recovery Associates, Inc.

*(Exact name of registrant as specified in its charter)*

| Delaware | 75-3078675 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |
| 120 Corporate Boulevard, Norfolk, Virginia | 23502 |
| *(Address of principal executive offices)* | *(Zip Code)* |

Registrant's telephone number, including area code: (888) 772-7326

Securities registered pursuant to Section 12(b) of the Act:

Common Stock, $0.01 par value per share
(Title of Class)

Securities registered pursuant to Section 12(g) of the Act: <u>None</u>

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☑ NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act. YES ☐ NO ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities and Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☑ NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). YES ☑ NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment of this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "large accelerated filer", "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☑          Accelerated filer ☐          Non-accelerated filer ☐          Smaller reporting company ☐.
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

YES ☐ NO ☑

POUNDS EX 0739

Table of Contents

(1)   The "Life to Date Purchased Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments including payments and buybacks.

(2)   The "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.

We also review the geographic distribution of accounts within a portfolio because we have found that state specific laws and rules can have an effect on the collectability of accounts located there. In addition, economic factors and bankruptcy trends vary regionally and are factored into our maximum purchase price equation.

The following chart sets forth our overall life to date portfolio of defaulted consumer receivables geographically as of December 31, 2010 (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Life to Date Purchased Face Value(1) | % | Original Purchase Price(2) | % |
|---|---|---|---|---|---|---|
| California | 2,507 | 10% | $ 7,046,011 | 13% | $ 210,721 | 12% |
| Texas | 3,820 | 16% | 6,331,198 | 12% | 159,988 | 9% |
| Florida | 1,913 | 8% | 5,268,681 | 10% | 155,024 | 9% |
| New York | 1,428 | 6% | 3,368,356 | 6% | 98,474 | 6% |
| Pennsylvania | 846 | 3% | 2,059,659 | 4% | 66,681 | 4% |
| North Carolina | 867 | 4% | 1,944,480 | 4% | 59,122 | 3% |
| Illinois | 950 | 4% | 1,920,035 | 4% | 65,789 | 4% |
| Ohio | 843 | 3% | 1,902,952 | 3% | 71,749 | 4% |
| Georgia | 769 | 3% | 1,791,183 | 3% | 68,417 | 4% |
| New Jersey | 564 | 2% | 1,548,719 | 3% | 49,798 | 3% |
| Michigan | 644 | 3% | 1,477,883 | 3% | 53,281 | 3% |
| Virginia | 664 | 3% | 1,177,839 | 2% | 41,297 | 2% |
| Tennessee | 512 | 2% | 1,144,523 | 2% | 42,836 | 2% |
| Arizona | 413 | 2% | 1,134,406 | 2% | 33,946 | 2% |
| Massachusetts | 429 | 2% | 1,045,218 | 2% | 32,289 | 2% |
| South Carolina | 423 | 2% | 974,174 | 2% | 28,451 | 2% |
| Other (3) | 6,704 | 27% | 14,700,408 | 25% | 490,431 | 29% |
| **Total** | **24,296** | **100%** | **$ 54,835,725** | **100%** | **$ 1,728,294** | **100%** |

(1)   The "Life to Date Purchased Face Value" represents the original face amount purchased from sellers and has not been reduced by any adjustments including payments and buybacks.

(2)   The "Original Purchase Price" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.

(3)   Each state included in "Other" represents less than 2% of the face value of total defaulted consumer receivables.

**Purchasing Process**

We acquire portfolios from debt owners through auctions and negotiated sales. In an auction process, the seller will assemble a portfolio of receivables and will either broadly offer the portfolio to the market or seek purchase prices from specifically invited potential purchasers. In a privately negotiated sale process, the debt owner will contact known purchasers directly, take bids and negotiate the terms of sale. We also acquire accounts in forward flow contracts. Under a forward flow contract we agree to purchase defaulted consumer receivables from a debt owner on a periodic basis, at a set percentage of face value of the receivables over a specified time period, generally from three to twelve months. These agreements typically have a provision requiring that the attributes of the receivables to be sold will not significantly change each month and that the debt owner efforts to collect these receivables will not change. If this provision is not adhered to, the contract will typically allow for the early termination of the forward flow contract by the purchaser or call for a price renegotiation. Forward flow contracts are a consistent source of defaulted consumer receivables for accounts receivables management providers and provide the debt owner with a reliable source of revenue and a professional resolution of defaulted consumer receivables.

In a typical sale transaction, a debt owner initially distributes a computer data file containing ten to fifteen essential data fields on each receivables account in the portfolio offered for sale. Such fields typically include but are not limited to the customer's name, address, outstanding balance, date of charge-off, date of last payment and the date the account was opened. We perform our initial due diligence on the portfolio by electronically cross-checking the data fields on the computer disk or data tape against the accounts in our owned portfolios and

9

POUNDS EX 0740

<u>**Table of Contents**</u>

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

☑    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

     **For the fiscal year ended December 31, 2009**

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

     **For the transition period from _____ to _____**

Commission File Number: 000-50058

# Portfolio Recovery Associates, Inc.

*(Exact name of registrant as specified in its charter)*

| Delaware | 75-3078675 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |
| 120 Corporate Boulevard, Norfolk, Virginia | 23502 |
| *(Address of principal executive offices)* | *(Zip Code)* |

Registrant's telephone number, including area code: (888) 772-7326

Securities registered pursuant to Section 12(b) of the Act:
<u>Common Stock, $0.01 par value per share</u>
(Title of Class)
Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☑ NO ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act. YES ☐ NO ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities and Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☑ NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). YES ☐ NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment of this Form 10-K. \_\_\_\_

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑     Accelerated filer ☐       Non-accelerated filer ☐       Smaller reporting company ☐
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). YES ☐ NO ☑

POUNDS EX 0741

Case 1:16-cv-01395-WO-JEP    Document 1-18    Filed 12/09/16    Page 15 of 35

Table of Contents

servicer and receive a lower purchase price. Secondary and tertiary accounts are typically more than 660 days past due and charged-off, have been placed with two or three contingent fee servicers and receive even lower purchase prices. We also purchase accounts previously worked by four or more agencies and these are typically 1,260 days or more past due and receive an even lower price. In addition, we purchase accounts that are included in consumer bankruptcies. These bankrupt accounts are typically filed under Chapter 13 of the U.S. Bankruptcy Code and have an associated payment plan that can range from 3 to 5 years. We purchase bankrupt accounts in both forward flow and spot transactions and, consequently, they can be at any age in the bankruptcy plan life cycle.

As shown in the following chart, as of December 31, 2009, we purchase accounts at any point in the delinquency cycle (amounts in thousands):

| Account Type | No. of Accounts | % | Life to Date Purchased Face Value of Defaulted Consumer Receivables(1) | % |
|---|---|---|---|---|
| Fresh | 1,079 | 4.9% | $ 3,525,120 | 7.3% |
| Primary | 3,193 | 14.5% | 5,479,669 | 11.4% |
| Secondary | 3,503 | 15.9% | 5,595,727 | 11.7% |
| Tertiary | 3,743 | 17.0% | 4,793,387 | 10.0% |
| BK Trustees | 2,882 | 13.1% | 12,305,661 | 25.6% |
| Other | 7,651 | 34.6% | 16,331,209 | 34.0% |
| **Total:** | **22,051** | **100.0%** | **$48,030,773** | **100.0%** |

(1) The "Life to Date Purchased Face Value of Defaulted Consumer Receivables" represents the original face amount purchased from sellers and has not been decremented by any adjustments including payments and buybacks.

We also review the geographic distribution of accounts within a portfolio because we have found that certain states have more debtor-friendly laws than others and, therefore, are less desirable from a collectibility perspective. In addition, economic factors and bankruptcy trends vary regionally and are factored into our maximum purchase price equation.

The following chart sets forth our overall life to date portfolio of defaulted consumer receivables geographically as of December 31, 2009 (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Life to Date Purchased Face Value of Defaulted Consumer Receivables(1) | % | Original Purchase Price of Defaulted Consumer Receivables(2) | % |
|---|---|---|---|---|---|---|
| California | 2,240 | 10% | $ 6,087,281 | 13% | $ 156,978 | 12% |
| Texas | 3,624 | 16% | 5,789,260 | 12% | 133,468 | 10% |
| Florida | 1,717 | 8% | 4,589,347 | 10% | 117,877 | 9% |
| New York | 1,316 | 6% | 3,054,556 | 6% | 81,510 | 6% |
| Pennsylvania | 763 | 3% | 1,850,103 | 4% | 54,766 | 4% |
| North Carolina | 770 | 3% | 1,686,036 | 4% | 46,677 | 3% |
| Illinois | 872 | 4% | 1,654,088 | 3% | 52,029 | 4% |
| Ohio | 752 | 3% | 1,625,847 | 3% | 56,006 | 4% |
| Georgia | 682 | 3% | 1,519,063 | 3% | 53,101 | 4% |
| New Jersey | 510 | 2% | 1,389,934 | 3% | 39,356 | 3% |
| Michigan | 582 | 3% | 1,271,094 | 3% | 42,192 | 3% |
| Virginia | 558 | 3% | 1,002,532 | 2% | 31,926 | 2% |
| Tennessee | 462 | 2% | 990,778 | 2% | 34,381 | 3% |
| Arizona | 361 | 2% | 952,172 | 2% | 24,765 | 2% |
| Massachusetts | 395 | 2% | 942,590 | 2% | 26,105 | 2% |
| South Carolina | 392 | 2% | 891,286 | 2% | 23,717 | 2% |
| Other(3) | 6,055 | 28% | 12,734,806 | 26% | 385,997 | 27% |
| **Total:** | **22,051** | **100%** | **$48,030,773** | **100%** | **$1,360,851** | **100%** |

(1) The "Life to Date Purchased Face Value of Defaulted Consumer Receivables" represents the original face amount purchased from sellers and has not been decremented by any adjustments including payments and buybacks.

POUNDS EX 0742

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 16 of 35

10-K 1 w72980e10vk.htm FORM 10-K

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# FORM 10-K

☑     **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

    **For the fiscal year ended December 31, 2008**

☐     **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

    For the transition period from _____ to _____

Commission File Number: 000-50058

# Portfolio Recovery Associates, Inc.

*(Exact name of registrant as specified in its charter)*

| Delaware | 75-3078675 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |
| 120 Corporate Boulevard, Norfolk, Virginia | 23502 |
| *(Address of principal executive offices)* | *(Zip Code)* |

Registrant's telephone number, including area code: (888) 772-7326

Securities registered pursuant to Section 12(b) of the Act:
Common Stock, $0.01 par value per share
(Title of Class)

Securities registered pursuant to Section 12(g) of the Act: None

    Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
YES ☐ NO ☑

    Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act.
YES ☐ NO ☑

    Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities and Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.
YES ☑ NO ☐

    Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment of this Form 10-K. ☐

    Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | Accelerated filer ☐ | Non-accelerated filer ☐ | Smaller reporting company ☐ |
|---|---|---|---|
| ☑ | | | |

(Do not check if a smaller reporting company)

    Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

POUNDS EX 0743
Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 17 of 35

13 of the U.S. Bankruptcy Code and have an associated payment plan that can range from 3 to 5 years. We purchase bankrupt accounts in both forward flow and spot transactions and consequently, they can be at any age in the bankruptcy plan life cycle.

As shown in the following chart, as of December 31, 2008, we purchase accounts at any point in the delinquency cycle (amounts in thousands):

| Account Type | No. of Accounts | % | Life to Date Purchased Face Value of Defaulted Consumer Receivables(1) | % |
|---|---|---|---|---|
| Fresh | 783 | 4.1% | $ 2,897,585 | 7.3% |
| Primary | 2,396 | 12.6% | 4,086,581 | 10.2% |
| Secondary | 3,272 | 17.2% | 5,039,470 | 12.6% |
| Tertiary | 3,672 | 19.3% | 4,633,690 | 11.6% |
| BK Trustees | 2,053 | 10.7% | 8,631,036 | 21.6% |
| Other | 6,898 | 36.1% | 14,632,716 | 36.7% |
| **Total:** | **19,074** | **100.0%** | **$39,921,078** | **100.0%** |

(1) The "Life to Date Purchased Face Value of Defaulted Consumer Receivables" represents the original face amount purchased from sellers and has not been decremented by any adjustments including payments and buybacks.

We also review the geographic distribution of accounts within a portfolio because we have found that certain states have more debtor-friendly laws than others and, therefore, are less desirable from a collectibility perspective. In addition, economic factors and bankruptcy trends vary regionally and are factored into our maximum purchase price equation.

The following chart sets forth our overall life to date portfolio of defaulted consumer receivables geographically as of December 31, 2008 (amounts in thousands):

| Geographic Distribution | No. of Accounts | % | Life to Date Purchased Face Value of Defaulted Consumer Receivables (1) | % | Original Purchase Price of Defaulted Consumer Receivables (2) | % |
|---|---|---|---|---|---|---|
| Texas | 3,321 | 17% | $ 5,042,635 | 13% | $ 113,280 | 11% |
| California | 1,838 | 10% | 4,745,725 | 12% | 110,357 | 10% |
| Florida | 1,446 | 8% | 3,834,238 | 10% | 90,289 | 8% |
| New York | 1,144 | 6% | 2,686,008 | 7% | 69,125 | 6% |
| Pennsylvania | 658 | 3% | 1,591,432 | 4% | 46,224 | 4% |
| North Carolina | 660 | 3% | 1,399,197 | 4% | 37,896 | 4% |
| Illinois | 763 | 4% | 1,354,505 | 3% | 41,385 | 4% |
| Ohio | 639 | 3% | 1,331,921 | 3% | 44,583 | 4% |
| Georgia | 576 | 3% | 1,254,007 | 3% | 41,698 | 4% |
| New Jersey | 445 | 2% | 1,213,562 | 3% | 31,934 | 3% |
| Michigan | 487 | 3% | 1,005,867 | 3% | 33,127 | 3% |
| Virginia | 504 | 3% | 835,264 | 2% | 24,947 | 2% |
| Massachusetts | 352 | 2% | 824,884 | 2% | 21,500 | 2% |
| Tennessee | 387 | 2% | 821,304 | 2% | 27,617 | 3% |
| South Carolina | 338 | 2% | 755,429 | 2% | 20,246 | 2% |
| Arizona | 291 | 2% | 736,685 | 2% | 17,268 | 2% |
| Other (3) | 5,225 | 27% | 10,488,415 | 25% | 300,487 | 28% |
| **Total:** | **19,074** | **100%** | **$39,921,078** | **100%** | **$1,071,963** | **100%** |

(1) The "Life to Date Purchased Face Value of Defaulted Consumer Receivables" represents the original face amount purchased from sellers and has not been decremented by any adjustments including payments and buybacks.

(2) The "Original Purchase Price of Defaulted Consumer Receivables" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.

3) Each state included in "Other" represents less than 2% of the face value of total defaulted consumer receivables.

POUNDS EX 0744

8

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# FORM 10-K

☑    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

   **For the fiscal year ended December 31, 2007**

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

   **For the transition period from _____ to _____**

Commission File Number: 000-50058

# **Portfolio Recovery Associates, Inc.**

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| Delaware | 75-3078675 |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |
| 120 Corporate Boulevard, Norfolk, Virginia | 23502 |
| *(Address of principal executive offices)* | *(Zip Code)* |

Registrant's telephone number, including area code: (888) 772-7326

Securities registered pursuant to Section 12(b) of the Act:
Common Stock, $0.01 par value per share
(Title of Class)
Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☐ NO ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15 (d) of the Act. YES ☐ NO ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities and Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☑ NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment of this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑    Accelerated filer ☐         Non-accelerated filer ☐         Smaller reporting company ☐
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). YES ☐ NO ☑

The aggregate market value of the common stock held by non-affiliates of the registrant as of June 30, 2007 was $939,454,107 based on the $60.02 closing price as reported on the NASDAQ Global Stock Market.

The number of shares of the registrant's Common Stock outstanding as of February 14, 2008 was 15,163,056.

POUNDS EX 0745

Case 1:16-cv-01395-WO-JEP   Document 1-18   Filed 12/09/16   Page 19 of 35

As shown in the following chart, as of December 31, 2007, we purchase or service accounts at any point in the delinquency cycle.

| Account Type | No. of Accounts | % | Life to Date Purchased Face Value of Defaulted Consumer Receivables(1) | % |
|---|---|---|---|---|
| Fresh | 437,054 | 2.6% | $ 1,837,133,694 | 5.2% |
| Primary | 1,751,591 | 10.5% | 3,411,142,798 | 9.7% |
| Secondary | 2,606,072 | 15.6% | 4,496,690,016 | 12.7% |
| Tertiary | 3,402,180 | 20.3% | 4,297,282,044 | 12.2% |
| BK Trustees | 1,819,365 | 10.9% | 7,510,751,231 | 21.3% |
| Other | 6,710,585 | 40.1% | 13,779,844,921 | 38.9% |
| **Total:** | **16,726,847** | **100.0%** | **$ 35,332,844,704** | **100.0%** |

(1)  The "Life to Date Purchased Face Value of Defaulted Consumer Receivables" represents the original face amount purchased from sellers and has not been decremented by any adjustments including payments and buybacks.

We also review the geographic distribution of accounts within a portfolio because we have found that certain states have more debtor-friendly laws than others and, therefore, are less desirable from a collectibility perspective. In addition, economic factors and bankruptcy trends vary regionally and are factored into our maximum purchase price equation.

The following chart sets forth our overall life to date portfolio of defaulted consumer receivables geographically as of December 31, 2007:

| Geographic Distribution | No. of Accounts | % | Life to Date Purchased Face Value of Defaulted Consumer Receivables (1) | % | Original Purchase Price of Defaulted Consumer Receivables(2) | % |
|---|---|---|---|---|---|---|
| Texas | 2,985,339 | 18% | $ 4,572,650,090 | 13% | $ 91,113,655 | 12% |
| California | 1,670,186 | 10% | 4,287,048,493 | 12% | 79,953,070 | 10% |
| Florida | 1,291,026 | 8% | 3,443,924,244 | 10% | 67,166,072 | 8% |
| New York | 975,063 | 6% | 2,394,086,021 | 7% | 53,037,698 | 7% |
| Pennsylvania | 584,555 | 3% | 1,409,982,169 | 4% | 34,734,815 | 4% |
| Illinois | 645,103 | 4% | 1,181,261,995 | 3% | 29,909,745 | 4% |
| North Carolina | 563,082 | 3% | 1,213,756,630 | 3% | 28,573,672 | 4% |
| New Jersey | 389,348 | 2% | 1,091,712,754 | 3% | 23,826,008 | 3% |
| Ohio | 523,074 | 3% | 1,095,906,170 | 3% | 29,930,960 | 4% |
| Georgia | 497,371 | 3% | 1,068,311,899 | 3% | 29,803,024 | 4% |
| Michigan | 438,014 | 3% | 868,856,012 | 2% | 23,644,643 | 3% |
| Massachusetts | 319,863 | 2% | 738,152,928 | 2% | 15,678,219 | 2% |
| Arizona | 257,320 | 2% | 656,116,498 | 2% | 12,783,899 | 2% |
| Virginia | 324,516 | 2% | 673,479,899 | 2% | 17,505,830 | 2% |
| South Carolina | 298,489 | 2% | 657,881,226 | 2% | 15,002,918 | 2% |
| Tennessee | 329,601 | 2% | 707,781,156 | 2% | 19,927,659 | 3% |
| Other (3) | 4,634,897 | 27% | 9,271,936,520 | 27% | 219,034,475 | 26% |
| **Total:** | **16,726,847** | **100%** | **$35,332,844,704** | **100%** | **$791,626,362** | **100%** |

(1)  The "Life to Date Purchased Face Value of Defaulted Consumer Receivables" represents the original face amount purchased from sellers and has not been decremented by any adjustments including payments and buybacks.

(2)  The "Original Purchase Price of Defaulted Consumer Receivables" represents the cash paid to sellers to acquire portfolios of defaulted consumer receivables.

(3)  Each state included in "Other" represents less than 2% of the face value of total defaulted consumer receivables.

POUNDS EX 0746

NORTH CAROLINA
WAKE COUNTY

## **AFFIDAVIT OF COUNSEL (TURNER)**
## **AUTHENTICATING FORM 10-K EXCERPTS**

Emily P. Turner, Esq., being duly sworn, deposes and says:

1. I am an attorney licensed to practice law in North Carolina. I give this affidavit in the belief that it presents matters that are undisputed, as it solely concerns authentication of Form 10-K Annual Report (Excerpts) for 2007-2015 that I personally obtained from the "EDGAR" (Electronic Data Gathering and Reporting) website maintained by the United States Securities and Exchange Commission [https://www.sec.gov/edgar/searchedgar/companysearch.html], as follows:

2. On November 7, 2016, I accessed the "EDGAR" search engine at the url referenced above. I chose to search by "Company Name" and then entered the search term "PRA Group Inc." I then filtered the results of that search categorically by entering "10-K" into the field for "Filing Type".

3. I then selected the Form 10-K filings for each year from 2007-2015, and for each year I opened the link to that particular filing. I downloaded the 10-K filing in its entirety for each separate year from 2007-2015 into a .pdf file.

4. From each .pdf file for years 2007-2015 described at paragraph 3 above, I excerpted certain pages as follows:

      a.  2015 10-K Report: pages 1, 9, 84

      b.  2014 10-K Report: pages 1, 93

      c.  2013 10-K Report: pages 1, 17

      d.  2012 10-K Report: pages 1, 16

      e.  2011 10-K Report: pages 1, 11

      f.  2010 10-K Report: pages 2, 11

      g.  2009 10-K Report: pages 2, 10

      h.  2008 10-K Report: pages 1, 9

      i.  2007 10-K Report: pages 2, 10



EXHIBIT
53

POUNDS EX 0747

5.  The Form 10-K Excerpts referenced above at paragraphs 3 through 4, altogether appear as a composite Exhibit 52 to the Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Class Certification, and form a true, accurate, and complete copy of the excerpts obtained as of the date set out above.

FURTHER AFFIANT SAYETH NAUGHT.

This the 7th of November , 2016

Emily P. Turner

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me,

this the 7 day of November, 2016.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires: 7-17-21

SEONAID A RIJO
Notary Public
Wake
County
My Comm. Exp.
07-17-2021
NORTH CAROLINA

-2-

POUNDS EX 0748

# PRA Acquisition of North Carolina Accounts, 2008-2015



EXHIBIT
54
tabbies®

| Year | Number of Accounts | Face Amount | Avg Face Amount |
|------|--------------------|-------------|-----------------|
| 2008 | 96,918 | $185,440,370 | $1,913 |
| 2009 | 110,000 | $286,839,000 | $2,608 |
| 2010 | 97,000 | $258,444,000 | $2,664 |
| 2011 | 115,000 | $256,017,000 | $2,226 |
| 2012 | 121,000 | $265,488,000 | $2,194 |
| 2013 | 122,000 | $250,543,000 | $2,054 |
| 2014 | 138,000 | $205,641,000 | $1,490 |
| 2015 | 125,000 | $202,850,000 | $1,623 |

Source: PRA International 10-K filings with Securities and Exchange Commission

POUNDS EX 0749

# PRA Acquisition of North Carolina Accounts, 2008-2015
## Number of Accounts Acquired By Year



Source: PRA International 10-K filings with Securities and Exchange Commission

POUNDS EX 0750



# PRA Acquisition of North Carolina Accounts, 2008-2015
## Face Amount of Accounts Acquired By Year

Source: PRA International 10-K filings with Securities and Exchange Commission, not adjusted for inflation.

POUNDS EX 0751

# PRA Acquisition of North Carolina Accounts, 2008-2015
## Average Face Amount Per Account



Source: PRA International 10-K filings with Securities and Exchange Commission, not adjusted for inflation.

POUNDS EX 0752

NORTH CAROLINA
WAKE COUNTY

### AFFIDAVIT OF ALLAN FREYER
### REGARDING SUMMARY OF PRA PURCHASES OF NC ACCOUNTS 2008-2015

Allan M. Freyer, being first duly sworn, gives the following statement under oath:

1. I am an employee of the North Carolina Justice Center and am the director of the Center's Workers' Rights Project.

2. I give this affidavit for the purpose of describing the sources of the information set out in the table titled "PRA Acquisition of North Carolina Accounts, 2008-2015" and in three graphs accompanying that table.

3. The table "PRA Acquisition of North Carolina Accounts, 2008-2015" presents information obtained from Form 10-K and 10-K/A annual reports filed by PRA Group, Inc. as maintained by the United States Securities and Exchange Commission on "EDGAR" website (https://www.sec.gov/edgar/searchedgar/legacy/companysearch.html). In preparing the table, I followed the following steps:

    a. I opened every 10-K and 10-K/A for the years 2008-2015.

    b. Within each 10-K, I located the table titled "Domestic Portfolio Purchases by Stratification, Life-to-Date."

    c. From this table, I copied the entries for North Carolina under the headings (i) Number of Accounts, (ii) Face Value, and (iii) Original Purchase Price. I pasted these entries into an Excel spreadsheet.

4. I have reviewed the excerpts from the PRA Group, Inc. Form 10-K annual reports which have been included in Exhibit 52 of Plaintiffs' Exhibits in Support of Plaintiffs' Motions



EXHIBIT
55

POUNDS EX 0753

for Preliminary Injunction and Class Certification, and these contain the same information as I copied and included in the table "PRA Acquisition of North Carolina Accounts, 2008-2015."

5.   From the data in the table, I prepared the three graphs titled "PRA Acquisition of North Carolina Accounts, 2008-2015, Number of Accounts Acquired by Year"; "PRA Acquisition of North Carolina Accounts, 2008-2015, Face Amount of Accounts Acquired by Year"; and "PRA Acquisition of North Carolina Accounts, 2008-2015, Average Face Amount Per Account."

6.   The table accurately summarizes the foregoing information contained in the PRA Group, Inc. annual reports. The three graphs present this same information graphically.

AFFIANT FURTHER SAYETH NOUGHT.

This the _1_ day of November, 2016.

_____
**Allan Freyer**

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me,
this the 7th day of November , 2016.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires: 7·17·21 .

SEONAID A RIJO
Notary Public
Wake
County
My Comm. Exp.
07-17-2021
NORTH CAROLINA

-2-

POUNDS EX 0754

NORTH CAROLINA
WAKE COUNTY

## AFFIDAVIT OF SEONAID A. RIJO
## REGARDING PRA CASE FILINGS IN FOUR COUNTIES 2009-2012

I, Seonaid A. Rijo, being duly sworn, depose and say:

1.     I am a senior litigation paralegal with the North Carolina Justice Center.  I am
over the age of 18, am under no disability, and am competent to testify as to those matters which
are the subject of this affidavit.

2.     This affidavit summarizes the methods by which I counted the number of cases
filed by Portfolio Recovery Associates, LLC ("PRA") in four different counties in North
Carolina (Buncombe, Durham, New Hanover and Wake), during the period January 1, 2009
through and including December 31, 2012.

3.     I counted the number of cases filed by PRA using the computer screens of the
North Carolina Administrative Office of the Court's "VCAP" civil case processing system for
the North Carolina courts (hereinafter, "VCAP").

4.     VCAP data can be reviewed at terminals in clerks of courts' offices.  VCAP data
is not available "on line" through the Internet.

5.     The VCAP data for all 100 North Carolina counties is available at the VCAP
terminals in the Wake County Clerk of Court's office.  All of the research summarized below
was the result of computer screen review performed by me in the Wake County Clerk of Court's
office, in Room 118, Wake County Courthouse, during the dates of August 24-25, 2016 and
September 12-13, 2016.



**EXHIBIT**

tabbies

**56**

POUNDS EX 0755

6.      I was asked to count the number of PRA cases filed in Buncombe, Durham, New Hanover and Wake Counties for each of the years 2009 through 2012; to count the number of cases filed in these counties each month during 2009; and to count the number of cases filed in these counties each week during September 2009.

7.      I started by running a VCAP partial name search for "Portfolio Recovery." I then placed a "c" query command next to the name "Portfolio Recovery" to pull up all "civil actions." I next selected a beginning time period for each year starting with the first day of the first month of each year in the time period (i.e., 01/01/09; 01/01/10; 01/01/11 and 01/01/12). This search yielded results pages containing a list of cases. I reviewed these results pages; each screen contained ten new cases. I moved forward and backward through these results screens by pressing F8 to go forward or F7 to go backward.

8.      I counted the number of cases filed in each month of each year in the time period by counting the cases listed in each screen. I then counted the number of filings per each week in the month of September 2009 only.

9.      Exhibit 1 attached hereto sets out the number of cases filed by PRA during January 1, 2009 through and including December 31, 2012 in Buncombe, Durham, New Hanover and Wake.


[Intentionally Left Blank]

POUNDS EX 0756

FURTHER AFFIANT SAYETH NAUGHT.

This the 7th day of ___November___, 2016.

_Seonaid A. Rijo_ (signature)

**Seonaid A. Rijo**


STATE OF NORTH CAROLINA

COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me,

this the __7__ day of __Noviember__, 2016.

_Suijin Li Snyder_ (SEAL)

NOTARY PUBLIC

My Commission Expires: __9.11.17__.

SUIJIN LI SNYDER
Notary Public
Wake County
NORTH CAROLINA

POUNDS EX 0757

# BUNCOMBE COUNTY

**PRA Case Filings for Collections on Account from 01/01/2009 through 12/31/2012**

Breakdown of filings by year

- 2009 = 220
- 2010 = 8
- 2011 = 8
- 2012 = 210

**2009 Total Annual Filings = 220**

2009 Breakdown by Month (Jan. – Dec. '09)

- January = 4
- February = 3
- March = 0
- April = 1
- May = 2
- June = 2
- July = 5
- August = 20
- September = 183
- October = 0
- November = 0
- December = 0

**September 2009 Total Monthly Filings 183**

Breakdown by week in September '09

Week Ending 09/06/2009 = 32
Week Ending 09/13/2009 = 3
Week Ending 09/20/2009 = 48
Week Ending 09/27/2009 = 96
Week Ending = 10/03/2009 = 4

```
┌─────────────────┐
│    EXHIBIT      │
│  1 (to Ex 56)   │
└─────────────────┘
```

POUNDS EX 0758

# DURHAM COUNTY

**PRA Case Filings for Collections on Account from 01/01/2009 through 12/31/2012**

Breakdown of filings by year

- 2009 = 228
- 2010 = 5
- 2011 = 10
- 2012 = 164

**2009 Total Annual Filings = 228**

2009 Breakdown by Month (Jan. – Dec. '09)

- January = 14
- February = 2
- March = 2
- April = 4
- May = 1
- June = 3
- July = 11
- August = 27
- September = 164
- October = 0
- November = 0
- December = 0

**September 2009 Total Monthly Filings = 164**

Breakdown by week in September '09

Week Ending 09/06/2009 = 20
Week Ending 09/13/2009 = 3
Week Ending 09/20/2009 = 41
Week Ending 09/27/2009 = 92
Week Ending = 10/03/2009 = 8

POUNDS EX 0759

# NEW HANOVER COUNTY

**PRA Case Filings for Collections on Account from 01/01/2009 through 12/31/2012**

Breakdown of filings by year

- 2009 = 190
- 2010 = 11
- 2011 = 9
- 2012 = 206

**2009 Total Annual Filings = 190**

2009 Breakdown by Month (Jan. – Dec. '09)

- January = 5
- February = 0
- March = 0
- April = 1
- May = 0
- June = 2
- July = 10
- August = 19
- September = 152
- October = 1
- November = 0
- December = 0

**September 2009 Total Monthly Filings = 152**

Breakdown by week in September '09

Week Ending 09/06/2009 = 26
Week Ending 09/13/2009 = 0
Week Ending 09/20/2009 - 44
Week Ending 09/27/2009 = 76
Week Ending = 10/03/2009 = 6

-6-

POUNDS EX 0760

# WAKE COUNTY

**PRA Case Filings for Collections on Account from 01/01/2009 through 12/31/2012**

Breakdown of filings by year

- 2009 = 664
- 2010 = 29
- 2011 = 34
- 2012 = 594

**2009 Total Annual Filings = 664**

2009 Breakdown by Month (Jan. – Dec. '09)

- January = 11
- February = 9
- March = 1
- April = 7
- May = 8
- June = 12
- July = 19
- August = 68
- September = 530
- October = 1
- November = 0
- December = 0

**September 2009 Total Monthly Filings = 530**

Breakdown by week in September '09

Week Ending 09/06/2009 = 78
Week Ending 09/13/2009 = 1
Week Ending 09/20/2009 = 176
Week Ending 09/27/2009 = 93
Week Ending = 10/03/2009 = 182

POUNDS EX 0761