# EXHIBIT S

# The New York Times

BUSINESS DAY

# Automated Debt-Collection Lawsuits Engulf Courts

By ANDREW MARTIN   JULY 12, 2010

As millions of Americans have fallen behind on paying their bills, debt collection law firms have been clogging courtrooms with lawsuits seeking repayment.

Few have been as prolific as Cohen & Slamowitz, a Woodbury, N.Y., firm that has specialized in debt collection for nearly two decades. The firm has been filing roughly 80,000 lawsuits a year.

With just 14 lawyers on staff, that works out to more than 5,700 cases per lawyer.

How is that possible?

The answer to that question is at the heart of a growing debate over the increasing use of the nation's legal system to collect on bad debts.

Like many other firms, Cohen & Slamowitz relies on computer software to help prepare its cases. While many of the cases represent legitimate claims, critics say the lawsuits are too often based on inaccurate or incomplete information about the debtor or the amount owed.

Already, some state legislators and judges have tried to crack down on collection lawsuits, and on Monday, the Federal Trade Commission weighed in, saying the system for resolving disputes over consumer debts was broken and in need of "significant reforms."

EXHIBIT 57

POUNDS EX 0762

The commission, which says debt collection is its top consumer complaint, proposed that states require collectors to include more information about debts in their lawsuits, including a breakdown of the current balance by principal, interest and fees, and the relevant terms of the original credit contract, if not the contract itself.

The agency also urged states to adopt measures to make it more likely that consumers would show up in court to defend themselves; currently, most do not, resulting in default judgments.

"We are pushing very hard to make certain that debt collectors have sufficient substantiation, particularly when a consumer challenges the debt," said David Vladeck, director of the commission's Bureau of Consumer Protection.

The commission, which has limited authority to write debt collection rules, urged states to take action because most collection cases are filed in state courts.

The litigation boom has been propelled by fundamental changes in the way debts are collected, particularly for credit cards. In recent years, credit card companies have increasingly sold off debt they have considered uncollectible to debt buyers, usually for 5 cents or less on the dollar.

The debt buyers, in turn, may try to collect the debt themselves using traditional practices like sending letters or making phone calls to a consumer to try to arrange a payment plan. Increasingly, they are choosing to sue instead.

Collection law firms are able to handle such large volumes of cases because computer software automates much of their work. Typically, a debt buyer sends a law firm an electronic database that contains various data about consumers, including name, home address, the outstanding balance, the date of default and whether interest is still accruing on the account.

Once the data is obtained by a law firm, software like Collection-Master from a company called Commercial Legal Software can "take a file and run it through the entire legal system automatically," including sending out collection letters,

POUNDS EX 0763

summonses and lawsuits, said Nicholas D. Arcaro, vice president for sales and marketing at the company.

No group has definitive statistics on debt collection lawsuits, but federal regulators, collection lawyers and judges say the numbers have increased and are straining the court system.

Most consumers fail to show up in court, and those who do rarely have a lawyer. A court judgment gives debt buyers the ability to collect on the debt through actions like wage or property garnishment.

"What they are hoping to recover is the full dollar on some of it," said Robert J. Hobbs, deputy director of the National Consumer Law Center, an advocacy group. "On most of it, they are hoping to recover 40 or 50 cents on the dollar. And they are hoping to do it with as little work as they can."

Critics say the business model for some debt buyers and law firms relies on such huge volumes of legal actions that mistakes and abuses are inevitable, in part because the lawsuits are often based on little more than a defendant's name, address and alleged balance.

"It's the factory approach to practicing law," said Richard Rubin, a New Mexico lawyer who represents consumers against debt collectors.

Lawsuits are sometimes filed against the wrong people, critics say. Other times, they say, the amount owed is incorrect or includes questionable fees and interest that has been added to the balance.

In addition, it is not always clear if the debt buyer filing suit legally owns the debt, since debt portfolios are often sold several times.

Some collection lawyers complain that new requirements being imposed are holding them to higher standards than even the original creditors.

"In actuality, it's impossible to comply with," said Pedro Zabala, a North Carolina lawyer, speaking of a law passed last fall that requires more documentation to file suit.

POUNDS EX 0764

Fred N. Blitt, the president of the National Association of Retail Collection Attorneys, which represents more than 700 law firms, said the increase in collection cases was an inevitable result of the huge number of people who are not paying their bills. Given the volume of cases, Mr. Blitt maintained that mistakes were few.

"The reality is, if people owe the money, they should pay it," he said.

Cohen & Slamowitz declined to be interviewed for this article. In a 2009 deposition for a case accusing Cohen & Slamowitz of pursuing a debt that had already been paid, a partner at the firm, David A. Cohen, said the firm had 14 lawyers, though it also hired numerous outside lawyers to appear in court on a per diem basis. It also employed 30 to 40 legal secretaries and paralegals and about 60 people trying to collect debts, he said.

The firm filed 59,708 cases in 2005, 83,665 in 2006, 87,877 in 2007 and 80,873 in 2008, records from the lawsuit show.

As the case load has increased, some state legislators and judges have started to demand more information on the debt.

In addition to the new law in North Carolina, which requires third-party debt collectors to provide more proof of the debt, like an itemization of charges and fees, some local judges are challenging lawyers who are not prepared to back up their claims.

At a civil court hearing in Brooklyn in March, Judge Noach Dear demanded documents from Cohen & Slamowitz supporting its claim that Herman Johnson of Brooklyn owed $3,797.27 in credit card debt. Mr. Johnson disputed the claim.

"What proof did you have that this is the true gentleman that you were trying to pursue?" the judge asked David Robinson, a lawyer for Cohen & Slamowitz, according to a transcript.

"Just his Social, his date of birth, and his address and the account," Mr. Robinson said.

POUNDS EX 0765

"That's all you have?" the judge said. "So if you have somebody's Social number, date of birth and address, you could sue them without any other information?"

Mr. Johnson's case was dismissed, and Judge Dear last month issued an order requiring, among other things, that Cohen & Slamowitz provide further proof of a debt if a defendant challenged the firm's claim.

In an interview, Judge Dear said he did not think the order would necessarily result in a large drop-off in lawsuits. But, he said, given Cohen & Slamowitz's size, he hoped it would persuade other law firms to follow suit.

"I think personally it will weed out the cases that are no good, and then we'll get the defendants that truly do owe a debt," he said.

A version of this article appears in print on July 13, 2010, on page B1 of the New York edition with the headline: Automated Debt-Collection Lawsuits Engulf Courts.

© 2016 The New York Times Company

POUNDS EX 0766

# Debt Collectors Lobby to Block Tougher State Documentation Rules

Carter Dougherty
September 21, 2011 — 12:01 AM EDT

A wave of U.S. state laws that require debt collectors to document exactly who owes what has triggered a state-by-state lobbying battle over rules of evidence that the industry says could slice into profitability.

A 2009 law in North Carolina requiring collectors to provide original contracts and imposing penalties for erroneous litigation has slowed the industry's work in that state. Other states, including Massachusetts, Florida, California and Oregon, have followed North Carolina's law with similar proposals. Consumer advocates say the laws are necessary to curb abuses.

Though a new federal agency, the Consumer Financial Protection Bureau, will have jurisdiction over debt collectors, the industry is ramping up its lobbying primarily at the state level, hiring former Georgia attorney general Thurbert Baker to spearhead an effort to modify the state bills.

"We don't have lobbyists in 50 states but we do have internal resources that are talking, certainly, to all the large states," Steven Fredrickson, chief executive officer of Portfolio Recovery Associates, Inc., the largest publicly traded debt collector, said in a May 11 conference call.

New state legislation is typically aimed at debt buyers, who acquire and service portfolios of debt from the original creditors, often for pennies on the dollar. Debt buyers have stepped up the number of lawsuits they have filed in recent years to obtain payment.

## Pattern of Misconduct

Consumer groups see a pattern of misconduct. Al Ripley, director of consumer affairs for the North Carolina Justice Center, an advocacy group, said state legislators passed the new law in part because "they have friends and family members with experience" with



EXHIBIT 58

POUNDS EX 0767

Tougher state laws could erode revenue at Portfolio Recovery and other major firms, such as Encore Capital Group Inc., Asta Funding Inc., and the largest player by revenue, NCO Group, a unit of JPMorgan Chase & Co.'s private equity arm, One Equity Partners.

"We are becoming much more regulated in this industry than in the past," said Phillip Duff, president of Lighthouse Consulting Inc., a research firm whose focus includes debt buying. "Part of the problem is the reputation of the industry."

The accounts-receivable industry had revenues of $17 billion in 2010, according to Kaulkin Ginsberg, a Rockville, Maryland-based consulting firm. It includes debt buyers, who purchase written-off portfolios of debt from the original creditors, mainly credit-card issuers. Debt collectors, who try to get debtors to pay and often work with buyers, and law firms who sue debtors, are also part of the industry.

## Tighter Laws

Consumer groups and some state officials have pushed for tighter laws on the debt-collection industry, citing what they call its record of using bad documentation in litigation.

"It's like Napster: They said, 'What copyright law?' and debt buyers say, 'What evidence?'" said Robert Hobbs, deputy director of the National Consumer Law Center.



**Close all those tabs. Open this email.**
Get Bloomberg's daily newsletter.

Enter your email    Sign Up

In one recent case in New Mexico, a woman named Lucinda Yazzie won $1.26 million in a lawsuit against a collector that changed a Social Security number in its own database to match hers on a bill owed by a woman of the same name. According to a court document, the collector acknowledged that its records were changed, saying that its effort to seek payment from the wrong Yazzie was a "bona fide error."

In another case, a debt collector tried to garnish the wages of the wrong Lou Correa, a man who happened to be a California state senator, according to media reports. Correa's office did not return calls requesting comment.

## Mistakes 'Rampant'

POUNDS EX 0768

"When you have no control of the paper, and none on how the data is changed, you have a system where mistakes are rampant," Rob Treinen, Yazzie's lawyer, said in an interview.

The lobbying power of the big debt buyers could produce regulations that are too expensive for smaller firms, Paul Grinberg, Encore's chief financial officer, said.

"Companies of size and scale will be able to work with regulators to create meaningful legislation that, unfortunately, will probably drive out smaller players," Grinberg said in a June 15 conference call.

DBA International, the debt-buying industry's trade association, hired Baker, the former Georgia attorney general, to cultivate relationships with key regulators in advance of state legislative sessions in early 2013. That way, Baker said in an interview, the industry will be "at the table to help draft legislation, if it comes to that."

The wake-up call for the industry was the North Carolina rules, signed into law on Sept. 9, 2009, that imposed the state's first explicit requirements for evidence.

Under North Carolina's new rules, collectors must produce the original signed contract for the account and the full account history. The law also allowed penalties of about $10,000 against litigants who bring unsubstantiated claims.

## 'Screeched to a Halt'

"In the first year, you could hear the brakes as the train screeched to a halt," said Pedro Zabala, a Raleigh, North Carolina-based attorney. "Little-by-little, the lawyers are trying to get the train going again."

Portfolio Recovery Associates filed 6,709 lawsuits in 2009, before the law went into effect. In 2010, it filed 819, according to the company. Fredrickson, the firm's chief executive, said that in addition to raising documentation requirements, the law limits flexibility in offering settlements to consumers who can pay a percentage of the debt.

"We have an extremely high standard to achieve before we can make a phone call, and it's a standard unlike any other state," Fredrickson said in an interview.

The industry has complained that the North Carolina law requires information about a debt that the original lender, often a credit card company, does not provide.

POUNDS EX 0769

## More Research

"You can't require that of a debt buyer or debt collector that which a creditor does not collect," Barbara Sinsley, general counsel for DBA International, said in an interview. Sinsley said the industry does additional research, like matching Social Security numbers or common given names, before trying to collect.

The law's effect in North Carolina emboldened consumer groups and their legislative allies to push ahead in other states, and mobilized industry opposition as well. In December 2010, a similar bill in Oregon faced organized industry opposition at a hearing, and died in committee.

"I was surprised at the degree of lobbying to stop this," said Angela Martin, executive director of Economic Fairness Oregon, a consumer group. "We thought we had a consensus bill."

Three months later, Alice Vickers, a lawyer for the non-profit Florida Legal Services, walked into a hearing of the Florida Senate on a similar bill. In addition to representatives of the debt-buying industry, the Florida Bankers Association and the Florida Retail Association were already in the room. The bill stalled in committee.

"The industry came out of the woodwork in opposition," Vickers said in an interview.

Senator Mark Leno, a Democrat, pushed a similar bill through committee in California before the session ended. Under the legislature's rules, he can bring it up in January.

POUNDS EX 0770

**Terms of Service Trademarks Privacy Policy**

©2016 Bloomberg L.P. All Rights Reserved

**Careers Made in NYC Advertise Ad Choices Website Feedback Help**

POUNDS EX 0771

# AUTHENTICATING AFFIDAVITS



POUNDS EX 0772

NORTH CAROLINA
WAKE COUNTY

## AFFIDAVIT OF COUNSEL (TURNER)
## AUTHENTICATING NEWS ARTICLE FROM INTERNET

Emily P. Turner, Esq., being duly sworn, deposes and says:

1. I am an attorney licensed to practice law in North Carolina. I give this affidavit in the belief that it presents matters that are undisputed, as it solely concerns authentication of a news article that I personally obtained from the internet from the following source:

2. On October 19, 2016, I accessed the following url in my browser at the website for the New York Times: http://www.nytimes.com/2010/07/13/business/13collection.html?_r=0. I saved the article available at that url "Automated Debt-Collection Lawsuits Engulf Courts," by Andrew Martin, dated July 12, 2010, as a .pdf file.

3. The news article referenced above appears as Exhibit 57 to the Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Class Certification, and is a true, accurate, and complete copy of the article as of the date set out above.

FURTHER AFFIANT SAYETH NAUGHT.

This the 4th of November, 2016

_____
Emily P. Turner

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me,
this the 4th day of November, 2016.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires: 7-17-21.

*Notary Seal: LEONAID A RIJO, Notary Public, Wake County, My Comm. Exp. 07-17-2021, North Carolina*

NORTH CAROLINA
WAKE COUNTY

## AFFIDAVIT OF COUNSEL (HARTZELL) AUTHENTICATING NEWS ARTICLE FROM INTERNET

J. Jerome Hartzell, being duly sworn, deposes and says:

1. I am an attorney licensed to practice law in North Carolina. I give this affidavit in the belief that it presents matters that are undisputed, as it solely concerns authentication of a news article that I personally obtained from the internet from the source described below.

2. On May 26, 2016, I accessed the following url in my browser at the website for Bloomberg News: http://www.bloomberg.com/news/articles/2011-09-21/debt-collectors-lobby-to-block-tougher-state-rules. I saved the article available at that url, "Debt Collectors Lobby to Block Tougher State Documentation Rules" by Carter Dougherty dated September 21, 2011, as a .pdf file.

3. The news article referenced above appears as Exhibit 58 of the Exhibits in Support of Plaintiffs' Motions for Preliminary Injunction and Class Certification, and is a true, accurate, and complete copy of the article as of the date set out above.

FURTHER AFFIANT SAYETH NAUGHT.

This the 4th of November, 2016.

J. Jerome Hartzell

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me, this the 4th day of November, 2016.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires: 7-17-21

[Notary Seal: LEONAID A RIJO, Notary Public, Wake County, My Comm. Exp. 07-17-2021, NORTH CAROLINA]