# EXHIBIT T

**Sessoms & Rogers, P.A.** ATTORNEYS AT LAW

- HOME
- FIRM OVERVIEW
- OUR PEOPLE
- COLLECTIONS OVERVIEW
- LITIGATION
- COMPLIANCE REVIEW
- PAY YOUR BILL
- LEGAL UPDATES
- CONTACT US

**NEWS**

Ask a Lawyer: Protecting Your Retirement Plan Contributions The company that I work for has not been depositing my 401K monies; what can I do?

Ask a Lawyer: Who Can Help Us Collect a Pension?

Firms working to halt pirates; Many people post videos in violation of copyright laws To build a case against YouTube, Viacom turned to a Silicon Valley company to sniff out pirated clips on the popular video-sharing site. Viacom, ...

## North Carolina Collections Litigation

Sessoms & Rogers, P.A. focus their litigation practice on matters of retail collections in North Carolina. It is our goal to provide business clients with the legal support necessary to use the law to claim repayment.

### Filing a debt collections lawsuit in North Carolina

Filing a lawsuit is often an end-of-the-line decision that businesses have to make. Valuable resources have been exhausted during debt collections efforts, and the loss incurred due to nonpayment begins to take its toll on business operations.

In these circumstances filing a lawsuit against a default consumer may be the best way to realign profit margins and keep your business running smoothly.

Sessoms & Rogers, P.A. assists business clients to make sure they are filing a lawsuit for the right reasons and it is a case they can potentially win:

- The consumer has assets to pay the debt
- The size of the debt is considerable
- Previous collection efforts have failed
- The consumer is unresponsive to other repayment negotiation

Sessoms & Rogers, P.A. is here to keep your head above water during these difficult times. We value your business reputation just as much as you do and devote our services to help you analyze the risk associated with filing a debt collection lawsuit.

### The advantage of North Carolina collections lawyers

There are many valid reasons a North Carolina business should take a default consumer to court. The most important being: the consumer has the resources to pay you back and is choosing not to do so.

The Sessoms & Rogers, P.A. advantage is that we are collections attorneys who can take your case one step further than a standard collections agency—to the North Carolina courts.

Our business is working with clients to implement debt collection efforts and following through with whatever legal actions are necessary. We are here with you every step of the way. We leave no questions unanswered and ensure that all collections practices are strategic and lawful.

Every business has the right to use the law to claim repayment. We can help you decide when enough is enough. Sessoms & Rogers, P.A. will stand up and protect your rights.

**Call 919-688-1000 for help filing a debt-collection lawsuit in North Carolina.**




Home | Lee Rogers | Legal Updates | Links | Contact Us |



LexisNexis — Attorney Advertising. This web site is designed for general information only. The information presented at this site should not be construed to be formal legal advice nor the formation of a lawyer/client relationship. [ Site Map ]

**EXHIBIT 60**

# North Carolina Debt Collection Laws

Submitted by Lee C. Rogers, President and Managing Partner, Sessoms & Rogers, P.A.
http://www.sessomslaw.com/
Published by The National List of Attorneys
www.nationallist.com

*Sessoms & Rogers, P.A. is a North Carolina collections law firm that has been helping businesses and individuals collect debts for the past thirty years. We serve the North Carolina community with legal services that propagate fair business practices by helping enforce consumer responsibilities. Our creditors' rights practice includes a group of skilled attorneys who provide comprehensive legal services for our clients, including consumer debt collection as well as defense of creditors and debt collectors under federal and state consumer protection statutes. We offer both original creditor and debt buyer clients a valuable debt-collection practice in accordance with all applicable requirements of federal and state law. Sessoms & Rogers, P.A. is committed to the fair treatment of consumers as we work to assist clients and consumers to resolve debts.*

*Lee C. Rogers, president and managing partner, attended North Carolina Central University Law School. He has been working in the debt collection industry for almost 25 years. Ninety-nine percent of his law practice is dedicated to debt collection.*

## North Carolina Debt Collection Laws

North Carolina law includes a number of general laws and rules affecting all collection actions, as well as a set of statutes specifically directed at debt collection practices. These statutes are found mainly in Chapters 58 and 75 of the North Carolina General Statutes. The relevant provisions of Chapter 58 are known as the North Carolina Collection Agency Act. N.C. Gen. Stat. § 58-70-1 to -155. Those of Chapter 75 are known as the North Carolina Debt Collection Act. N.C. Gen. Stat. §§ 75-50 to -56.

Many of the provisions of these North Carolina laws are similar to the federal Fair Debt Collection Practices Act FDCPA).They protect consumers by regulating conduct undertaken to collect debt; they impose certain requirements on debt collectors; they prohibit various types of abusive collection conduct; and upon violation, they permit a consumer to recover actual damages, statutory damages, and a reasonable attorney's fee.

There are, however, key differences among these laws and their application, some of which will be addressed in the following overview. This information is current as of the fall of 2012, but the North Carolina statutes have been revised and amended, sometimes in significant ways, in recent years. Therefore, the following is best used solely as a starting point. Links to the North Carolina statutes are included below for quick reference to the current text of these statutes.

**EXHIBIT 61**

POUNDS EX 0776

**General Provisions of the North Carolina Debt Collection Statutes**

Chapter 75 of the North Carolina General Statutes contains laws relating to monopolies, trusts and consumer protection, including North Carolina's statute prohibiting unfair or deceptive acts or practices. N.C. Gen. Stat. § 75-1.1. This chapter also contains the provisions of the NC Debt Collection Act governing debt collection conduct generally. N.C. Gen. Stat. §§ 75-50 to -56.

The NC Collection Agency Act is located in Chapter 58 of the General Statutes, and specifically governs conduct of collection agencies. N.C. Gen. Stat. § 58-70-1 to -155. Its provisions related to unfair or deceptive acts are similar to the NC Debt Collection Act (with some additional requirements that will be discussed below), and its civil liability provision specifically references the generalized proscription in N.C. Gen. Stat. § 75-1.1. N.C. Gen. Stat. § 58-70-130. Therefore, although *there is no authoritative case law on the matter,* the standards applicable to civil liability under Chapter 58 are likely to be the same as the standards under Chapter 75. See Reid v. Ayers, 138 N.C. App. 261, 531 S.E.2d 231 (2000) (analyzing similar language in N.C. Gen. Stat. § 75-56); compare Culver v. JBC Legal Group, P.C., No. 5:04-CV-389-FL(1), 2005 U.S. Dist. Lexis 45426 (E.D.N.C. June 28, 2005) (dismissing Chapter 58 claims upon finding they failed to satisfy the requirements of N.C. Gen. Stat. § 75-1.1), with Llera v. Sec. Credit Sys., Inc., 93 F. Supp. 2d 674 (W.D.N.C. 2000) (finding plaintiff who was awarded $100 in statutory damages under Chapter 58 but withdrew her actual damages claim was not a prevailing party for purposes of an attorney's fee award under N.C. Gen. Stat. § 75-16.1, without considering whether actual damages were necessary to prevail on Chapter 58 claim).

The NC Debt Collection Act is similar to the FDCPA in defining a "consumer" as a natural person alleged to owe a debt incurred for personal, family, or household purposes, although the NC law also includes agricultural purposes. 15 U.S.C. § 1692a(3),(5); N.C. Gen. Stat. § 75-50. On the other hand, the NC Collection Agency Act defines a "consumer" more broadly to include individuals, groups, or business entities that have incurred any type of debt. N.C. Gen. Stat. § 58-70-90. Thus, collection agencies must comply with the statutory requirements, whether they are undertaking *consumer collections* or *commercial collections.*

While the FDCPA generally does not apply to creditors collecting on their own behalf, 15 U.S.C. § 1692a(6), the NC Debt Collection Act applies to any person engaged in debt collection from a consumer, which includes a creditor collecting its own accounts. N.C. Gen. Stat. § 75-50(3). Therefore, creditors and debt collectors alike must comply with the NC Debt Collection Ac,t when attempting to collect debt from individual consumers. However, the NC Debt Collection Act's definition of "debt collector" expressly excludes anyone subject to the provisions of the NC Collection Agency Act. N.C. Gen. Stat. § 75-50(3). The NC Collection Agency Act governs conduct specifically by collection agencies and debt buyers. N.C.

2

POUNDS EX 0777

Gen. Stat. § 58-70-15. Thus, because collection agencies and debt buyers are subject to regulation and liability under the NC Collection Agency Act, they are not subject to additional liability under NC Debt Collection Act.

There is another important exclusion in the North Carolina laws. Unlike the FDCPA, the North Carolina collection statutes do not apply to attorneys handling debt collection for their clients. The NC Collection Agency Act expressly excludes law firms handling claims and collections in their own name and not operating a collection agency managed by a non-lawyer. N.C. Gen. Stat. § 58-70-15(c)(8). Therefore law firms handling collections are not themselves subject to Chapter 58, but collection agencies and debt buyers are still subject to these laws, even if they are seeking to collect through a law firm.

The NC Debt Collection Act excludes attorneys through Chapter 75's general exemption for professional services rendered by a "learned professional." N.C. Gen. Stat. § 75-1.1(b). North Carolina courts hold that an attorney engaging in debt collection as a professional legal service for its client falls within this exemption. See Reid v. Ayers, 138 N.C. App. 261, 531 S.E.2d 231 (2000). Neither the attorney nor the client may be subject to a claim under Chapter 75 if the claim is based on the attorney's collection conduct. Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 128 N.C. App. 292, 530 S.E.2d 865 (2000). (Did you intend to hyperlink the sources in this paragraph and others that are underlined, but do not link to anything?)

Thus, the NC Collection Agency Act specifically governs collection agencies and debt buyers, and regulates their direct or indirect attempts to collect debts of any type, consumer or commercial, from any individual or entity. The NC Debt Collection Act governs collection conduct by creditors and other debt collectors who are not subject to the NC Collection Agency Act, but it is specific to the collection of consumer debt from individual consumers. Neither the NC Collection Agency Act nor the NC Debt Collection Act apply to law firms collecting debts owed to their clients as a professional legal service, but collection agencies and debt buyers are subject to the NC Collection Agency Act even if they are working through an attorney or other third party to collect the debt.

Both sets of laws prohibit abusive debt collection conduct and provide for civil liability in the amount of actual damages, statutory damages, and reasonable attorney's fees. N.C. Gen. Stat. § 58-70-130; § 75-56. Generally, to bring a successful claim under these laws, a plaintiff must prove actual injury caused by the violation. Reid v. Ayers, 138 N.C. App. 261, 531 S.E.2d 231 (2000). Emotional distress damages, however, may be sufficient to constitute actual injury. Williams v. HomEq Servicing Corp., 184 N.C. App. 413, 646 S.E.2d 381 (2007). In addition to actual damages, a successful plaintiff may recover statutory damages of at least $500 but no more than $4,000 per violation. The plaintiff may also recover a reasonable attorney's fee at the court's discretion, upon a finding that the defendant willfully engaged in

the act or practice and showed an unwarranted refusal to fully resolve the matter that is the basis of the suit. N.C. Gen. Stat. § 75-16.1.

**Licensing and Operation under the North Carolina Collection Agency Act**

The NC Collection Agency Act governs debt collection licensing, bonding, and other regulations relevant to a creditor, lender, collection agency, debt buyer, and attorney. Only those persons and/or entities that the law defines as a collection agency must obtain a permit in North Carolina.

Collection agency and collection agency business is defined in N.C. Gen. Stat. § 58-70-15(a) as "a person directly or indirectly engaged in soliciting, from more than one person, delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims." The statute contains a list of inclusions which, among other things, expressly provides that debt buyers are considered to be collection agencies and therefore must be licensed. N.C. Gen. Stat. § 58-70-15(b).

The statute also contains exclusions that work to exempt creditors/lenders and law firms (as noted above) from the licensing requirements. N.C. Gen. Stat. § 58-70-15(c). There is no requirement that attorneys and law firms representing creditors obtain a state collection permit; however, any attorney or law firm (except those that are unincorporated) that conducts business in North Carolina must register with the North Carolina Secretary of State (www.secretary.state.nc.us).

Under the NC Collection Agency Act, a collection agency or debt buyer is required to secure a permit before conducting or operating a collection agency or doing collection agency business. Before a permit is issued, a nonrefundable fee of $1,000 is required upon submission of the collection agency application to the Commissioner of Insurance for each location at which such entity desires to carry on the collection agency business. Pursuant to N.C. Gen. Stat. § 58-70-20, every applicant for a permit shall file with the Commissioner, a bond in the amount of $10,000 to be posted in favor of North Carolina executed by a surety company licensed to transact business in North Carolina. The bond is required to be kept in force during the permit period and remain in effect until all moneys collected have been accounted for. There is an additional $10,000 bond required for non-resident applicants. All permits expire on the 30th of June regardless of the issuance date. The amount of the bond for the renewal permit shall be no less than $10,000, nor more than $75,000. The amount is based on the total collections paid directly to the collection agency less commissions earned by the collection agency on those collections for the calendar year ending immediately prior to the date of application, multiplied by one-sixth.

Pursuant to N.C. Gen. Stat. § 58-70-50, a collection agency must identify itself in correspondence. The collection agency is required to place its permit number, true name and address on all correspondence

4

sent to consumers. If a collection agency has a properly registered trade name, both the trade name and legal name should appear on the correspondence.

There are also requirements if payment is received by the collection agency on behalf of a creditor. Pursuant to N.C. Gen. Stat. § 58-70-70. Whenever a payment is received in cash, an original receipt or an exact copy thereof shall be furnished to the individual from whom the payment is received. All receipts issued must (1) be pre-numbered by the printer and used and filed in consecutive numerical order; (2) show the name, street address and permit number of the permit holder; (3) show the name of the creditor or creditors for whom credited; (4) show the amount and date paid; and (5) show the last name of the person accepting payment. Evidence of all receipts issued shall be kept in the permit holder's office for three (3) years.

However, when payment is received by or on behalf of a debt buyer, no matter the form of the payment, a receipt must be issued meeting the above requirements, and it must also: (1) show the name of the creditor or creditors for whom collected, the account number assigned by the creditor or creditors for whom collected, and if the current creditor is not the original creditor, the account number assigned by the original creditor; and (2) clearly state whether the payment is accepted as either payment in full or as a full and final compromise of the debt, and if not, the receipt shall state clearly the balance due after payment is credited.

**Special Requirements Imposed on Legal Actions Brought by Collection Agencies**
Effective October 1, 2009, the State of North Carolina enacted the Consumer Economic Protection Act which, among other things, placed special requirements on actions brought by collection agency and debt buyer plaintiffs. First, it is now deemed an unfair practice for a debt buyer to bring suit, initiate arbitration, or otherwise attempt to collect a debt without valid documentation that the debt buyer is the owner of the debt, as well as reasonable verification of the amount of the debt. "Reasonable verification" must include documentation of the name of the original creditor, the name and address of the consumer debtor as it appears on the original creditor's records, the original account number, a copy of the contract or other document evidencing the consumer debt, and an itemized accounting of the amount claimed, including all fees and charges. N.C. Gen. Stat. § 58-70-115(5).

Before bringing suit or arbitration, a debt buyer must also give the consumer debtor written notice of the intent to file legal action at least thirty days in advance of filing. The written notice must include the name, address, and telephone number of the debt buyer, the name of the original creditor and the consumer debtor's original account number, a copy of the contract or other document evidencing the consumer debt, and an itemized accounting of all amounts claimed to be owed. N.C. Gen. Stat. § 58-70-115(6).

5

POUNDS EX 0780

Case 1:16-cv-01395-WO-JEP   Document 1-20   Filed 12/09/16   Page 7 of 17

Pursuant to N.C. Gen. Stat. § 58-70-145, the complaint of a collection agency plaintiff shall allege as part of the action that the plaintiff is duly licensed, and shall contain the name and number, if any, of the license and the governmental agency that issued it. In addition, the complaint of a debt buyer plaintiff must be accompanied by certain materials as set forth in N.C. Gen. Stat. § 58-70-150:

(1) A copy of the contract or other writing evidencing the original debt, which must contain a signature of the defendant. If a claim is based on credit card debt and no such signed writing evidencing the original debt ever existed, then copies of documents generated when the credit card was actually used must be attached.

(2) A copy of the assignment or other writing establishing that the plaintiff is the owner of the debt. If the debt has been assigned more than once, then each assignment or other writing evidencing transfer of ownership must be attached to establish an unbroken chain of ownership. Each assignment or other writing evidencing transfer of ownership must contain the original account number of the debt purchased and must clearly show the debtor's name associated with that account number.

Furthermore, N.C. Gen. Stat. § 58-70-155 outlines the prerequisites to enter a default judgment or summary judgment against a defendant. The plaintiff shall file evidence with the court to establish the amount and nature of the debt, and the only evidence sufficient to establish the amount and nature of the debt shall be properly authenticated business records that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence. The authenticated business records shall include at least all of the following items: (1) the original account number; (2) the original creditor; (3) the amount of the original debt; (4) an itemization of charges and fees claimed to be owed; (5) the original charge-off balance, or, if the balance has not been charged off, an explanation of how the balance was calculated; (6) an itemization of post charge-off additions, where applicable; (7) the date of the last payment; (8) the amount of interest claimed and the basis for the interest charged.

**Statute of Limitations for Written Contracts & Open Accounts**
**Simple Non-Sealed Contracts.** The North Carolina statute of limitations "upon a contract, obligation or liability arising out of a contract, express or implied," is three years. N.C. Gen. Stat. § 1-52(1). This applies to a claim on an open account. Channel Grp., LLC v. Cooper, No. COA09-874, 2010 N.C. App. Lexis 312 (N.C. Ct. App. Feb. 16, 2010).

In the instance of a breach of contract, the statute of limitations does not begin to run until the contract is breached. Rawls v. Lampert, 58 N.C. App. 399, 293 S.E.2d 620 (1982); Duke Univ. v. St. Paul Mercury

6

POUNDS EX 0781

Case 1:16-cv-01395-WO-JEP Document 1-20 Filed 12/09/16 Page 8 of 17

Ins. Co., 95 N.C. App. 663, 384 S.E.2d 36 (1989). The cause of action does not accrue until the time of the breach that gives rise to the right of the action. U.S. Leasing Corp. v. Everett, Creech, Hancock & Herzig, 88 N.C. App. 418, 363 S.E.2d 665, cert. denied, 322 N.C. 329, 369 S.E.2d 364 (1988). In other words, the "cause of action accrues to the injured party so as to start the running of the statute of limitations, when he is at liberty to sue, being at the time under no disability." B-W Acceptance Corp. v. Spencer, 268 N.C. 1, 149 S.E.2d 570 (1966).

More specifically, the statute of limitations begins to run from the date that a contract is breached by failure to perform when required to do so under the contractual agreement, not from the first date when performance of the contract is possible. Penley v. Penley, 314 N.C. 1, 332 S.E.2d 51 (1985). By way of example, a contract to repay the balance owed on a credit card has been breached when the defendant has failed to make a payment when due; a breach of a lease agreement takes place when the defendant fails to deliver a lease payment when due.

A new promise to repay an existing debt will toll the statute of limitations period. Coe v. Highland Sch. Assocs. Ltd. P'ship, 125 N.C. App. 155, 479 S.E.2d 257 (1996); see also Andrus v. IQMax, Inc., 190 N.C. App. 426, 600 S.E.2d 107 (2008). The promise must be made in writing. Pickett v. Rigsbee, 252 N.C. 200, 113 S.E.2d 323 (1960). Additionally, where a "plaintiff sues on a current account, a partial payment on the account acknowledging the indebtedness begins the statute running anew as to the entire amount." Channel Grp., 2010 N.C. App. Lexis 312 (citing Whitley's Electric Servs., Inc. v. Sherrod, 293 N.C. 498, 503, 238 S.E.2d 607, 611 (1977)).

**Contracts for the Sale of Goods; Security Agreements.** Tracking the Uniform Commercial Code, the North Carolina statute of limitations on contracts for the sale of goods subject to a security agreement is "four years after the cause of action has accrued." N.C. Gen. Stat. § 25-2-725. A cause of action under this statute arises "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Id.

**Contracts Signed Under Seal.** The statute of limitations for an action "[u]pon a sealed instrument or instrument of conveyance of an interest in real property, against the principal thereto" is ten years. N.C. Gen. Stat. § 1-47(2). The mere presence of the word "seal" in brackets within a contract may be sufficient to qualify the document as a "sealed instrument". Biggers v. Evangelist, 71 N.C. App. 35, 321 S.E.2d 524 (1984), cert. denied, 313 N.C. 327, 329 S.E.2d 384 (1985).

## Statute of Limitations for Renewal of Domestic and Foreign Judgments

In North Carolina, a civil judgment is valid for ten years. N.C. Gen. Stat. § 1-47(1). The method for renewal of a judgment is not specified in this statute. However, the courts have determined that a

separate action may be brought prior to the expiration of the ten-year period in order to extend the validity of the previous judgment for a further ten years. Raccoon Valley Inv. Co. v. Toler, 32 N.C. App. 461, 232 S.E.2d 717 (1977). Furthermore, the defendant cannot re-try the matter in which the original judgment was entered because the "rule is that 'a judgment merges the debt upon which it is based and becomes the only evidence of the existence of the debt that can be used in court.'" NCNB Nat'l Bank of N.C. v. C.P. Robinson, Jr., 80 N.C. App. 154, 341 S.E.2d 364 (1986) (quoting Saieed v. Abeyounis, 217 N.C. 644, 647, 9 S.E.2d 399, 401 (1940)).

When domesticating a foreign judgment in North Carolina, the same ten-year statute of limitations is applicable. In re Aerial Devices, Inc., 126 N.C. App. 709, 486 S.E.2d 483 (1997), cert. denied, 347 N.C. 136, 492 S.E.2d 17 (1997).

### **Statute of Limitations and Voluntary Dismissal**

Pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, if an action not previously dismissed is voluntarily dismissed without prejudice, then "a new action based on the same claim may be commenced within one year after such dismissal...." N.C. Gen. Stat. §1A-1, Rule 41. This Rule is intended to extend rather than to limit the time within which a new action may be commenced following a voluntary dismissal. For example, if the ten-year statute of limitations applies to a claim and that ten-year timeframe extends beyond one year after the voluntary dismissal, then the ten-year statute of limitations is the applicable standard by which the limitations period is measured. Whitehurst v. Va. Dare Trans. Co. Inc., 19 N.C. App. 352, 198 S.E.2d 741 (1973).

Once a voluntarily dismissed case has been re-filed, it "must be considered on its merits without reference to the disposition of the prior action." Tompkins v. Log Systems, Inc., 96 N.C. App. 333, 385 S.E.2d 545 (1989). However, litigants must avoid dismissing the initial action simply to make use of the one-year extension afforded by Rule 41. Where it can be shown the dismissal and subsequent re-filing occurred solely as a sham to obtain the extension, with no intent to prosecute the action, then the second action may be subject to dismissal by the court. Hawkins v. State, 117 N.C. App. 615, 453 S.E.2d 233, 238 (1995).

### **North Carolina's Bad Check Laws**

Under North Carolina law, under certain circumstances, a creditor is entitled to pursue a civil remedy for returned checks. The creditor must first send a written demand for payment within thirty days, in cash, of the face value of the returned check along with any processing fees which may be due. N.C. Gen. Stat. § 6-21.3(a). The letter must also provide that should the person fail to comply with the demand, the creditor may pursue recovery of the amount owing on the check, the service charges, and processing fees, and three times the amount owing on the check, but no more than $500 and no less than $100. The

8

POUNDS EX 0783

"initial demand" must be sent via certified mail to the person's last known address and must follow the form set forth in the statute. N.C. Gen. Stat. § 6-21.3(a1).

The statute also provides that a subsequent demand letter be sent, again via certified mail to the person's last known address, reiterating the same repayment terms and consequences, but this second letter must be sent in line with the form set forth in N.C. Gen. Stat. § 6-21.3(a2). No civil action on the returned check may be brought until after the thirty days allotted for repayment under the second demand letter have elapsed. N.C. Gen. Stat. § 6-21.3(a).

While the creditor is entitled to seek recovery of the check amount, processing fees, service charges and the treble damages provided by the statute, "the court or jury may, however, waive all or part of the additional damages upon a finding that the defendant's failure to satisfy the dishonored check or draft was due to economic hardship." Id. Additionally, the person must have knowingly uttered a bad check to be civilly liable. Id.

### Garnishment under North Carolina Law

With few exceptions, such as delinquency in child support, there is no North Carolina statute which allows for garnishment of wages. Once an execution has been issued by the clerk of superior court pursuant to N.C. Gen. Stat. § 1-303, a bank or other person indebted to the judgment debtor may, but is not required to, pay to the sheriff amounts owed to the judgment debtor. N.C. Gen. Stat. § 1-359.

Where a person indebted to the judgment debtor does not comply with the sheriff's execution, the judgment creditor may obtain an appropriate order through initiating supplemental proceedings pursuant to N.C. Gen. Stat. § 1-353. This procedure also entitles a judgment creditor to serve interrogatories in aid of execution on the judgment debtor in order to discover information concerning assets, and also to compel responses through the court should the judgment debtor fail to respond. N.C. Gen. Stat. § 1-352.

### Court Costs and Process-Serving in North Carolina

Court costs are set by the North Carolina General Assembly. The filing fee is $150 to file a complaint in district court, and $200 to file a complaint in superior court. Both are trial courts with concurrently held original jurisdiction over most common collection claims, but district court is considered the proper division for civil claims of $10,000 or less.

North Carolina restricts civil service of process within the state to sheriffs and persons "duly authorized by law to serve summons." N.C. Gen. Stat. § 1A-1, Rule 4. North Carolina does not have private process servers that are licensed or registered to serve summons. Service of process upon an individual may be accomplished by delivering copies of the summons and complaint to the person; by leaving copies at their

9

POUNDS EX 0784

Case 1:16-cv-01395-WO-JEP Document 1-20 Filed 12/09/16 Page 11 of 17

usual dwelling with another resident of suitable age and discretion; by delivering copies to an authorized agent of the person to be served; by mailing copies, registered or certified mail, return receipt requested, addressed and delivered to the person to be served; or by depositing a copy with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2).

The sheriff's service fee is $30 for each item of civil process served. If service is not obtained within the time allowed, there is a $15 fee for an Alias & Pluries summons or endorsement on the original summons.

Other miscellaneous costs include a $20 motion fee assessed for each motion filed in an action, a $25 fee to file a confession of judgment, a $25 fee to file a writ of execution, and a $30 fee for a proceeding supplemental to execution.

Current information regarding North Carolina court costs is available on the North Carolina Court System website (www.nccourts.org/Courts/Trial/Costs/Default.asp).

*Please be advised that this is not intended as legal advice. Changes to laws, statutes, regulations and costs can and do occur. We recommend that you contact an attorney for advice specific to your legal matters and your state.*

©The National List of Attorneys, January 2013

10

POUNDS EX 0785

Case 1:16-cv-01395-WO-JEP Document 1-20 Filed 12/09/16 Page 12 of 17

HOME › COMPLIANCE › NC'S CONTROVERSIAL DEBT BUYER LAW: PART OF THE CHANGING COLLECTION LANDSCAPE

# NC's Controversial Debt Buyer Law: Part of the Changing Collection Landscape

BY NATIONALLIST on AUGUST 16, 2016 · ( 0 )

**Guest Blog by Andrew E. Hoke, *Sessoms & Rogers, P.A.***



The North Carolina legislature passed the Consumer Economic Protection Act (CEPA) in 2009. It was one of the first laws in the U.S. to impose requirements on debt buyers. One of the most restrictive debt buyer laws in the country, many of its provisions are unclear, and have not been reviewed by North Carolina appellate courts. Since 2009, the landscape has changed significantly for debt buyers. In 2010, the Consumer Financial Protection Bureau (CFPB) was created by the Dodd-Frank Act. The CFPB released its proposed rulemaking for debt collectors and debt buyers in July 2016.

CEPA amended Article 70, Chapter 58 of the North Carolina General Statutes. The statute imposes civil penalties for unfair practices, institutes evidentiary requirements for debt buyer lawsuits, and sets forth prerequisites for default and summary judgment.

### Copy of the Contract or Other Writing Evidencing the Debt

Chapter 58-70-150 requires debt buyers to attach certain documentation to its complaints. A debt buyer must attach "[a] copy of the contract or other writing evidencing the original debt, which must contain a signature of the defendant." There is an exception for credit card lawsuits, in that the requirement can be satisfied by filing "copies of documents generated when the credit card was actually used." The exception accounts for the reality that consumers generally do not sign contracts to open credit card accounts; rather, the contract is formed when the consumer uses the card. However, the wording of the statute is ambiguous. First, the exception only applies "[i]f a claim is based on a credit card debt and no such signed writing evidencing the debt ever existed." This could be read to require debt buyers to prove the non-existence of a document, which is problematic.

The exception for credit card accounts is also unclear, since the legislature chose not to define what constitutes a "document generated when the card was actually used." It would seem that an account statement would suffice. However, the term has not been interpreted by the appellate courts.

### Itemization

Among the most controversial provisions of CEPA is the itemization requirement. CEPA refers to "itemization" and "itemized accounting" in several places. § 58-70-115(5) requires debt buyers collecting

EXHIBIT 62

on a debt to have "reasonable verification" of the amount of the debt, which is to include an "itemized accounting of the amount claimed to be owed, including all fees and charges." § 58-70-115(6) requires debt buyers to send consumers 30 days' notice prior to filing suit, which must include "an itemized accounting of all amounts claimed to be owed." § 58-70-155 requires debt buyers seeking default or summary judgment to file with the court "an itemization of charges and fees claimed to be owed."

It seems the purpose of this requirement is to ensure that debt buyers can prove the amounts they seek to collect. However, the legislature did not define "itemization" or "itemized accounting." It is unclear whether debt buyers can satisfy the itemization requirement by proving the charge off balance, by itemizing the balance into interest and principal, or whether the law requires proof of every transaction over the life of the account. A bankruptcy court in North Carolina's Eastern District rejected the argument that a debt buyer was required to possess a full transaction record of the account to meet the standard for "itemized accounting." See In Re Parker, No. 09-09335-8-SWH, 2011 Bankr. LEXIS 895 (U.S. Bankr. E.D.N.C. Mar. 9, 2011). North Carolina appellate courts have not ruled on this issue.

### Requirements for Default and Summary Judgment

Section § 58-70-155 of the statute requires debt buyer Plaintiffs to produce certain documents before they are entitled to default or summary judgment. These also contain ambiguities. In addition to the itemization requirement, debt buyers must prove the "original amount of the debt." It is not specified whether that means the balance when the account was opened, which would typically be zero for credit card accounts, or the amount due when the account was purchased. Next, this section requires "[t]he amount of interest claimed, and the basis for the interest charged." Since debt buyers typically seek to recover the charge-off balance, it is unclear whether a debt buyer must prove interest that occurred prior to charge-off, or whether this applies only to post charge-off interest.

### Comparison to Laws in Other States and the CFPB's Proposed Rules

Since North Carolina passed CEPA in 2009, other states have passed similar statutes. These laws have generally been clearer and less onerous on debt buyers. In **Wisconsin**, a debt buyer can meet the statute by filing a copy of an account statement showing the balance sought. See Wis. Stat. Ann. § 425.109. In **New York**, debt buyers are required to provide consumers with an "itemized accounting of the debt." However, this itemized accounting is defined as the total amount of the debt at charge-off, in addition to any interest, charges, fees, or payments occurring *after* charge-off. See N.Y. Comp. Codes R. & Regs. tit. 23, § 1.2. **California's** Fair Debt Buying Practices Act imposed evidentiary requirements on debt buyers, much like CEPA; however, the California law makes clear that the last account statement issued to the consumer is sufficient to prove the debt. See Cal Civ Code § 1788.58.

In July 2016, the CFPB released its outline of proposed debt collection rules. The proposal includes a requirement that debt collectors possess a "reasonable basis" for a debt prior to its initial claim of indebtedness. Among other things, the reasonable basis requirement would include "[t]he date of default, the amount owed at default, and the date and amount of any payment or credit applied after default" and "[e]ach charge for interest or fees imposed after default and the contractual or statutory

source for such interest or fees." Like New York's statute, the CFPB proposal would require a debt buyer to specifically list only those transactions occurring after default.

## Conclusion

Bills to revise CEPA were proposed in the North Carolina Senate and House of Representatives in 2015. These revisions would clarify the ambiguities in the statute described above. Change in the law is necessary to bring North Carolina in line with other states and the CFPB while the preserving consumer protections intended by the legislature.



*Andrew E. Hoke is an Associate Attorney at Sessoms & Rogers, P.A., in Durham, NC. He received his J.D. from Elon University School of Law. Sessoms & Rogers. P.A. provides comprehensive legal and collections services for clients in North Carolina. The firm offers legal services for all matters related to debt collection, including litigation and compliance review. The National List is pleased to have Sessoms & Rogers as member of our list of esteemed collection attorneys. If you would like to use their services, register your claims through National List so they can be insured, and you can have both teams behind your collection needs.*

POUNDS EX 0788

NORTH CAROLINA
WAKE COUNTY

## AFFIDAVIT OF COUNSEL (TURNER) AUTHENTICATING WEBPAGE AND ARTICLES

Emily P. Turner, Esq., being duly sworn, deposes and says:

1. I am an attorney licensed to practice law in North Carolina. I give this affidavit in the belief that it presents matters that are undisputed, as it solely concerns authentication of a webpage and two news articles that I personally obtained from the internet from the following sources:

2. On October 27, 2016, I accessed the following url on my browser at the website for Sessom & Rogers, PA: http://www.sessomslaw.com/litigation/. I saved the webpage available at that url, entitled "North Carolina Collections Litigation," as a .pdf file. The webpage herein referenced appears as Exhibit 60 to the Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Class Certification, and is a true, accurate, and complete copy of the webpage as of the date set out herein.

3. On October 17, 2016, I accessed the following url on my browser at the website for the National List® of Attorneys: http://www.nationallist.com/nl_resources/white_papers/northcarolina. I then chose the option "Download the complete white paper North Carolina Debt Collection Laws" to download "North Carolina Debt Collection Laws" by Lee C. Rogers, dated January 2013, as a .pdf file. The article herein referenced appears as Exhibit 61 to the Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Class Certification, and is a true, accurate, and complete copy of the article as of the date set out herein.



POUNDS EX 0789

4. On October 17, 2016, I accessed the following url in my browser at the website for the National List® of Attorneys: https://blog.nationallist.com/2016/08/16/ncs-controversial-debt-buyer-law-part-of-the-changing-collection-landscape/. I saved the article available at that url, "NC's Controversial Debt Buyer Law: Part of the Changing Collection Landscape" by Andrew E. Hoke, dated August 16, 2016, as a .pdf file. The article herein referenced appears as Exhibit 62 to the Exhibits in Support of Plaintiffs' Motion for Preliminary Injunction and Class Certification, and is a true, accurate, and complete copy of the article as of the date set out herein.

FURTHER AFFIANT SAYETH NAUGHT.

This the 4th of November, 2016

_____
Emily P. Turner

STATE OF NORTH CAROLINA
COUNTY OF WAKE

Subscribed and sworn to (or affirmed) before me,
this the 4 day of November, 2016.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires: 7·17·21.

*[Notary Seal: DESMOND A. RIJO, Notary Public, Wake County, My Comm. Exp. 07-17-2021, NORTH CAROLINA]*