UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

IRIS POUNDS, CARLTON )
MILLER,VILAYUAN SAYAPHET- )
TYLER, RHONDA HALL and )
PIA TOWNES, on behalf of )
themselves and all others )
similarly situated, )
  )
    Plaintiffs, )
  )
    v. ) Civil Action No. 1:16-CV-1395
  )
PORTFOLIO RECOVERY )
ASSOCIATES, LLC, )
  )
    Defendant. )
  )

## BRIEF IN SUPPORT OF MOTION TO REMAND

    Plaintiffs, by and through counsel, respectfully submit this brief in support of their Motion to Remand.

### INTRODUCTION

    Plaintiffs filed a putative class action in Durham County Superior Court to undo thousands of default judgments obtained by Portfolio Recovery Associates, LLC ("PRA") in violation of North Carolina state-law prerequisites. The Complaint also seeks statutory penalties and actual damages for the class that result from those judgments. Because these claims directly attack the

validity of state-court judgments and seek relief that reverses the harms flowing from those judgments, the claims are paradigmatic "*Rooker-Feldman* claims," over which a federal district court lacks subject-matter jurisdiction. Accordingly, this case must be remanded to state court.

NATURE OF MATTER BEFORE COURT

Plaintiffs brought suit against defendant PRA in Durham County Superior Court on November 21, 2016. By their Class Action Complaint, plaintiffs seek to proceed on behalf of "all persons against whom PRA obtained default judgments in North Carolina courts in a case filed on or after October 1, 2009." Compl. ¶ 15. The October 1, 2009 limitation refers to the effective date of "The Consumer Economic Protection Act of 2009," S.L. 2009-573, which enacted G.S. 58-70-155[1] and related statutes. G.S. 58-70-155 establishes certain "prerequisites" that must be satisfied by a debt buyer prior to the court's entry of a default judgment against a debtor.

---

[1] For the sake of consistency with their Complaint and motions filed in state court, plaintiffs depart from The BlueBook and use "G.S." rather than "N.C. Gen. Stat. §" when citing to North Carolina statutes.

Each of the Complaint's three claims seeks to remedy injuries caused by state-court default judgments obtained by PRA. Plaintiffs' first claim seeks a declaratory judgment that PRA's default judgments are void, thereby rendering them legal nullities, and associated injunctive relief. The second claim seeks recovery of the statutory penalty prescribed by G.S. 58-70-130(b) arising from the entry of the invalid default judgment. The third claim seeks recovery of payments made by class members on the invalid default judgments as actual damages under G.S. 58-70-130(a). *See* Compl. ¶¶ 50-57, 58-63, 64-66.

Prior to filing the class action, counsel for plaintiffs brought motions to vacate PRA default judgments in seven cases, and the three North Carolina judges that ruled on the motions unanimously determined that PRA failed to comply with G.S. 58-70-155 and that the judgments were therefore void for lack of jurisdiction. *See* Doc. 1-13 (Ex. M – Tab E, Exs. 24-30) (seven vacatur orders).

PRA avoided appellate review of the seven vacatur rulings by voluntarily dismissing each of the seven cases. *See* Compl. ¶ 41; Doc. 1-14 (Ex. N – Tab F, Exs. 33-40).

-3-

When one of the defendants in the seven cases brought an affirmative case against PRA, seeking the $4,000 statutory penalty for violation of G.S. 58-70-155, PRA filed a purported confession of judgment, rather than defend its practices.[2] *See* Doc. 1-15 (Ex. O – Tab G, Ex. 42 at EX 0636 (stating "PRA may (or may not) be liable to Plaintiff in the amount prayed for in the Complaint or for any amount. . . . PRA nevertheless authorizes the entry of judgment in favor of plaintiff Reba Palmer in the sum of $4,000").

While PRA has avoided North Carolina appellate review of its default judgments, PRA has continued to collect on those judgments, through writs of execution and otherwise. *See* Compl. ¶ 41. In doing so, PRA has used a pretext of legal uncertainty as a basis for continuing to collect on the default judgments, notwithstanding North Carolina law that "void" judgments are legal nullities that may not be enforced. Through the filing of their Class Action Complaint, plaintiffs ultimately seek to obtain a ruling by

---

[2] G.S. 1A-1, Rule 68.1, authorizes confessions of judgment as to claims that are not the subject of a pending action; it does not authorize confessions of judgment in pending cases.

North Carolina's appellate courts that will resolve this purported uncertainty once and for all.

With their Complaint, plaintiffs filed a Motion for Preliminary Injunction to preserve the *status quo* pending resolution of their first claim by preventing PRA from continuing to collect on the judgments, as well as a Motion for Class Certification and supporting brief, together with Exhibits 1-69.

PRA removed this case to this federal Court on December 9, 2016, on the basis of diversity jurisdiction, pursuant to 28 U.S.C. 1332(d). *See* Doc. 1. Plaintiffs' two motions, two briefs and Exhibits 1-69 were filed in this Court by PRA in connection with the removal. Doc. 1-4 to Doc. 1-21.

Plaintiffs move that the case be remanded based on the *Rooker-Feldman* doctrine. This brief is submitted in support of the motion to remand.

## FACTS

PRA is a "debt buyer" within the meaning of that term as defined in G.S. 58-70-15(b)(4) and as used in G.S. 58-70-155. Compl. ¶¶ 17-20. The Consumer Economic Protection

Act of 2009 was enacted to protect North Carolina consumers from abusive debt-collection practices by debt buyers, and section 58-70-155 specifically limits the circumstances under which North Carolina courts may enter default judgments in cases brought by debt buyers. Compl. ¶¶ 22-25. Based on information provided by PRA, plaintiffs understand that PRA has obtained more than 18,000 default judgments in North Carolina in cases filed on or after October 1, 2009.

The Complaint alleges that PRA's default judgments are void for lack of subject-matter jurisdiction because PRA failed to satisfy the "prerequisites" prescribed by G.S. 58-70-155 in cases brought by debt buyers: filing "properly authenticated business records" containing an "itemization of charges and fees claimed to be owed" prior to the court's entry of default judgment. *See* Compl. ¶¶ 36-39, 52-54. Plaintiffs assert three claims for relief:

- Claim One asks the court to declare that the default judgments violate G.S. 58-70-155 and are thereby void and seeks associated injunctive relief, including

-6-

requiring PRA to file notices of vacatur in the court
files.  *See* Compl. ¶¶ 50-57.

- Claim Two seeks recovery of the statutory penalty
  prescribed by G.S. 58-70-130(b), $500 to $4,000 per
  violation.  *See* Compl. ¶¶ 58-63.

- Claim Three seeks recovery of payments made on PRA
  default judgments as actual damages under G.S. 58-70-
  130(a).  *See* Compl. ¶¶ 64-66.

## QUESTION PRESENTED

Should this case be remanded to the Superior Court of
Durham County?

## ARGUMENT

Because the Complaint in this case seeks to undo state-
court judgments and fasten liability on PRA for harms
caused by those judgments, these are paradigmatic *Rooker-
Feldman* claims and the case must be remanded.

### I. GOVERNING LAW.

Pursuant to 28 U.S.C. § 1441, a defendant may remove
only those cases that could have originally been filed in
federal court.  PRA, as the party seeking removal, bears
the burden of proving the existence of subject matter

-7-

jurisdiction.  *Chandler v. Cheesecake Factory Restaurants, Inc.*, 239 F.R.D. 432, 436 (M.D.N.C. 2006) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994).  If jurisdiction is doubtful, a remand is necessary. *Id.*

When federal jurisdiction is found to be lacking in a case that arrives in federal court via the removal process, the case must be remanded.  28 U.S.C. § 1447(c); *Northrup v. State of North Carolina*, 461 Fed. Appx. 211, 212 (4th Cir. 2012) ("While the district court properly concluded it lacked jurisdiction over the case, the proper disposition upon a determination of the lack of subject matter jurisdiction is to remand the case to the state court, rather than dismiss the action.") (citation omitted); *Spencer v. Suntrust Mortgage, Inc.*, No. 1:15-CV-37, 2015 WL 5774657 at *2 (M.D.N.C. Sept. 30, 2015) ("Plaintiffs' claims may not be heard in this Court pursuant to the *Rooker–Feldman* doctrine, because the claims require review of the state court order allowing the foreclosure sale of Plaintiffs' property.  These claims must be remanded to the

state court because this Court may not exercise subject matter jurisdiction over the claims.").

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION OF THIS CASE UNDER THE *ROOKER-FELDMAN* DOCTRINE.

"The *Rooker-Feldman* doctrine generally prohibits lower federal courts from reviewing state-court decisions. Rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *5 (M.D.N.C. Nov. 21, 2016) (*quoting Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).

The Supreme Court has explained the *Rooker-Feldman* doctrine in the following terms:

> In [*Rooker* and *Feldman* ], the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an *injury caused by* the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, *called upon the District Court to overturn an injurious state-court judgment*. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005) (citations and footnote omitted;

-9-

emphases added); *see also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court *has no authority to review final judgments of a state court in judicial proceedings.* Review of such judgments may be had only in this Court.") (emphasis added); *Pickens v. JP Morgan Chase Bank, N.A.*, No. 5:14-CV-00166, 2016 WL 2759726, at *4 (W.D.N.C. May 12, 2016). This case, including each of the claims for relief, lies squarely within the scope of the *Rooker-Feldman* doctrine.

First Claim. The first claim for relief (Compl. ¶¶ 50-57) seeks to nullify state-court default judgments obtained by PRA in cases filed after October 1, 2009, the effective date of G.S. 58-70-155. *See* Compl. ¶ 57 (seeking declaratory judgment that PRA's default judgment are void and injunctive relief requiring PRA to file notices of vacatur in court files). Thus, the claim directly and unambiguously seeks to "*overturn*[ ] injurious state-court judgment[s]." *Exxon Mobil Corp.*, 544 U.S. at 292.

This Court lacks subject matter jurisdiction over the first claim for relief because federal district courts are not empowered to decide whether state-court judicial

-10-

officials possessed the requisite subject matter
jurisdiction to enter state-court default judgments.
*See, e.g.*, *Doe v. Mann*, 415 F.3d 1038, 1042 n.6 (9th Cir.
2005) ("*Rooker-Feldman* applies where the plaintiff in
federal court claims that the state court did not have
jurisdiction to render a judgment."); *Schmitt v. Schmitt*,
324 F.3d 484, 487 (7th Cir. 2003) (finding that "state
courts were competent to determine their own jurisdictional
boundaries," and thus "no need for the federal courts to
intervene" would bar its application of *Rooker-Feldman*).
Because the first claim seeks to render void and to vacate
state-court judgments, it is a paradigmatic *Rooker-Feldman*
case and must be remanded. *See Exxon Mobil Corp.*, 544 U.S
at 283 ("*Rooker* was a suit commenced in Federal District
Court to have a judgment of a state court, adverse to the
federal court plaintiffs, 'declared null and void.'"); *id.*
at 284 (exploring application to cases "inviting district
court review and rejection of those [state-court]
judgments"); *see also Spencer*, 2015 WL 5774657 at *2
(ordering remand of claims for which federal court lacked
jurisdiction based on *Rooker-Feldman* doctrine).

-11-

Second Claim.  The second claim for relief (Compl. ¶¶ 58-63) seeks recovery of the statutory penalty prescribed by G.S. 58-70-130(b).  Section 58-70-130(b) provides for a penalty of $500 to $4,000 "for each violation" when a "collection agency" "violates Part 3 of this Article."  *Id.* As alleged in the Complaint, PRA is a "collection agency" and violated "Part 3 of this Article" (specifically, G.S. 58-70-115(7))[3] "by requesting and obtaining default judgments in violation of G.S. 58-70-155."  Compl. ¶ 59.

Plaintiffs' second claim presents a classic example of *Rooker-Feldman* "intertwining": "The *Rooker-Feldman* bar extends not only to issues actually presented to and decided by a state court, but also to issues that are 'inextricably intertwined' with questions ruled on by a state court."  *Brumby v. Deutsche Bank Nat'l Trust Co.*, No. 1:09CV144, 2010 WL 617368 at *2 (M.D.N.C.  Feb. 17, 2010) (citing *Plyer v. Moore, supra*, 129 F.3d at 731 and *Jordahl v. Democratic Party of Va.*, 122 F.3d 192 (4th Cir. 1997)).

---

[3] G.S. 58-70-115 provides "unfair practices include . . . (7) Failing to comply with Part 5 of this Article."  G.S. 58-70-155 is within "Part 5 of this Article."

*Jordahl* appears to be the definitive Fourth Circuit case on *Rooker-Feldman* intertwining, and has been cited frequently by the Fourth Circuit and by this Court, most recently in *Johnson*, 2016 WL 6839410, at \*6. *Jordahl* states:

> In the instant case, the VLC seeks damages *as a result of* the state court's actions issuing the three injunctions at issue. It is axiomatic that in order for the VLC to obtain damages *as a result of* the state court's issuance of the injunctions at issue, the federal district court would be required to determine that the state courts' decisions were wrong. The present action by the VLC requires a review of the state courts' decisions—pure and simple.

122 F.3d at 202 (emphases added). The second claim in the instant case asserts G.S. 58-70-130(b) liability "as a result of" the default judgments. *Id.*

The essential "as a result of" relationship between the default judgments and the second claim for relief can be seen in the language of G.S. 58-70-155. Section 58-70-155's title describes its requirements as "prerequisites" for the entry of default judgments. Section 58-70-155(a) prescribes what a debt buyer must file "prior to entry of a default judgment." Pursuant to the statutory language, PRA's performance of the prerequisites required by G.S. 58-

-13-

70-155 was not due until the default judgments were
entered.  Only upon entry of the default judgments were the
violations of section 58-70-155 complete.  Thus, while the
plaintiffs assert that PRA failed to comply with the
statutory prerequisites, as with *Jordahl*, "[i]f the state
courts did not issue the" default judgments, then
Plaintiffs "would have no harm of which to complain."  122
F.3d at 203*.*  Because the G.S. 58-70-155 violation (and,
hence, the G.S. 58-70-115(7) violation and consequent
liability for the G.S. 58-70-130(b) penalty) did not occur
until the default judgments were entered, the liability
sought to be established under the second claim for relief
is "inextricably intertwined" with the default judgments
and subject to the *Rooker-Feldman* bar.

Third Claim.  The third claim for relief (Compl. ¶¶ 64-
66) seeks to recover, as actual damages under G.S. 58-70-
130(a), the amount of the payments that class members have
made upon the default judgments.  This claim is also a
paradigmatic application of the *Rooker-Feldman* doctrine.
In the language of *Exxon Mobil Corp.*, it "complain[s] of an
injury caused by the state-court judgment."  544 U.S. at

291. The judgment sought by the third claim would effectively annul PRA's state-court default judgments by requiring that payments on the default judgments be returned. *See also id.* at 284 (noting *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). A claim for return of funds paid upon a judgment is a "rejection" of that judgment. *Id.; see also Jordahl*, 122 F.3d at 202 (describing as "axiomatic" a suit for "damages as the result of the state court's" actions).

Broader Implications of this Case. It is appropriate that plaintiffs also raise some of the broader problems that will arise if this case is found to be subject to federal jurisdiction. These practical problems stem from the nature of federalism, and "[t]he *Rooker-Feldman* doctrine is rooted in principles of comity and federalism." *Alder v. James*, 238 F.3d 410, 2000 WL 1825422, at *2 (4th Cir. 2000).

This case asks a court to decide whether some 18,000 state-court civil judgments may be collaterally attacked under state law, raising issues not only of how PRA has operated, but of how the North Carolina court system will operate in the future, in accordance with North Carolina law. This case concerns the very inner workings of the North Carolina court system: the Complaint alleges that default judgments rendered by Clerks of Court throughout North Carolina and, in some cases, by North Carolina District Court judges, are beyond the subject matter jurisdiction that North Carolina law confers upon these state judicial officials. As in all state-law questions in diversity cases, this Court is required to attempt to follow North Carolina law as interpreted by the North Carolina courts. *See, e.g., Leichling v. Honeywell Int'l, Inc.*, __ F.3d __, 2016 WL 7030628, at *2 (4th Cir. Dec. 2, 2016) (citing 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

"Because North Carolina law governs" the claims at issue here, this Court will be required to "predict how the Supreme Court of North Carolina would rule as to each

-16-

disputed legal issue," and as the state Supreme Court "has spoken neither directly nor indirectly on the particular issue" in any fashion, this Court will further have to "predict" how the Supreme Court of North Carolina "would rule if presented with th[is] issue" of first impression. *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 288 n. 3 (E.D.N.C. 2016) (citations omitted). Additionally, there is no opportunity to avoid this type of guesswork by referring a question to the North Carolina Supreme Court because North Carolina, uniquely, does not provide any such process. *See Stahle v. CTS Corp.*, 817 F.3d 96, 113 (4th Cir. 2016) (Thacker, concurring) ("North Carolina remains the only state in the nation never to have enacted some form of certification procedure.").

Federal courts, however, cannot issue binding rulings on matters of state law. *See, e.g.*, *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("Although we may doubt that the Court of Appeal has correctly interpreted California law, we recognize that California courts are the ultimate authority on that law."); *Davis v. Urquiza*, 233 N.C. App. 462, 467, 757 S.E.2d 327, 331 (2014) ("With

regard to matters of North Carolina state law, neither this Court nor our Supreme Court is bound by the decisions of federal courts, including the Supreme Court of the United States, although in our discretion we may conclude that the reasoning of such decisions is persuasive.") (citation omitted). Accordingly, any guess this Court would make as to the interpretation and application of the Consumer Economic Protection Act would not be definitive, or "binding." *Id*. A definitive answer to the questions raised by the claims in the instant case would need to await a ruling by the North Carolina Court of Appeals or Supreme Court in some other case. In the meantime, presumably, PRA will continue to contend its obligations under North Carolina law are uncertain.

PRA is a major user of the North Carolina District Courts, as shown by the 18,000 default judgments it has obtained. PRA is a type of entity (a "debt buyer") as to which the North Carolina legislature enacted special limits, or "prerequisites," on certain types of state-court judgments (default judgments). As alleged in the Complaint, three different North Carolina judges in the

-18-

District Courts of Chatham (Charles Anderson, J.), Wake (Debra Sasser, J.) and Mecklenburg (Rebecca Tin, J.), have entered orders in individual cases, with findings and conclusions, holding PRA's default judgments are void. Compl. ¶¶ 36-39. Thus, North Carolina District Court judges have already weighed in on the issue of whether PRA's default judgments violate G.S. 58-70-155 and on whether those default judgments are void. The instant case seeks to bring the issues determined in the vacatur orders before the state appellate court for review. "The Rooker-Feldman doctrine . . . reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals." *Jordahl*, 122 F.3d at 202.

Retention of jurisdiction in this case would invite a ruling that would require guesswork as to how the North Carolina Supreme Court would rule and would have limited authority. It would also delay the resolution of important questions of state law with respect to PRA's actions. The *Rooker-Feldman* doctrine offers a clear reason that this

Court should not take jurisdiction of this case, as discussed above. However this is not just any *Rooker-Feldman* case. Principles of federalism that underlie *Erie* and 28 U.S.C. § 1738 counsel in particular against federal jurisdiction over state-law claims concerning state court operations and state judicial officials' subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, because this Court lacks jurisdiction over the claims asserted in this action based on the *Rooker-Feldman* doctrine and because principles of federalism also counsel against the federal court retaining jurisdiction, plaintiffs respectfully ask that this case be remanded to the Superior Court of Durham County.

This, the 20th day of December, 2016.

/s/ Carlene McNulty
Carlene McNulty, NCSB #12488
Jason A. Pikler, NCSB #47128
Emily P. Turner, NCSB #49578
NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC  27611
Telephone: (919) 856-2161
Facsimile: (919) 856-2175

-20-

                         Email: carlene@ncjustice.org
                                jason.pikler@ncjustice.org
                                emilyt@ncjustice.org


                         J. Jerome Hartzell, NCSB #7775
                         P.O. Box 10246
                         Raleigh, NC 27605
                         Telephone: (919) 819-6173
                         Email: jerry.hartzell@gmail.com

Of Counsel:

    Travis E. Collum, N.C. State Bar No. 29158
    COLLUM & PERRY, PLLC
    P.O. Box 1739
    Mooresville, NC  28115
    Telephone:  (704) 663-4187
    Email:  travis@collumperry.com

    Adrian M. Lapas, N.C. State Bar No. 20022
    LAPAS LAW OFFICES, PLLC
    P.O. Box 10688
    Goldsboro, NC  27532
    Telephone:  (919) 583-5400
    Email: adrianlapas@goldsborobankruptcylawyer.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that opposing counsel in this case are registered as Filing Users of the Electronic Filing System maintained by this Court, and that electronic transmission of this document to the Electronic Filing System with transmission of the Notice of Electronic Filing therefore constitutes service of the filed document pursuant to MDNC Local Rule of Civil Practice 5.3(b)(2).

This, the 20th day of December, 2016

/s/ Carlene McNulty
Carlene McNulty