UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:16-cv-01395-WO-JEP

| | | |
|---|---|---|
| IRIS POUNDS, CARLTON MILLER, VILAYUAN SAYAPHET-TYLER, RHONDA HALL, and PIA TOWNES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | **BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR ORAL ARGUMENT** |
| v. | ) ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC | ) ) ) | |
| Defendant. | ) | |

Defendant Portfolio Recovery Associates, LLC ("PRA"), submits this brief in opposition to Plaintiffs' motion to remand.

## NATURE OF THE MATTER BEFORE THE COURT

Rather than seek relief from the various state courts that entered default judgments against them pursuant to Rule 60 of the North Carolina Rules of Civil Procedure, Plaintiffs filed an independent action in state court seeking declaratory relief, as well as statutory penalties and monetary damages. PRA removed the Complaint to this court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs have now moved to remand, contending that jurisdiction is lacking under the *Rooker-Feldman* doctrine. PRA disagrees, and for the reasons set forth below, requests that Plaintiffs' motion be denied.

## STATEMENT OF FACTS

North Carolina General Statute section 58-70-155 became effective October 1, 2009. Subsection (a) requires debt buyers such as PRA "to file evidence with the court to establish the nature and amount of the debt." N.C. Gen. Stat. § 58-70-155(a). Subsection (b) then sets forth the types of "evidence sufficient to" comply with subsection (a). *Id.* § 58-70-155(b).

PRA subsequently filed lawsuits against each of the named Plaintiffs in this action. Rather than answer those suits, each Plaintiff allowed the suit to go into default, and PRA obtained default judgments. Thus, a default judgment was entered against Iris Pounds on October 6, 2015, Compl. ¶ 27; a default judgment was entered against Carlton Miller on May 2, 2014, *id.* ¶ 28; a default judgment was entered against Vilayuan Sayaphet-Tyler on January 8, 2016, *id.* ¶ 29; a default judgment was entered against Rhonda Hill on July 8, 2015, *id.* ¶ 30; and a default judgment was entered against Pia Townes on April 1, 2015. *Id.* ¶ 31.[1]

On November 21, 2016, Plaintiffs filed this putative class action on behalf of "[a]ll persons against whom PRA obtained a default judgment entered by a North Carolina court in a case filed on or after October 1, 2009." *Id.* ¶ 15. Plaintiffs request in Count I a declaration that section 58-70-115 is jurisdictional and that their default judgments,

---

[1] Plaintiff Townes previously filed in the State court that entered the judgment against her a motion pursuant to Rule 60 of the North Carolina Rules of Civil Procedure, which is the procedure PRA believes is appropriate to contest any of the default judgments at issue. Townes's motion was allowed, and apparently no judgment is pending against her. *See* Compl. ¶¶ 31 & 39.

2

therefore, are void. *See id.* ¶ 56 (alleging that "all of PRA's default judgments . . . are void because G.S. 58-70-115 is jurisdictional"). Plaintiffs request in Count II the imposition of a statutory penalty, *id.* ¶ 61, and have asserted a claim for damages in Count III.

On January 17, 2017, PRA filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted. It is PRA's position that Plaintiffs failed to plead an adequate basis for bringing an independent action under either federal or state law. Plaintiffs' response is due February 7, 2017, and PRA expects that it will reply.[2]

## QUESTION PRESENTED

Does the *Rooker-Feldman* doctrine prevent this Court from exercising jurisdiction over any or all of the claims asserted in this action, including PRA's motion to dismiss?

Recent clarifications on *Rooker-Feldman* from the Supreme Court and the Fourth Circuit demonstrate that the doctrine does not apply in this case. Alternatively, even if *Rooker-Feldman* applies to some extent, it does not prevent this Court from exercising jurisdiction over the second and third claims for relief nor does it prevent the Court from ruling on PRA's pending motion to dismiss.

## GOVERNING STANDARD

"[T]he *Rooker-Feldman* doctrine is narrow and focused." *Thana v. Bd. of License Commissioners for Charles Cty., Maryland*, 827 F.3d 314, 319 (4th Cir. 2016). It does not "stop a district court from exercising subject-matter jurisdiction simply because a

_____
[2] PRA incorporates by reference its Brief in Support of Motion to Dismiss.

3

party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).

Instead, *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Thana*, 827 F.3d at 319 (citing *Exxon Mobil*, 544 U.S. at 284).[3]

## ARGUMENT

### I.    *Rooker-Feldman* Does Not Apply to Any of Plaintiffs' Claims.

The Supreme Court in *Exxon Mobil* established a two-part test to determine if the *Rooker-Feldman* doctrine prevented the exercise of subject matter jurisdiction by federal district courts.  The first step is to determine whether the case at issue is like the cases from which the doctrine originated.  Those cases are *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Second, if the case meets the initial requirement, the court must then evaluate whether *Rooker-Feldman* applies.  The doctrine will not apply unless (1) the plaintiffs lost in state court, (2) the plaintiffs complain of injuries caused by state-court judgments, (3) those judgments were rendered before the district court proceedings began, and (4)

---

[3] The Supreme Court has never held that *Rooker-Feldman* deprived a district court of subject-matter jurisdiction since the decisions in *Rooker* and *Feldman*.  *Thana*, 827 F.3d at 320.  The Fourth Circuit similarly has not held that *Rooker-Feldman* deprived a district court of subject-matter jurisdiction "in a published opinion."  *Id.*

4

the case invites district court review and rejection of the state-court judgments. *Thana*, 827 F.3d at 319 (citing *Exxon Mobil*, 544 U.S. at 284).

The *Exxon Mobil* test is not satisfied here. First, Plaintiffs have failed to meet the threshold test that their claims are like those from *Rooker* and *Feldman*. Rather, Plaintiffs' claims are distinct from the doctrinal bases of those cases. Thus, this Court has jurisdiction over the entire Complaint. Further, Count II (Plaintiffs' claim for a statutory penalty) and Count III (Plaintiffs' claim to recover money paid on the judgment) are not injuries that arise from the state court judgments. Accordingly, this Court has jurisdiction over these two claims irrespective of the jurisdiction over Count I.

## A. **This action is not governed by the doctrinal bases that created *Rooker-Feldman*.**

*Rooker-Feldman* is properly understood to prevent lower federal courts from hearing cases over which the Supreme Court can take jurisdiction. This foundation of the *Rooker-Feldman* doctrine, however, does not implicate Plaintiffs' claims because (1) the cases creating the doctrine do not apply to this case and (2) the doctrine's underlying statute does not apply here.

### 1. **The cases creating the doctrine do not apply to this case.**

#### (a) ***Rooker* originally did not encompass claims alleging that the judgments are void.[4]**

The *Rooker* Court stated that

---

[4] PRA disagrees with Plaintiffs' contention that the default judgments are void. As discussed in this section, because Plaintiffs assert the judgments are void, *Rooker-Feldman* does not prevent this court from resolving that dispute.

5

> [i]f the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, *that did not make the judgment void,* but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction.

*Rooker*, 263 U.S. at 415-16 (emphasis added) (citations omitted).

By this language, the *Rooker* court holds that lower federal courts can review judgments that allegedly are void. The *Rooker* court holds that only the Supreme Court could review a judgment "for errors of that character," meaning a "decision [that] was wrong, [but] that did not make the judgment void." *Id.* at 415-16. A valid judgment, on the other hand, is an "effective and conclusive adjudication" that can only be reversed or modified by the Supreme Court. *Id.* at 416.

The *Rooker* court held there was no obvious error indicating that the judgment was void, which meant that only the Supreme Court could exercise jurisdiction over the action. *See id.* at 416. Accordingly, allegedly void judgments are carved out of *Rooker*, *id.* at 415-16, and lower federal courts lack jurisdiction only if the action in federal court seeks review of a valid, state court judgment.

Plaintiffs in this action allege that "[b]ecause of a lack of subject matter jurisdiction, the judgments are void." Compl. ¶ 55. In considering a motion to remand, the court must treat Plaintiffs' allegations as true. *New Jerusalem Rebirth & Restoration*

6

*Ministries, Inc. v. Meyer*, No. 1:11CV312, 2012 WL 2704251, at *5 (W.D.N.C. July 6, 2012) (unpublished)[5]; *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1318 (S.D. Miss. 2003). Accordingly, the judgments are not clearly valid for the purposes of application of the *Rooker-Feldman* doctrine, and this court has jurisdiction.

On the other hand, for *Rooker-Feldman* to apply here, Plaintiffs would have to concede that N.C. Gen. Stat. § 58-70-155 is not jurisdictional, but only addresses the sufficiency of the evidence to support the judgments. Of course, if Plaintiffs were to take this position, they would be agreeing with PRA and would have no claim. But, because Plaintiffs allege that the judgments are void, Compl. ¶ 55, this a case to which *Rooker* does not apply. And, if the judgments are not clearly valid, neither *Rooker* nor the *Rooker-Feldman* doctrine prevent the exercise of jurisdiction.

### (b) *Feldman* involved a constitutional challenge therefore falling within the Supreme Court's appellate/certiorari jurisdiction.

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), plaintiff was denied admission to the District of Columbia bar because he had not graduated from an accredited law school. 460 U.S. at 465-66. A committee denied his request, and the plaintiff sought admission from the District of Columbia Court of Appeals. This request was likewise denied. *Id.* at 469.

The plaintiff thereafter filed suit in the United States District Court for the District of Columbia seeking a declaration that his rights under the Fifth Amendment to the

---

[5] Pursuant to the Local Rules, copies of unpublished opinions cited in this brief are attached as Exhibit 1.

United States Constitution had been violated and seeking an injunction that he be admitted to the bar. *Id.* The district court dismissed the plaintiff's complaint for lack of subject matter jurisdiction. The D.C. Circuit Court of Appeals reversed the decision of the district court. On further review, the Supreme Court reversed, holding that "the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings. Review of such determination can be obtained only in this Court. *See* 28 U.S.C. 1257." *Id.* at 476.

As this brief review makes clear, *Feldman* involved a party seeking review in a federal district court of a federal constitutional matter decided adversely to the plaintiff. As such, as discussed in the next section, review was available, if at all, in the Supreme Court pursuant to 28 U.S.C. § 1257.

The underlying state law litigation that is the subject of the putative class action before this court, however, did not involve any treaty, federal constitutional provision, or federal statute. Rather, only state common-law and statutory issues regarding the *quantum* of evidence were involved. There was no avenue for review by the Supreme Court, and the bases of the *Rooker-Feldman* decisions are not in play. *See Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983) (holding that the Supreme Court will not review a decision that rests on pure state law grounds). Accordingly, *Rooker-Feldman* presents no bar to the exercise of jurisdiction by this court, and the motion to remand should be denied.

8

## 2. The doctrine's underlying statute does not apply here.

*Rooker-Feldman* is based on 28 U.S.C. § 1257 and its precursor statutes. *Exxon Mobil*, 544 U.S. at 283*; Thana*, 827 F.3d at 319. Section 1257 allows the Supreme Court to take certiorari over judgments on federal questions rendered by a State's highest court. Thus, section 1257 provides that the Supreme Court may review "final judgments or decrees rendered by the highest court of a State" by writ of certiorari in specifically enumerated circumstances.[6] 28 U.S.C. § 1257(a). Those circumstances are cases in which (1) "the validity of a treaty or statute of the United States is drawn in question," (2) "the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States," and (3) "where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States." *Id.*

Certiorari jurisdiction is not available in this case because (1) Plaintiffs do not contest a judgment entered by the highest court of a state from which a decision could have been had and (2) their claims are not otherwise captured within the enumerated circumstances of section 1257.

---

[6] The Fourth Circuit has noted that *Rooker-Feldman* is only applicable under *Exxon Mobil* if a lower federal court is called to exercise jurisdiction over "a final judgment from the highest court of a State in which a decision could be had." *Thana*, 827 F.3d at 321 (*quoting* 28 U.S.C. § 1257(a)) (internal quotation marks omitted).

9

First, Plaintiffs' allegations do not implicate a final judgment entered by the highest court of North Carolina from which a decision could have been obtained. Thus, Plaintiffs are not contesting decisions from either the State Supreme Court or an intermediate appellate court that was denied review by the North Carolina Supreme Court. *See Flynt v. Ohio*, 451 U.S. 619, 620 (1981) (holding that if "anything further remains to be determined by a State Court," the judgment is not reviewable under this rule). Rather, North Carolina trial courts entered the default judgments Plaintiffs contest. Therefore, Plaintiffs do not contest a judgment entered by the highest court of a state from which a decision could have been obtained. Moreover, because Plaintiffs failed to appeal or contest the judgments, they were not subject to any appellate review that would support United States Supreme Court review. *See id.*

Second, even if the default judgments are considered as having been rendered by the highest court of the state from which review could be obtained, none of the requirements of section 1257 are implicated by the judgments such that the Supreme Court could exercise jurisdiction. All of the cases for which certiorari is allowed under section 1257 involve issues where the party seeking United States Supreme Court review called into question a treaty or federal statute or where the complaining parties claim a statute violated the constitution or are claiming a Constitutional right. In this case, however, the underlying claim is a state law suit to recover amounts due on a credit card debt and whether PRA submitted sufficient evidence to obtain a default judgment. This straightforward claim arises wholly under state law and does not raise any federal treaty,

10

statutory, or Constitutional issues that would be reviewable by the United States Supreme Court. *See id.* Because there would have been no Supreme Court jurisdiction to review the judgments, *Rooker-Feldman* is not implicated by the exercise of jurisdiction by this Court. Rather, this court has original jurisdiction under 28 U.S.C. § 1332(d), and the motion to remand should be denied.

### B. Not all of the remaining elements of the *Rooker-Feldman* test are met.

Even if the threshold test for application of the *Rooker-Feldman* doctrine were met, meaning that this action falls within the doctrinal bases of the *Rooker-Feldman* cases, Plaintiffs' claims do not meet at least two of the elements of the *Rooker-Feldman* test. First, none of the claims invite the district court to conduct appellate review of the merits of the state-court judgments. Second, the statutory penalty and damages claims (Counts II and III) are not injuries caused by the state court judgments such that the *Rooker-Feldman* doctrine prevents the exercise of jurisdiction over those claims irrespective of the existence of jurisdiction over Count I.

#### 1. Plaintiffs' claims do not require appellate review of the merits of a state-court judgment.

*Rooker-Feldman* presents an obstacle to the exercise of subject matter jurisdiction when the district court is asked to conduct appellate review of the merits of a state court judgment. *Thana*, 877 F.3d at 319 (*quoting Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). When, as here, the federal court action does not seek appellate review of the merits of the state court judgment, but, instead seeks a declaration interpreting the statute or rule at issue, *Rooker-Feldman* does not deprive the court of subject matter

11

jurisdiction. *Feldman*, 460 U.S. at 486-87. Thus, in *Feldman*, discussed above, the Supreme Court held that the federal district court lacked jurisdiction over the plaintiffs' claim to be admitted to the bar on the grounds that the state court acted arbitrarily and capriciously in violation of the plaintiffs' constitutional rights. *Id.* (holding that the district court lacked "jurisdiction over these elements of the respondents' complaints"). On the other hand, however, the Supreme Court held that "the remaining allegations [that] involve a general attack on the constitutionality" of a state court rule that would deny bar admission "do not require review of a judicial decision in a particular case . . . and [t]he District Court, therefore, has subject matter jurisdiction over these elements of the respondents' complaints." *Id.* at 487.

The same is true here. Although phrased in terms of vacatur, Count I of Plaintiffs' Complaint requires a declaration that the section 58-70-115 is jurisdictional. This determination is separate from appellate review of the issue of whether the evidence submitted to support the judgment was sufficient to comply with the statute. Accordingly, *Rooker-Feldman* does not deprive this court of subject jurisdiction to determine if section 58-70-115 is a jurisdictional statute, and the motion to remand should be denied.

### 2. Plaintiffs' statutory penalty and damages claims are not injuries caused by the State court judgments.

*Rooker-Feldman* is not a bar to federal jurisdiction when a federal plaintiff complains of an injury caused by the defendant's actions and not by the state-court judgment. *See, e.g.*, *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d

159, 167 (3d Cir. 2010); *Davani v. Virginia Dep't of Transp.* 434 F.3d 712, 718 (4th Cir. 2006). Counts II and III fall within this rule, thereby making subject matter jurisdiction over these claims proper.

First, Plaintiffs' statutory penalty claim is not an injury at all. It is, as is evident from the statute, a penalty based on litigation conduct occurring during the course of obtaining a judgment. Thus, Plaintiffs allege that PRA violated N.C. Gen. Stat. § 58-70-115 by allegedly submitting evidence in support of its motions for default that does not meet the evidentiary requirements of this statute. Plaintiffs next contend that violations of N.C. Gen. Stat. § 58-70-115 "shall constitute unfair or deceptive acts or practices," *id*. § 58-70-130, such that a penalty between $500 and $4,000 can be assessed under § 58-70-130(b). Compl. ¶¶ 59-61. Therefore, this alleged injury does not arise from the state-court judgment and jurisdiction over this claim is proper. *Davani*, 434 F.3d at 719 (holding that when a claim arises from a legal violation that does not arise from a state-court judgment, the *Rooker-Feldman* doctrine does not come into play).

Plaintiffs' allegations with respect to actual damages also do not amount to injuries arising from the state court judgments. First, Plaintiff Sayaphet-Tyler merely alleges that she has been contacted by the Guilford County sheriff's office, *see* Compl. ¶ 10, whereas plaintiff Hall asserts that she will be in a "precarious" financial condition if her bank account were frozen or her car seized in satisfaction of the judgment. *Id.* ¶ 12. These plaintiffs make no allegations of an injury arising from the judgments. Plaintiff Townes does not appear to currently have a judgment entered against her and does not

allege any injury from a prior judgment. She, therefore, cannot have an injury arising from the state court judgment.

Plaintiff Pounds complains of the seizure of her car by the Durham County sheriff, *see* Compl. ¶ 6, whereas plaintiff Miller complains about a writ of execution issued to his bank. *See id.* ¶ 8. Claims for injuries arising from post-judgment collection activities on a debt stem from the actions of the defendant and are not subject to the jurisdictional bar of *Rooker-Feldman*. *Sheenan v. Mortg. Elec., Registration Sys., Inc.*, No. CIV. 10-6837 (RBK/KMW), 2011 WL 3501883, at *4 (D.N.J. Aug. 10, 2011) (unpublished); *see Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014) (denying motion to remand and holding that *Rooker-Feldman* did not bar claims for damages related to default judgments procured by fraud); *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 996 (9th Cir. 2002) (*Rooker-Feldman* does not bar claims relating to collections on a state foreclosure judgment).

Plaintiffs' claim to recover the amounts paid on the judgments is equally unavailable to prevent the exercise of subject matter jurisdiction. Not one Plaintiff has denied the amount of the debt. Paying a valid debt, therefore, cannot be an injury arising from the judgment.

Thus, even if the court were to find that *Rooker-Feldman* reaches Plaintiffs' declaratory judgment claim, which it does not, this court would retain jurisdiction over the statutory penalty and actual damages claims inasmuch as they are severable from that

14

claim. *Iqbal v. Patel*, 780 F.3d 728, 731 (7th Cir. 2015) (citing *Exxon Mobil*, 544 U.S. at 293); *Johnson*, 748 F.3d at 773.

Finally, Plaintiffs' argument that the statutory penalty and damages claims must be remanded because they are "inextricably intertwined" with the request for vacatur is based on a discredited theory that no longer carries analytical weight. The Fourth Circuit has held that the "inextricably intertwined language does not create an additional legal test for determining when claims challenging a state-court decision are barred." *Davani*, 434 F.3d at 719 (internal quotation marks omitted). Rather, the question is whether a claim is independent of any other claim to which *Rooker-Feldman* might apply. *Thana*, 827 F.3d at 320; *Davani*, 434 F.3d at 718 (*citing Exxon Mobil*, 544 U.S. at 284). As these claims do not stem from state-court judgments, they must be independent of any claim implicating *Rooker-Feldman* and this court retains jurisdiction over these claims.

## II. This Court Has Jurisdiction to Address PRA's Motion to Dismiss Regardless of *Rooker-Feldman*.

PRA's motion to dismiss and associated briefing argues that Plaintiffs cannot and do not plead an adequate basis to bring an independent action. *See* Doc. 14, 15. *Rooker-Feldman* does not bar federal courts from determining whether an action is procedurally valid. *Yale v. Nat'l Indem. Co.*, 602 F.2d 642, 644 (4th Cir. 1979) (holding that "a federal court asked to entertain an attack upon a state-court judgment must . . . determine the exposure of that state's judgments to the particular type of attack being made")*; see also Reid v. North Carolina*, 837 F.Supp.2d 554, 561-62 (W.D.N.C. 2011) (citing *Yale,*

602 F.2d at 642 and *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949)), *aff'd*, 471 F. App'x 188 (4th Cir. 2012) (per curiam) (unpublished).

PRA's motion to dismiss requests the court to determine whether Plaintiffs can bring their claims in the form of an independent action. PRA's argument in that motion and the accompanying brief is that Plaintiffs' cannot attack their judgments in the form of an independent action. This is the precise determination required by *Yale*. Thus, even if *Rooker-Feldman* applied to any of the claims in this case, it would not bar this court from complying with the mandates of *Yale*, and this court has jurisdiction to address PRA's motion to dismiss.[7]

### III. Alternatively, If the Court Finds Plaintiffs' Independent Action Is Valid, *Rooker-Feldman* Does Not Bar Jurisdiction Over That Action.

*Rooker-Feldman* prohibits lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *Thana*, 827 F.3d at 319. Because, by denying PRA's motion to dismiss, the court would be permitting an independent action, this court would not be exercising appellate jurisdiction, and *Rooker-Feldman* would not apply.

Motions under Rule 60 do not challenge or implicate appellate jurisdiction even if an appellate court has already ruled on the challenged case. *Standard Oil Co. of*

---

[7] While the *Yale* case predated *Feldman*, nothing in the *Feldman* court's holding disturbs the *Yale* doctrine. Furthermore, the same concept of assessing the validity of a form of action has arisen in other courts since *Feldman*. *See, e.g. Davis v. Bayless,* 70 F.3d 367, 376 (5th Cir. 1995); *Reid*, 837 F.Supp.2d at 561-62; *Illinois Cent. R. Co. v. Harried*, No. 5:06cv-160-DCB-JMR, 2010 WL 4553640, at *4 (S.D. Miss. Nov. 3, 2010) (unpublished).

*California v. United States*, 429 U.S. 17, 18 (1976). The *Standard Oil* court held that Rule 60 motions can be brought to challenge a judgment that an appellate court has already ruled upon because "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events." *Id.* Rule 60 motions deal with "later events" because they can only be brought to address issues that were not addressable or not litigated in the original action. *Id.* While *Standard Oil*'s holding only addresses Rule 60 motions, the reasoning behind it also applies to the independent actions preserved in the same rule.

Similarly, the only way Plaintiffs could bring an independent action under federal or North Carolina law would be if there were previously undiscoverable issues relating to the challenged judgment. To bring an independent action under the federal rule, there must have been a defense which was undiscoverable in the original action. *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1358 (4th Cir. 1982). This same requirement exists when bringing an independent action under North Carolina law. *Carolina Disc. Corp. v. Butler*, 200 N.C. 709, 713, 158 S.E. 249, 252 (1931) (citing *Mut. Reserve Fund Life Ass'n v. Scott*, 136 N.C. 157, 159, 48 S.E. 581, 582 (1904)). Accordingly, should this court deny PRA's motion to dismiss, thereby holding that Plaintiffs can pursue an independent action, *Rooker-Feldman* does not bar this court from exercising jurisdiction over that action because hearing those actions does not require this court to exercise appellate jurisdiction.

17

## IV.    Plaintiffs' Broader Implications Argument Ignores CAFA.

Plaintiffs' federalism arguments ignore that Congress has granted this court jurisdiction over this matter and has expressed its intent to increase federal court involvement in class actions.

Congress has the power to regulate the jurisdiction of the lower federal courts. *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1868, 185 L. Ed. 2d 941 (2013). In the proper exercise of its authority, Congress granted federal courts the power to hear this case pursuant to the Class Action Fairness Act ("CAFA"). Under CAFA, district courts have original jurisdiction over class actions in which the parties are diverse and the amount in controversy exceeds $5,000,000.00. 28 U.S.C. § 1332(d). CAFA also creates specific provisions to remove a class action to federal court. 28 U.S.C. § 1453.

Furthermore, Congress clearly expressed the intent to expand federal court power over class actions. Thus, Congress found that State and local courts had "demonstrate[d] bias against out-of-State defendants" in prior class actions. Class Action Fairness Act of 2005, Pub. L. No. 109–2, § 2(a)(4)(B), 119 Stat. 4. One purpose of CAFA is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." *Id.* § 2(b)(2).

Plaintiffs' argument that this case should not be heard is inconsistent with CAFA. Congress has expanded federal jurisdiction over class actions due to concerns over state-court practices in the class action space. Plaintiffs do not contest this court's jurisdiction

18

under CAFA. This court therefore must exercise the jurisdiction Congress has conferred. *See Mata v. Lynch*, 135 S. Ct. 2150, 2156, 192 L. Ed. 2d 225 (2015) (federal courts have a "virtually unflagging obligation" to exercise jurisdiction when they have it).

Plaintiffs' assertions regarding PRA's litigation conduct are equally without merit. There is currently pending in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, the case of *Portfolio Recovery Associates, LLC v. Caroline L. Houston*, Civil Action No. 12 CVS 642, in which the defendant asserted a putative class action for a class of debtors virtually identical to the present putative class action. *See* Doc. 15, Ex. 1. PRA has been vigorously defending that action and continues to do so. There simply is no reason to believe that PRA would not abide by a final judgment of this Court.

## CONCLUSION

*Rooker-Feldman* does not apply to these claims. Furthermore, even if *Rooker-Feldman* did apply, it would not bar this court from ruling on PRA's motion to dismiss. Therefore, for the reasons set forth in detail above, PRA requests that Plaintiffs' motion to remand be denied.

## REQUEST FOR ORAL ARGUMENT

PRA respectfully requests oral argument on the issue of remand in this case under Local Rule 7.3(c)(1). The evolving and complex nature of the *Rooker-Feldman* doctrine merits an oral argument, especially given the decision of the United States Supreme

Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005), and

Plaintiffs' reliance on outdated legal theories.

This the 24th day of January, 2017.

ELLIS & WINTERS LLP

/s/ Jon Berkelhammer
Jon Berkelhammer
N.C. State Bar No. 10246
Email: jon.berkelhammer@elliswinters.com
Joseph Hammond
N.C. State Bar No. 45657
Email: joe.hammond@elliswinters.com
300 N. Greene Street, Ste. 800
Greensboro, NC  27401
Tel. (919) 865-7000
Fax (919) 865-7010

Sean Fernandes
N.C. Bar No. 50699
Email: sean.fernandes@elliswinters.com
Post Office Box 33550
Raleigh, NC  27636
Tel. (919) 865-7000
Fax (919) 865-7010

*Attorneys for Defendant Portfolio Recovery Associates, LLC*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel and parties of record as follows:

Carlene McNulty, Esq.
James A. Pikler, Esq.
Emily P. Turner, Esq.
North Carolina Justice Center
P.O. Box 28068
Raleigh, NC  27611

J. Jerome Hartzell, Esq.
P.O. Box 10246
Raleigh, NC  27605

Travis E. Collum, Esq.
Collum & Perry, PLLC
P.O. Box 1739
Mooresville, NC  28115

Adrian M. Lapas, Esq.
Lapas Law Offices, PLLC
P.O. Box 10688
Goldsboro, NC  27532

This the 24th day of January, 2017.

/s/ Jon Berkelhammer
Jon Berkelhammer
N.C. State Bar No. 10246

*Attorney for Defendant Portfolio Recovery Associates, LLC*

21