2010 WL 4553640
Only the Westlaw citation is currently available.
United States District Court,
S.D. Mississippi,
Western Division.

ILLINOIS CENTRAL
RAILROAD COMPANY, Plaintiff
v.
Willie R. HARRIED, a/k/a William
Roy Harried, et al., Defendants.

Civil Action No. 5:06cv160–DCB–JMR.
|
Nov. 3, 2010.

**Attorneys and Law Firms**

Daniel J. Mulholland, Brian B. Hannula, Heather J. Wilkins, Tanya D. Ellis, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, for Plaintiff.

Wayne Dowdy, Dowdy & Cockerham, Magnolia, MS, John G. Corlew, Katherine K. Smith, Corlew Munford & Smith, PLLC, Jackson, MS, William S. Guy, Law Offices of William S. Guy, McComb, MS, for Defendants.

*OPINION AND ORDER*

DAVID BRAMLETTE, District Judge.

 **\*1** This matter comes before the Court on Defendants William S. Guy and Thomas W. Brock's Motions for Judgment as a Matter of law [docket entry no. 271] and for a New Trial [docket entry no. 273]. Having carefully considered said motions in light of applicable law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

## BACKGROUND

The Court has summarized the facts underlying this action numerous times (for example, in its Orders of January 10, 2008 and August 6, 2009) and will not repeat those facts again here. After extensive pre-trial briefing, the Court held a jury trial on Illinois Central Railroad Company's claims against Willie R. Harried, Warren Turner, Jr., Guy, and Brock. Those claims arose out of earlier settlements of asbestos-related claims by Harried and Turner against Illinois Central in a Mississippi state court case known as *Eakins* for which Guy and Brock (both attorneys) represented Harried and Turner. The jury returned a verdict on March 11, 2010 against Guy and Brock for Illinois Central's claims of fraud and breach of the duty of good faith and fair dealing. The jury found for Harried and Turner with respect to Illinois Central's claims against them. The jury awarded Illinois Central $210,000.00 in compensatory damages ($90,000.00 with respect to Harried's settlement and $120,000.00 with respect to Turner's settlement) and $210,000 in punitive damages. Defendants Guy and Brock now move for judgment as a matter of law with respect to the jury's verdict, renewing their motion under Fed.R.Civ.P. 50. Guy and Brock also move for a new trial.

**A. Motion for Judgment as a Matter of Law**
Guy and Brock contend that there was not sufficient evidence for the jury to find that they fraudulently concealed their conduct from Illinois Central such that the 3–year statute of limitations was tolled or to find that Illinois Central was entitled to punitive damages. Guy and Brock further argue, for the first time, that the jury's verdict is an impermissible collateral attack on related state court proceedings and that Illinois Central should have been required to rescind their settlement agreements with Harried and Turner before proceeding with claims against Guy and Brock. Lastly, Guy and Brock contend generally that there was not sufficient evidence to support the verdict.

Judgment as a matter of law is only appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a)(1). When addressing a Rule 50 motion, "the court must review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party,

and may not make credibility determinations or weigh the evidence." *East Texas Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.,* 575 F.3d 520, 525 (5th Cir.2009). The court must "consider all the evidence presented at trial in the light most favorable to the nonmoving party" and "should disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." *Boeing v. Shipman,* 411 F.2d at 374–75 (5th Cir.1969), overruled on other grounds by *Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (1997).

> *1. The Evidence Was Sufficient for the Jury to Find that Illinois Central's Claims Were Timely.*

**\*2** Defendants Guy and Brock contend that there is not a sufficient evidentiary basis for the jury to have found that the claims against them are timely. Because Illinois Central filed suit against Guy and Brock on January 17, 2008 with respect to Harried's *Eakins* settlement and on February 4, 2008 with respect to Turner's *Eakins* settlement, the Court instructed the jury that it should find the claims time barred if Illinois Central knew, or by the exercise of reasonable diligence should have discovered its injury prior to January 17, 2005 and February 4, 2005, respectively. The Court further instructed the jury that the statute of limitations could be tolled if Illinois Central could prove by a preponderance of the evidence that Guy and Brock committed an affirmative act to conceal the underlying tortious conduct and that Illinois Central failed to discover the factual basis for the claims despite the exercise of due diligence.

Guy and Brock contend that Illinois Central knew of its injuries with respect to both settlements no later than February 13, 2004 and thus that Illinois Central's claims against them are time barred unless it proved the elements of fraudulent concealment. To allege fraudulent concealment of a claim, a plaintiff must show: "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." *Whitaker v. Limeco Corp.,* 32 So.3d 429, 436 (Miss.2010) (citations omitted). Illinois Central put forth sufficient evidence of both affirmative concealment by Guy and Brock and Illinois Central's own due diligence such that the jury could reasonably have found that the statute of limitations was tolled.

First, Mississippi law requires that the affirmative act of concealment for fraudulent concealment occur *subsequent to* the initial fraud. *Id.* at 436–37. Illinois Central presented evidence that Guy and Brock affirmatively acted to conceal the fact that Turner and Harried had failed to disclose their involvement in pre-*Eakins* asbestos-related litigation subsequent to the February 13, 2004 date on which Guy and Brock contend Illinois Central should have known of its injuries. That evidence included, *inter alia,* a letter from Guy and Brock to Illinois Central on April 24, 2004 assuring Illinois Central that they had been thorough and accurate in collecting information about *Eakins* plaintiffs; repeated assurances that problems with *Eakins* plaintiff Fred Tyler's interrogatory responses were simply a mistake; and Guy and Brock's refusal to permit Illinois Central to complete a deposition of Tyler which might have revealed Guy and Brock's previous misstatements. Though Guy and Brock dispute the significance of this evidence, viewing the verdict in the light most favorable to Illinois Central, it was sufficient for the jury to find that Guy and Brock committed affirmative subsequent acts to conceal their earlier fraud.

**\*3** Second, Guy and Brock dispute that Illinois Central submitted sufficient evidence that it acted with due diligence to discover its fraud claims against Guy and Brock. Guy and Brock primarily argue that Illinois Central was not diligent because it was suspicious, as early as January 2004, that Tyler had not been forthcoming about pre-*Eakins* involvement in asbestos litigation, and that suspicion should have led Illinois Central to discover Guy and Brock's involvement in the misstatements surrounding the Turner and Harried settlements. Illinois Central counters that though it was aware in January 2004 about the Tyler issue and by February 2004 that Harried and Turner had failed to disclose their involvement in the pre-*Eakins* litigation, it was not aware until the

depositions of Harried and Turner in this litigation that Guy and Brock were also culpable. To this end, Illinois Central presented evidence to the jury that it acted with due diligence to discover its claims with respect to the Harried and Turner settlements, including by requiring Guy and Brock to give detailed explanations of the procedures they had used to gather information from *Eakins* plaintiffs in March 2004 and seeking to depose Fred Tyler in the *Eakins* case. Moreover, Illinois Central timely asserted claims against Harried and Turner once it learned of their pre-*Eakins* involvement in asbestos-related litigation.

The evidence presented was sufficient for the jury to have determined that Illinois Central acted with due diligence. Guy and Brock argue that because Illinois Central did not discover Guy and Brock's culpability in the Harried and Turner fraud as soon as it learned of the Harried and Turner fraud, Illinois Central was not sufficiently diligent. To the contrary, one can act diligently to uncover fraud and yet fail in that endeavor. The mere fact that Illinois Central did not discover Guy and Brock's involvement in the fraud earlier does not indicate that Illinois Central was not diligent. On the evidence presented, the jury found that Illinois Central acted with due diligence and the Court will not disturb that finding.

### 2. The Evidence Was Sufficient for the Jury to Have Awarded Punitive Damages to Illinois Central.

Guy and Brock next contend that there was insufficient evidence for the jury to find that Illinois Central was entitled to punitive damages. Under Mississippi law, punitive damages may not be awarded unless the plaintiff proves by clear and convincing evidence "that the defendant ... acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or *committed actual fraud.*" Miss Code. Ann. § 11–1–65 (emphasis added). Moreover, punitive damages are considered an extraordinary remedy and should be awarded where the "injuries [ are] inflicted in the spirit of wanton disregard for the rights of others ... [In other words, there must be] some element of aggression of some coloring of insult, malice or gross negligence evincing a ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Warren v. Derivaux,* 996 So.2d 729, 738 (Miss.2008) (quoting *Bradford v. Schwartz,* 936 So.2d 931, 936 (Miss.2006)). Guy and Brock contend that Illinois Central was required to present evidence of both malice and fraud in order for the jury to award punitive damages but that is clearly incorrect. Under a plain reading of the § 11–1–65, either actual fraud *or* malice is required but not both.

**\*4** Guy and Brock further argue that the fraud proved by Illinois Central was not extraordinary enough to warrant punitive damages, citing *Gardner v. Jones,* 464 So.2d 1144 (Miss.1985) and *Watson v. First Commonwealth Life Ins. Co.,* 686 F.Supp. 153 (S.D.Miss.1985). The Court disagrees and holds that Illinois Central presented sufficient evidence for the jury to find that Guy and Brock's fraud was wanton and aggressive enough to take this case "out of the ordinary rule." *Warren,* 996 So.2d at 738. Illinois Central presented evidence that Guy and Brock, both attorneys and officers of the Court, falsified documents, destroyed evidence, and lied to their clients and a court of law. Though Guy and Brock point to their trial testimony in which they state that they did *not* lie or falsify documents, Illinois Central presented sufficient evidence for the jury to disbelieve Guy and Brock's testimony. The Court will not disturb the jury's finding that Illinois Central was entitled to punitive damages.

### 3. Neither Rule 60(b) Nor the Rooker–Feldman Doctrine Deprives the Court of Subject Matter Jurisdiction Over Illinois Central's Claims.

Guy and Brock next argue, for the first time during the long history of this litigation, that Illinois Central's claims against them collaterally attack the *Eakins* court's dismissal of Harried's and Turner's Mississippi state law claims against Illinois Central pursuant to a settlement agreement. Therefore, Guy and Brock assert that the Court should either decline to decide these claims or has no jurisdiction to do so under the *Rooker–Feldman* doctrine.

With regard to the former, Guy and Brock contend that Illinois Central's claims are an

"independent action" to obtain relief from the *Eakins* court's dismissal which, under Mississippi Rule of Civil Procedure 60(b), should be brought in the same court which rendered the judgment (here, Mississippi state court). Guy and Brock find support for their argument in the discussion of the analogous federal Rule 60(b) in Wright & Miller's treatise on federal procedure wherein the authors note that "[t]he normal procedure to attack a judgment should be by motion in the court that rendered the judgment." 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2868 (2d ed.2002). While that may be the "normal" practice, the authors also note two sentences before the one cited by Guy and Brock that "the action may be brought in any court of competent jurisdiction." *Id.* Guy and Brock have cited no case suggesting that an independent action for relief from a judgment based on fraud, such as the one that Illinois Central asserted here, cannot be heard in a court other than the one which issued the original judgment. Accordingly, neither Mississippi Rule 60 nor the analogous federal rule compel the finding that Guy and Brock's choice of forum is incorrect.

Guy and Brock additionally argue that the Court is precluded from exercising jurisdiction over Illinois Central's claims pursuant to the *Rooker–Feldman* doctrine which holds that a district court has no jurisdiction to review final determinations of a state court. *E.g., Gauthier v. Continenal Diving Servs., Inc.,* 831 F.2d 559, 560 (5th Cir.1987) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). Under established Fifth Circuit precedent, however, "the federal court is not required to give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it." *Id.* at 561 (holding the district court had jurisdiction to review a state court consent judgment enforcing a settlement between an injured employee and his employer). Put another way, the *Rooker–Feldman* doctrine "does not bar an action in federal court when that same action would be allowed in the state court of the rendering state." *Davis v. Bayless,* 70 F.3d 367, 376 (5th Cir.1995) (citing *Gauthier,* 831 F.2d at 559). Here, there is no question that Illinois Central's action would be properly brought in Mississippi state court. Indeed, Guy and Brock admit as much in arguing (incorrectly) that it could only be brought there. Accordingly, the *Rooker–Feldman* doctrine does not deprive the Court of jurisdiction over Illinois Central's claim.

### *4. Illinois Central Was Not Required to Rescind the Eakins Settlement Agreements In Order to Maintain This Action.*

**\*5** Guy and Brock next argue, again for the first time, that Illinois Central cannot maintain an action for fraud with respect to Harried's and Turner's settlements because it should have first repudiated the settlement agreements, citing *Bogy v. Ford Motor Co. .,* 538 F.3d 352 (5th Cir.2008) and *Turner v. Wakefield,* 481 So.2d 846 (Miss.1985). In *Turner,* the Mississippi Supreme Court restated the general rule that in actions for fraudulent inducement to enter into a contract, the defrauded party "has an election to either rescind, in which event he must tender back that which he has received, or affirm the agreement, and maintain his action in damages for deceit." *Turner,* 481 So.2d at 848 (quoting *Stoner v. Marshall,* 145 Colo. 352, 358 P.2d 1021 (Colo.1961)). In *Bogy,* the Fifth Circuit made an *Erie* guess as to whether the Mississippi Supreme Court would extend that holding to settlement agreements which had been procured on the basis of fraud and held that it would. *Bogy,* 538 F.3d at 355 (holding plaintiff could bring action for fraudulent inducement of settlement agreement without first rescinding tender amounts received from settlement). Rather than supporting Guy and Brock's position, *Bogy* confirms that Illinois Central was correct in its election not to rescind the *Eakins* settlement and instead to bring this action for damages.

### *5. There was Sufficient Evidence to Support the Judgment.*

Guy and Brock next request "in the interest of completeness" that the judgment be set aside because there is no evidence to support the jury's findings of fraud or breach of the duty of good faith and fair dealing. Guy and Brock do not cite to the trial transcript, the trial exhibits, or to any authority in support of this vague argument.

Accordingly, they have waived it. *See [Salazar–Regino v. Trominski,](https://...) 415 F.3d 436, 452 (5th Cir.2005)* (holding that inadequately briefed issues are waived).

### B. Motion for New Trial

Guy and Brock assert the following grounds in their motion for new trial: (1) the jury's verdict against Guy and Brock was inconsistent with a verdict for Harried and Turner; (2) Illinois Central did not submit sufficient evidence that it relied on Guy and Brock in deciding to settle with Harried and Turner; (3) Guy and Brock were prevented from obtaining important discovery related to reliance until the eve of trial; (4) the Court erred in permitting evidence related to Guy and Brock's representation of Fred Tyler into evidence; (5) the Court erred in allowing the testimony of Tim Porter into evidence; (6) the Court erred in instructing the jury that it could find multiple contracts to which the duty of good faith and fair dealing applied; (7) the Court erred in refusing to instruct the jury that Illinois Central was required to mitigate damages; (8) the Court erred in allowing Illinois Central to amend its complaint to add Guy and Brock; and (9) several other evidentiary errors occurred at trial, the cumulative effect of which entitle Guy and Brock to a new trial.

**\*6** Under [Fed.R.Civ.P. 59,](https://...) "[ a] new trial may be granted to all or any of the parties and on all or part of the issues [ ] in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." "A new trial may be appropriate if the verdict is against the weight of the evidence, the amount awarded is excessive, or the trial was unfair or marred by prejudicial error." *[Scott v. Monsanto Co.,](https://...) 868 F.2d 786, 789 (5th Cir.1989)* (citing *[Smith v. Transworld Drilling Co.,](https://...) 773 F.2d 610, 613 (5th Cir.1985)*). Although a judge faced with a motion under [Rule 59](https://...) may not simply substitute his judgment for that of the jury, the Court need not view the evidence in the light most favorable to the verdict winner. Instead, the judge has the latitude to reweigh the evidence and is free to accept or reject evidence and to reassess the credibility of witnesses and proof. *[Shows v. Jamison Bedding, Inc.,](https://...) 671 F.2d 927, 930 (5th Cir.1982).*

#### 1. *"Inconsistent" Verdict.*

Guy and Brock contend that the jury could not credibly have found against Guy and Brock and for Harried and Turner and thus that the verdict against Guy and Brock must be against the weight of the evidence. The Court disagrees. The verdict against Guy and Brock is supported by substantial evidence, including testimony from both Harried and Turner that they informed Guy and Brock of their prior involvement in asbestos litigation and that, therefore, Guy and Brock knew that Harried's questionnaire and Turner's interrogatory answers were false. Moreover, any perceived "inconsistency" in the jury's verdict for Harried and Turner but against Guy and Brock is not justification for a new trial. As Illinois Central points out in its Opposition, the jury could have found that Illinois Central presented clear and convincing evidence of fraud as to Guy and Brock but only preponderant evidence as to Harried and Turner.

#### 2. *Reliance.*

Guy and Brock assert that Illinois Central did not present sufficient evidence that it relied on any statements from Guy and Brock in entering into settlement agreements with Harried and Turner. Specifically, Guy and Brock contend that Illinois Central's "only decision-maker" with respect to settlement was Laird Pitts who did not testify regarding reliance. To the contrary, Illinois Central introduced two witnesses, its risk manager Charles Garrett, and an outside lawyer, Thomas Peters, who each testified he was involved, along with Pitts, in the decisions to settle the Harried and Turner claims. Both Garrett and Peters testified that they would not have recommended to Pitts that Illinois Central settle the claims had Turner's interrogatory answers and Harried's questionnaire truthfully revealed their involvement in pre-*Eakins* asbestos litigation. The jury's verdict that Illinois Central relied on statements by Guy and Brock was not against the weight of the evidence.

#### 3. *Discovery Issues.*

**\*7** Guy and Brock next contend that Illinois Central either failed to respond to discovery requests related to the issue of reliance or complied on the eve of trial such that Guy and Brock did not have sufficient time to review the produced materials before trial. To the extent that Guy and Brock contend they were harmed by the timing of Illinois Central's production of relevant documents, Guy and Brock do not state which relevant documents they had insufficient time to review or how earlier possession of those documents might have influenced the trial. They have not shown that the timing of discovery rendered the trial unfair or marred by prejudicial error. With respect to Guy and Brock's contention that Illinois Central failed to comply with discovery requests because it did not produce billing records from the Harkins Cunningham firm, Fletcher Sippel, Janet Gilbert, Glenn Beckham, and the Upshaw Williams firm, the Court ruled in its February 22, 2010 Order that those records were not responsive to discovery requests because those attorneys did not work on Harried's and Turner's claims prior to settlement. This discovery issue does not entitle Guy and Brock to a new trial.

### 4. Trial Testimony of Fred Tyler.

Guy and Brock next contend that they are entitled to a new trial because the Court admitted the testimony of Fred Tyler at trial. As the Court noted in its February 2, 2010 Order, the Mississippi Supreme Court has held that in a fraud case, "[e]vidence of similar occurrences is relevant and admissible to show absence of mistake or accident, plan or intent." *H.L. Dawkins v. Redd Pest Control, Inc.,* 607 So.2d 1232, 1236 (Miss.1992) (citing Miss. R. Evid. 404(b)). Fred Tyler's testimony was therefore relevant and the jury was permitted to consider it under Fed.R.Civ.P. 404(b). Guy and Brock's argument for a new trial on this evidentiary issue is meritless.

### 5. Trial Testimony of Tim Porter.

Guy and Brock next argue that the Court's admission of testimony from Tim Porter justifies a new trial because it served to mislead and confuse the jury, was not relevant, and did not meet the requirements of Fed.R.Evid. 404. Guy and Brock do not indicate which specific portions of Porter's testimony they object to or why it was misleading or confusing. Accordingly, the Court denies their motion for new trial on this issue.

### 6. Jury Instructions With Regard to the Duty of Good Faith and Fair Dealing.

Guy and Brock next contend that the Court erred in its Jury Instruction No. 4 because the evidence reflects there was only one agreement to which Guy and Brock were a party with Illinois Central-the August 6, 2002, letter agreement which related only to the Harried settlement. According to Guy and Brock, because there was no contract with respect to the Turner settlement, there could be no breach of the duty of good faith and fair dealing with respect to it.

In Jury Instruction No. 4, the Court instructed the jury to determine whether a contract existed before determining whether Guy and Brock were liable for breach of the duty of good faith and fair dealing. The jury found that there was a valid contract as to both the Harried and Turner settlements. Guy and Brock dispute this finding because Canadian National did not approve the Turner settlement until after the August 6, 2002 letter agreement and thus they argue there was no valid contract with respect to the Turner settlement. Illinois Central, however, introduced evidence that the August 6, 2002 letter expressly provided for the settlement of Turner's claims and that Turner was paid pursuant to that settlement contract. The jury's verdict with respect to the duty of good faith and fair dealing as to Turner's settlement was not against the weight of the evidence.

### 7. Mitigation of Damages.

**\*8** Guy and Brock next contend that the Court erred in refusing to instruct the jury that Illinois Central should have "mitigated damages" by seeking in Mississippi state court to set aside the *Eakins* settlement pursuant to Miss. R. Civ. P. 60. As discussed in part A.3 above, Illinois Central was within its rights to assert this claim for fraud against Guy and Brock without seeking to amend the judgment in *Eakins* and the Court's refusal to

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 6

instruct the jury as requested did not adversely affect the verdict.

*8. Amendment of Complaint to Add Guy and Brock.* Guy and Brock next argue they are entitled to a new trial because Illinois Central should not have been permitted to amend its complaint to add them as defendants for the claims already pending against Harried and Turner. Guy and Brock contend this resulted in "fundamental unfairness which allowed the jury to infer that Guy and Brock must have done something wrong." To the contrary, for the reasons stated in the Court's January 10, 2008 Order, the joinder of Guy and Brock was proper under Fed.R.Civ.P. 16(b) and 15(a). Guy and Brock have not shown that their joinder rendered the verdict unfair or marred by prejudicial error.

*9. Various Evidentiary Issues.*
Lastly, Guy and Brock contend that the cumulative effect of various testimony and comments from the Court during trial prohibited them from receiving a fair trial. The issues about which they complain are: (1) a comment by the Court that a certain lawyer mentioned by a witness is now in the penitentiary; (2) that Illinois Central's attorney stated to Defendant Guy that "Judge Bramlette could send us home any time he wanted to;" (3) that Illinois Central's attorney suggested that Defendant Guy "get his checkbook out" after Guy testified that he would have refunded Illinois Central's money for the Harried and Turner settlements if he had known that they were included in the pre-*Eakins* case; (4) that Illinois Central was allowed to argue that a questionnaire was missing from the Guy and Brock file which Illinois Central had requested in discovery. On balance, the Court does not find that any of these evidentiary issues rendered the verdict unfair or marred by prejudicial error. Indeed, with respect to the first issue listed above, the Court instructed the jury to disregard any comments from the bench to the lawyers and to disregard references to other cases in Mississippi state court. Further, with respect to the third issue listed above, the Defendants successfully objected to Illinois Central's line of questioning.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment as a Matter of Law [docket entry no. 271] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for a New Trial [docket entry no. 273] is **DENIED.**

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4553640

2012 WL 2704251
Only the Westlaw citation is currently available.
United States District
Court, W.D. North Carolina,
Asheville Division.

NEW JERUSALEM REBIRTH &
RESTORATION MINISTRIES, INC., Plaintiff,
v.
Paul MEYER and Peerless
Insurance Company, Defendants.

Civil No. 1:11cv312.
|
July 6, 2012.

**Attorneys and Law Firms**

Harold C. Spears, Caudle & Spears, PA, Charlotte, NC, for Plaintiff.

Conor Patrick Regan, James Scott Lewis, Hedrick Gardner Kincheloe & Garofalo, LLP, Wilmington, NC, for Defendant.

### *ORDER*

MARTIN REIDINGER, District Judge.

*1 **THIS MATTER** is before the Court on the Plaintiff's Motion for Remand and For Costs and Fees [Doc. 9].

### I. PROCEDURAL BACKGROUND

The Plaintiff New Jerusalem Rebirth & Restoration Ministries, Inc. filed this action in the General Court of Justice, Superior Court Division, Cleveland County, North Carolina, on October 7, 2011, asserting claims against the Defendants Paul Meyer and Peerless Insurance Company for breach of contract, bad faith, fraud, and violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. §§ 75–1.1, *et seq.,* arising from the Defendants' refusal to approve and pay for the costs necessary to upfit, equip and operate a temporary location for the Plaintiff's operations under the terms of the Plaintiff's insurance policy. [Complaint, Doc. 1–1].

The Plaintiff is a corporation that maintains its principal offices in Cleveland County, North Carolina. *[Id.].* The Defendant Paul Meyer ("Meyer") is a citizen of North Carolina, and the Defendant Peerless Insurance Company ("Peerless") is a New Hampshire corporation. The Defendants were served with the summons and Complaint on October 14, 2011, and October 17, 2011, respectively. [Notice of Removal, Doc. 1].

On November 14, 2011, the Defendants filed a Notice of Removal removing the lawsuit to this Court on the basis of diversity jurisdiction. *[Id.].* Thereafter, the Plaintiff filed the present Motion to Remand and for Costs and Fees, arguing that the Court lacks subject matter jurisdiction because this case does not involve a federal question and because both the Plaintiff and Defendant Meyer are citizens of North Carolina, thereby defeating any grounds for diversity jurisdiction. [Doc. 9]. Contemporaneous with the Motion for Remand, the Plaintiff also filed an Amended and Restated Complaint ("Amended Complaint"), setting forth additional factual allegations and an additional cause of action against Defendant Meyer for negligent misrepresentation. [Doc. 10]. The Defendants oppose the Plaintiff's Motion for Remand, arguing that diversity jurisdiction is present because Defendant Meyer was fraudulently joined in this action in order to defeat jurisdiction. [Doc. 13]. The Defendants further move to dismiss this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Docs. 14, 15].

### II. STANDARD OF REVIEW

A defendant may remove a civil action from state court where the action is one that could have been brought originally in a federal district court. 28 U.S.C. § 1441(a). "When federal-court jurisdiction is predicated on the parties' diversity of citizenship, *see* [28 U.S.C.] § 1332, removal is permissible 'only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action was brought.' " *Lincoln Prop.*

*Co. v. Roche,* 546 U.S. 81, 83–84, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005) (quoting 28 U.S.C. § 1441(b)).

**\*2** The fraudulent joinder doctrine permits the district court to assume jurisdiction over a case, even if complete diversity does not exist, in order to dismiss non-diverse defendants and thereby retain jurisdiction. *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999). When a case is removed based on fraudulent joinder, the removing party has the burden of proof to show that either: "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993) (citation omitted). The party alleging fraudulent joinder bears the heavy burden of showing that the plaintiff cannot establish a claim, even after all issues of law and fact have been resolved in the plaintiff's favor. *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.*

In the present case, the Defendants do not claim any fraud in the pleading of jurisdictional facts, and therefore must prove that there is no possibility that the Plaintiff will be able to establish any of its causes of action against Defendant Meyer under state law. In conducting the analysis of the viability of the Plaintiff's claims, the Court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir.1990) (citation omitted).

### III. FACTUAL BACKGROUND

This case originated with a fire at the Plaintiff's former facility on October 7, 2008, which damaged its worship facility (hereinafter "the covered property"). [Complaint, Doc. 1–1 at ¶¶ 4–6]. The Plaintiff was covered under a Peerless Insurance policy, and Defendant Meyer, a Peerless company adjuster, was assigned to adjust any claims made. *[Id.* at ¶¶ 5, 8].

The Plaintiff's policy provided coverages for building replacement costs, debris removal, and business personal property loss, which were all settled for their respective policy limits. [Affidavit of Paul Meyer ("Meyer Aff."), Doc. 13–3 at ¶ 8]. The policy also provided for extra expense coverage for costs necessary to minimize the suspension of Plaintiff's business and to allow the continuation of business activities occurring at the covered property. [Insurance Policy, doc. 13–6 at 6–7, § I A(5)(g) ]. Such expenses were covered for the period of restoration, up to a maximum of twelve months. [*Id.*].

According to the Complaint, the Plaintiff requested approval to upfit and use its gymnasium as a temporary location for its Sunday worship services and other operations. The Defendants refused to approve the gymnasium as a temporary location because, according to Defendant Meyer, it would cost too much. [Complaint, Doc. 1–1 at ¶¶ 13–14].

**\*3** The Plaintiff then identified a former Walmart store located at 1730 East Dixon Boulevard in Shelby ("the Old Walmart Store") and proposed it as the site of its temporary facility. [*Id.* at ¶ 15]. Meyer immediately rejected it, even though he had not undertaken a reasonable investigation into other suitable locations in or around Shelby which could serve as a temporary location for the Plaintiff. [*Id.* at ¶ 16]. Throughout November 2008, Meyer stood on his rejection of the Old Walmart Store location and directed the Plaintiff to other premises which were either unavailable or unsuitable, and without ever finding another suitable temporary location, he offered to pay the Plaintiff an amount far less than needed to lease a suitable temporary location. [*Id.* at ¶ 19].[1]

In December 2008, the Plaintiff met with Defendant Meyer and architect Bob Smith and general contractor Mason Venable regarding upfitting the Old Walmart Store as a temporary location. [*Id.* at ¶ 21]. Meyer authorized Smith to draw up plans to upfit the Old Walmart Store and to provide them to contractor Venable for pricing. [*Id.* at ¶ 22]. Meyer led the Plaintiff to believe the Old Walmart Store had been approved as a temporary location and that

the Plaintiff was authorized to execute a one-year lease at a cost of $120,000. [*Id.* at ¶ 24]. In reliance on these representations, the Plaintiff signed a one-year lease of the Old Walmart Store on January 9, 2009. [*Id.* at ¶ 25]. Smith drew plans and Venable prepared cost estimates projecting an uplift cost of approximately $500,000 and a two to three-month period of construction. [*Id.* at ¶ 26]. Defendant Meyer subsequently refused to approve the plans and the project stalled. [*Id.* at ¶ 28]. On March 16, 2009, Defendant Meyer, Smith, and Venable met with the Plaintiff at the Old Walmart Store. By the end of the meeting, Defendant Meyer and the Plaintiff had reached an agreement to proceed with the upfitting of the Old Walmart Store based on Smith's latest set of plans. [*Id.* at ¶ 30]. The following day, however, Defendant Meyer "reversed course" and directed Smith to stop all work. [*Id.* at ¶ 31]. As a result of the Defendants' actions, the Plaintiff was without a temporary location from March to October 2009. [*Id.* at ¶ 32].

The Defendants dispute the version of the events alleged by the Plaintiff and offer the affidavits of Smith, Meyer, and Venable in support of their opposition. According to the Defendants, Smith's original plans called for a two-phase upfit of the Old WalMart Store. [Affidavit of Robert Smith ("Smith Aff."), Doc. 13–2 at ¶¶ 12–13]. Phase I would create a 300–seat facility in order to allow the Plaintiff to begin operating out of the Walmart as soon as possible, and Phase II would expand the seating capacity and provide for other upfit spaces. [*Id.* at ¶ 12]. After Smith began working on the plans, however, the Plaintiff began contacting him with changes that resulted in an increase of the size and scope of the renovation. [*Id.* at ¶¶ 13–22]. In March 2009, Meyer received a copy of the proposed plans. [Smith Aff., Doc. 13–2 at ¶ 22; Meyer Aff., Doc. 13–3 at ¶ 27]. According to the Defendants, Meyer made it clear to the Plaintiff at the March 16, 2009 meeting, that the current version of the plans were not in keeping with what the policy provided for and that Peerless could not approve them. [Meyer Aff., Doc. 13–3 at ¶¶ 28–29]. Before the meeting concluded, however, Meyer indicated some portions of the plans, specifically those portions that were similar to what Plaintiff had at the covered property, were likely acceptable.

[*Id.*]. The following day, Meyer met with Smith and instructed him to modify the plans. [Smith Aff., Doc. 13–2 at ¶ 26; Meyer Aff., Doc. 13–3 at ¶ 30]. After receiving the revised plans, the Plaintiff informed Meyer that it was not in agreement with the new changes. [Meyer Aff., Doc. 13–3 at ¶ 32]. The Defendants contend that the Plaintiff then instructed Smith that the plans were on hold, and he should do no more work until they were able to reach an agreement with Meyer. [Smith Aff., Doc. 13–2 at ¶ 29]. The parties met again on April 28, 2009, but no agreement was reached at that time. [Meyer Aff., Doc. 13–3 at ¶ 36]. Meyer asked Smith to get building department approval for the revised March 25, 2009 plans. [Smith Aff., Doc. 13–2 at ¶ 32–33; Meyer Aff., Doc. 13–3 at ¶ 37–38]. The Plaintiff, however, continued to reject the March 25, 2009 plans and did not work with Smith to create any further plans [Smith Aff., Doc. 13–2 at ¶¶ 29–30; Meyer Aff., Doc. 13–3 at ¶ 39].

## IV. ANALYSIS

**\*4** In arguing in favor of remand, the Plaintiff urges the Court to consider the allegations of its Amended Complaint, which was filed contemporaneously with its Motion for Remand. Specifically, the Plaintiff argues that the allegations of this pleading are "more than sufficient" to state causes of action against Defendant Meyer for negligent misrepresentation, fraud, and unfair and deceptive trade practices.[2] [Doc. 9–1 at 4].

The Amended Complaint asserts additional factual allegations in support of the Plaintiff's claims as well as an additional cause of action for negligent misrepresentation against Defendant Meyer. The existence of diversity jurisdiction, however, is determined as of the time of removal. See *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–91, 58 S.Ct. 586, 82 L.Ed. 845 (1938). As such, courts generally do not consider post-removal pleadings in determining the existence of diversity jurisdiction. See *Porsche Cars N. Am., Inc. v. Porsche.net,* 302 F.3d 248, 255–56 (4th Cir.2002). This rule applies equally to the fraudulent joinder analysis. See *Justice v. Branch Banking and Trust Co.,* Civil Action No. 2:08–230, 2009 WL 853993, at \*1 n. 2 (S.D.W.Va. Mar.24, 2009) (noting that

in conducting fraudulent joinder analysis, "[p]ost-removal filings may not be considered ... when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court") (quoting *Griggs v. State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir.1999)). Accordingly, the Court will consider only the factual allegations and causes of action set forth in the Plaintiff's original Complaint in determining the fraudulent joinder issue.

### A. Fraud

In order to establish a cause of action for fraud against Defendant Meyer, the Plaintiff must establish the following elements: (1) a false representation or concealment of a material fact, (2) which is reasonably calculated to deceive, (3) which is made with intent to deceive, (4) which does in fact deceive, (5) and which results in damage to the injured party. *See Forbis v. Neal,* 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007). Additionally, the Plaintiff must establish that any reliance on the allegedly false representations was reasonable. *Id.* at 527, 649 S.E.2d at 387. "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Id.*

In analyzing whether the Plaintiff has established these elements, the pleadings are analyzed in accordance with the state court's pleading standards. North Carolina courts specifically have declined to adopt the "plausibility standard" set forth in *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See Holleman v. Aiken,* 193 N.C.App. 484, 490–91, 668 S.E.2d 579, 584 (2008); *Childress v. Concord Hospitality Assocs., LLC,* No. COA10–1019, 2011 WL 2848767, at *3 (N.C.Ct.App. July 19, 2011). In determining whether a complaint states a claim upon which relief can be granted, North Carolina courts consider "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Craven v. Cope,* 188 N.C.App. 814, 816, 656 S.E.2d 729, 731–32 (2008). In so doing, "[t]he complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.*

**\*5** Here, Defendant Meyer argues that this standard cannot be met because the allegations upon which the fraud claim is based "are patently false" and because there is no basis for "an honest belief" that Meyer made any fraudulent misrepresentations. [Doc. 13 at 19]. In support of this argument, the Defendant points to evidence in the record demonstrating that Meyer worked in good faith to secure approval of the upfit necessary to allow the Plaintiff to continue its operations at the Old Walmart location. [*Id.* at 19–23, 656 S.E.2d 729]. At this point in the proceedings, however, the Court must treat the Plaintiff's allegations as true, and under that standard, the Court cannot say as a matter of law that the Plaintiff has no reasonable basis for its fraud claim.[3] Accordingly, the Court concludes that Defendant Meyer is properly joined and this case should be remanded.

### B. Unfair and Deceptive Trade Practices

"Chapter 75 of [the North Carolina] General Statutes prohibits unfair acts which undermine ethical standards and good faith between persons engaged in business dealings." *Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C.App. 650, 657, 464 S.E.2d 47, 54 (1995). In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Id.* at 664, 464 S.E.2d at 58.

The Defendants contend that the Plaintiff cannot maintain a claim against Meyer under Chapter 75 because as an insurance company adjuster, he is not a "market participant" and thus his action were not "in or affecting commerce." [Doc. 13 at 14–15]. The Defendants concede, however, that the North Carolina courts have not specifically addressed whether an insurance adjuster may be subject to individual liability for unfair and deceptive trade practices under Chapter 75. [*Id.*]. "In the absence of a North Carolina case that squarely resolves that Plaintiff's claim is not actionable or when

the issue involves a judgment call and a federal court cannot say with certainty what a North Carolina would hold, remand is proper." *Geller v. Provident Life and Acc. Ins. Co.,* No. 5:10–cv–00096, 2011 WL 1239835, at *5 (W.D.N.C. Mar.30, 2011) (Voorhees, J.). Because there is at least "some possibility" that the Plaintiff may recover against Defendant Meyer under Chapter 75, the Court concludes that remand is proper. [4] *See id.*

### C. Award of Fees

The Plaintiff requests that the Court award the Plaintiff its costs and fees incurred as a result of the Defendants' wrongful removal. The award of fees and costs upon remand is a matter within the wide discretion of the Court. *See* 28 U.S.C. § 1447(c); *In re Lowe,* 102 F.3d 731, 733 n. 2 (4th Cir.1996). "There is a presumption neither in favor of nor against the awarding of attorney fees under 1447(c)." *Crawford v. C. Richard Dobson Builders, Inc. .,* 597 F.Supp.2d 605, 612 (D.S.C.2009). As the Supreme Court has instructed:

> *6 [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). While Defendants Peerless and Meyer were not ultimately successful in establishing that Defendant Meyer should be disregarded pursuant to the fraudulent joinder doctrine, the Defendants made several reasonable legal arguments in support of their opposition to the Motion for Remand. Thus, the Court concludes that the Defendants had an objectively reasonable basis for seeking removal of this case. Accordingly, in the exercise of its sound discretion, the Court declines to make an award of fees and costs in this matter. [5]

### ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Remand [Doc. 9] is **GRANTED,** and this case is hereby **REMANDED** to the Cleveland County General Court of Justice, Superior Court Division.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Costs and Fees [Doc. 9] is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' Motions to Dismiss [Docs. 14, 15] are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2704251

Footnotes
1  The Defendants dispute these allegations, asserting that Meyer contacted several local real estate agents who identified multiple alternative properties, including an existing church for sale less than 0.5 miles from the covered property. [Meyer Aff., Doc. 13–3 at ¶¶ 13–16]. The Defendants assert that the Plaintiff rejected the proposed properties, stating that it had already decided on the Old Walmart. [*Id.* at ¶¶ 15].
2  The Plaintiff asserts its breach of contract claim against Peerless only, and therefore this claim is not the subject of the fraudulent joinder analysis. The Plaintiff also asserts a claim for bad faith against both Defendants; however, the Plaintiff makes no argument in support of its claim for common law bad faith in its Memorandum of Law in support of its Motion to Remand. Accordingly, the Court finds that the Plaintiff has abandoned that cause of action as a basis for remand in this case, and will therefore limit its analysis to the Plaintiff's claims for fraud and for unfair and deceptive trade practices.

| | |
|---|---|
| 3 | Indeed, the allegations of the Plaintiff's Complaint adequately set forth each of the elements necessary to state a fraud claim against Defendant Meyer. Specifically, the Complaint alleges that Meyer, in the course of his employment and/or business as an insurance adjuster, represented to the Plaintiff that he had approved the Old Walmart Store as a temporary location for the Plaintiff's operations. [Complaint, Doc. 1–1 at ¶ 414, 27]. The Complaint further alleges that such representations were false, as Defendant Meyer did not have any intention of actually approving the upfits necessary in order for the Plaintiff to use the Old Walmart Store as a temporary church facility, and that he knowingly made such representations with the intent that the Plaintiff rely upon them. *[Id.* at 42]. The Complaint goes on to allege that the Plaintiff reasonably relied on Defendant Meyer's false representations, in that the Plaintiff stopped its search for an alternative temporary location and executed a one-year lease on the Old Walmart Store. *[Id.* at ¶¶ 42–43]. The Complaint further alleges that as a proximate result of its reasonable reliance on Defendant Meyer's false representations, the Plaintiff suffered damages. *[Id.* at ¶ 44]. By alleging the facts as set forth above, the Plaintiff has pled all of the elements necessary to make out a cause of action against Defendant Meyer for fraud under North Carolina law. While a North Carolina court ultimately may determine that the Plaintiff cannot prevail on this cause of action, at this juncture, the Court cannot say that there is no possibility that the Plaintiff could prevail on this claim. |
| 4 | The Defendants further argue that as an employee-agent of the insurer, Defendant Meyer owed duties only to his employer-principal and thus cannot be subject to an insured's claim under Chapter 75. [Doc. 13 at 16–17]. In support of this argument, the Defendants cite *Koch v. Bell, Lewis & Associates, Inc.,* 176 N.C.App. 736, 627 S.E.2d 636 (2006). In *Koch,* however, the plaintiffs were third-party claimants who were not in privity with the insurer, and it was on this basis that the Court of Appeals concluded that the plaintiffs could not sustain claims for unfair and deceptive trade practices or negligent misrepresentation against the insurer or its adjusters. *Id.* at 740, 627 S.E.2d 636, 627 S.E.2d at 638–39. By contrast, in the instant case, the Plaintiff is the insured and thus stands in privity with the Defendants. The reasoning of *Koch,* then, is simply not applicable on the facts of this case. |
| 5 | In remanding this matter to state court, the Court in no way expresses any opinion regarding the ultimate merit of the Plaintiff's claims. |

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

471 Fed.Appx. 188
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)
United States Court of Appeals, Fourth Circuit.

O'Marr S. REID, Plaintiff–Appellant,
v.
State of NORTH CAROLINA, Defendant–Appellee.

No. 11–2385.
|
Submitted: April 19, 2012.
|
Decided: April 24, 2012.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:11–cv–00422–MOC–DSC).

**Attorneys and Law Firms**

O'Marr S. Reid, Appellant Pro Se. David John Adinolfi, II, Special Deputy Attorney General, Raleigh, North Carolina, for Appellee.

Before NIEMEYER, SHEDD, and FLOYD, Circuit Judges.

**Opinion**

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

**\*\*1** O'marr S. Reid appeals the district court's order accepting the recommendation of the magistrate judge and granting Defendant's motion to dismiss Reid's civil complaint, and a subsequent order denying Reid's motion for new trial and relief from **\*189** judgment. We have reviewed the record and find no reversible error. Accordingly, we affirm for the reasons stated by the district court. *Reid v. North Carolina,* No. 3:11–cv–00422–MOC–DSC, 2011 WL 5925538 (W.D.N.C. Nov. 28, 2011) & (Dec. 9, 2011). We further deny Reid's motion to strike Appellee's response brief, but grant Reid's motion to extend the reply brief page limit. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED.*

**All Citations**

471 Fed.Appx. 188, 2012 WL 1406453

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Cain v. Deutsche Bank Aktiengesellschaft, N.D.Ill., June 11, 2013

2011 WL 3501883
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Rosemarie SHEENAN and James
Sheenan, III, Individually and as
class representatives on behalf of
others similarly situated, Plaintiffs,
v.
MORTGAGE ELECTRONIC, REGISTRATION
SYSTEMS, INC., GMAC Mortgage
Corporation, GMAC Bank, and
GMAC Mortgage, LLC, Defendants.

Civil No. 10–6837 (RBK/KMW).
|
Aug. 10, 2011.

**Attorneys and Law Firms**

Lewis G. Adler, Law Office of Lewis Adler, Roger C. Mattson, Woodbury, NJ, for Plaintiffs.

Mark I. Schlesinger, Troutman Sanders, LLP, Newark, NJ, for Defendants.

### OPINION

KUGLER, District Judge.

**\*1** This matter arises out of a putative class action filed by individuals who were allegedly overcharged during post-judgment payoffs following entry of a mortgage foreclosure. Presently before the Court is Plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447. For the reasons discussed below, Plaintiffs' motion is **DENIED**.

### I. BACKGROUND

In January 2006, a judgment of foreclosure was entered against Plaintiffs in New Jersey state court on a principal sum of $184,271.85 plus $2,799.72 in costs. (Am.Compl.¶ 17). The award of $2,799.72 in costs also included $1,992.42 in attorneys' fees. *Id.* Pursuant to that judgment, Defendants Mortgage Electronic Systems, Inc. ("MERS"), GMAC Mortgage, LLC. ("GMAC"), and GMAC Bank (collectively "the GMAC Defendants") prepared a payoff statement. The payoff statement included a mortgage balance of $193,917.85 and $3,597.28 in attorneys' fees and costs. *Id.* at ¶ 22. Plaintiffs paid the sums the GMAC Defendants demanded in March 2006. *Id.* at ¶ 23. The GMAC Defendants then moved to dismiss the foreclosure action with prejudice and discharged the mortgage. *Id.* at ¶ 28.

Plaintiffs filed this putative class action in New Jersey Superior Court, Camden County, alleging six causes of action against the GMAC Defendants. The Complaint alleges: (1) breach of contract; (2) negligence; (3) breach of the duty of good faith and fair dealing; (4) unjust enrichment; (5) violation of the New Jersey Consumer Fraud Act; and (6) violation of the Truth–In–Consumer Contract Warranty and Notice Act. (Compl.¶¶ 51–94). The Complaint alleges that the GMAC Defendants improperly calculated the post-judgment payoff balance on the mortgage. (Notice of Removal at 3). Specifically, Plaintiffs allege that the payoff statements they received from the GMAC Defendants improperly included, among other charges, attorneys' fees and costs in excess of those actually awarded by the state foreclosure judgment. *Id.* at ¶ 44. Plaintiffs also allege that the GMAC Defendants overcharged them for recording fees, service of process, certified mail fees, sheriff's commissions, and interest. *Id.* at ¶ 44(d)-(i).

In April 2010, the GMAC Defendants removed the matter to the United States District Court for the District of New Jersey. The GMAC Defendants asserted jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal at 3). On April 22, 2010, The GMAC Defendants moved to dismiss the matter, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action. In June 2010, the District Court remanded the matter to the Superior Court of New Jersey, Camden County. (Mem. Order at 1). The Court found that because "all of Plaintiffs' claims arose from the alleged

$4,084.68 overcharge that was a subject of the state court foreclosure judgment," remand was proper. *Id.* at 3. The Court found that the *Rooker–Feldman* doctrine precluded a federal court from exercising jurisdiction over the class action because the class action was "inextricably intertwined" with the state foreclosure action. *Id.*

**\*2** Plaintiffs filed an Amended Complaint on December 17, 2010. The Amended Complaint includes substantially all of the allegations in the Complaint. The Amended Complaint also alleges that the GMAC Defendants filed false affidavits during the foreclosure action in state court. In particular, the Amended Complaint alleges that Jeffrey Stephan, who is employed by GMAC Mortgage as the leader of its document execution team, signed as many as 10,000 foreclosures in one month without checking the accuracy of those documents or determining whether foreclosure was appropriate. (Am.Compl.¶ 29). The Amended Complaint further alleges that John Kerr, Mr. Stephan's employee, executed the affidavits in Plaintiffs' foreclosure action using "the same process and procedure as Mr. Stephan." *Id.* at ¶¶ 34–35. As a result of that conduct, the Amended Complaint adds the following causes of action: (7) breach of contract; (8) negligence; (9) breach of the duty of good faith and fair dealing; (10) violation of New Jersey Consumer Fraud Act; and (11) violation of Truth–In–Consumer Contract, Warranty and Notice Act. *Id.* at ¶¶ 107–129. [1]

On December 29, 2010, the GMAC Defendants removed this matter to this Court, alleging jurisdiction under CAFA, 28 U.S.C. § 1332(d). In February 2011, Plaintiffs filed the present motion. Plaintiffs concede that the elements of CAFA are satisfied, but argue that the *Rooker–Feldman* doctrine precludes this court from exercising jurisdiction. (Defs. Mem. in Opp'n to Pls. Mot. to Remand 2).

### II. STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove an action filed in state court to the federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. 28 U.S.C. § 1447(c). To defeat a plaintiff's motion to remand, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1995). Where the decision to remand is a close one, district courts should resolve all doubts in favor of remand. *See Abels,* 770 F.2d at 29 ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resoled in favor of remand."); *Glenmede Trust Co. v. Dow Chemical Co.,* 384 F.Supp. 423, 433–34 (E.D.Pa.1974) ("It is well settled that district courts should remand close or doubtful cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to settle the case").

### III. DISCUSSION

**A. Jurisdiction under the Class Action Fairness Act**
"Pursuant to CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate, §§ 1332(d)(2) & (6), any class member and any defendant are citizens of different states, § 1332(d)(2)(A), and there are at least 100 members in the putative class, § 1332(d)(5)(B)." *Kaufman v. Allstate N.J. Ins. Co.,* 561 F.3d 144, 149 (3d Cir.2009).

**\*3** Here, the Notice of Removal alleges diversity of citizenship. At the time the suit was filed, Plaintiffs were citizens of New Jersey. (Notice of Removal at 4). GMAC Bank is a Utah corporation with its principal place of business in Midvale, Utah. *Id.* MERS is a Delaware Corporation with its principal place of business in Reston, VA. *Id.* Thus, the parties are diverse.

The Notice of Removal also alleges a sufficiently large class. Plaintiffs propose a class of individuals: (1) who had home loans held or serviced by the GMAC Defendants in the State of New Jersey from sixteen years prior to the filing of the Complaint through the date of class certification; (2) who

received a payoff or reinstatement statement from the GMAC Defendants whose home loan was in default; and (3) who were charged attorneys fees and/or other costs which were in excess of the amount ordered by the state court and allowed by law. (Am.Compl.¶¶ 50–53). Plaintiffs propose a second class consisting of (1) individuals who had home loans held or serviced by the GMAC Defendants in the United States from "six years prior to the filing of the complaint through the date of class certification; and (2) who were in a foreclosure or other proceeding whose home loan was in default; (3) and where the Defendant filed an improper affidavit." *Id.* at ¶ 54. Plaintiffs allege, "that there are over 500 mortgages within each category of claims." (Notice of Removal at 3). Therefore, because Plaintiffs propose a class consisting of at least 100 members, the class size requirement under CAFA is satisfied.

Finally, the Notice of Removal alleges that the amount in controversy exceeds $5 million. *Id.* Thus, the GMAC Defendants have met their burden of showing the Court has jurisdiction to hear the case.

### B. The *Rooker–Feldman* Doctrine

"Under the *Rooker–Feldman* doctrine, a district court ... lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 192 (3d Cir.2006). Put simply, *Rooker–Feldman* bars a federal proceeding when "entertaining the federal claim would be the equivalent of an appellate review" of a state court judgment. *Allah v. Whitman,* No. 02–4247, 2005 U.S. Dist. LEXIS 18171, at *4,2005 WL 2009904 (D.N.J. Aug. 17, 2005) (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996)). Thus, a cause of action asserted in federal court is barred under *Rooker–Feldman* if it seeks to vacate the decision, reasoning, or findings of a state court. *Desi's Pizza, Inc. v. City of Wilkes–Barre,* 321 F.3d 411, 419–20 (3d Cir.2001). However, the doctrine "applies only to cases brought by (1) state-court losers (2) complaining of injuries caused by state court judgments (3) rendered before the district court proceedings commenced and (4) inviting district court review and rejection of those judgments." *Id.;* see *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The Third Circuit has emphasized that, "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir.2010).

**\*4** It is undisputed that the first and third elements are satisfied. The first element is satisfied because the state court issued a judgment of foreclosure pursuant to which the GMAC Defendants could foreclose on Plaintiffs' home. The third element is satisfied because the state court issued the foreclosure order before Plaintiffs filed this class action.

Regarding the second element, the GMAC Defendants argue that the state action did not cause Plaintiffs' injuries because the inflated post-judgment payoff occurred after the foreclosure judgment. Specifically, the GMAC Defendants contend that Plaintiffs' injury arose from the GMAC Defendants' incorrect calculation of the post-judgment payoff amount. (Defs. Mem. in Opp'n to Pls. Mot. to Remand 2). Plaintiffs assert that their alleged injuries resulted from a state foreclosure judgment based upon faulty affidavits. In support of that argument, Plaintiffs claim that a possible remedy to their cause of action would be vacating the judgment of foreclosure by the state court. (Pls. Mem. in Reply to Defs. Br. In Opp'n to Pls. Mot. to Remand 4). [2]

Here, Plaintiffs' injuries result from the GMAC Defendants' post-judgment conduct not the state foreclosure judgment. When the defendant's conduct is the source of the plaintiffs alleged injury, *Rooker–Feldman* does not bar federal jurisdiction. *Great Western,* 615 F.3d at 167 (holding when the source of the injury is defendant's actions, and not state court judgments, the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court); *id.* at 168 ("Even though the injuries of which the plaintiff complained helped to cause the adverse state judgments, these claims were "independent" because they stemmed from "some other source of

injury, such as a third party's actions.") (quoting *McCormick v. Braverman,* 451 F.3d 382, 392 (6th Cir.2006)). Plaintiffs do not allege that the state court had any role in calculating the inflated post-judgment payoff number. (Defs. Mem. in Opp'n to Pls. Mot. to Remand 5). The allegations and exhibits contained in the Amended Complaint show that the GMAC Defendants calculated the payoff amounts at issue after the foreclosure judgment was entered, and, that their calculations exceeded the court's judgment. *Id.* at 6. Thus, the GMAC Defendants' actions and not the state court judgment caused Plaintiffs' injury.

Moreover, even if the state court relied on fraudulent documents in the foreclosure action, Plaintiff cannot prove that the foreclosure judgment caused their injuries. "[A] claim that a judgment was procured by fraud is independent of the judgment and therefore, does not fall within the *Rooker–Feldman* doctrine, while a claim that the judgment itself is illegal does." *In re Sabertooth, LLC. v. Simons,* 443 B.R. 671, 681 (Bankr.E.D.Pa.2011) (citing *Great Western,* 615 F.3d at 168). Thus the second element of the *Rooker–Feldman* test is not satisfied. [3]

## V. CONCLUSION

**\*5** For the foregoing reasons, Plaintiffs' motion to remand is **DENIED.** An appropriate order shall issue today.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3501883

---

Footnotes

1  In October 2010, forty-nine state Attorneys General announced that they are investigating allegations that some banks used faulty paperwork to kick delinquent borrowers out of their homes during the 2007 to 2009 mortgage crisis. "Robo-signers" were alleged to have signed off on hundreds of foreclosure affidavits without ever personally reviewing the files associated with the actual loans.

2  However, the prayer for relief contained in the Amended Complaint does not call for the Court to vacate the state court foreclosure judgment. (Am. Compl. Prayer for Relief ¶ 30).

3  Plaintiffs' argument that the previous remand by the District Court in June 2010 satisfies the law-of-the-case doctrine fails because there has been an intervening change in law since that decision. In 2005, the Supreme Court adopted a narrow approach to the *Rooker–Feldman* doctrine in *Exxon Mobil.* When the District Court issued their decision to remand the case, it was unclear whether the *Rooker–Feldman* standard articulated in *In re Knapper,* 407 F.3d 573 (3d Cir.2005), was still good law. That case held that a claim is barred by *Rooker–Feldman* in two circumstances: (1) if the federal claim was actually litigated in state court prior to filing the federal action; or (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* at 580. In 2005, the Supreme Court in *Exxon Mobil* rejected that expansive application of the *Rooker–Feldman* doctrine. *Great Western,* 615 F.3d at 166 (citing *Exxon Mobil,* 544 U.S. at 284). Subsequent to the District Court's decision in June 2010, the Third Circuit expressly adopted the *Exxon Mobile* test *Id.* Therefore, the law of the case doctrine does not apply because the holding in *Great Western* constitutes an intervening change in law.

---

**End of Document**                © 2017 Thomson Reuters. No claim to original U.S. Government Works.