IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


IRIS POUNDS, CARLTON MILLER,       )
VILAYUAN SAYAPHET-TYLER,           )
RHONDA HALL, and PIA TOWNES,       )
on behalf of themselves and        )
all others similarly situated,     )
                                   )
               Plaintiffs,         )
                                   )
     v.                            )        1:16CV1395
                                   )
PORTFOLIO RECOVERY ASSOCIATES,     )
LLC,                               )
                                   )
               Defendant.          )


### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on Plaintiffs' Motion to Remand. (Doc. 11.) Defendant Portfolio Recovery Associates, LLC ("PRA") responded, (Doc. 17), and Plaintiffs replied, (Doc. 21). An oral argument was held October 5, 2017, and the parties submitted supplemental briefing. (Docs. 32-33, 35-36.) This matter is now ripe for resolution, and, for the reasons stated fully below, the court will grant in part and deny in part Plaintiffs' Motion to Remand.

Also before the court are Plaintiffs' Motion for Expedited Determination of Motion to Remand, (Doc. 22), and Motion to Defer Time to File Federal Motion for Class Certification, (Doc.

27). These motions have been briefed and are also ripe for resolution. (Docs. 23, 28, 29.) This court will deny Plaintiffs' Motion to Expedite as moot and, having considered the parties' arguments, will grant in part and deny as moot in part the Motion to Defer Time to File Federal Motion for Class Certification.

## I.  <u>PROCEDURAL HISTORY</u>

Plaintiffs commenced the present putative class action in Durham County in the Superior Court Division of the General Court of Justice of the State of North Carolina on November 21, 2016, against Defendant PRA. (Class Action Complaint ("Compl.") (Doc. 3) at 1.)[1] Defendant was served on November 21, 2016. (Notice of Removal ("NOR") (Doc. 1) at 2; Civil Summons (Doc. 4).)

Defendant filed its NOR in this court on December 9, 2016, (NOR (Doc. 1) at 3), on the basis of diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"). 28

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

U.S.C. §§ 1332(d), 1453.[2] In the NOR, Defendant, relying on Plaintiffs' allegations and its own assertions, alleged complete diversity of citizenship, an aggregate amount in controversy exceeding $5 million, and a proposed class size greater than 100 persons. (NOR (Doc. 1) at 3-4.) Plaintiffs move this court under 28 U.S.C. § 1447(c) to remand the case on the grounds that the court lacks jurisdiction over the claims pursuant to the Rooker-Feldman doctrine. (Mot. to Remand (Doc. 11) at 1-2.)

## II.   BACKGROUND

Plaintiffs' Complaint seeks to set aside certain default judgments obtained by PRA in North Carolina state courts, and seeks to recover actual damages and civil penalties for alleged violations of N.C. Gen. Stat. §§ 58-70-115(7), 58-70-130, and 58-70-155. (Compl. (Doc. 3) at 1-2, 6-7, 12-17.)

PRA is a debt buyer and collection agency under North Carolina law. See N.C. Gen. Stat. §§ 58-70-15(b)(4), 58-70-155. As a debt buyer, PRA is required to file certain "properly authenticated" evidence with a court "[p]rior to entry of a

---

[2] Subject to exceptions not applicable here, § 1332(d) creates federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, exclusive of interests and costs; any member of the class is a citizen of a state different from any defendant; and the "number of members of all proposed plaintiff classes" equals 100 or more when aggregated. 28 U.S.C. § 1332(d).

default judgment" against a debtor. See id. § 58-70-155. Rule 55(b) of the North Carolina Rules of Civil Procedure also governs the entry of default judgments. Id. § 1A-1, Rule 55(b). When a plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain," then the clerk has the authority to enter a default judgment. Id. § 1A-1, Rule 55(b)(1). Absent a sum certain, the default judgment must be entered by a judge. Id. § 1A-1, Rule 55(b)(2).

Since § 58-70-155 became effective in October 2009, PRA has filed thousands of lawsuits in North Carolina state courts in which it subsequently obtained default judgments. (Compl. (Doc. 3) ¶¶ 32-35.) PRA obtained default judgments against each of the named plaintiffs in this action. (Id. ¶¶ 26-31.) Plaintiffs claim that "PRA failed to satisfy the [§] 58-70-155 prerequisites that required it to file properly authenticated business records providing an itemization of the amount claimed to be owed." (Id. ¶ 26.) Plaintiff Pia Townes has additionally filed and been granted a motion pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure to set aside her default judgment. (Id. ¶¶ 31, 39.)

Plaintiffs filed this action seeking relief on behalf of "[a]ll persons against whom PRA obtained a default judgment entered by a North Carolina court in a case filed on or after

October 1, 2009." (See id. ¶ 15.) On behalf of all proposed class members whose default judgments have not yet been vacated, Plaintiffs' first claim ("Claim I") seeks a declaratory judgment that the default judgments violate § 58-70-155 (and, in some cases, Rule 55(b)(1)) and are void, and seeks an associated injunction requiring PRA to cease collection activity and file notices of vacatur. (Id. ¶¶ 50-57.)

On behalf of all class members, Plaintiffs' second claim for relief ("Claim II" or "statutory penalties claim") seeks statutory penalties authorized by N.C. Gen. Stat. § 58-70-130(b). (Id. ¶¶ 58-63.) Section 58-70-130 imposes civil liability in the form of actual damages and statutory penalties on collection agencies that engage in prohibited practices, including specific "unfair practices." § 58-70-115. One such unfair practice is "[f]ailing to comply with Part 5 of this Article." Id. § 58-70-115(7). Part 5 includes § 58-70-155, entitled "Prerequisites to entering a default or summary judgment against a debtor under this Part." Id. § 58-70-155. Plaintiffs thus claim that PRA violated § 58-70-115(7) by "requesting and obtaining default judgments" that do not conform to § 58-70-155's prerequisites, entitling them to statutory penalties under § 58-70-130(b). (Compl. (Doc. 3) ¶¶ 59-61.)

Similarly, Plaintiffs' third claim for relief ("Claim III" or "actual damages claim") seeks actual damages authorized by § 58-70-130(a) in the amount PRA has collected from the Plaintiffs' default judgments, on behalf of any proposed class members who made post-default-judgment payments to PRA. (Compl. (Doc. 3) ¶¶ 64-66.)

## III. **ANALYSIS**

Plaintiffs argue that this court lacks subject matter jurisdiction over this action under the Rooker-Feldman[3] doctrine. (Plaintiffs' Brief in Support of Motion to Remand ("Pls.' Br.") (Doc. 12); Plaintiffs' Reply Brief in Support of Motion to Remand (Doc. 21).) The Rooker-Feldman doctrine is a jurisdictional doctrine that prohibits federal district courts from "'exercising appellate jurisdiction over final state-court judgments.'" See Thana v. Bd. of License Comm'rs, 827 F.3d 314, 319 (4th Cir. 2016) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam)). The presence or absence of subject matter jurisdiction under Rooker-Feldman is a threshold issue that this

---

[3] D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923).

court must determine before considering the merits of the case. Friedman's, Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002).

Although Rooker-Feldman originally limited federal-question jurisdiction, the Supreme Court has recognized the applicability of the doctrine to cases brought under diversity jurisdiction:

> Rooker and Feldman exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, e.g., § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity).

See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92 (2005). Diversity proceedings removed to federal court under CAFA, likewise, are within the doctrine's purview. See, e.g., Dell Webb Cmtys., Inc. v. Carlson, 817 F.3d 867, 872 (4th Cir.), cert. denied, ____ U.S. ____, 137 S. Ct. 567 (2016); Bergquist v. Mann Bracken, LLP, 592 F.3d 816, 818 (7th Cir. 2010); Murray v. Midland Funding, LLC, Civil No. JKB-15-0532, 2015 WL 3874635, at *1, *3-4 (D. Md. June 23, 2015).

Under the Rooker-Feldman doctrine, courts lack subject matter jurisdiction to hear "cases brought by [1] state-court losers complaining of [2] injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection

of those judgments." Exxon, 544 U.S. at 284. The doctrine is "narrow and focused." Thana, 827 F.3d at 319. "[I]f a plaintiff in federal court does not seek review of the state court judgment itself but instead 'presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.'" Id. at 320 (quoting Skinner v. Switzer, 562 U.S. 521, 532 (2011)). Rather, "any tensions between the two proceedings should be managed through the doctrines of preclusion, comity, and abstention." Id. (citing Exxon, 544 U.S. at 292–93).

## A.  PRA's argument that a proposed threshold test must be met

PRA asserts that Exxon "established a two-part test" and argues that all of Plaintiffs' claims fail the first, "threshold" step of the test. (Brief in Opposition to Plaintiffs' Motion to Remand and Request for Oral Argument ("Def.'s Br.") (Doc. 17) at 4-11.) First, PRA asserts that void judgments are categorically carved out of the doctrine. (Id. at 5-6 (citing Rooker, 263 U.S. at 415-16).) At the outset, this court notes that it is not convinced that, even if Plaintiffs prove their claims, that the judgments they challenge are void. While this court must take Plaintiffs' factual allegations as

true as this stage, it is not bound by Plaintiffs' legal conclusion — that § 58-70-155 is jurisdictional — that forms the basis of its voidness argument and vacatur request. Plaintiffs allege one fact in support of their legal conclusion: that PRA failed to file properly authenticated evidence of the debt in accordance with § 58-70-155 and, in certain cases, Rule 55(b)(1). But that fact alone is not necessarily enough to establish that the state courts lacked subject matter jurisdiction over the proceedings. Cf. Pak v. Unifund CCR Partners, No. 7:13-CV-70-BR, 2014 WL 238543, at *9 (E.D.N.C. Jan. 22, 2014) (describing § 58-70-155 as imposing "conditions").

Moreover, the state court in each of Plaintiffs' cases made a finding that the personal and subject matter jurisdiction requirements under state law were met before entering the default judgment. Perhaps, if this court were to review Plaintiffs' claims on the merits, it would find that the default judgments were merely voidable — that is, entered erroneously based on the sufficiency of the evidence PRA provided — and subject to reversal. In any event, courts applying Rooker-Feldman may not "challenge the state decision," see Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006), including but not limited to entertaining a plaintiff's

request to "declare void a state court judgment," see Horowitz v. Cont'l Cas. Co., 681 F. App'x 198, 200 (4th Cir. 2017) (per curiam); see also Chien v. Grogan, 710 F. App'x 600, 600-01 (4th Cir. 2018) (per curiam). Therefore, this court declines to adopt PRA's proposed rule.

PRA next argues that Rooker-Feldman is only applicable to claims implicating certiorari jurisdiction under 28 U.S.C. § 1257 and is therefore inapplicable to Plaintiffs' claims because they rest exclusively on state law grounds and are not "'a final judgment from the highest court of a State in which a decision could be had.'" (Def.'s Br. (Doc. 17) at 7-11 & n.6 (quoting Thana, 827 F.3d at 321).) While the Fourth Circuit in Thana emphasized the narrowness of Rooker-Feldman, that case dealt with review of the actions of a state administrative agency, not a state court, with the Court ultimately concluding that "[a]t bottom, . . . this federal action, commenced . . . under 42 U.S.C. § 1983 and alleging injury inflicted by actions of a state administrative agency, qualifies as an independent, concurrent action that does not undermine the Supreme Court's appellate jurisdiction over state court judgments[.]" Thana, 827 F.3d at 322-23. This court does not read Thana's holding to overrule its prior binding precedent that Rooker-Feldman may apply to final judgments from lower state courts. See Brown &

Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000)

(recognizing that Rooker-Feldman precludes review of lower court

state judgments); see also Johnson v. Byrd, No. 1:16CV1052, 2016

WL 6839410, at *5-7 (M.D.N.C. Nov. 21, 2016), appeal dismissed,

693 F. App'x 219 (4th Cir. 2017) (per curiam). Courts routinely

recognize that diversity cases may implicate Rooker-Feldman.

See, e.g., Dell Webb Cmtys., 817 F.3d at 870-72 (analyzing

whether Rooker-Feldman barred review of a suit brought under

diversity jurisdiction and rejecting Rooker-Feldman's

applicability on other grounds); see also Exxon, 544 U.S. at 291

(recognizing the applicability of Rooker-Feldman to diversity

cases). The Fourth Circuit has declined to adopt a threshold

test for any of the categories Defendant urges. See, e.g.,

Thana, 827 F.3d at 321-23; Dell Webb Cmtys., 817 F.3d at 872;

Horowitz, 681 F. App'x at 200. This court accordingly declines

to adopt Defendant's threshold test.

> ## B.   PRA's argument that *Rooker-Feldman* does not apply when the action would be allowed in state court

PRA argues that Plaintiffs' characterization of their

Complaint as an independent action precludes application of

Rooker-Feldman. (See Def.'s Br. (Doc. 17) at 16-17.)[4] At oral

argument and in supplemental briefing, PRA reiterated its

position that the doctrine does not apply where the action in

federal court "would be allowed in the state court of the

rendering state" because Plaintiffs could have brought (and did

bring) their action in state court. (Transcript of Oral Argument

("Tr.") (Doc. 34) at 38:2-41:25); PRA's Supplemental Memorandum

in Opposition to Plaintiffs' Motion to Remand ("Def.'s Suppl.

Mem.") (Doc. 33) at 2-3 (quoting Davis v. Bayless, 70 F.3d 367,

376 (5th Cir. 1995)); PRA's Response to Plaintiffs' Supplemental

Brief (Doc. 36) at 1-3.)

However, the cases cited by PRA were not, as outlined by

Exxon, "brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review

and rejection of those judgments." Exxon, 544 U.S. at 284.

Therefore, the court finds them to be of limited utility in its

analysis. See, e.g., Standard Oil Co. of Cal. v. United States,

---

[4] PRA also argues that this court should address PRA's
pending Motion to Dismiss regardless of Rooker-Feldman. (Def.'s
Br. (Doc. 17) at 15-16.) That motion remains under advisement,
but because Rooker-Feldman is jurisdictional, this court notes
that it must address the doctrine's applicability before
proceeding to the merits of any claims. See Friedman's, 290 F.3d
at 196.

429 U.S. 17, 17-19 (1976) (per curiam) (plaintiff's challenge was not to a state-court judgment); Yale v. Nat'l Indem. Co., 602 F.2d 642, 644-50 (4th Cir. 1979) (plaintiff was a state-court winner attempting to collect on a state-court judgment against a defendant insurer, who was not a party to the original state suit granting judgment against insureds); Westlake Legal Grp. v. Yelp, Inc., 599 F. App'x 481, 483 (4th Cir. 2015) (per curiam) (plaintiffs were state-court winners whose judgment defendants sought to set aside, removing the existing action to federal court); Fontana Empire Ctr., LLC v. City of Fontana, 307 F.3d 987, 995-96 (9th Cir. 2002) (plaintiffs did not seek to set aside foreclosure judgment but, according to state statute, sought to set aside the foreclosure sale, which would have revived the judgment); Davis v. Bayless, 70 F.3d at 371-72 (plaintiffs, who were not parties to the state-court case awarding a malpractice judgment and who lived with the judgment debtor, sought damages for actions, including a nonconsensual home search, taken by a court-appointed receiver and an attorney of the judgment creditor in attempts to collect on the judgment); Ill. Cent. R.R. Co. v. Harried, Civil Action No. 5:06CV160-DCB-JMR, 2010 WL 4553640, at *1, *4 (S.D. Miss. Nov. 3, 2010) (underlying state-court proceeding resulted in settlement so the plaintiffs were not state-court losers nor was

there a state-court judgment). The court thus is not persuaded to adopt PRA's proposed rule.

Having rejected PRA's proposed rules, the court now turns to determine, as set out by <u>Exxon</u>, whether any of Plaintiffs' claims are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon</u>, 544 U.S. at 284.

## C.    <u>Claim I</u>

Plaintiffs' first claim seeks a declaratory judgment that its proposed class members' default judgments violate § 58-70-155 and are void and seeks an injunction in part requiring PRA to file notices of vacatur in the state courts. (<u>See</u> Compl. (Doc. 3) ¶¶ 50-57.) With the exception of Plaintiff Pia Townes, no one disputes that for Claim I, Plaintiffs are state-court losers challenging state-court judgments rendered before the district court proceedings commenced and that the injuries were caused by the state-court judgments. PRA argues, however, that Claim I fails to "invite the district court to conduct appellate

review of the merits of the state-court judgments"[5] and instead simply "seeks a declaration interpreting the statute or rule at issue[.]" (Def.'s Br. (Doc. 17) at 11-12 (citing Feldman, 460 U.S. at 486-87); see also Def.'s Suppl. Mem. (Doc. 33) at 3-5.)

In Feldman, the plaintiffs brought a "general attack on the constitutionality of [a rule,]" asking the court to "assess [its] validity[.]" Feldman, 460 U.S. at 486-87. Plaintiffs here do not mount a general challenge to the statute; rather, they ask this court to apply the statute to vacate their state-court judgments. Moreover, PRA would have the court break Claim I's request for declaratory judgment into two claims: one requesting an interpretation of § 58-70-155 and another requesting a declaration that the default judgments violate § 58-70-155. But Plaintiffs are masters of their own complaint, see Johnson v. Advance Am., 549 F.3d 932, 937 (4th Cir. 2008), and both Claim I and the Complaint's prayer for relief ask this court to declare that individual default judgments obtained by PRA "violate [§] 58-70-155 and are void[,]" (Compl. (Doc. 3) at 15-16.) This court declines to construe the Complaint otherwise, and the cases PRA cites do not compel a different conclusion. See, e.g.,

---

[5] PRA asserts in passing that this argument applies to all of Plaintiffs' claims but only develops the argument for Claim I. (Def.'s Br. (Doc. 17) at 11-12.)

Skinner, 562 U.S. at 532 (plaintiff did not challenge the adverse state-court decisions); Adkins v. Rumsfeld, 464 F.3d 456, 460, 464 (4th Cir. 2006) (plaintiffs did not challenge the state-court judgments but rather sought only a declaratory judgment); Morrison v. City of New York, 591 F.3d 109, 112-15 (2d Cir. 2010) (declining to adopt defendant's "illegal interpretation" of ambiguous state-court order and construe plaintiff's complaint as attacking the order).

Any statutory interpretation this court would have to undertake to interpret § 58-70-155 as jurisdictional or not would be in service of deciding Plaintiffs' challenge to the individual state-court decisions, which is outside the court's jurisdiction pursuant to Rooker-Feldman. See, e.g., Davani, 434 F.3d at 718-19; Horowitz, 681 F. App'x at 200; Murray, 2015 WL 3874635, at *3; Radisi v. HSBC Bank USA, Nat'l Ass'n, No. 5:11CV125-RLV, 2012 WL 2155052, at *4 (W.D.N.C. June 13, 2012), aff'd, 479 F. App'x 468 (4th Cir. 2012) (per curiam). As a result, except for Plaintiff Townes, this court lacks jurisdiction to hear Plaintiffs' Claim I.

### D. **Claim II**

Plaintiffs assert that because their statutory penalties claim only became cognizable "as a result of" the state courts' entries of default judgment, that this claim is "inextricably

intertwined" with the default judgments and outside the court's jurisdiction. (Pls.' Br. (Doc. 12) at 12-14.) However, as the Fourth Circuit has explained, post-Exxon:

> Feldman's "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision, and is therefore outside of the jurisdiction of the federal district court.

Davani, 434 F.3d at 719 (citations omitted). The relevant question, then, is whether the injuries in Plaintiffs' remaining claims are caused by the default judgments themselves, "fairly alleg[ing] injury caused by the state court in entering [the] order." Vicks v. Ocwen Loan Servicing, LLC, 676 F. App'x 167, 169 (4th Cir. 2017) (per curiam). PRA contends that Plaintiffs' statutory penalty claim stems from "litigation conduct occurring during the course of obtaining a judgment" and is merely an allegation of "unfair or deceptive acts or practices" under § 58-70-130. (Def.'s Br. (Doc. 17) at 13.)

The court first notes that it is not aware of, and the parties have not cited to, any case analyzing whether Rooker-Feldman bars review of a claim for statutory penalties or actual damages, where the statutory violation giving rise to the

penalty or damages is the entry of a state-court default judgment. While PRA correctly points out that civil penalties for pre- or post-judgment litigation conduct are not within Rooker-Feldman's purview, see, e.g., Elyazidi v. SunTrust Bank, 780 F.3d 227, 232–33 (4th Cir. 2015), PRA fails to account for the fact that here the particular conduct challenged is "requesting and obtaining default judgments in violation of [§] 58-70-155." (Compl. (Doc. 3) ¶ 59 (emphasis added).)

There are any number of instances where determining whether a defendant incurred liability under § 58-70-130 may not invite review and rejection of a state-court judgment and where the state-court judgment itself is not the source of a plaintiff's injury. For example, prohibited practices incurring liability under § 58-70-130 include collecting a debt "by means of any unfair threat, coercion, or attempt to coerce," § 58-70-95, "unreasonably publiciz[ing] information regarding a consumer's debt," id. § 58-70-105, or communicating with a consumer the collection agency knew was represented by an attorney, id. § 58-70-115(3). Here, however, § 58-70-155 is not simply an unfair practice that a debt buyer commits in attempting to collect a debt; rather, the statute sets specific requirements for what the debt buyer and the court must do when entering a default judgment. § 58-70-155 ("Prior to entry of a default

judgment . . . against a debtor in a complaint initiated by a debt buyer, the [debt buyer] shall file evidence with the court . . . ." (emphasis added)). Plaintiffs' Complaint alleges that § 58-70-155 would not be violated until the entry of default judgment, a theory reiterated by Plaintiffs' counsel at the October 5 hearing. (Tr. (Doc. 34) 8:19-9:15; Compl. (Doc. 3) ¶ 59.)

Davani, upon which Defendant's rely, is inapposite — there, the plaintiff appealed his employment termination to a state court, where the appeal was dismissed. 434 F.3d at 715. Davani sued his former employer and supervisors in district court, bringing discrimination claims, federal retaliation claims, and a state law claim relating to conspiracy to injure his reputation. Id. Unlike in Davani, where the plaintiff "d[id] not challenge the state decision[,]" id. at 719, Plaintiffs' specific injury here stems only from the allegedly unlawful entry of default judgment, which gives rise to the claim for a statutory penalty.

The unfair practice itself results from, at a minimum, a combination of Defendant's conduct (the filing of the allegedly inadequate business records) and the state court's conduct (entering of the default judgment in the absence of the adequate business records). Therefore, this court finds the injuries

asserted in Claim II to be caused, at least in part, by the state-court judgments. As a result, except with respect to Plaintiff Townes, this court lacks jurisdiction to hear Plaintiffs' Claim II.

### E. __Claim III__

Plaintiffs' last claim seeks actual damages authorized by § 58-70-130(a) in the amount PRA has collected from Plaintiffs, on behalf of any proposed class members who made post-default-judgment payments to PRA. (Compl. (Doc. 3) ¶¶ 64-66.) The theory behind the actual damages claim is the same as that of the statutory penalties claim. (Id. ¶ 66 ("Post-judgment payments on debt established by PRA default judgments in cases filed on or after October 1, 2009, including assets lost through the execution process, are 'actual damages sustained by [class members] as a result of [PRA's] violation,' as these payments resulted from the default judgments PRA obtained in violation of [§] 58-70-155.").) Plaintiffs assert that the damages sought "would effectively annul PRA's state-court default judgments by requiring that payments on the default judgments be returned." (Pls.' Br. (Doc. 12) at 15.)

Defendant asserts that "[p]aying a valid debt" cannot be an injury arising from a judgment and that, like for Claim II, payments rendered and any PRA's actions to collect on the

judgments are "post-judgment collection activities[.]" (Def.'s Br. (Doc. 17) at 13-14); Def.'s Suppl. Mem. (Doc. 33) at 5-7.) However, none of the cases Defendant cite involve statutorily authorized damages for violating a statute prescribing prerequisites for entry of default judgment. See Johnson v. Pushpin Holdings, LLC, 748 F.3d 769, 770 (7th Cir. 2014) (asserting damages claim against debt collector for operating without a license and common law torts for actions in collecting the debts); Fontana Empire Ctr., 307 F.3d at 995-96 (seeking, as authorized by state law, to revive a foreclosure judgment by separately challenging the foreclosure sale); Khath v. Midland Funding, LLC, C.A. No. 14-14184-MLW, 2016 WL 1275606, at *1, *3 (D. Mass. Mar. 30, 2016) (alleging that debt collector operated without a license and seeking damages for allegedly unlawful debt collection based on an unjust enrichment theory); Sheenan v. Mortg. Elec., Registration Sys., Inc., Civil No. 10-6837 (RBK/KMW), 2011 WL 3501883, at *4 (D.N.J. Aug. 10, 2011) (challenging post-judgment payoff calculations).

Here, Plaintiffs do not seek to recover from PRA because of PRA's licensure status or the nature of PRA's conduct in collecting on the debts. They challenge the debts themselves as resulting from a judgment allegedly entered in violation of a statute prescribing prerequisites to entering that judgment; the

damages they estimate amount to the debt collected on the judgment because they challenge the judgment itself. Like in Claim II, the injury stems from the entry of the judgment. Because this court finds that Claim III complains of injuries caused by the state-court judgments and invites district court review and rejection of that judgment, this court finds that, except with respect to Plaintiff Townes, this court lacks jurisdiction to hear Plaintiffs' Claim III.

### F. **Plaintiff Pia Townes**

The court concludes based on the above analysis that all named Plaintiffs except Pia Townes are "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon, 544 U.S. at 284. Townes, however, is not a state-court loser — her default judgment has been vacated by the state court. (Compl. (Doc. 3) ¶¶ 31, 39.) Because Townes is not a state-court loser, her claims cannot be barred by Rooker-Feldman. This puts the court in the position of evaluating a case where most Plaintiffs are state-court losers, whose claims the court lacks subject matter jurisdiction over pursuant to Rooker-Feldman, and where one Plaintiff is not a state-court loser, whose claims the

court does have subject matter jurisdiction over provided that the jurisdictional requirements of CAFA are met.

"Because 'no antiremoval presumption attends cases invoking CAFA . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 194 (4th Cir. 2017) (quoting Dart Cherokee Basin Operating Co. v. Owens, ____ U.S.____, ____, 135 S. Ct. 547, 554 (2014) (citations omitted)). "If the plaintiff challenges removal, however, the defendant 'bears the burden of demonstrating that removal jurisdiction is proper.'" Id. (emphasis removed) (quoting Strawn v. AT & T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008)). In determining CAFA jurisdiction in response to a challenge, courts look to the plaintiff's complaint and to the proposed class as defined by the plaintiff in her complaint. See Strawn, 530 F.3d at 298-99.

Plaintiffs have indeed challenged removal with their Motion to Remand but do not challenge any of PRA's assertions as to the threshold requirements triggering CAFA jurisdiction. Plaintiff Townes brings all claims on behalf of certain groups of the proposed class, (Compl. (Doc. 3) ¶¶ 15, 50-66), and these aggregated claims undisputedly meet CAFA's requirements. Therefore, this court concludes that it has CAFA jurisdiction

over the claims of Plaintiff Pia Townes. <u>See</u> <u>Bartels ex rel.</u>
<u>Bartels v. Saber Healthcare Grp., LLC</u>, No. 16-2247, No. 16-2416,
2018 WL 503173, at *3 n.2 (4th Cir. Jan. 23, 2018) ("Because the
plaintiffs do not challenge the defendants' calculations, the
defendants adequately established that the amount in controversy
exceeds $5 million.").[6]

---

[6] Plaintiff Townes does not have a default judgment nor has
she alleged that she made post-default-judgment payments to PRA.
Therefore, she brings claims on behalf of two proposed class
groups to which she herself is not similarly situated. (<u>See</u>
Compl. (Doc. 3) ¶¶ 50-57, 64-66.) Moreover, any proposed class
members who are state-court losers (i.e., whose default
judgments have not been vacated), would find their claims unable
to be heard in this court due to the court lacking subject
matter jurisdiction under <u>Rooker-Feldman</u>. Although a
representative party must "fairly and adequately protect the
interests of the class" and the representative's claims must be
"typical of the claims by the class[,]" Fed. R. Civ. P.
23(a)(3)-(4), questions about the suitability of Townes as class
representative and the definition of any potential class are
more appropriately addressed during the class certification
process.

<u>Bergquist v. Mann Bracken, LLP</u>, 592 F.3d 816 (7th Cir.
2010), is instructive on this point. There, a plaintiff sought
to have state-court judgments confirming unfavorable arbitral
awards vacated on behalf of proposed class members, even though
her own state-court judgment confirming her unfavorable arbitral
award had already been set aside. <u>Id.</u> at 817-19. The Seventh
Circuit directed the district court to define the proposed class
to include only claims typical of the named plaintiff (which
would exclude claims seeking to set aside state-court judgments,
since the named plaintiff no longer had a state-court judgment).
<u>See</u> <u>id.</u> at 819-20.

IV.  __CONCLUSION__

For the reasons set forth herein, this court lacks jurisdiction over the claims of Plaintiffs Iris Pounds, Carlton Miller, Vilayuan Sayaphet-Tyler, and Rhonda Hall pursuant to the Rooker-Feldman doctrine. **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand (Doc. 11) is **GRANTED IN PART and DENIED IN PART.** The claims of Plaintiffs Pounds, Miller, Sayaphet-Tyler, and Hall are **REMANDED** to the General Court of Justice, Superior Court Division, Durham County, North Carolina, for further disposition. The motion is **DENIED** as to the claims of Plaintiff Pia Townes.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to send a certified copy of this Memorandum Opinion and Order to the Clerk of Superior Court in Durham County.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Expedited Determination of Motion to Remand (Doc. 22) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Defer Time to File Federal Motion for Class Certification (Doc. 27) is **GRANTED** as to Plaintiff Pia Townes and **DENIED AS MOOT** as to remaining Plaintiffs. Plaintiff Townes shall have sixty (60) days from the date of this Order to file any motion for class certification as prescribed by LR 23.1 and Fed. R. Civ. P. 23(c)(1).

This the 28th day of March, 2018.

                               _William L. Osteen, Jr._
                              United States District Judge